IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | CASE NO. |
| *Plaintiff,* | |
| v. | **CLASS ACTION COMPLAINT** |
| **SunPath, Ltd.**, a Massachusetts corporation, | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Ruth Smith ("Plaintiff" or "Smith") brings this Class Action Complaint against Defendant SunPath Ltd. ("Defendant" or "SunPath") to stop Defendant's practice of placing calls to consumers which violate the federal Telephone Consumer Protection Act (TCPA) and the Virginia Telephone Privacy Protection Act (VTPPA), and to obtain redress for all persons similarly injured by Defendant's conduct. Plaintiff also seeks an award of statutory damages to the members of the Classes, plus court costs and reasonable attorneys' fees. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1. Plaintiff Smith is a natural person over the age of eighteen (18) and is a citizen of the Commonwealth of Virginia. Smith resides in Fairfax County, Virginia.

1

2. Defendant SunPath Ltd. is a corporation organized in and existing under the laws of the State of Massachusetts, with its principal place of business located in Braintree, Massachusetts.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq., a federal statute. This Court has ancillary and pendent jurisdiction over the state-law UCL claims under 28 U.S.C. § 1367 *et seq*. This Court also has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

4. This Court has personal jurisdiction over SunPath because it solicits significant business in this District, has entered into business contracts in this District, and a significant portion of the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in and received the calls at issue within this District, and because a significant portion of the wrongful conduct giving rise to this case occurred in, and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

6. Defendant SunPath is a company that markets and administers vehicle service contracts to consumers across the country. SunPath describes its Vehicle Service Contract ("VSC") offerings as a contract between consumers and SunPath that provides repair coverage for vehicles after the manufacturer's warranty expires.

2

7. Unfortunately for consumers, SunPath casts its marketing net too wide. That is, in an attempt to promote its business and to generate leads for its financial products, Defendant conducted (and continues to conduct) a wide scale telemarketing campaign that repeatedly makes unsolicited autodialed and prerecorded phone calls to consumers' telephones, including cellular telephones, without prior express consent to make these calls. Indeed, SunPath (or its telemarketers) places these calls to telephones using an ATDS without consumers' prior written express consent in violation of the TCPA.

8. In an effort to obtain leads for its services, SunPath made (or directed to be made on its behalf) repeated autodialed calls to Plaintiff and other members of the Class without first obtaining express consent to do so—in violation of the TCPA.

9. The TCPA was enacted to protect consumers from unauthorized calls exactly like those alleged in this Complaint—calls placed to numbers without prior express written consent.

10. By making the unauthorized calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Class actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls as well as a loss of value realized for any monies that consumers paid to their carriers for the receipt of such calls. Furthermore, the calls interfered with and interrupted Plaintiff's and the other Class members' use and enjoyment of their phones, including the related data, software, and hardware components. Defendant also injured the Plaintiff and Class members by causing wear and tear on their phones, consuming battery life, and appropriating cellular minutes and data.

11. At no time did Defendant obtain prior express consent from Plaintiff and the Class members to receive calls from Defendant.

3

12. Defendant knowingly made, and continues to make, (either directly or via a third-party acting on its behalf) autodialed telemarketing calls without the prior express consent of the recipients. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Class, it also intentionally and repeatedly violated the TCPA.

13. Defendant was, and is, aware that the autodialed calls described herein were made to consumers like Plaintiff who have not consented to receive them.

14. To the extent any third party made the calls, the third party acted on behalf of Defendant, at Defendant's direction and control, for Defendant's knowing benefit, and with Defendant's approval. Defendant ratified the making of any such calls.

15. To redress these injuries, Plaintiffs, on behalf of themselves and a Class of similarly situated individuals, bring this suit under the TCPA, which prohibits unsolicited calls to telephones registered on the Do Not Call list.

16. On behalf of the Class, Plaintiffs seek an injunction requiring Defendant to cease all unauthorized calling activities to persons without first securing prior express consent and an award of statutory damages to the class members, together with pre- and post-judgment interest, costs and reasonable attorneys' fees.

17. Defendant also repeatedly violated the VTPPA. That is, the VTPPA forbids the placement of telephone solicitation calls to Virginia residents whose wireless number is on the Do Not Call Registry. Defendant or its third-party telemarketers calling on its behalf placed unlawful calls to Virginia residents and those with Virginia area codes, such as Plaintiff, whose numbers appear on the Do Not Call Registry.

18. The VTPPA also requires that telephone solicitors identify themselves by their first and last names when a consumer answers the phone. Defendant violated this provision

because it (or its third party telemarketers calling on its behalf) did not identify themselves by their first and last name when Plaintiff and other members of the Class answered the phone.

19. Importantly, under the VTPPA, it is presumed that a telephone solicitation call advertising a seller's property, goods, or services was made for the benefit of the seller and that the seller bears joint and several liability for VTPPA violations arising out of the call. The seller is presumed to be liable whether or not the solicitor was an agent of the seller, and whether or not the solicitor acted under the supervision or at the direction of the seller. Va. Stat. Ann. § 59.1-514.1

## FACTS SPECIFIC TO PLAINTIFF

20. Plaintiff Smith is the customary user of the personal cellular telephone number ending in 9650.

21. Plaintiff Smith registered her phone number on the National Do Not Call Registry on or around November 8, 2019.

22. Plaintiff Smith's number ending in 9650 is a personal cellphone number and is not used for business purposes.

23. Beginning in May 2020, Smith began receiving a near-daily barrage of autodialed telemarketing calls soliciting Smith to purchase a SunPath policy.

24. Smith received the following autodialed calls:

- May 26, 2020 – 2 calls from caller ID 410-844-6327
- May 26, 2020 – 2 calls from caller ID 281-709-0786
- May 28, 2020 – 7 calls from caller ID 281-709-0786
- May 29, 2020 – 1 call from caller ID 281-709-0786
- May 29, 2020 – 4 calls from caller ID 352-209-2321

- May 30, 2020 – 3 calls from caller ID 407-479-7228
- June 1, 2020 – 6 calls from caller ID 407-479-7228
- June 1, 2020 – 1 call from caller ID 281-709-0849
- June 2, 2020 – 3 calls from caller ID 281-709-0786
- June 3, 2020 – 3 calls from caller ID 407-479-7228
- June 4, 2020 – 2 calls from caller ID 407-479-7228
- June 5, 2020 – 5 calls from caller ID 407-479-7228
- June 6, 2020 – 2 calls from caller ID 407-479-7228
- June 8, 2020 – 9 calls from caller ID 407-479-7228
- June 9, 2020 – 4 calls from caller ID 407-479-7228

25. Thus, Smith received at least fifty (50) autodialed calls within the span of a couple of weeks, all made to solicit Smith to purchase a policy that would be provided by SunPath.

26. Smith does not have a relationship with Defendant of any kind. She has never provided her telephone number directly to Defendant and has never requested that Defendant place any calls to her. Plaintiff Smith has never provided any form of prior express written or oral consent to receive calls from or on behalf of Defendant despite listing her number on the National Do Not Call Registry. She has no business or other relationship with the Defendant.

27. On none of the calls did the caller identify himself or herself by her first and last name.

28. When Smith answered the calls, she heard a pause and a click before an operator came on the line. This is indicative of the use of an ATDS.

29. All of the calls were placed via an ATDS at the direction and oversight of Defendant. Defendant knew about, directed, ratified, and benefitted from the calls.

30. Defendant was, and still is, aware that the above-described autodialed calls were sent to consumers like Plaintiff who have not consented to receive them.

31. On information and belief, the equipment used to place the calls at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for calling at a later date.

32. The equipment at issue also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers.

## CLASS ACTION ALLEGATIONS

33. Plaintiff Smith brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class defined as follows:

> **No Consent Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's products and services; (5) using the same equipment that was used to call the Plaintiff; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiff.

> **Virginia Do Not Call Registry Class**: All persons who either reside in Virginia or who have cellular telephones with a Virginia area code, who, in the period from two years prior to commencement of this litigation until this class is certified, had a registered number on the Do Not Call Registry for at least thirty days; and (2) received more than one call soliciting the purchase of a policy that would be offered or underwritten by SunPath.

7

> **Virginia Unidentified Caller Class**: All persons who either reside in Virginia or who have cellular telephones with a Virginia area code, who, in the period from two years prior to commencement of this litigation until this class is certified, (1) received one or more telemarketing phone calls made to solicit the purchase of a policy that would be offered or underwritten by SunPath; (2) where the caller did not identify themselves by first and last name during the call.

34. The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

35. **Numerosity:** The exact number of members within each Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed telemarketing calls to thousands of consumers who fall into the defined Class. Members of the Class can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in discovery.

36. **Typicality:** Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct.

37. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and she has retained counsel competent and experienced in

complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

38. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant systematically made unsolicited telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

    (c)    Whether any third party made the calls and, if so, whether Defendant is liable for such calls;

    (d)    Whether the Plaintiffs and the other members of the Class are entitled to statutory damages;

    (e)    Whether Defendant acted willfully so as to require an award of treble damages;

    (f)    Whether Defendant violated the VTPPA; and

    (g)    Whether Defendant's operators identify themselves via their first and last name on the calls.

39. **Superiority:** This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and

expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if class members could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### Violation of the TCPA, 47 U.S.C. § 227, *et seq.*
### (On behalf of Plaintiff and the No Consent Class)

40.  Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

41.  Defendant made unsolicited autodialed calls to cellular telephone numbers belonging to Plaintiff and the other members of the No Consent Class, without their prior express written consent in an effort to generate business for Defendant's products and services.

42.  Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or

agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

43. Further, Defendant made the calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse*, simultaneously and without human intervention.

44. By making the unsolicited calls to Plaintiff and members of the Class's cellular telephones without prior express written consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b).

45. As a result of Defendant's unlawful conduct, Plaintiff and the members of the No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited phone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

46. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the No Consent Class.

## SECOND CAUSE OF ACTION
### Violation of the Virginia Telephone Privacy Protection Act
**(On behalf of Plaintiff and the Virginia Do Not Call Registry Class)**

47. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48. The VTPPA states, "No telephone solicitor shall initiate, or cause to be initiated, a telephone call to a telephone number on the National Do Not Call Registry …." Va. Stat. Ann. § 59.1-514(B).

11

49. The VTPPA defines "telephone solicitor" to mean "any person who makes or initiates, or causes another person to make or initiate, a telephone solicitation call on its own behalf or for its own benefit or on behalf of or for the benefit of a seller." Va. Stat. Ann. § 59.1-510.

50. The VTPPA defines "telephone solicitation call" to include "any text message, sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, [etc.]" Va. Stat. Ann. § 59.1- 510. 4

51. Under the VTPPA, it is presumed that a telephone solicitation call advertising a seller's property, goods, or services was made for the benefit of the seller and that the seller bears joint and several liability for VTPPA violations arising out of the call. The seller is presumed to be liable whether or not the solicitor was an agent of the seller, and whether or not the solicitor acted under the supervision or at the direction of the seller. Va. Stat. Ann. § 59.1-514.1.

52. SunPath or third-party solicitors acting on its behalf and for its benefit initiated calls to Plaintiff and other Class members despite their numbers being on the Do Not Call Registry for the purpose of advertising SunPath's products and services.

53. SunPath bears joint and several liability for the calls without regard for whether the solicitor was an agent of SunPath or for whether the sender acted at the supervision or direction of SunPath.

54. A natural person aggrieved by violations of the VTPPA may bring action against the violator for $500 in statutory damages for the first violation, $1,000 in statutory damages for

the second violation, and $5,000 for each subsequent violation, plus reasonable attorney fees and costs. If violations of the VTPPA are willful, the damages for first and second violations may be increased to $5,000. Vt. Stat. Ann. § 59.1-515.

### THIRD CAUSE OF ACTION
### Violation of the Virginia Telephone Privacy Protection Act
### (On behalf of Plaintiff and the Virginia Unidentified Caller Class)

55. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

56. The VTPPA states, "A telephone solicitor who makes a telephone solicitation call shall identify himself by his first and last names and the name of the person on whose behalf the telephone solicitation call is being made promptly upon making contact with the called person." Va. Stat. Ann. § 59.1-512.

57. SunPath or telephone solicitors acting for its benefit made calls to Plaintiff and the Class to offer SunPath's products and services for sale.

58. When SunPath or telephone solicitors acting for its benefit placed the calls, the caller failed to identify himself or herself by first and last name.

59. SunPath, as a telephone solicitor itself or jointly and severally through telephone solicitors acting for its benefit, is liable for telephone solicitation calls that violate the VTPPA.

60. At no point during any of the calls at issue did the solicitor identify himself by first and last name, in violation of the VTPPA.

61. A natural person aggrieved by violations of the VTPPA may bring action against the violator for $500 in statutory damages for the first violation, $1,000 in statutory damages for the second violation, and $5,000 for each subsequent violation, plus reasonable attorney's fees

13

and costs. If violations of the VTPPA are willful, the damages for first and second violations may be increased to $5,000. Vt. Stat. Ann. § 59.1-515.

62. Plaintiff and the Class demand judgment against SunPath for statutory damages, special damages, attorney fees and costs, and any other relief provided by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Smith, on behalf of herself and the Class, pray for the following relief:

A. An order certifying the Classes as defined above, appointing Plaintiff Smith as the representative of the Classes and appointing her counsel as Class Counsel;

B. An award of actual monetary loss from such violations or the sum statutory damages for each violation, whichever is greater, all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

C. An order declaring that Defendant's actions, as set out above, violate the TCPA and the VTPPA;

D. An award of pre- and post-judgment interest;

E. An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

F. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: January 26, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By:   /s/ Francis J. Driscoll, Jr.
      One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
Law Office of Frank J. Driscoll Jr. PLLC
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

* *Pro Hac Vice* Admission to Be Sought

15