IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.,**<br>Defendant. | Case No. 1:22-cv-81-LMB-TCB |

### DECLARATION OF ANDREW GARCIA
### IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Pursuant to 28 U.S.C. § 1746, I, ANDREW GARCIA, under penalty of perjury, declare as follows:

1. My name is Andrew Garcia. I am over 21 years of age and am competent to give testimony. I make the statements in this declaration based on my personal knowledge, including knowledge gained in my position as President of SunPath Ltd. ("SunPath").

2. I have reviewed Plaintiff Ruth Smith's ("Plaintiff") Complaint ("Complaint").

3. SunPath is a Delaware corporation and maintains its principal place of business in Massachusetts.

4. SunPath administers automobile service contracts to consumers, in that it administers and pays for covered claims customers make under SunPath-administered service contracts.

5. SunPath does not own or lease any property, or own or maintain any assets in the Commonwealth of Virginia.

6. SunPath has never conducted business operations of any kind from the Commonwealth of Virginia.

7. SunPath does not sell the automobile service contracts it administers; its products are sold by third-party sellers, much like auto manufacturers' cars are sold by independent dealers. SunPath does not initiate outbound sales calls to consumers. More specifically, SunPath did not initiate any of the alleged calls to Plaintiff in May or June of 2020, which form the basis of Plaintiff's Complaint. In fact, SunPath has not initiated any calls to Plaintiff whatsoever.

8. Plaintiff states in her Complaint that "SunPath made (or directed to be made on its behalf) repeated autodialed calls to Plaintiff and other members of the Class without first obtaining express written consent to do so—in violation of the TCPA." Compl. ¶ 8. Setting aside the issue of whether Plaintiff's allegations are true, I am familiar with how extended service contracts for vehicles are marketed and the roles different entities play. As I explain below, any calls that Plaintiff may have received were not "on behalf of" SunPath.

9. Various telemarketing companies have sought permission by contract to market the policies that SunPath administers. SunPath grants permission on a non-exclusive basis and acknowledges that these telemarketing companies also have received permission to market the policies administered by SunPath's competitors. For this reason and the reasons set forth below, SunPath's contracts with telemarketing companies include a provision stating that these telemarketing companies are independent contractors.

10. As a consequence of the foregoing, telemarketing companies are not exclusively selling policies administered by SunPath, and are also simultaneously selling policies administered by SunPath's competitors.

11. From being in this industry, I know that, generally, these telemarketing companies have a customer relationship management program ("CRM") by which their representatives can input a potential customer's vehicle make and model, mileage, etc. and view on their computer

screens a variety of policies available based on that data, which policies are administered by any given number of third party administrators. The representatives independently select what policy to promote and sell.

12. SunPath has no role or involvement in the telemarketing companies' representatives' selection of what specific product to sell. SunPath has no oversight or control over what the telemarketing representatives say. The marketing operations of these companies, including how they obtain leads and what scripts they use, are created and maintained entirely by the telemarketing companies. Although Plaintiff may have received an extended vehicle warranty policy administered by SunPath, any allegation by Plaintiff that a marketing call associated with that policy was made "on behalf of" SunPath is mistaken because SunPath (a) does not confer that authority to telemarketing companies; and (b) at the time telemarketing calls are initiated to potential customers, the representatives have not yet accessed the available policies which are usually obtained through conversations during which the consumers provide the vehicles' make, model, and mileage. In other words, the calls are not initiated on any particular third-party administrator's behalf.

13. Additionally, SunPath does not confer the authority to draft or in any way materially alter the extended vehicle service policies it administers to any telemarketing companies that SunPath permits to market or sell its products. These independent marketing companies may only input a customer's identifying information and pricing details into the form agreements.

14. Moreover, these telemarketing companies independently decide at what price to mark up the policies they are selling. They are ultimately compensated by the difference between the wholesale prices of the policies and whatever they charge the customers, which, again, is at their discretion.

15. For the avoidance of doubt, at no time does SunPath provide compensation to the telemarketing companies or their representatives.

16. I also note that SunPath has not ratified the conduct of any party that allegedly made any call to Plaintiff in violation of the TCPA or any other law or regulation "on behalf of" SunPath, as no requisite principal-agent exists between SunPath and any calling party such that SunPath has no authority to ratify such conduct.

17. SunPath does not, nor has it ever, made illegal robocalls, or authorized any other parties to make illegal robocalls.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 25 day of April, 2022.

_____
ANDREW GARCIA