IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**SUNPATH, LTD.,** a Massachusetts corporation,<br><br>*Defendant*. | Case No. 1:22-cv-00081-LMB-TCB<br><br>**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**<br><br>**JURY TRIAL DEMANDED** |

**I.     INTRODUCTION**

This case challenges Defendant Sunpath, Ltd.'s ("Defendant" or "Sunpath") serial violations of the Telephone Consumer Protection Act ("TCPA") and the Virginia Telephone Privacy Protection Act ("VTPPA"). In an attempt to market and sell its vehicle service contracts, Sunpath, or telemarketing agents acting on its behalf, placed unsolicited phone calls to consumers who have registered their phone numbers on the National Do Not Call ("DNC") Registry. Rather than accept responsibility or answer for these alleged violations, Sunpath moves to dismiss Plaintiff Ruth Smith's ("Plaintiff" or "Smith") class action complaint for a supposed lack of personal jurisdiction and failure to state a claim, both based on the belief that Plaintiff has not alleged enough facts to demonstrate that Defendant may be liable for the calls at issue. As explained herein, neither argument wins the day.

First, Plaintiff has made a *prima facie* showing to support the Court's exercise of specific personal jurisdiction over Sunpath. The calls at issue, all of which were made to solicit the sale of Sunpath's products, were directed to Plaintiff and caused harm to her in this District. Even if Defendant did not make such calls itself, it has purposefully availed itself of the privilege of

marketing its products in this district, and exercising jurisdiction over Sunpath for such activities is constitutionally reasonable.

Second, Smith has adequately stated a claim for relief to survive dismissal pursuant to Rule 12(b)(6). The fact that Plaintiff received more than fifty calls marketing Sunpath's products in an identical manner does not render her allegations conclusory or non-specific. Likewise, when taken in a light most favorable to Plaintiff, her allegations support a finding of Defendant's liability, either directly or vicariously, for the calls at issue. Further, the VTPPA assigns a presumption of responsibility to companies like Sunpath whose products are marketed through telephone solicitation, regardless of any existing relationship, and Defendant has admitted in declaration that it was not only aware of such calls but has contracted with the telemarketers to advertise its products. Smith has met the requirements for this stage of pleadings, and Defendant's motion and declaration are insufficient to warrant dismissal.

Accordingly, Defendant's Motion to Dismiss should be denied.

## II.   BACKGROUND

Beginning around May 2020, Plaintiff began receiving telemarketing calls attempting to solicit Smith for the purchase of Sunpath's vehicle service contracts. (Dkt. 1 at ¶ 23.) None of the callers identified themselves by name, and Plaintiff heard a pause and a click on each call before speaking to an operator, indicating the use of an automatic telephone dialing system ("ATDS"). (*Id.* ¶¶ 27–28.) Despite the fact that Smith listed her phone number on the National DNC and never provided prior express consent to receive calls from Sunpath or its marketers, Plaintiff received more than *fifty* calls over the course of about two weeks, from May 26, 2020, to June 9, 2020. (*Id.* ¶¶ 24.) Every one of these calls connected Plaintiff to an operator who tried to solicit her to purchase a Sunpath vehicle service contract. (*Id.* ¶ 25.)

In response to these calls, Plaintiff has filed suit against Defendant for violation of the TCPA and the VTPPA. (*Id.* at 1.) Smith brings her claims on behalf of herself and three classes of similarly-situated consumers who received calls in the same manner. (*Id.* ¶ 33.)

## III.   ARGUMENT

Defendant's motion to dismiss should be denied. At this early stage in the pleadings, Plaintiff has met the requirements to support the Court's exercise of personal jurisdiction over Sunpath for the claims alleged. She has also met her pleading requirements by stating a claim for relief above the speculative level. The repetitious nature of the calls in question does not render Smith's allegations conclusory, and Defendant's own declaration fortifies the presumption that the calls were placed by or on behalf of Sunpath. As explained in detail below, the Court should deny Sunpath's motion in its entirety.

### A.   Plaintiff Has Pleaded Sufficient Facts To Support Personal Jurisdiction Over Defendant, And The Untested Declaration Offered By Sunpath Fails to Prove Otherwise.

Defendant's first argument for dismissal is based on a supposed lack of personal jurisdiction over Sunpath. (Dkt. 35-1 at 7–14.) Sunpath is eager to contend that it "had no connection whatsoever with any of the calls," but Plaintiff has plainly alleged that the calls were made by or on behalf of Sunpath, in an effort to solicit the purchase of Sunpath's products. (*See id.* at 14.) The Court must take Plaintiff's factual allegations as true at this stage of the case, and Sunpath's self-serving declaration does little to controvert Plaintiff's factual allegations (and, in fact, reveals that Defendant contracts with telemarketers to market its policies). Absent discovery or an evidentiary hearing, Plaintiff must only make a *prima facie* showing of jurisdictional facts, and she has done so. Smith has alleged sufficient facts to support specific personal jurisdiction over Sunpath for the conduct that gave rise to her claims, and Defendant's declaration fails to

3

dispute Plaintiff's allegations.

The two categories of personal jurisdiction are "*general* or all-purpose jurisdiction, and *specific* or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (emphasis added). Plaintiffs are responsible for establishing personal jurisdiction, but they "need only make a *prima facie*" showing. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1057, 208 L. Ed. 2d 525 (2021). Though a court *may* look beyond the pleadings when considering a challenge, it ***must*** "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

When considering specific jurisdiction, the Fourth Circuit employs a three-part test for courts to consider: (1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the state; (2) whether the claims arise out of the activities directed at the state; and (3) whether exercising personal jurisdiction would be "constitutionally reasonable." *Income Tax Sch., Inc. v. Lopez*, No. 3:12-CV-334, 2012 WL 3249547, at *5 (E.D. Va. Aug. 7, 2012) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). The touchtone of this analysis remains that "an out-of-state person . . . engaged in some activity purposefully directed toward the forum state" that creates a "substantial connection with the forum state." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997); *see also UMG Recordings*, 963 F.3d at 353 (citing *ESAB*).

In the TCPA context, numerous courts have held that specific personal jurisdiction "is proper in the District where an unlawful communication is received." *Mey v. Castle L. Grp., PC*, 416 F. Supp. 3d 580, 586 (N.D.W. Va. 2019) (gathering cases). In *Mey*, the plaintiff alleged

4

receipt of 25 telemarketing calls made to her in West Virginia, and the Court found that this was sufficient to demonstrate the defendant's purposeful availment of the privilege of conducting business in West Virginia:

> Mey alleges that over a span of four months in 2018, defendant Judson Phillips *and/or those acting on his behalf* ignored the mandates of the National Do Not Call registry and dialed Mey's West Virginia phone number 25 times for the singular purpose of soliciting business from her. . . . Viewing these pleading allegations in a light most favorable to Mey, this Court finds that the exercise of personal jurisdiction over Phillips is proper as minimum contacts exist between the defendant and West Virginia such that maintenance of this action does not offend traditional notions of fair play and substantial justice.

*Id.* (emphasis added).

Here, Plaintiff concedes that Defendant does not have continuous, systematic affiliation with Virginia to support general jurisdiction. However, the Court may properly exercise specific jurisdiction over Sunpath. Similar to *Mey*, Plaintiff has alleged receipt of more than fifty calls from Defendant or agents acting on its behalf, all of which were directed to her in Virginia for the purpose of soliciting the purchase of Sunpath's products. (Dkt. 1 at ¶¶ 23–25.) The calls were purposely directed to Smith and caused harm to her in the forum state of Virginia—Sunpath administers vehicle service contracts across the country, and Smith is likely one of many thousands of consumers in the state who received calls marketing Sunpath contracts. (*See id.* ¶¶ 6, 35.) Plaintiff's claims for violation of the TCPA and VTPPA arise from the conduct alleged: unlawful calls that were directed to Plaintiff (a Virginia resident) who did not consent to receive calls and registered her phone number on the National DNC Registry. (*See id.* ¶¶ 15–17, 21, 26.) Accordingly, it is constitutionally reasonable to exercise jurisdiction over Defendant for these claims. Whether the calls were made by Defendant itself or telemarketing agents acting on its behalf, Sunpath has purposely availed itself of the privilege of conducting business in Virigina,

5

and it is foreseeable that the purposeful direction of telemarketing calls to Virginia consumers in an attempt to sell Sunpath's vehicle service contracts would subject Defendant to claims in this forum related to those consumers.

Hence, notwithstanding Sunpath's assertions to the contrary, Plaintiff has made a *prima facie* showing to support specific personal jurisdiction. Defendant has submitted the Garcia Declaration in an attempt to support its arguments against jurisdiction, but the declaration does not successfully controvert the factual allegations underlying Plaintiff's claims. Through the declaration, Sunpath denies that it makes any of its own outbound sales calls, but it admits that it gives various telemarketers permission "by contract" to market its products to consumers.[1] (Dkt. 11-1 at ¶¶ 7, 9.) Garcia states that these telemarketers are permitted to market competing products, and he declares "generally" that they may cater their offerings based on specific consumer needs, but these general points bear little weight against Plaintiff's allegations that *all* of the calls she received were made to solicit the purchase of a Sunpath policy. (*Compare id.* ¶¶ 9, 11; *with* Dkt. 1 at 23–25.) Sunpath's self-serving declaration as to what it "generally" experiences or expects with the telemarketers that it engages via contract does not credibly dispute Plaintiff's specific, factual allegations—she has adequately stated a *prima facie* case for personal jurisdiction.

On a motion to dismiss, Plaintiff's allegations are to be taken as true, and reasonable inferences must be drawn in her favor. *See UMG Recordings*, 963 F.3d at 350. Smith's allegations are sufficient to make a *prima facie* case for the exercise of specific personal

---

[1] As will be explained in greater detail below, the VTPPA applies a presumption that companies whose products are advertised in telemarketing calls are liable for such calls, and Sunpath's admissions in its declaration reveal that it cannot overcome that presumption. *See* VA. CODE ANN. § 59.1-514.1(A)–(B).

jurisdiction over Defendant, and Plaintiff has met her burden to survive a motion to dismiss. Defendant seeks to dismiss Plaintiff's complaint based on an untested, generalized declaration, but Defendant's declaratory evidence is insufficient to controvert the facts alleged in the Complaint. The Court should deny the motion to dismiss and permit Plaintiff to proceed with her claims against Sunpath for the dozens of unsolicited telemarketing calls alleged in her Complaint.

**B.     Plaintiff Has Adequately Stated Claims For Relief Against Sunpath.**

In addition to seeking dismissal pursuant to Rule 12(b)(2), Sunpath also contends that Plaintiff has failed to state a plausible claim for relief. (Dkt. 11 at 15–21.) Defendant argues: (1) that Smith's claims lack "specificity"; and (2) that Smith supposedly fails to state a claim for either direct or vicarious liability. (*Id.*) As explained below, neither of Defendant's arguments succeeds. Plaintiff has pleaded the 50+ calls that she received with sufficient detail to state a claim for violations of the TCPA and VTPPA, and Sunpath's attempt to turn the volume of calls and their identical nature against Plaintiff should not be entertained. Further, Plaintiff has pleaded sufficient facts to hold Defendant liable for the calls in question, including as a function of the VTPPA's presumption that the calls were made on behalf or for the benefit of Defendant—a presumption that Sunpath's own declaration reveals it cannot rebut. As such, Plaintiff has met her pleading requirements, and the Court should deny Defendant's motion to dismiss.

**1.     Plaintiff has pleaded violations of the TCPA and VTPPA above the speculative level.**

Defendant's first basis for claiming that Plaintiff has failed to state a claim is that Smith supposedly "fails to plead her claims with requisite specificity." (Dkt. 11 at 15–16.) The origin of Sunpath's "specificity" standard is unclear, but Plaintiff has, in fact, met her pleading burden by

7

alleging sufficient facts to support the reasonable inference that Defendant is liable for the unlawful calls alleged in the Complaint. The mere fact that Plaintiff received so many identical calls does not render her allegations non-specific or "threadbare." Smith is not required to prove her case at the motion to dismiss stage.

To survive a motion to dismiss, a complaint must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555-57 (2007)). To withstand dismissal pursuant to Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 570. "Facts in the complaint, as well as inferences drawn therefrom, should be construed in a light most favorable to the nonmoving party." *Gilyard v. Northlake Foods, Inc.*, 367 F. Supp. 2d 1008, 1012 (E.D. Va. 2005). Dismissal for failure to state a claim is only proper where it appears "beyond doubt" that the plaintiff can prove no set of facts that would entitle them to the relief sought. *Id.*

In its motion, Defendant seems to argue for a new standard of "specificity," claiming that Plaintiff's claims should be dismissed because she did not allege certain details regarding the calls, like which calls she answered or what precise statements were made to her. (Dkt. 15.) Sunpath is eager to characterize Smith's allegations as "sweeping" or conclusory, merely because she received and alleged more than fifty calls that were all functionally identical. In effect, Defendant is seeking to spin the voluminous, repetitive nature of this telemarketing effort into a means to undercut Smith's claims and have them dismissed. But "specificity" is not the standard on a motion to dismiss; as explained above, and as acknowledged in Sunpath's own motion, a complaint need only contain sufficient facts that, taken as true, state a claim for relief

8

that is plausible on its face. *See Twombly,* 550 U.S. at 555, 570; (Dkt. 11 at 7.) Further, leaving aside the nonexistence of Sunpath's proposed standard, its application would seemingly incentivize telemarketers to evade liability by *increasing* the number of unlawful calls until any individual recipient's allegations appear non-specific. The only support Sunpath attempts to provide for its standard is citation to *Newhart*, a case in which, on a motion for class certification, the Southern District of Florida stated that findings as to consent would require examination of individual calls rather than an entire calling campaign. *See Newhart v. Quicken Loans Inc.*, No. 9:15-CV-81250, 2016 WL 7118998, at *3 (S.D. Fla. Oct. 12, 2016). The *Newhart* case does not bear on the present motion to dismiss, and Defendant's novel standard should be rejected.

      Here, Plaintiff has plainly alleged that Sunpath is responsible for the calls she received in violation of the TCPA. Smith alleges the approximate date for each of more than fifty calls that she received (dkt. 1 at ¶ 24), the nature of the calls (all of which were placed in an attempt to solicit sales of Defendant's products) (*id.* ¶¶ 23, 25), the indicia suggestive that an ATDS was used to make the calls (*id.* ¶ 28), her registration on the National DNC and the lack of any consent or relationship with Sunpath (*id.* ¶¶ 11, 21, 26), the failure of any callers to properly identify themselves (*id.* ¶ 27), and Defendant's involvement in making the calls (including a citation to the VTPPA's presumption—applicable to Sunpath here—that the calls made to sell Defendant's products were made on behalf of or for the benefit of Defendant). (*Id.* ¶¶ 10, 12–14, 19, 29–30.) These are not generalized, speculative statements or "threadbare" recitals of statutory languages—they are detailed facts that suggest violations of the TCPA and VTPPA. If accepted as true, as they must be at this stage of the pleadings, Plaintiff's allegations raise her right to relief well above the speculative level, as they plausibly demonstrate a right to relief. *See*

9

*Twombly,* 550 U.S. at 555, 570. From these allegations, the Court may reasonably infer that Sunpath is liable for the statutory violations at issue.

In effect, Defendant asks the Court to dismiss Plaintiff's claim because she did not transcribe each of the 50+ calls that she received. But she is not required to do so in order to survive a motion to dismiss. In her complaint, Plaintiff has made detailed factual allegations about the calls that she received that raise her right to relief above the speculative level and allow the Court to infer that Sunpath is liable for the conduct alleged. She has met her burden to withstand dismissal pursuant to Rule 12(b)(6), and Defendant's motion should be denied. In the event that the Court deems Plaintiff's factual allegations insufficient, Plaintiff respectfully requests that she be granted leave to amend her complaint as necessary.

**2. Taken as true, as must be done on a motion to dismiss, Plaintiff's allegations support a finding of direct or vicarious liability, and the VTPPA applies a presumption of liability that Defendant cannot overcome.**

The remainder of Defendant's motion focuses on whether Sunpath may be held liable for the calls. That is, Defendant contends that Smith has not plausibly alleged that Sunpath is either directly or vicariously liable for the calls at issue. (Dkt. 11 at 16–21.) But Defendant's argument relies on a mischaracterization of Plaintiff's factual allegations as to what she experienced as "conclusory" or "assumption[s]." (*Id.* at 17, 19, 20.) Plaintiff has pleaded sufficient detail about the calls that, taken as true, support the reasonable inference that Sunpath is liable for the calls she received—either directly or vicariously—and raise her right to relief above the speculative level. Further, the VTPPA creates a presumption that Sunpath is jointly and severally liable for the calls regardless of any agency relationship with any third-party telemarketers. As such, Plaintiff has met her pleading burden and Defendant's motion should be denied.

*Direct Liability*

10

In the TCPA context, claims can be pursued as a result of direct or vicarious liability. Direct liability for the placement of calls applies to the party that "initiates a call," while vicarious liability may be found in accordance with common law agency principles. *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6582 (2013). Thus, if it was Sunpath itself that initiated the calls, rather than a telemarketing agent, Defendant may be held directly liable for any violations of the TCPA. Without discovery, Plaintiff does not have access to evidence or records that would demonstrate who exactly initiated the calls that she received. But she need not prove her case at the motion to dismiss stage; once again, "[d]ismissal is proper only where it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Gilyard*, 367 F. Supp. 2d at 1012 (quotations omitted). Here, Plaintiff has alleged the facts that are available to her—she has provided a dated log of more than fifty calls that she received over the span of several weeks, all of which sought to solicit the purchase of Sunpath vehicle service contracts. (Dkt. 1 at ¶¶ 23–25.) Taken as true, these facts support the reasonable inference that "Defendant knowingly made" and is therefore directly liable for the unlawful, autodialed calls alleged. (*See id.* ¶¶ 12–13.) Such an inference has been pleaded above the speculative level, and it must be drawn in Plaintiff's favor at this stage of the case.

Defendant has introduced the Garcia declaration, in which Sunpath denies making any outbound sales calls to consumers, claiming that any such calls would have been made by third-party telemarketers. (Dkt. 11-1 at ¶ 7; *see also* Dkt. 11 at 4–5, 10.) Plaintiff has not had an opportunity to test the veracity of this declaration through discovery and therefore does not intend to take Sunpath at its word that it does not place any calls on its own. Nevertheless, even if it were true that Sunpath itself did not initiate the calls, the analysis does not end there: Defendant may still be vicariously liable for the calls.

*Vicarious Liability*

Even if the calls were not placed by Sunpath itself, Defendant may be held vicariously liable for the acts of its telemarketing agents.[2] Here, Plaintiff has alleged that because all 50+ calls were made to generate sales of Sunpath's products and to benefit Sunpath, any third party involved in the calls was acting as an agent of Defendant. Smith's allegations as to the content of the calls are not "conclusory statements" or "threadbare legal conclusions" (dkt. 11 at 19)—on the contrary, Plaintiff's allegations are sufficient to support a reasonable inference of authority or ratification above the speculative level.

As noted by the FTC, a defendant may be held vicariously liable for violations of the TCPA when an agency relationship is established between the defendant and a third-party caller. *Dish Network*, 28 F.C.C. Rcd. at 6582 ¶ 24. Vicarious liability may be established under "a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 520 (N.D.W. Va. 2016) (citing *In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6582 ¶ 28). Formal agency, or actual authority, may be express or implied; express actual authority occurs when the principal expressly grants the agent authority to perform a particular act, and implied actual authority is found "when the principal's reasonably interpreted words or conduct would cause an agent to believe that the principal consents to have an act done on her behalf." *Monotronics*, 223 F. Supp. 3d at 520. Apparent authority arises when the principal causes persons dealing with the agent to reasonably believe that the agent has authority, *see, e.g.*,

---

[2] Following necessary discovery, Plaintiff may seek to amend her complaint to add any agents that may be identified by Defendant. However, at this stage of the proceedings, there is insufficient evidence to determine whether, in fact, the calls were placed by Sunpath itself or its telemarketers.

12

*Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016), and ratification occurs "when an agent acts for a principal's benefit and the principal does not repudiate the agent's actions." *Monotronics*, 223 F. Supp. 3d at 520.

Here, Plaintiff is without discovery necessary to determine whether all or any of the calls were placed by Sunpath or telemarketing agents on its behalf. But the nature of the calls provides sufficient context to raise the likelihood of agency above the speculative level—all of the calls that Plaintiff received featured operators attempting to solicit the purchase of Sunpath vehicle service contracts. (Dkt. 1 at ¶¶ 23–25.) It is reasonable to infer from the volume and uniformity of the calls received that, to the extent that any of the calls were placed by third-party telemarketers, such telemarketers were acting as agents of Defendant in an attempt to sell Defendant's products. *See Monotronics*, 223 F. Supp. 3d at 520

Absent discovery, Plaintiff cannot allege the specific relationship between Sunpath and any telemarketing agent, but the Garcia declaration provided by Sunpath reveals that there is, in fact, a contractual relationship between Sunpath and its telemarketers. Garcia states that "[v]arious telemarketing companies have sought permission *by contract* to market the policies that Sunpath administers," and Sunpath "grants permission" to said telemarketing companies. (Dkt. 11-1 at ¶ 9) (emphasis added). Regardless of whether those telemarketers also attempt to sell products administered by Sunpath competitors, Defendant has admitted to the existence of a contractual agreement and permission granted to its telemarketers prior to making calls. (*See id.* at ¶¶ 9–10.) The existence of a contract is highly suggestive of express actual authority, whereby Sunpath expressly authorized telemarketing companies to make calls and market its products. *See Monotronics*, 223 F. Supp. 3d at 520. Leaving aside the likelihood that these facts may satisfy any other standards for agency, such as ratification (*i.e.* telemarketers offering Sunpath

13

products did so for Sunpath's benefit, and the existence of contractual permission to do so demonstrates authority rather than repudiation), the facts at hand raise the inference of vicarious liability above the speculative level.

Defendant seeks to evade this sort of liability by attempting to minimize the element of control, stating frequently that it did not "direct or control" the actions of its telemarketers. (Dkt. 11 at 2–5, 10, 12, 20–21.) Sunpath even attempts to liken itself to a supplier, in the sense that "every bar which advertises that they sell a particular brand of beer is not the agent the brewery," and that the publisher of a circular does not become the agent of companies that wish to advertise therein. (*Id.* at 20.) But these examples are not analogous to the case at hand. Smith did not see Sunpath's products offered at a store or in a newspaper—she was bombarded with dozens of calls for weeks, seeking only to sell her a vehicle service contract provided by Sunpath. (Dkt. 1 at ¶¶ 23–25.) Defendant claims that its telemarketers often "simultaneously sell[] policies administered by SunPath's competitors," but this generalization does not defeat Plaintiff's factual allegations that the calls she received sought *only* to sell her Sunpath products. (*Compare id.*, *with* Dkt. 11-1 at ¶ 10.) Garcia's declaration as to how he believes telemarketers "generally" offer Sunpath's products is of little use against Plaintiff's factual allegations as to the targeted nature of the calls she received. (Dkt. 11-1 at ¶ 11.) Taken as true, Smith's allegations support the reasonable inference, above the speculative level, that Sunpath is vicariously liable for the calls at issue. Further, issues like control and ratification are fact-intensive and must be decided on a complete record. Garcia's declaration itself suggests a level of control over telemarketers,[3]

---

[3] In addition to the "permission by contract" that Sunpath grants to telemarketers (dkt. 11-1 at ¶ 9), Sunpath exercises control over the products and contracts to be marketed, denying telemarketers authority "to draft or in any way materially alter the extended vehicle service policies" that will be offered to consumers. (*Id.* ¶ 13.)

14

and his self-serving statement that "Sunpath has not ratified the conduct of any party" that called Plaintiff is a premature legal conclusion. (*See id.* ¶¶ 9, 13, 16.)

At this stage of the proceedings, Plaintiff has met her burden to allege facts suggestive of vicarious liability above the speculative level. She has provided factual details about the repetitive, targeted nature of the calls she received, and Defendant's own declaration reveals the existence of contractual relationships with telemarketers that offer its products. On a motion to dismiss, reasonable inferences must be drawn in favor of Plaintiff, and her allegations support the reasonable inference that Defendant is vicariously liable for any of the calls placed by third-party telemarketers. The Court should reject Sunpath's bid to evade liability and deny Defendant's motion to dismiss.

### *The VTPPA's Presumption of Liability*

In addition to the above analysis of direct and vicarious liability, the VTPPA applies a presumption of responsibility to companies like Sunpath whose products are offered to consumers via telemarketing, and as a result of that presumption, Defendant "shall be" jointly and severally liable for the calls, regardless of any agency relationship. Sunpath's declaration confirms that it cannot overcome that presumption.

As Plaintiff noted in her complaint, under the VTPPA, it is "presumed" that telemarketing calls advertising a company's products were made on behalf of the company:

> A telephone solicitation call offering or advertising a seller's property, goods, or services **shall be presumed** to have been made or initiated on behalf of or for the benefit of the seller, **whether or not any agency relationship exists between the telephone solicitor and the seller**, **whether or not the seller supervised or directed the conduct of the telephone solicitor**, and whether or not the telephone solicitor is shown to have acted at the seller's direction and request when making or initiating the telephone solicitation call.

VA. CODE ANN. § 59.1-514.1(B). The Act provides that the seller "on whose behalf or for

15

whose benefit" the unlawful call was made *and* the solicitor who initiated the call "shall be jointly and severally liable for such violation." *Id.* § § 59.1-514.1(A). To rebut this presumption, the seller must show by "clear and convincing evidence" that: (1) it did not retain or request the solicitor to make such calls on its behalf or for its benefit; and (2) the calls were made "without the seller's knowledge or consent." *Id.* § 59.1-514.1(B).

      Here, Plaintiff has alleged that all of the 50+ calls that she received sought to sell her Defendant's vehicle service contracts, and that such calls violated the VTPPA (dkt. 1 at ¶¶ 23–25, 48–53, 56–60)—the presumption that the calls were made on behalf of or for the benefit of Sunpath applies. Further, Sunpath's own declaration reveals that it cannot overcome that presumption. Garcia's sworn declaration states that "Sunpath grants permission" "by contract" to telemarketers to market its products on a non-exclusive basis. (Dkt. 11-1 at ¶ 9.) Even if Sunpath were to argue that it did not "request or retain" telemarketers to sell its products, Defendant cannot credibly claim that the calls were made without express, contractual permission, let alone without Sunpath's "knowledge or consent." *See* VA. CODE ANN. § 59.1-514.1(B). The existence of knowledge or consent alone is enough to maintain application of the VTPPA's presumption, and any subsequent attempt by Sunpath to recant its sworn testimony should not be permitted.

      The VTPPA's presumption applies to Sunpath, such that it can be held "jointly and severally liable" for any calls by its telemarketers that violated the Act. Plaintiff has met her burden to establish Defendant's liability for the calls and her claim for relief above the speculative level, and the motion to dismiss should be denied.

## IV.   CONCLUSION

      The Court should deny Defendant's motion to dismiss. Plaintiff has made a *prima facie* showing to support the Court's exercise of specific personal jurisdiction over Sunpath, and she

has adequately stated a claim for relief that rises above the speculative level. Defendant's declaration does not support dismissal, as it, in fact, suggests an agency relationship with any third-party telemarketers involved and reveals Sunpath's inability to overcome the presumption of joint and several liability under the VTPPA. Accordingly, the Court should deny Defendant's motion, permit the parties to proceed, and award any such relief as it deems necessary and just.

Respectfully Submitted,

**RUTH SMITH**, individually and on behalf of all others similarly situated,

Dated: May 20, 2022         By: _/s/ Francis J. Driscoll, Jr._____
                                    Counsel for Plaintiff

Francis J. Driscoll, Jr.
frank@driscolllawoffice.com
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809
*Attorneys for Plaintiffs and the Class*

* Pro Hac Vice

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on May 20, 2022.

                                                       */s/ Francis J. Driscoll, Jr.*