IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**SUNPATH, LTD.,** a Massachusetts corporation,<br><br>*Defendant*. | Case No. 1:22-cv-00081-LMB-TCB |

### DEFENDANT SUNPATH, LTD.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES

Defendant SunPath, Ltd., by counsel, hereby submits its Reply in Support of its Motion to Compel Plaintiff Ruth Smith to produce full and complete responses to SunPath's discrete discovery requests identified below.

**I.  PLAINTIFF'S PARTIAL SUPPLEMENTAL RESPONSES DO NOT RESOLVE THIS DISCOVERY DISPUTE.**

SunPath has been seeking basic facts about Plaintiff's own claims for months. It is undisputed that SunPath never called her, so we must ascertain why she claims that she received dozens of calls whose "purpose," she claims, was to sell a SunPath product. For most of the discovery period, Plaintiff essentially refused to provide any clarity beyond what was already in her Complaint. SunPath was forced to file its motion to compel because Plaintiff's scheduled deposition would have been an exercise in futility, as SunPath was, and still is, without the material facts and evidence it is entitled to from Plaintiff to test her claims. Meet-and-confer communications were lengthy but unproductive. It was not until SunPath filed its Motion to

Compel that Plaintiff finally supplemented her responses, but those supplements raise far more questions than answers.[1]

As a threshold matter, Plaintiff's claims that "SunPath's motion to compel . . . fails to identify any discovery responses that are incomplete" and that "most of the 'issues' raised in SunPath's motion were resolved" are incorrect. Pl.'s Resp. in Opp'n to SunPath's Mot. Compel ("Opp.") at 1, ECF No. 43. For the reasons set forth in its motion, SunPath specifically requested Plaintiff be required to fully respond to Interrogatories 1, 2, 3, 4, 8, 9, 18, 21, 22, and 23, Document Requests 11, 14, 15, 16, 17, 19, 20. 22, 23, 28, 29, 32, and 33, and (if the Court does not deem them admitted) Requests for Admission 7, 8, and 16. *See* Mem. Supp. Mot. Compel at 13, ECF No. 41. In response, Plaintiff provided supplemental responses to only Interrogatories 1-3 and Requests for Admission 7, 8, and 16, none of which cure even the deficiencies noted with those discovery responses. *See* Pl.'s Suppl. Disc. Resps. ("Supplemental Responses"), ECF No. 43-1.

For example, in her supplemental response to Interrogatory 1, Plaintiff now details 54 calls—with slight discrepancies from those listed in her Complaint—for which she claims to know the "purpose", even the various calls she did not answer, from a variety of phone numbers of unknown association, as well as the dates and times of the calls, and on some occasions even the names of who she talked to. *See* Supplemental Responses at 3-6; Complaint ¶ 24, ECF No. 1 (listing different numbers of calls received on June 1, 2020 and June 4, 2020 stated in the

---

[1] Indeed, Plaintiff did not meaningfully attempt to resolve these issues or respond in any way to SunPath's extensive attempts to elicit complete responses, beyond making unspecific assurances that she would endeavor to supplement her discovery responses at some point. *See, e.g.*, Email from Gregory Caffas Dated November 3, 2022, ECF No. 41-3 (memorializing counsel's meet-and-confer call in which Plaintiff's counsel represented he estimated he could provide some response to six of the 33 discovery responses that SunPath noted deficiencies with).

Supplemental Responses). All of these calls were from 2020. So how does she know all of *that*? And why did it take until November 11, 2022 to respond about calls from 2020?

As Plaintiff herself admits, it is certainly not from the third-party discovery she has taken in this case. *See* Opp. at 5. She has subpoenaed various phone companies, including Verizon, Lumen, and AT&T. None of them have produced evidence corroborating her positions; to the contrary, some of the phone numbers appear to be assigned to a bank or an individual during the times at issue, none of which have any apparent connection to this case. *See* Verizon Subpoena Resp., ECF No. 41-4 (identifying "FIRST CITIZENS BANCSHARES, INC." as the party associated with several phone numbers from which plaintiff alleges she received telemarketing calls at issue here); *see also* AT&T Subpoena Resp., attached hereto as **Exhibit 1** (attributing an individual named "Leslie Hall" as the party associated with one of the other calling phone numbers). Nor did she learn about this litany of calls from her deposition of the non-party American Protection Corp., who confirmed its own subcontractors left Plaintiff two voicemails—but only to return *her call to them* to inquire about purchasing its products, creating an establish business relationship that potentially negates some or all of Plaintiff's claims.[2]

So we are still at a loss as to how she came to articulate these question-begging positions on November 11, 2022, but it is certainly not the third-party discovery she has taken thus far. At most, the third-party deposition of American Protection Corp. may have delayed her ability to fully answer discovery requests surrounding those two identified calls, which she already had record of well before this deposition occurred in any case. But she has fifty-two more calls for

---

[2]     *See* Excerpt from Deposition of American Protection Corp., ECF No. 41-5. Plaintiff produced voicemail recordings of two calls made by apparent employees or agents of non-party American Protection Corp. following up after Plaintiff's initial inquiry, which were produced with her initial discovery responses on September 28, 2022, but still has not identified the dates, times, and caller ID information associated with those voicemails.

3

which she claims to know the "purpose" of the calls, but refuses to tell SunPath the basis for these claims. She claims to have "access to her AT&T account and past telephone bills," Opp. at 11, but has never produced those documents, which presumably still would not account for these theories she is verifying in her supplemental discovery responses, because she did not answer many of the calls, and apparently still does not know why, for example, a number tied to a random bank or citizen of Florida, each of whom are strangers to SunPath, would be calling to pitch Plaintiff a SunPath product.

Indeed, Plaintiff's supplemental responses further discredit her repeated insistence that "no further documents or information are being withheld on the basis of [her] objections." *See* Opp. at 2. Unless she has a photographic memory, she must have contemporaneous notes of these calls from over two years ago for her to know the names of various people she spoke with. Where are her notes?[3] Plaintiff also makes multiple references to voicemails related to the calls detailed in her supplemental response to Interrogatory 1 that allow her to discern the "purpose" of such calls, but has not provided the voicemails she appears to have, or any kind of transcription that would allow SunPath to examine the veracity of Plaintiff's contentions. *See*, *e.g.*, Supplemental Responses at 4-5 (describing voicemails left by callers on June 1, 2020 and June 8, 2020).

Plaintiff's "Supplemental" Responses and Opposition therefore establish the following: SunPath's requests were not premature, and Plaintiff's claims that she was not withholding any responsive information are simply not true; her answers were just delayed, and are still insufficient. Plaintiff also must have further evidence she is withholding—or if she has no

---

[3] Such notes were also explicitly requested, and have not been produced. *See* ECF No. 41-1 at 17-18 (Document Requests 7 and 8 seeking Plaintiff's diaries, logs, notes, journals, or written or recorded information related to the calls that form the basis of this lawsuit).

4

factual basis for divining the "purpose" of unanswered calls from unknown numbers, she should have to explain the epistemological basis for these seemingly blind-but-verified positions. In short, Plaintiff's untimely supplements served the day after SunPath filed its motion have not cured any of the problems.

## II. PLAINTIFF CANNOT STAND ON HER BOILERPLATE OBJECTIONS THAT THE MAJORITY OF SUNPATH'S REQUESTS REMAIN PREMATURE AT THIS LATE STAGE OF DISCOVERY.

Plaintiff's continued effort to delay her discovery obligations should be rejected. SunPath is not seeking some impermissible peek behind the curtain into Plaintiff's counsel's legal strategies. It is simply trying to root out the improper excuses Plaintiff has offered to avoid her discovery obligations, and her claim that essentially all of SunPath's discovery requests are "premature" is one such improper, boilerplate excuse. *See Brown v. Experian Info. Sols., Inc.*, Civil Action No. 3:16cv670, 2017 U.S. Dist. LEXIS 234931, at *5 (E.D. Va. Apr. 17, 2017) (citing *Buskirk v. Wiles*, No. 15cv3503, 2016 U.S. Dist. LEXIS 168081, at *2 (S.D.W. Va. Dec. 6, 2016) (noting that objections must be stated with specificity, with the underlying basis for the objection, with an indication whether responsive materials are being withheld and that "boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable")); *see also Mey v. All Access Telecom, Inc.*, CIVIL ACTION NO.: 5:19CV237, 2022 U.S. Dist. LEXIS 108993, at *4-5 (N.D.W. Va. May 4, 2022) ("Boilerplate objections to discovery requests are highly disfavored in this district and throughout the Fourth Circuit, and the failure to state objections with specificity may be regarded as a waiver of those objections.") (internal citations omitted).

Beyond the facial insufficiency of Plaintiff's boilerplate "premature" objections, her claim that she is not withholding responsive information on this basis is also clearly false.

Plaintiff's supplemental responses address only a fraction of the requests SunPath noted deficiencies with. *See generally* SunPath's October 21, 2022 meet-and-confer correspondence, ECF No. 41-2. For example, Plaintiff has not provided any supplement at all to cure the deficiencies with her response to Interrogatories 4, 8, or 9, which turn in part on information Plaintiff clearly possesses regarding the calls she describes in her supplemental response to Interrogatory 1. *See id.* at 4-5. And as noted above, even her scant supplemental interrogatory responses raise more questions than answers.

And Plaintiff's argument that she is not required to provide any information at all in response to contention interrogatories fails, especially at this late stage of discovery. Indeed, the very authority that Plaintiff relies on disproves her point. In *Pauley v. CNE Poured Walls, Inc.*, No. 3:18-cv-01508, 2019 U.S. Dist. LEXIS 118738 (S.D.W. Va. July 17, 2019), which Plaintiff cites at page 5 of her opposition, the Court plainly ruled:

> [T]o the extent CNE can presently respond to Plaintiffs' contention interrogatories, CNE should do so. Because CNE has an ongoing to [sic] duty to timely supplement and correct discovery answers as additional information becomes available, CNE should not wait . . . before providing a response to the contention interrogatories, if information is currently available[.]

*Id.* at *4. Likewise, Plaintiff's reliance on *Monsanto* to claim that "[c]ontention interrogatories need not be fully answered until discovery is near completion" shows the two-fold deficiencies with her responses. *See* Opp. at 5 (citing *Monsanto Co v. E.I. Du Pont De Nemours & Co.*, Case No.4:09CV00686 ERW, 2012 U.S. Dist. LEXIS 1277, at *2 (E.D. Mo. Jan. 5, 2012)).

First, although contention interrogatories may not be fully answered until information becomes available, Plaintiff must respond with what information she has when her responses are due. And at this late stage of discovery, which ends on December 9, 2022, Plaintiff cannot rely

on claims that such interrogatories are premature without a far more specific basis. *See*, *e.g.*, *United States v. Vision Quest Indus., Inc.*, No. 2:21-cv-05197-FLA-PDx, 2022 U.S. Dist. LEXIS 20105, at *14-15 (C.D. Cal. Feb. 3, 2022) (overruling party's objections to contention interrogatories on the grounds that they were premature in February when discovery closed in August); *CSX Transp., Inc. v. Peirce*, Civil Action No. 5:05-cv-202, 2012 U.S. Dist. LEXIS 201420, at *16 (N.D.W. Va. May 23, 2012) (finding contention interrogatories were not premature after five of eleven months of the discovery period had expired).

Finally, Plaintiff's attempt to shift the burden to SunPath to effectively argue that SunPath must tell Plaintiff what information it believes she is withholding before she is required to provide complete answers is simply not how *discovery* works. *See* Opp. at 6-7. If we already knew it, it would not be called "discovery." It is incumbent on Plaintiff to comply with her obligations to provide complete discovery responses, and *she* has the burden of showing why she has not complied with those obligations. *All Access,* 2022 U.S. Dist. LEXIS 108993, at *4 ("The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." (internal citation omitted)).[4]

Plaintiff's continued reliance on these boilerplate objections, including in her supplemental responses, indicates that she still intends to provide additional responses even at this late stage of discovery. Yet SunPath is still left guessing as to what that might be, or when it can expect Plaintiff to provide it. As requested in SunPath's initial motion, Plaintiff should at the very least specify what records Plaintiff's responses are dependent upon, and what steps are being taken to discover such records, to support the basis for any claim that a request remains

---

[4] And in any case, SunPath conferred at length with Plaintiff regarding the deficiencies with Plaintiff's answers, to no avail. *See* Meet-and-confer correspondences, ECF Nos. 41-2 and 41-3.

7

premature. But, again, it is difficult to conceive how Plaintiff could have provided her original or supplemental answers without evidence that she is withholding—whether it be her own notes, call records, recordings, or otherwise. Accordingly, SunPath requests that the Court strike Plaintiff's objections that SunPath's requests are "premature," namely to Interrogatories 1, 2, 3, 4, 8, 9, 18, 22, and 23, as well as Document Requests 15, 16, 17, 19, 20, 22, 23, 28, 29, 32, and 33, and order her to provide full and complete responses to the fullest extent she can.

### III. PLAINTIFF'S RESPONSES TO INTERROGATORIES 1, 2, AND 3 REMAIN DEFICIENT.

Contrary to Plaintiff's representations, her insufficient supplemental discovery responses do not cure the deficiencies with her responses to Interrogatories 1-3. *See* Opp. at 7. As discussed at length above, her supplemental response to Interrogatory 1 raises many more questions than answers. With respect to Interrogatories 2 and 3, Plaintiff's supplemental answers remain deficient in that they fail to specify whether she purports to allege SunPath is either directly or vicariously liable for any specific call, and her evidence to support either. *See* Supplemental Responses at 6-8. If anything, these responses further muddle the factual record—Plaintiff cites her response to Interrogatory 2 blindly alleging that SunPath is directly liable for the calls at issue (she does not specify which calls) as part of the basis for her supplemental response to Interrogatory 3 that SunPath is *also* vicariously liable for purportedly the same unspecified calls. These parallel contentions regarding liability, without any supporting evidence, defy logic. How could SunPath be both principal and agent, or simultaneously be directly and vicariously liable? These incoherent positions cannot satisfy Plaintiff's discovery duties.

And the remainder of her supplemental responses to these interrogatories, which still do not provide a response as to *which calls* Plaintiff is alleging SunPath is either directly or

vicariously liable for, continue to raise contentions without providing factual support. Plaintiff states in her supplemental response to Interrogatory 3 that "Plaintiff also asserts that SunPath is liable for American Protection's actions by ratifying its acts and omissions, including accepting the benefits of the telemarketing calls at issue." Supplemental Responses at 8. This begs the questions: which calls? What benefits? What evidence is Plaintiff relying on for these assertions? SunPath first met Ms. Smith when her lawyer demanded money; it had no idea she existed before receiving her TCPA demand. Respectfully, not what one would call a "benefit." The purpose of discovery is for parties to provide the factual basis for their contentions, not to raise additional unsupported conclusions.

Plaintiff's answers must specify which calls she claims SunPath is vicariously liable for rather than directly liable, and provide facts that support her contentions.

## IV. PLAINTIFF HAS NOT PROVIDED AN ADEQUATE RESPONSE TO INTERROGATORY 18 OR SUPPLEMENT TO HER INITIAL DISCLOSURES REGARDING DAMAGES.

Plaintiff's response to Interrogatory 18 and her supplemental initial disclosures remain inadequate. It is insufficient to simply list lump-sum amounts. A sufficient response must include the calculation showing how Plaintiff arrived at those sums—i.e., a showing of how Plaintiff applies the separate damage provisions to each call. Under Federal Rule of Civil Procedure 26(a)(1)(A)(iii), a party is required to provide "a *computation* of each category of damages" she claims as part of her initial disclosures. *Jaguar Land Rover Ltd. v. Bentley Motors Ltd.*, Case No.: 2:18-cv-320, 2020 U.S. Dist. LEXIS 219825, at *11 (E.D. Va. Oct. 28, 2020) (quoting Fed. R. Civ. P. 26(a)(1)(A)(iii)) (emphasis added); *see also Duke Energy Carolinas, LLC v. NTE Caroinas II, LLC*, No. 3:19-CV-00515-KDB-DSC, 2022 U.S. Dist. LEXIS 53433, at *24 (W.D.N.C. Mar. 24, 2022) ("[Counter-plaintiff]'s failure to quantify those damages claims

during discovery dooms its argument that supplementation of its initial disclosures was unnecessary."); *Advanced Training Grp. Worldwide, Inc. v. ProActive Techs. Inc.*, Civil Action No. 19-cv-505, 2020 U.S. Dist. LEXIS 141855, at *11-13 (E.D. Va. Aug. 7, 2020) ("For a party to satisfy its obligations under Rule 26, a party must provide a computation of its damages."). Just like in math class, Plaintiffs have to "show their work."

Plaintiff provides no such calculation; instead, she only cites the statutory damage provisions of the relevant statute and lists a lump sum. Plaintiff cannot simply be rubber-stamping all the damage provisions she cites for each and every one of the still speculatively numbered calls now listed in the supplemental response to Interrogatory 1 (if that is indeed what Plaintiff's response does, as the lack of any calculation as required by Rule 26 still leaves SunPath to guess). As an example of why this is not a sufficient response, it appears that many of the calls Plaintiff identifies in her supplemental response to Interrogatory 1 went unanswered, which at least begs the question of how Plaintiff could include those calls in a calculation of damages for her VTPPA claims that the callers failed to properly identify themselves (or why she would have any idea what technology under Section 227(b) of the TCPA would have been used to place an unanswered call). In fact, Plaintiff's supplemental response to RFA 16 indicates that calls that went unanswered should not be included for any claims alleging the caller failed to properly identify him or herself. *See* Supplemental Responses at 12.

Yet Plaintiff's current discovery responses make it unclear whether these calls are included in such damage calculations. Plaintiff's supplemental disclosures are insufficient because the basis for her damage calculations remains a mystery. *See Valencell, Inc. v. Apple Inc.*, No. 5:16-CV-1-D, 2017 U.S. Dist. LEXIS 58034, at *4 (E.D.N.C. Apr. 17, 2017) (citing *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012)) ("It is

10

inconceivable that Valencell does not now have more responsive information regarding its damages claim than it has provided in its prior responses to Interrogatory No. 6, which gave very little, if any, insight into its damages claim."). Plaintiff's response to Interrogatory 18 and her initial disclosures remain deficient in this regard and must be supplemented.

V. **PLAINTIFF'S BOILERPLATE OBJECTIONS TO INTERROGATORY 21 AND DOCUMENT REQUESTS 11 AND 14 ARE IMPROPER.**

Plaintiff's claim that "confidential settlement agreements are irrelevant" is incorrect and certainly not supported by "the majority of courts," or even any authority Plaintiff can cite to in the Fourth Circuit. *See* Opp. at 10. To the contrary, regarding settlement agreements, "the Fourth Circuit has not imposed a settlement privilege with respect to discovery. . . [rather,] courts in this circuit have found that relevance[,] not admissibility, is the appropriate inquiry with regard to whether or not the information sought . . . is discoverable." *CX Reinsurance Co. Ltd. v. B&R Mgmt., Inc.*, Civil Case No. ELH-15-3364, 2017 U.S. Dist. LEXIS 155011, at *11 (D. Md. Sept. 20, 2017) (internal citations and quotations omitted); *see also Selective Way Ins. Co. v. Schulle*, Civil Action No. 3:13CV00040, 2014 U.S. Dist. LEXIS 16801, at *5-6 (W.D. Va. Feb. 5, 2014) (allowing the discovery of relevant settlement information); *Elkins v. Monumental Life Ins. Co.*, Case No. 2:08-cv-01403, 2009 U.S. Dist. LEXIS 149408, at *10 (S.D. W. Va. Aug. 13, 2009) (information regarding related claims, including "settlement practices," is discoverable within the scope of Rule 26); *Kaplan Cos., Inc. v. Peoplesoft USA, Inc.*, 1:03CV1014, 2006 U.S. Dist. LEXIS 117263, at *2 (M.D.N.C. Mar. 15, 2006) ("the public policy favoring settlements is not the same as saying that such agreements are immune from disclosure").[5]

---

[5] *See also* Memo. in Sup. of Mot. to Compel at 11-12; *Physicians Healthsource, Inc. v. Masimo Corp.*, 8:14-00001 DOC (ADSx), 2019 U.S. Dist. LEXIS 230973, at *3 (C.D. Cal. July 30, 2019) (compelling interrogatory responses relating to settlement agreements); *Parker Waichman LLP v. Salas LC*, 328 F.R.D. 24, 26 (D.P.R. 2018) ("Courts may even allow the

SunPath reiterates that the objections Plaintiff lodged to Interrogatory 21 and Document Requests 11 and 14 remain unadorned boilerplate objections that each request is "overbroad, unduly burdensome, and beyond the scope of discoverable information," which remain facially deficient. *Buskirk*, 2016 U.S. Dist. LEXIS 168081, at *3-4 (noting that objections must be stated with specificity, with the underlying basis for the objection, and with an indication whether responsive materials are being withheld and that "boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable") (citation omitted).  Plaintiff's arguments therefore fail at the outset, because there is no dispute that she is indeed withholding responsive information, and has not met her burden to show why withholding this information is appropriate.

The remainder of Plaintiff's novel arguments that are notably absent from her objections contain a series of misstatements, her arguments relating to the potential existence of an established business relationship chief among them.  An established business relationship under either the TCPA or VTPPA can be created via any transaction *or* inquiry with a party, including a party allegedly acting "on behalf of" the party whose products are being offered. *See* Va. Code § 59.1-510; 47 C.F.R. § 64.1200(f)(5). Considering that Plaintiff's theory of SunPath's liability at least in part alleges that SunPath is vicariously liable for the calling practices of third parties, Plaintiff's interactions with third parties that make telemarketing calls, including entering into settlement agreements with them, are undoubtedly relevant.  Additionally, the execution of a

---

discovery of information contained in and related to confidential settlement agreements."); *Quilez-Velar v. Ox Bodies, Inc.*, CIV. NO. 12-1780(SCC), 2014 U.S. Dist. LEXIS 124617, at *5-6 (D.P.R. Sept. 4, 2014) (collecting cases supporting that settlement-related information is discoverable pursuant to Rule 26); *ABF Capital Mgmt. v. Askin Capital Mgmt.*, 96 Civ. 2978 (RWS), 2000 U.S. Dist. LEXIS 3633, at *7 (S.D.N.Y. Feb. 8, 2000) ("Prevailing authority within this Circuit holds that the discovery of settlement-related information is governed by [Rule 26(b)(1)], and that no heightened showing of relevance need be made in order to justify the disclosure of a settlement agreement.") (collecting cases).

12

settlement agreement is certainly a transaction that could create an established business relationship. Moreover, Plaintiff's unsupported assertion that "SunPath is aware [that] Plaintiff has **never** purchased a vehicle service contract," Opp. at 9, is both incorrect and unpersuasive. Even if Plaintiff has not purchased such a contract, any relevant inquiries regarding vehicle service contracts—like her pre-suit settlement inquiry to SunPath in this case, and subsequently filing suit against SunPath here—and settlement agreements that may have resulted from such interactions would undoubtedly be relevant to this matter.[6]

To further clarify, any third-party company authorized to sell SunPath's products does so non-exclusively, such that it is offering SunPath's competitors' products alongside SunPath's. *See* Declaration of Andrew Garcia ¶¶ 9-12, ECF No. 11-1. Therefore, there is a distinct possibility that one or more of the settlement agreements Ms. Smith is withholding may be with a party that also sells or sold SunPath products, even if the dispute that led to such an agreement did not arise from calls associated with the sale SunPath product. Settlement agreements in this space routinely identify and release the seller's "administrators," such as SunPath. And as it pertains to Ms. Smith's fitness as a potential class representative, a settlement agreement releasing a company whose actions she may claim SunPath is vicariously liable for could preclude her from acting as a class representative altogether. For these reasons and as set forth in SunPath's initial motion, Plaintiff should be compelled to fully respond to Interrogatory 21 and Document Requests 11 and 14.

---

[6] And even the authority Plaintiff relies on supports, at minimum, she should be required to identify the number of settlements she has entered into. See Opp. at 10 (citing *Charvat v. Southard Corp.*, No. 2:18-cv-190, 2019 U.S. Dist. LEXIS 244871, at *6 (S.D. Ohio Feb. 13, 2019)). The *Southard* court found that the plaintiff in that case was required to identify the number of relevant settlements, and the only basis for not compelling more complete disclosures of that plaintiff's settlement history was his sufficient objections regarding undue burden, which Plaintiff has not lodged here.

### VI. PLAINTIFF'S RESPONSES TO REQUESTS FOR ADMISSION 7, 8, AND 16 SHOULD BE DEEMED ADMISSIONS.

Plaintiff's supplemental responses to Requests for Admission 7, 8, and 16 remain unresponsive. The continued reliance on the non-answer indicating that Ms. Smith can neither admit or deny what evidence she possesses to answer was insufficient when these responses were initially served, and is even less acceptable now that we are three weeks away from the close of discovery.  Per Rule 36(a)(3) of the Federal Rules of Civil Procedure, these responses should be deemed admitted for failure to provide a timely response.  Alternatively, Plaintiff should at the very least be compelled to provide sufficient answers to these requests pursuant to Rule 36(a)(6).

### VII. CONCLUSION

WHEREFORE, Defendant SunPath requests that this Court grant the relief sought in SunPath's Motion to Compel Plaintiff's Discovery Responses.


Dated: November 17, 2022                     Respectfully submitted,

                                                               SUNPATH, LTD.

                                                               By Counsel

                                                               /s/ *Gregory M. Caffas*
                                                               Gregory M. Caffas (VSB No. 92142)
                                                               Mitchell N. Roth (VSB No. 35863)
                                                               ROTH JACKSON
                                                               8200 Greensboro Drive, Suite 820
                                                               McLean, VA 22314
                                                               (703) 485-3535
                                                               (703) 485-3525 (fax)
                                                               gcaffas@rothjackson.com
                                                               mroth@rothjackson.com

>Joseph P. Bowser (VSB No. 88399)
>ROTH JACKSON
>1519 Summit Ave., Ste. 102
>Richmond, VA 23230
>804-441-8701
>804-441-8438 (fax)
>jbowser@rothjackson.com
>
>*Counsel for SunPath, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Reply in Support of its Motion to Compel Plaintiff's Discovery Responses to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on November 17, 2022.

>/s/ *Gregory M. Caffas*
>Gregory M. Caffas