```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF VIRGINIA
 2                      ALEXANDRIA DIVISION


 3   ------------------------------x
     RUTH SMITH,                   :      Civil Action No.:
 4                                 :      1:22-cv-81
               Plaintiff,          :
 5        versus                   :
                                   :      Friday, November 18, 2022
 6   SUNPATH, LTD.,                :
                                   :
 7               Defendant.        :
     ------------------------------x
 8

 9        The above-entitled motion to compel was heard before
     the Honorable William F. Fitzpatrick, United States
     Magistrate Judge.  This proceeding commenced at 10:05 a.m.
10

                   A P P E A R A N C E S:
11

12   FOR THE PLAINTIFF:     PATRICK PELUSO, ESQUIRE
                            WOODROW & PELUSO, LLC
13                          3900 E. Mexico Avenue
                            Suite 300
14                          Denver, Colorado  80210
                            (720) 213-0676

15   FOR THE DEFENDANT:     GREGORY CAFFAS, ESQUIRE
                            ROTH JACKSON GIBBONS CONDLIN, PLC
16                          8200 Greensboro Drive
                            Suite 820
17                          McLean, Virginia  22102
                            (703) 485-3533
18

19   COURT REPORTER:        STEPHANIE M. AUSTIN, RPR, CRR
                            Official Court Reporter
20                          United States District Court
                            401 Courthouse Square
21                          Alexandria, Virginia  22314
                            (571) 298-1649
                            S.AustinReporting@gmail.com
22

23        (PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING,
          TRANSCRIPT PRODUCED BY COMPUTERIZED TRANSCRIPTION.)
24

25
                                                               1
```

```
 1              P R O C E E D I N G S

 2         THE DEPUTY CLERK:  Smith v. SunPath, Ltd.,

 3    Case 1:22-cv-81.

 4         Counsel, please note your appearances for the

 5    record.

 6         THE COURT:  We'll start with the plaintiff.

 7         MR. PELUSO:  Good morning, Your Honor.

 8    Patrick Peluso appearing on behalf of the plaintiff.

 9         THE COURT:  Good morning, Mr. Peluso.  How are

10    you?

11         MR. PELUSO:  I'm all right.  How are you?

12         THE COURT:  Good.  Thank you.

13         MR. CAFFAS:  Good morning, Your Honor.  Gregory

14    Caffas here on behalf of the defendant, SunPath, Limited.

15         THE COURT:  And good afternoon, Mr. Caffas.  How

16    are you?

17         MR. CAFFAS:  Good morning, Your Honor.

18         THE COURT:  All right.  So I understand -- so

19    let's just sort of plow through this one issue at a time.

20    But I understand that there was a supplemental discovery

21    production that occurred after the original motion was

22    filed.

23         So I just want to -- the first thing I want to do

24    is make sure that I understand exactly what currently is in

25    dispute, what the parties' positions are, to make sure I
```

2

1    haven't missed anything along the way, and then we'll rule,

2    and we'll at least give you guys some clarity as to what the

3    lay of the land is going forward.

4            It may make sense -- and this is the defendant's

5    motion to compel.  So if you would like to do it in a

6    different way, that's fine.  It may make sense to start

7    with, I think what you've referred to as the contention

8    discovery requests, and let's resolve those first.

9            Does that make sense?

10           MR. CAFFAS:  Yes, Your Honor.

11           THE COURT:  Okay.  So, first let's -- I want to

12   make sure we're clear, exactly which requests are you

13   referring to within that bucket?

14           MR. CAFFAS:  To clarify, Your Honor, since we're

15   discussing this in the context of the

16   supplemental interrogatories -- or, sorry, the supplemental

17   responses that plaintiff has submitted, are you asking me

18   about what the -- what effect those have had on the

19   discovery requests?

20           THE COURT:  Yes.  What's currently in dispute.

21   I'm assuming that the supplemental responses either change

22   something, change everything or change nothing; so ...

23           MR. CAFFAS:  The latter, Your Honor.  I would

24   argue that they change nothing.  They don't cure anything

25   noted in our initial motion.  And, if anything, especially

                                                            3

```
 1    with regards to responses to -- the supplemental responses

 2    to Interrogatory 1, 2 and 3, I would argue that they raise

 3    additional questions that appear to need to be supplemented.

 4    It looks like plaintiff had rushed to put something together

 5    in order to try and resolve this motion --

 6            THE COURT:  All right.  Listen to this --

 7            MR. CAFFAS:  -- and hasn't done that.

 8            THE COURT:  -- it's your motion.  Why don't you

 9    start with whatever individual or group of discovery

10    requests that you want to.  I'll hear -- just make sure I

11    understand which specific request you're referring to.  You

12    don't have to repeat what's in your brief, but just

13    summarize your position for the record.  I'll hear from

14    plaintiff, and then, you know, we'll tackle them one at a

15    time; okay?

16            MR. CAFFAS:  Yes, Your Honor.

17            I think the first thing to address is the

18    boilerplate objection that plaintiff has raised as to a --

19    that's comes into play in this motion.  It's

20    Interrogatories 1, 2, 3, 4, 8, 9, 18, 22, 23.  And then

21    Document Requests 15, 16, 17, 19, 20, 22, 23, 28, 29, 32 and

22    33, which are all listed, it's on page 7 of our initial

23    motion to compel.

24            And the issue that we take with this objection,

25    Your Honor, is that it's the definition of a boilerplate
```

4

 1   objection in that it just states that these requests are

 2   premature without stating any basis as to why that affects

 3   their ability to give any kind of answer or what that, in

 4   turn, is causing plaintiff to need more time to submit

 5   responses, either when they were initially propounded back

 6   in September or currently as it stands three weeks from the

 7   end of discovery.

 8           THE COURT:  So let's start there.  That's a fine

 9   place to start.

10           So, Counsel, with respect to the objection that,

11   at this point, responses are premature.  Right.  My general

12   view is, you're a couple weeks out from your discovery

13   cutoff.  Right.  It's hard to have things be too premature

14   at this point.  You have a hard discovery cutoff sometime in

15   early or mid-December.

16           I understand that there could be, and there may

17   well be, supplemental productions there are necessary after

18   depositions are taken or after additional information is

19   acquired, but we don't really have a lot of time here.  And

20   so to the extent that you're -- that, you know, that's what

21   you're resting on, solely the issue that a response now is

22   premature, I'm not inclined to grant that.  I am inclined to

23   have the plaintiff respond to the discovery request based on

24   the information you have today.  If those responses are

25   going to change as a result of a deposition or new

5

1    information that is properly discoverable, then I'm going to

2    ask you to supplement your response as needed.  But we do

3    need to get moving, and we do need to kind of push this

4    matter forward from a discovery perspective.

5         If you have other objections that are not

6    boilerplate ones, that are specifically tailored to the

7    request, to the nature of the discovery, to the relevance,

8    proportionality, whatever, I'm happy to hear those

9    objections, and I'm happy to hear any argument you have as

10   to why that's not a proper, you know, game plan going

11   forward.

12        But my initial impression is -- unless you can

13   convince me otherwise -- if you're not objecting to the

14   substance of the discovery request, you're only objecting

15   that they're -- that really, it's not -- it's premature to

16   respond, I'm not inclined to grant your -- or stay your

17   objection on those grounds, but I'm happy to hear you on

18   that point.

19        MR. PELUSO:  Understood, Your Honor.

20        You know, it's -- regardless of the merits of the

21   objection that is premature, I understand Your Honor is not

22   inclined to find that objection meritorious.  We're not

23   withholding documents or information based on that

24   objection.  So all the information --

25        THE COURT:  Then why did you make it?

6

1          MR. PELUSO:  Understood, Your Honor.  It's mostly

2     just to note that there's information that we're still

3     trying to track down through the discovery process and that

4     we will then turn around and supplement, to the extent that

5     we acquire additional information.

6          THE COURT:  It sounds like everybody's on the same

7     page there.

8          MR. PELUSO:  This is what I was --

9          MR. CAFFAS:  If I could object, Your Honor.

10         THE COURT:  No.  Let him finish.

11         MR. PELUSO:  It's sort of what I was explaining

12    before today's hearing.  That even if Your Honor granted his

13    motion, I don't have additional information to give him.

14         THE COURT:  Okay.

15         MR. PELUSO:  So it's sort of an academic exercise

16    about whether the -- it's a premature objection.

17         THE COURT:  So the purpose of today is to resolve

18    disputes.  Right.  And, you know, in the discovery process,

19    there are often good-faith, honest disputes, or issues over

20    which reasonable minds can differ.  Right.  But what I need

21    to do today is find out what those really kind of -- focus

22    in on what those disputes are, and what the respective

23    arguments of the parties are, and I'm going to give you, by

24    the time we leave today, total clarity on what everybody --

25    what's expected of those parties.

                                                              7

```
 1              So if -- with respect to the interrogatories that

 2    defense counsel just enumerated, based on the premature

 3    objection, it sounds like we're all on the same page that

 4    you're going to provide the discovery requested, with the

 5    understanding that you'll supplement those discovery

 6    responses as necessary in a reasonably timely fashion as you

 7    get new information.

 8              MR. PELUSO:  That's correct, Your Honor.

 9              THE COURT:  And if there is a specific -- or let

10    me ask defense counsel.

11              Is there a specific document, or is there a

12    specific issue that you think that you're entitled to that's

13    responsive to the discovery that they have that they have

14    not provided?

15              MR. CAFFAS:  First of all, yes.  There is --

16    specifically with respect to some of the information that

17    was raised in their supplemental response to --

18              THE COURT:  Okay.  You're going to have to be

19    specific.

20              MR. CAFFAS:  Right.

21              THE COURT:  Right.  We need -- I can't make

22    general rulings.  Right.  I need specific issues to decide.

23              So what specifically, right now, do you think they

24    have that's responsive to a discovery request that they have

25    not provided that you're seeking an order to compel them to
```

```
 1    do so?

 2              MR. CAFFAS:  Your Honor, that would go to the

 3    basis of the contentions contained in Interrogatories 1, 2

 4    and 3 at the very least.

 5              As it applies to Interrogatory 1, which is listing

 6    the cause for which Ms. Smith is seeking damages for in this

 7    case, these were provided for the first time on

 8    November 11th for a case that's been ongoing since this

 9    summer.

10              THE COURT:  Okay.  We're not worried about that.

11              MR. CAFFAS:  Right.

12              THE COURT:  I want to know if, from what I

13    understand -- let's take Interrogatory 1 as an example.

14              MR. CAFFAS:  Uh-huh.

15              THE COURT:  "Identify all calls to your cellular

16    telephone numbers for which you seek recovery in this

17    lawsuit that you allege were made by or on behalf of

18    SunPath, and state all factual bases for your contention

19    that each call was made by or on behalf of SunPath."

20              MR. CAFFAS:  Uh-huh.

21              THE COURT:  Right?

22              MR. CAFFAS:  Yes.

23              THE COURT:  Plaintiff, you're not -- or plaintiff,

24    as I understand it, is not objecting to the substance of

25    that interrogatory.  They are telling you that they have
```

                                                                    9

1   complied to the best they can, that they have provided all

2   information in their possession with respect to that

3   interrogatory.

4           MR. CAFFAS:  And, Your Honor, our position is that

5   based on the content of this supplemental response, that is

6   not true as of -- as it stands.

7           Specifically, there's calls listed for June 1st

8   and June 8th where they are listing, for the first time,

9   that apparently there were voice mails that are associated

10  with those calls that they have been able to identify and

11  haven't gotten that information from any third party in this

12  case, that we're aware of, that they haven't provided.  That

13  would be a fact that supports their contention.

14          THE COURT:  They are stuck with their answer.

15  Right.  It sounds to me what you're doing is you're kind

16  of -- you know, you're kind of creeping this into a

17  potential summary judgment motion.  Right.

18          If that's their answer; that's their answer.  If

19  their answer is insufficient, if their answer doesn't, you

20  know -- if their answer essentially, as I understand what

21  you're saying, as limited as it may be, maybe that helps

22  your summary judgment argument.

23          MR. CAFFAS:  Uh-huh.

24          THE COURT:  Right.  But they're not going to be

25  able, in a summary judgment motion or at trial or anything

                                                              10

1    else, to now supplement the discovery.

2          If what they've alerted to you is, here is a full

3    representation, this is a full representation of all the

4    facts and information in our possession responsive to

5    Interrogatory Number 1, and you think it's insufficient,

6    well, they're stuck with it; right?  I mean, it sounds like

7    you want them to do further investigation.  And if it's that

8    insufficient, then plaintiff isn't going to be able to carry

9    their burden.

10          MR. CAFFAS:  Well, Your Honor, it leads -- that

11   leads me to my second point with, again, going towards the

12   consent of the supplemental response to Interrogatory 1, is

13   that there's other contentions that aren't supported by any

14   of the facts in any of their responses.

15          THE COURT:  But let's be specific.  Let's stick

16   with Number 1.

17          MR. CAFFAS:  Uh-huh.

18          THE COURT:  What do you contend they have in

19   response to your interrogatory that they have not turned --

20   that's in their possession that they have not turned over to

21   you?

22          MR. CAFFAS:  Well, at the very least, Your Honor,

23   there would be call notes and call records that seem to be

24   able to allow Ms. Smith to --

25          THE COURT:  All right.  Stop right there.

11

1          Do you have any call notes or call records that's

2     responsive to Interrogatory Number 1?

3          MR. PELUSO:  Your Honor, the only call notes are,

4     truthfully, work product.  It would be our own

5     internal-created Excel spreadsheet of what the client told

6     us over the phone about the calls.  So that is

7     attorney-created attorney work product.

8          Our -- my understanding is that my client is able

9     to access call records from AT&T for a price of $5 per

10    month, which we have instructed her, within the last week,

11    to go and do, and when we have that information, we will

12    turn it over.  We are not trying to withhold any information

13    whatsoever from SunPath.  We understand our discovery

14    obligations.

15         Just as a matter of how I practice, I, frankly,

16    hate getting into discovery disputes.

17         THE COURT:  Well, we're here.

18         MR. PELUSO:  I understand -- I understand that

19    they have defenses and they are entitled to information --

20         THE COURT:  Hold on.  Don't shake your head.

21    Everybody's a lawyer.  Everybody's doing the best they can.

22    Right.  There are absolutely -- and I say this because if

23    that happens on the fifth, sixth, seventh -- or we're on the

24    fifth.  But if that happens on the sixth through tenth

25    floor, the person in this seat will explode.

                                                              12

```
 1                  MR. CAFFAS:  Understood, Your Honor.
 2                  THE COURT:  Okay.  Please remain stoic, make your
 3       argument as best you can, advocate for your client as best
 4       you can.  I promise you both, we're going to figure this
 5       out.  Right.
 6                  MR. CAFFAS:  Understood.
 7                  THE COURT:  When it comes to the discovery
 8       process, everybody is ultimately going to get what they're
 9       entitled to.  Right.  It just -- sometimes it happens
10       sooner; sometimes it happens later, but everybody's going to
11       get what they're entitled to.  I promise.
12                  MR. CAFFAS:  Understood.
13                  THE COURT:  Okay.  So let's just work through
14       this.
15                  MR. PELUSO:  So --
16                  THE COURT:  Take it one step at a time.
17                  MR. PELUSO:  So, really, the only thing that -- I
18       can see three sort of categories of documents that we would
19       even have that -- or have access to that have not been
20       turned over.  One is simply an Excel spreadsheet that we, as
21       the attorneys, created to log what our client told us.
22                  THE COURT:  All right.  So let's stop right there.
23                  Do you have any argument as to why that
24       spreadsheet would be otherwise discoverable and why it
25       wouldn't be work-product privilege?
```

1          MR. CAFFAS:  The spreadsheet, Your Honor, no;

2     however, what I would say is Mr. Peluso has referred to

3     information that Ms. Smith was providing over the phone.

4     That would indicate that she's not -- these were calls that

5     occurred in 2020.

6          THE COURT:  Have you deposed Ms. Smith yet?

7          MR. CAFFAS:  No, Your Honor.  We're in -- we've

8     filed this motion so that we won't have to depose her

9     multiple times so that her deposition will be productive and

10    we won't have to --

11         THE COURT:  Well, I've got to tell you, my sense

12    as to what Ms. Smith tells her counsel is privileged.  And

13    counsel is not required, in any way, shape or form, to

14    disclose what Ms. Smith tells to counsel.  That's why you

15    get to depose the plaintiff.  Right.  If counsel takes

16    notes, prepares internal documents, spreadsheets, whatever,

17    based on information provided by their client, that clearly

18    is going to be work product.

19         So, with respect to that first bucket that

20    counsel's referred to, I don't see that that's properly

21    discoverable here.  If you need to, you know -- you know, to

22    the extent that they -- that they have that information,

23    that she has records or documents, that's fine.  Right.  And

24    that's properly discoverable.

25         But if you have to depose her multiple times, then

14

1   we'll deal with it multiple times.  But I don't think that

2   you get her statements to her lawyer in order to prep for

3   your deposition of her.

4          MR. CAFFAS:  Understood, Your Honor.  We're not

5   asking for her statements to her attorney; we're -- we've

6   asked for, for example, her notes, calendars, internal --

7   her records that allowed her to track this in order to go to

8   her attorney to file a claim.  Those have been requested.

9          THE COURT:  That's fine.  And are there such

10  records or documents, and, if not -- if so, have they been

11  provided?

12         MR. PELUSO:  I'm not aware of any such document.

13         THE COURT:  And understand that when they make

14  that representation -- you know, it is a requirement that

15  when lawyers respond to a discovery request, that they make

16  a certification, right, that they've taken all reasonable

17  steps to investigate or to look wherever this information

18  could possibly be, and if that's what happens, that's what

19  happens.  So, if there are no records or documents, they're

20  stuck with that.  And if there's an 11th hour dump, right,

21  then there's going to have to be further inquiry.

22         But, at this point -- and, again, this isn't a new

23  case.  Right.  This case is -- you know, you're three weeks

24  away from shutting down discovery as far as -- maybe less

25  than that, right, sometime early to mid-December.  You know,

                                                              15

1    you're really -- you know, you may not be at the 11th hour,

2    but you're pretty close to it.

3            So if there are -- you know, if there are those

4    records or documents and they seem properly discoverable, if

5    you're representing today on the record, in court, as an

6    officer of the Court that they don't exist, that you've made

7    reasonable efforts to obtain them and they don't exist, then

8    we're going to take that representation and move on, and

9    they're stuck with it.  You know, they're not going to be

10   able to come back, you know, whether for summary judgment,

11   whether for a trial or whatever and say, well, look, we have

12   these other 54 exhibits that corroborate what plaintiff is

13   testifying to.  That's not going to happen.

14           MR. PELUSO:  Understood, Your Honor.  And the only

15   documents that I can even --

16           THE COURT:  So, I'm sorry.  I don't remember what

17   you said before.  You said there were three buckets of

18   documents you were talking about.

19           You've dealt with the first bucket.  What are the

20   other two?

21           MR. PELUSO:  So the second bucket would be her

22   cell phone call records.  Right.  And we all have cell

23   phones.  Our cell phone company sends you a monthly

24   statement evidencing the calls that you've received or that

25   you made.  She doesn't have those statements anymore.

                                                            16

1          What we have learned is that her company will

2    provide her past statements from a couple years ago during

3    the relevant time period of these calls for $5 a month.  We

4    have instructed her to pay that and get those statements,

5    and when we receive them for the relevant time period, we

6    will turn them over.

7          THE COURT:  Are you aware of what her phone

8    company is, what phone company she uses?

9          MR. CAFFAS:  I believe it's AT&T.

10         MR. PELUSO:  Right.

11         THE COURT:  Okay.  You could also subpoena AT&T

12   yourself.  I mean --

13         MR. CAFFAS:  Your Honor, the reason that that has

14   not been done is because the representation has been that

15   Ms. Smith has access to those, and we're learning that now,

16   as of five days ago, she's now endeavoring to provide them.

17   But that is one of the factual -- that's one of the buckets

18   of factual evidence that we need to support the contentions

19   that are listed in Interrogatory 1.

20         MR. PELUSO:  The point is, Your Honor, I do not

21   dispute that those cell phone statements would be --

22         THE COURT:  Wait.  They only have -- look, they

23   have to turn over what they have.  Right.  They -- you know,

24   if they don't have -- you know, I don't actually know that

25   they're legally required to go out and affirmatively seek

                                                          17

1   additional information that's not currently in the custody,

2   control or possession.  Right.  And that's why it's

3   perfectly appropriate for either party to subpoena third

4   parties to get information.  Right.  I think what will be

5   required of them is to disclose who the service provider was

6   during the relevant time period, and that way you can go out

7   and issue a subpoena.  Right.

8          If they made a representation that they have it or

9   that they will get it, I appreciate that.  I think that's

10  a -- that's a sign that they're -- that, clearly, it's

11  relevant, clearly it's material to the issues in dispute,

12  and, just as a matter of professionalism, they're trying to

13  go out and get this done in the most efficient way possible.

14         If it turns out, at the end of the day, you know,

15  what I will -- well, on that point, I guess what I would ask

16  the parties to do is, you know, for plaintiff to continue to

17  push that as quickly as they can, as efficiently as they

18  can.

19         If they cannot do so, I would say -- I understand

20  next week is Thanksgiving, but I'll give you guys until the

21  following Wednesday, the Wednesday after Thanksgiving, to

22  sort of provide what we need to provide and, you know,

23  comply with the Court's order today.  Then if you're not

24  satisfied with that information, then -- they're either

25  unable or unwilling to do it, then you'll have time to issue

18

```
 1    a subpoena to AT&T yourself.  And I understand the backdrop
 2    to that, and we'll be a little forgiving in terms of timing
 3    if AT&T is not -- you know, doesn't respond within the time
 4    period set by the Court; okay?
 5              MR. PELUSO:  Understood.
 6              THE COURT:  So, by the end of the day, if the
 7    record still exists, the defendant will get them.  Right.
 8    There's no doubt about that.  And -- you know, and I
 9    appreciate plaintiff's efforts to -- you know, to
10    affirmatively go out and get them and provide them.  It's
11    the right thing to do.  It keeps this case moving forward.
12    But, if you can't, then you'll be able to get them directly
13    from the third party service provider; okay?
14              MR. PELUSO:  And then the third, I guess, category
15    of documents that Ms. Smith does have and that we do not
16    think are discoverable are the settlement agreements from
17    completely unrelated cases that she may have had with other
18    defendants under the Telephone Consumer Protection Act.
19              THE COURT:  That's -- I think that's an
20    interesting question.  Let's talk about that.
21              Before we move on to that, is there anything else
22    you want to say about the phone records?
23              MR. CAFFAS:  The Contention Interrogatories 1, 2
24    and 3 in general, yes.  I don't think we're -- we've
25    completed the discussion as to those, Your Honor.
```

                                                            19

1          Specifically, in the supplemental response to

2   Interrogatory 1, there's also contentions for each and every

3   one of the calls that plaintiff has identified that, upon

4   information and belief, the call was made using what's

5   called -- a company called Five9 Dialing System, and there's

6   no factual support listed for that contention.

7          To the contrary, Your Honor, we've attached the

8   response that we've received from plaintiff for their

9   subpoenas to Verizon and AT&T which indicate to the

10  contrary.  The majority of the caller ID numbers that

11  they've listed are not associated with Five9.  Several --

12          THE COURT:  I'm sorry.  Where did that information

13  come up?  From your subpoena or provided by the plaintiff?

14          MR. CAFFAS:  Plaintiff had provided those in

15  response to their subpoenas after we had requested them as

16  part of the meet-and-confer process.

17          So four of the numbers that plaintiff lists as

18  the -- as calls that she received in her supplemental

19  response to Interrogatory 1 appear to be associated with, I

20  believe it's called First National Bank or First Capital

21  Bank, I can't recall, rather than Five9, which was

22  identified in response to another subpoena.  And another of

23  the numbers was associated with an individual in Florida.

24          THE COURT:  I'm not sure I'm totally following the

25  mechanics of this.  But I think the larger picture is this,

 1    I think all of what you've identified as these contention

 2    interrogatories are appropriate.  And I think that

 3    plaintiff -- unless you can give me a reason, not sort of a

 4    boilerplate objection, but a specific reason as to why I

 5    shouldn't grant the defendant's motion to compel with

 6    respect to each of those interrogatories, I'm happy to hear.

 7            But, what I'm understanding is, plaintiff is

 8    telling the Court and telling you that they have complied

 9    with all of those interrogatories, that they have -- that

10    they've provided you what statements, what records they

11    currently have in their possession based on their efforts to

12    search their client's files, gather information that's in

13    their custody, control, possession, all of that.  And what

14    I'm hearing from you, Counsel, and I may be wrong, is you

15    just either think there's more, or you want more specific

16    responses.  You're not happy with their responses.

17            If you think that there is specific documents that

18    they have that they're not turning over, then I need you to

19    be specific as to what documents you think they have that

20    they're withholding from the discovery process, and why.

21            If you just think their answers are not specific

22    enough, you know, there's a part of me that just says

23    they're stuck with their -- they're the plaintiff, they have

24    the burden.  If they -- you know, if they give you these

25    generalized, non-specific answers, right, they're not going

                                                              21

```
 1    to able to carry their burden.  They're not going to able

 2    to -- you know, they're not going to be able to survive a

 3    summary judgment motion.  Right.  And so --

 4             MR. CAFFAS:  My question -- I apologize if I

 5    hadn't made that -- explained that properly in the first

 6    place, Your Honor.

 7             But if, for each and every one of plaintiff's --

 8    the calls that she identifies and contends are associated

 9    with this defendant are -- and the basis for that

10    contention, if they say, for example, for each and every one

11    of the calls, they make the statement "the purpose of this

12    call was to solicit a SunPath product," or something along

13    the lines of those.  I would posit to the Court that that is

14    a contention that they need to list the facts that support

15    that contention.

16             THE COURT:  I agree.  I totally agree.  And if

17    they failed to do it, then they're not going to be able to

18    present evidence at trial about why they contend that this

19    call was intended to elicit a SunPath product.

20             MR. CAFFAS:  Uh-huh.

21             THE COURT:  It's that easy.

22             You know, I'm not saying your interrogatories are

23    out of bounds.  I don't think they are.  And I'm not saying

24    that their responses are sufficient.  But, you know, I

25    can't -- I can't force them to provide information that
```

```
 1    is -- you know, that, at the end of the day, it's just going
 2    to mean this case is -- you know, the plaintiff loses.
 3          If they don't provide you specific facts as to why
 4    they think these calls are related -- and, please, tell me
 5    if you think I'm seeing this wrong.  But my view is that if
 6    you've asked that in that interrogatory, I've ruled that
 7    it's an appropriate interrogatory and that they have to
 8    respond, and lead counsel is saying, we're not objecting to
 9    the interrogatory on any substantive basis, and they fail in
10    that answer specifically, and they fail to explain why they
11    think that call X, Y, Z were intended to elicit a SunPath
12    product, then they're not going to be able to present any
13    evidence of that at trial.  They're not going to be able to
14    present any evidence in support of their position on summary
15    judgment.
16          So, I mean, I'm -- you know, if counsel is
17    saying -- you know, essentially what they're saying is we
18    don't have anything.  If they don't have anything, they
19    don't have anything.  If there is a reason why they think
20    that -- that these calls were intended to elicit a SunPath
21    product and they failed to disclose that, if I was the
22    defense, sometimes I would just keep my powder dry and just
23    say okay.
24          I mean, plaintiff's counsel, am I missing
25    something?
```

1          MR. PELUSO:  I don't think so, Your Honor.  I

2     mean, ultimately that's correct.  It's our burden to show

3     the various elements of our claim.

4          THE COURT:  And you came out -- and you came out

5     with your discovery responses.

6          MR. PELUSO:  Correct.

7          THE COURT:  And if you don't have anything to

8     corroborate it, to support it, then I suppose the plaintiff

9     will get up there and say, well, the person on the other end

10    of the phone said they were selling me a SunPath

11    fill-in-the-blank.  And you depose the plaintiff and the

12    plaintiff says that, then you know at trial, you know, they

13    especially are limited to carrying their burden before the

14    jury, before the Court, by a preponderance, based solely on

15    plaintiff's uncorroborated statement.  If that's all that

16    they've given you in discovery, that's all they're going to

17    have at trial.

18         MR. PELUSO:  And the only other thing I would add,

19    Your Honor, is that, you know, we're still tracking down

20    information.  There's outstanding subpoenas.  When those

21    subpoenas are responded to and we receive additional

22    documents or information, we will turn them over.

23         Any questions that SunPath may have for Ms. Smith,

24    they can ask her at her deposition.  There's just not

25    information or documents currently in our possession other

                                                              24

```
 1    than those sort of three buckets that I've mentioned that
 2    have not been turned over.  So --
 3              THE COURT:  So what documents do you think they
 4    have that they're not turning over?  I understand you're
 5    unhappy with the specificity of their response.  But, you
 6    know, what documents, what's responsive to the interrogatory
 7    that you think they have that they're not turning over --
 8              MR. CAFFAS:  Your Honor, it's --
 9              THE COURT:  -- or disclosing?
10              MR. CAFFAS:  I will just reiterate that it's clear
11    that the information that's been provided about the calls
12    that are detailed from 2020 that were specified for the
13    first time last week, that that information did not come
14    from Ms. Smith's memory.  And there are clearly documents
15    and information that are in her possession, even if she
16    clearly has not accessed her specific phone records yet that
17    allowed her to list minute-by-minute --
18              THE COURT:  I just --
19              MR. CAFFAS:  -- call details.
20              THE COURT:  -- think you need to depose her,
21    Counsel.  Right.  I mean, you're asking me to speculate
22    about what she has or doesn't have.  Right.  You're asking
23    counsel to disclose, you know, what are essentially
24    privileged communications with her lawyer.
25              The way to get through this is to depose the
```

25

1    plaintiff.  And if it turns out that, you know, that you

2    need to depose plaintiff multiple times because information

3    keeps coming back in, then, you know, we'll look at that

4    when it comes.  But I'm just not sure, at this point, what

5    you're asking the Court to do.

6         MR. CAFFAS:  With regards to the information being

7    withheld regarding the call records, that's our position.

8    We were trying to avoid having to go back to the well again

9    and again potentially if things were resolved at the

10   deposition and have that upfront to be able to question her

11   about at deposition.

12        THE COURT:  Let me ask you this, Counsel.  Do you

13   disagree that any call records that would be -- that are

14   relevant to this time period that -- or that are within this

15   time period that are in your client's possession are not

16   properly discoverable?

17        MR. PELUSO:  No.  I agree that they are entitled

18   to those documents.  The only thing I would add, as I said

19   earlier, is she no longer has those statements.  Right.  Not

20   everyone saves cell phone bills from two years ago.  But she

21   has access, in the sense that AT&T can reprint them for her,

22   which we've instructed her to do, and then we'll turn them

23   over.

24        THE COURT:  So what I'll do is, we will -- if this

25   issue isn't resolved by -- either your client doesn't get

26

```
1    these bills from AT&T or has some explanation as to why she
2    won't now or can't now, if this issue isn't resolved by -- I
3    mean, I hate to put any pressure on folks the week of
4    Thanksgiving.  But if this issue isn't resolved by, say,
5    Wednesday, the 30th, so the Wednesday after Thanksgiving,
6    then I would ask the parties to contact my chambers, and we
7    will set this for a hearing on Friday, December 2nd.
8             MR. CAFFAS:  And just to clarify, Your Honor, I
9    just want to make sure that we're not just talking about the
10   AT&T records that she was supposed to be trying to get her
11   hands on as of now.  I'm referring to -- there would clearly
12   be -- to take a step back, if I were the plaintiff in this
13   case, when Ms. Smith came --
14            THE COURT:  Well, I'll tell you what we're going
15   to do, though.  So if these issues are -- I think -- it
16   sounds like these issues really probably are not totally
17   ripe for me to rule on right now.  What you have is, you
18   have plaintiff saying we're trying to get our hands on this
19   information, we're working on this information, you haven't
20   even deposed the plaintiff yet to determine -- and you
21   have -- do you have that scheduled?
22            MR. CAFFAS:  Well, our plan was to set it for the
23   2nd based on the outcome of this hearing and what will be
24   provided by that time.
25            THE COURT:  Well -- all right.  Well, I'm going to
```

27

 1   order that everything that I order disclosed today be

 2   provided by -- I was planning on doing it the Wednesday

 3   after Thanksgiving so people weren't feeling like they had

 4   to hustle around the holidays.

 5          And -- and is the 2nd a date that you all have

 6   agreed to for a deposition of the plaintiff?

 7          MR. CAFFAS:  It had been proposed by plaintiff.

 8   We were --

 9          THE COURT:  Okay.

10          MR. CAFFAS:  -- waiting for the outcome of this

11   hearing.

12          THE COURT:  Well, let's do this.  To the extent

13   that there are any open issues, right -- anyway, typically

14   in a discovery dispute, right, there's a discovery about

15   what needs to be provided.  There doesn't seem to be a big

16   dispute here.  Right.  There's no dispute that if these call

17   records exist, they're entitled to them.  The question

18   really is, how do you get them.  When do you get them.  Who

19   do you get them from.

20          If plaintiff is saying that they're making a

21   good-faith effort to get this information to you, right,

22   which, honestly, I'm not sure that they're required to do

23   legally, right, you could have subpoenaed this information

24   from AT&T at any point, but if you represent you didn't

25   because they told you they had this information or were

                                                              28

1    going to provide this information, I get it, right, we'll

2    get there.

3            What we'll do is, we'll have a status conference

4    on -- everything will be -- have to be disclosed that you

5    have.  And I'm asking you to make every effort to get this

6    information -- and I know it's a short turnaround -- by

7    Tuesday.  That will be the Tuesday after Thanksgiving,

8    November 29.

9            MR. CAFFAS:  The 29th maybe.

10           THE COURT:  Yeah.  If we need to, we'll have a

11   hearing on Thursday, the 30th.  And that will give you at

12   least -- so everything should be turned over by Tuesday.  It

13   will give you a few days to prepare before your deposition

14   on Friday.  If we need to have a hearing, everybody can come

15   in, and we'll have a hearing on Thursday to resolve as much

16   as we can.  If you need to have multiple depositions of the

17   plaintiff, then, you know -- because information keeps

18   coming in at this stage, you know, maybe you can have

19   multiple shots at the plaintiff.

20           But, guys, you're at the 11th hour.  When's your

21   final pretrial?

22           MR. CAFFAS:  I don't know offhand, Your Honor.  I

23   know that discovery closes on the 9th, but that's the only

24   thing I --

25           THE COURT:  All right.  So your final pretrial

                                                          29

```
 1   would then be sometime later that week or the following

 2   week.

 3           So when discovery closes on the 9th, discovery

 4   closes on the 9th.  Right.  I mean, that's -- that's pretty

 5   much going to be a hard deadline.  So -- all right.  But,

 6   you know, right now if you're asking me -- the question

 7   isn't, are these records discoverable.  Right.  The question

 8   is, where do you get them from and when.

 9           MR. CAFFAS:  And has plaintiff provided all the

10   factual evidence that supported her contentions.

11           THE COURT:  You know, by answering their own

12   interrogatory, that's what they're representing.  You know,

13   again, I don't know how we can keep going around in a

14   circle.  Right.  If -- you know, if they give you an answer,

15   they are stuck with their answer.  You know, it sounds like

16   you want more from them, and I'm not sure, if I were

17   defending this case, why I would want too much more from

18   them.  If they're giving you a little bit, that means they

19   only have a little bit to support their case.  They're not

20   going to be able to ambush you, if that's what you're

21   worried about.  They are not going to be able to ambush you.

22   They're not going to be able to say -- you know, discovery

23   ends on the 9th.  They're not going to be able to make a

24   discovery production -- you know, if you're -- your trial

25   will probably be set in March.  They're not going to be able
```

1   to give you a discovery production in January or February

2   and say, oh, well, now we are -- you know, we're

3   supplementing what we should have given you two months ago.

4   No way that's happening.

5            MR. CAFFAS:  Understood.

6            THE COURT:  I mean, I don't want to speak for the

7   district judge, but I can tell you, that's just generally

8   not how the Court rules.

9            So, you know, it's up to the plaintiff to either

10  object and say we don't want to turn this information over

11  because we're not required to, or under the rules we

12  shouldn't, or here's why we don't want to turn it over.

13  Right.  In which case we wrestle with those issues.  But if

14  they answer, they're stuck with it.

15           You're frustrated because you don't think their

16  answer is specific enough.  If it's not that specific, then

17  their case in chief is not going to be very specific.  If

18  they're relying on the testimony of their -- of the

19  plaintiff, then they're relying on the testimony of the

20  plaintiff.  If they're providing you no other bases, then

21  they have no other bases to argue at trial or in their

22  summary judgment motions.  I don't know what else to tell

23  you.

24           But you want me to order them to be more specific.

25  I can't do that.  I can order them to comply with the

31

1    interrogatory, or I can order them to answer the

2    interrogatory, I can order them to fully answer the

3    interrogatory, I can order them to represent that the answer

4    is based on a professional, reasonable, careful review of

5    all the records and data in the custody or control of their

6    client.  But I can't write the answer for them.  And that's

7    why I'm just not sure, beyond that, what you want me to do.

8            MR. CAFFAS:  Beyond what we've already discussed

9    as it relates to the response to Interrogatory Number 1, I

10   think I'm satisfied, at this point, with Your Honor's

11   analysis.

12           THE COURT:  You know, to the extent that there is

13   a dispute -- and, you know, the order today is going to

14   read:  "For the reasons stated on the record, defendant's

15   motion to compel is granted."  Because the only real

16   objection before the Court, which it seems like it was

17   almost -- was essentially withdrawn, was the objection that

18   it was premature.  Right.

19           So, you have -- you will have an order of the

20   Court that your interrogatories are proper and that

21   plaintiff has to comply with the interrogatories.

22           MR. CAFFAS:  Your Honor, in that vein, might I ask

23   that it would be appropriate that the objections that these

24   requests are premature either be withdrawn or stricken on

25   that basis then?

                                                            32

```
 1              THE COURT:  Well, it's going to be denied.  It
 2    doesn't matter; right?  I mean the order is going to say
 3    that your motion to compel is granted.
 4              MR. CAFFAS:  Uh-huh.
 5              THE COURT:  That's how we do it.
 6              MR. CAFFAS:  Understood.
 7              THE COURT:  For reasons stated on the record.
 8              MR. CAFFAS:  Understood, Your Honor.
 9              And then to move on to the next two contention
10    interrogatories.  The issue that SunPath takes with
11    plaintiff's current supplemental responses to
12    Interrogatories 1 and 2 are that these are asking for
13    plaintiff to provide the basis for her contention that calls
14    are either -- sorry, SunPath is either directly or
15    vicariously liable for any of the calls at issue, which
16    would ideally provide SunPath to address whether each call
17    they're alleging a theory that SunPath is directly liable,
18    it made these always itself; or a third party, supposedly at
19    SunPath's behest, made those calls.
20              As it stands right now, there are no
21    differentiation between which calls plaintiff alleges were
22    directly or vicariously made by SunPath or any other party.
23    There's not a single call specified in the answer to the
24    supplemental response to Interrogatory 2 or 3.  In fact,
25    part of the supplemental response to Interrogatory 3 simply
```

33

1    references the response to supplemental Interrogatory 2.

2             THE COURT:  So it's an appropriate interrogatory,

3    it's an appropriate request, right, for you to identify

4    which calls you think SunPath is directly responsible for

5    versus which calls your client received that you think

6    SunPath is vicariously responsible for.  If you're able to

7    distinguish them -- if you're not able to distinguish them,

8    that's a proof issue, right, and you're going to have to --

9    you know, you're -- it sounds like if you're not able to do

10   that in the discovery process, you're going to have proof

11   challenges at trial, if you get to trial.

12             So, you know, it's an appropriate interrogatory.

13   If you have that information, unless you can tell me a

14   reason why you shouldn't provide it, you need to identify

15   it, you need to provide it, you need to state it with

16   specificity, and you're stuck with your answer.

17             MR. PELUSO:  Understood, Your Honor.  There is no

18   dispute that SunPath did not make any of the calls directly.

19   So that's been true since the beginning of the case.  I

20   don't think we've ever alleged that your client directly

21   made the calls, only that third parties did on its behalf.

22             So, to the extent Your Honor would like us to, I

23   don't know, supplement the interrogatory to specifically

24   state that, we can.  But there's no argument, from our end,

25   that SunPath affirmatively made the calls itself.

34

1          MR. CAFFAS:  Did not.

2          MR. PELUSO:  Did not, correct.  Yeah.  We're not

3    contending that.

4          THE COURT:  Do you have any evidence or anything

5    in your files that suggest that there is a third party who

6    was acting at SunPath's direction that made the calls?  That

7    also seems to be within the boundaries of the interrogatory.

8          MR. PELUSO:  Correct.

9          THE COURT:  And if you have it, provide it.  If

10   you don't, don't.  I mean, that's -- you know, again, I

11   think we're still circling the same wagons here.  Right.

12   And plaintiff is not objecting to the scope, the

13   appropriateness of your interrogatories.  They're just

14   telling you, as I understand it, this is all we've got.

15         MR. PELUSO:  That's correct, Your Honor.  And,

16   again, the only -- there's those three sort of buckets of

17   information that we have that -- or have access to that have

18   not been turned over for various reasons.  You know, we

19   discussed the first two, which were that -- our own internal

20   Excel spreadsheet, which is work product; the statements

21   from AT&T, which we're having our client work to get, and

22   we'll turn them over when we receive them; and then the

23   settlement agreements from completely unrelated matters.

24   Other than those three buckets --

25         THE COURT:  We'll get to that in a second.

                                                              35

1          MR. PELUSO:  Other than those three buckets, I

2     don't have any additional information to provide the

3     defendant.  And I feel like we're just kind of stuck in the

4     mud here sort of having the same discussion and argument

5     when I don't have anything else to turn over.

6          THE COURT:  I got you.  And we also don't have a

7     lot of specifics from the defendant as to what they -- you

8     think they have that they're not turning over.  But that --

9     aside from that -- right.  I still think we're back to the

10    same spot that I can tell by your look, you and I just

11    really aren't connecting on, which is, you know, you can't

12    make them give you information they don't have.  You can't

13    make them be specific if they don't want to be specific.

14    They are stuck with their answers.

15          Now, maybe that's good enough.  Maybe they can

16    convince a jury based solely on the testimony of their

17    plaintiff.  That's a proof issue.  Right.  But, you know, if

18    you think that there is something -- and it doesn't sound

19    like there's anything in there -- well, let me back up.

20          You know, if they're representing this is all

21    we've got, and you don't have any reason to suggest that

22    that's not all they have -- and I can't order them to

23    provide things that they don't have.  I can order them to

24    be -- to respond to your interrogatories, to respond fully

25    to your interrogatories.  They're appropriate.  But you're

                                                              36

1   stuck with the answer.  They're stuck with the answer.

2          MR. CAFFAS:  Yes.  I believe I understand that,

3   Your Honor.  I just -- specifically with regards to the

4   testimony that we've just -- sorry, not the testimony, but

5   the arguments that we've just raised with respect to these

6   two contention interrogatories, Number 2 and Number 3, there

7   seems to be a concession that plaintiff's not withholding

8   anything, isn't waiting on anything, knows the answer to

9   specifically supplemental response Number 2, which the

10  supplemental answer starts by stating:  "The contention

11  interrogatory is grossly premature," and that they're

12  supposedly --

13         THE COURT:  We've gotten past that.  The answer is

14  on the record, and I would ask counsel to supplement it in

15  writing, you know, to the defense that the plaintiff does

16  not take a position that SunPath was the -- was the -- you

17  know, was the entity making these calls, or rather there was

18  a third party doing it on behalf of SunPath, and, therefore,

19  SunPath is vicariously liable for the actions of others

20  acting on their behalf.

21         Is that the position of the plaintiff?

22         MR. PELUSO:  Correct, Your Honor.  There's --

23         THE COURT:  It's on the record.  We are being

24  recorded.  But I would ask -- I would ask plaintiff to

25  supplement the interrogatory response to clarify that, and

                                                          37

1    then that's what there is.  And to the extent that you've

2    asked, identify other third parties that you know about,

3    identify other third parties who were acting vicariously on

4    behalf of SunPath or any information you have or anything

5    along those lines.  If the answer is we don't know, then the

6    answer is they don't know.

7                MR. CAFFAS:  Understood, Your Honor.  And I

8    apologize if I am beating a dead horse here, but we would

9    expect there --

10               THE COURT:  I think we crossed that bridge a while

11   ago, but that's okay.

12               MR. CAFFAS:  We would expect their response to

13   list the calls associated with their theories of liability.

14               THE COURT:  And I think that's fine.  I think

15   that's fair.  And I didn't think that's in dispute.

16               You have to list the specific calls, and I thought

17   that's what was already agreed to.  I think that was in --

18   you know, if you've alleged your -- if the plaintiff has

19   alleged that they received 50 calls between X date and Y

20   date from a third party acting on behalf of SunPath, then

21   they need to identify for SunPath which 50 calls they're

22   alleging.  That seems entirely reasonable.  I didn't think

23   that was necessarily in dispute.

24               MR. PELUSO:  I don't think it is, Your Honor.  I

25   think we did that.  To the extent you think that we didn't,

                                                              38

1   let me know, and we'll try to correct that problem.

2          MR. CAFFAS:  Understood.  All right.  I think

3   we've discussed it, but the discrepancy was what wasn't

4   specified in the responses to 2 and 3.

5          THE COURT:  I got you.  I got you.  Sometimes this

6   process just helps clarify things for everybody.

7          MR. CAFFAS:  All right.  Your Honor, the next --

8          THE COURT:  I do have a conference call at 11 that

9   what I would ask -- and, of course, our clock has said 10:25

10  for about the last six months.  So, if you guys don't

11  mind -- it's five of.  If you don't mind -- this won't take

12  very long -- can I just take a brief recess.  Let me handle

13  this conference call, and let us reconvene at about 11:15,

14  if that works.

15         MR. CAFFAS:  It works for us, Your Honor.

16         MR. PELUSO:  Works for me.

17         THE COURT:  Okay.  Thank you, all.

18    (A brief recess was taken from 10:57 a.m. to 11:21 a.m.)

19         THE COURT:  All right.  So does that leave us with

20  the settlement issue, or are there other issues as well?

21         MR. CAFFAS:  There's also the issue of -- there's

22  also the issues as to the response to Interrogatory 18 and

23  the supplemental initial disclosures in the calculation of

24  damages.

25         THE COURT:  Okay.  Pick -- which one of those

                                                          39

1    issues do you want to go through first?

2              MR. CAFFAS:  So they're corresponding issues.  The

3    initial disclosures, as Your Honor is aware, the plaintiff

4    is required to provide a calculation of the damages for

5    their claims.  The -- Interrogatory Number 18 essentially

6    requests similar details.  So the issue is, what are the

7    calculation of the damages for their claims.  And plaintiff,

8    even in supplemental responses, has just pointed to the

9    statutory damage provision and provided lump sums, which is

10   deficient under the definition -- under -- which is required

11   under Rule 26 regarding the damage claim calculations.

12             THE COURT:  Okay.

13             MR. PELUSO:  Your Honor, I'm not sure what else we

14   could supplement to add other than what we already have.

15             THE COURT:  Well, what would --

16             MR. PELUSO:  The statute provided --

17             THE COURT:  I'm sorry.  Go ahead.

18             MR. PELUSO:  Sorry, Your Honor.

19             These statutes provides statutory damages in the

20   amount of $500 under the TCPA, or under the Virginia state

21   court claim, it's $500, which reaches up to 5,000 after a

22   certain number of calls.  I think it's two or three calls,

23   it all of a sudden jumps to 5,000.

24             So we've kind of done the math based on the calls

25   that we allege are violative.  I think it's 54, give or

                                                              40

take.  So if you just kind of do the math, the number of

calls times the statutory damages available, that's what

we've provided.  I'm not really sure what else the defendant

would like us to do.

THE COURT:  If that's all they're seeking, why is

it -- you know, I'm not saying -- I'm in the ruling on

whether or not, you know, they're entitled to it or not

entitled to it, but if the statute says it's 500 -- if they

said we're alleging 54 violative calls in our claim, and the

statute provides damages for $500 per call up until X and

$5,000 per -- whatever the statute specifically requires, do

you want them to just basically lay that out and do the math

and say here are the 54 calls, here are the first three

calls that we think we're entitled to $500 in damages for,

here are the rest of the damages where we think we're

entitled to $5,000 per call for?

MR. CAFFAS:  Yes, Your Honor.  It's not what we're

asking for; it's what the rule requires.

THE COURT:  That's fine.  I would have them do

that.  You know, lay out which -- just specifically say

which -- you know, again, sort of ties all together.  But I

do think, for the claim to move forward, you do have to

identify specific calls.  And if there are damages

associated with each call, I think -- I think -- I

understand what you're saying, which is, hey, it's pretty

41

 1  clear -- I probably could just read the statute, but I think

 2  it is appropriate to just specifically lay it out.

 3           MR. PELUSO:  Just so I understand, Your Honor, so

 4  instead of just saying, you know, 54 calls, these are the

 5  statutory damages, therefore the total damages sought are X,

 6  Your Honor would like us to go through -- list each call and

 7  say 500, 500, 5,000, or give just kind of a lump sum?  I

 8  just want to make sure I understand what Your Honor is

 9  ordering me to do so I can make sure I comply.

10           THE COURT:  Why is -- why couldn't they just say

11  we have 54 calls, here are the 54 calls under the statute,

12  you know, we're alleging damages for this amount?  Why is

13  that not sufficient?

14           MR. CAFFAS:  Well, we addressed this partially in

15  our -- that's just one example included in our reply brief,

16  Your Honor.  They might be saying that there's 54 calls, but

17  there's separate types of violations in each of the damage

18  provisions for the three separate counts they're suing

19  under.

20           For example, one of the counts is under the

21  Virginia Telephone Privacy Protection Act, which only

22  applies to calls --

23           THE COURT:  Good point.

24           MR. CAFFAS:  -- that were answered and the party

25  answered and the party didn't identify themselves by first

                                                          42

```
 1   and last name.  But there's a large number of calls that
 2   plaintiff describes as unanswered.  So the calculation -- I
 3   mean, to kind of sum up the issue, they said -- they're
 4   asking if they need to show their work.  They said they've
 5   done the work; they need to show it.
 6              THE COURT:  Fair point.  I think that's a fair
 7   point, yes.
 8              For each call that you've alleged is violative to
 9   the statute, all the material information that's relevant to
10   the damage calculation, whether -- you know, that has to
11   be -- that has to be set out with specificity.  Yes.  I
12   think that's correct.
13              MR. PELUSO:  Okay.  Understood.
14              MR. CAFFAS:  And I believe that's the only -- that
15   encompasses the issues under both Interrogatory 18,
16   supplemental response, and the initial disclosure.
17              THE COURT:  Okay.  Okay.
18              MR. CAFFAS:  So then the remaining issue, Your
19   Honor, would be regarding the settlement agreements that
20   Ms. Smith has -- is withholding.
21              THE COURT:  So you're seeking settlement
22   agreements between Ms. Smith and previous defendants who she
23   has either sued or anticipated suing in which there was a
24   settlement agreement between Plaintiff Smith and those
25   other -- and those other entities; correct?
```

```
1              MR. CAFFAS:  If you'll give me a minute, Your

2    Honor, I believe there's three separate discovery requests

3    that are a little bit more broad than just settlement

4    agreements.  It would be communications involving formal and

5    informal disputes in which she was the plaintiff.  But that

6    is a broad summary of the issue that's presented with these

7    three supplemental responses we're seeking, yes.

8              Yeah.  Specifically we're referring to

9    Interrogatory 21 and Document Request 11 and 14.

10             THE COURT:  How's that relevant to this cause of

11   action?

12             MR. CAFFAS:  Your Honor, as a threshold manner, I

13   would like to first point to the basis of the objections

14   that are raised in response to these.

15             There's no question that there is information

16   that's being withheld, and the basis of withholding them is

17   they're supposedly -- the requests are unduly burdensome and

18   unduly broad without any kind of specificity as to why that

19   is the case.  And there is no dispute that there are

20   settlement agreements that are being withheld.

21             So I would say there's a threshold matter, that I

22   would request that that objection be stricken, and if

23   there's any determination, it would just be the relevance,

24   which is just if there is probative value to --

25             THE COURT:  Yeah.  I don't think it's overly
```

44

```
 1    broad.  I don't think it's unduly burdensome, but why --
 2              MR. PELUSO:  I agree.  That objection is the
 3    boilerplate that we shouldn't have made, but definitely stay
 4    on the relevance.
 5              THE COURT:  I understand.
 6              But where are we on the 26(b)(1) issues?  Right.
 7    Where are we on -- why is that relevant to this cause of
 8    action?
 9              MR. CAFFAS:  So there's several reasons that we've
10    submitted in both of our briefs.  But the main issue is that
11    we're -- based on the uncertainty as to the parties that are
12    involved here.  For example, the parties that are alleged to
13    have made the call or calls at issue here are third parties
14    that aren't captive to SunPath.  They could be marketing the
15    product of SunPath competitors, they could be marketing
16    products of people that sell insurance products or home
17    security systems or nutritional products.  They're not
18    required to be --
19              THE COURT:  I got you.
20              MR. CAFFAS:  Yeah.
21              -- captives of that party.  So based on the lack
22    of specificity as to who those parties might be --
23              THE COURT:  I have you there.
24              MR. CAFFAS:  Yeah.
25              THE COURT:  There's no question they need to tell
```

45

1  you specifically which parties they have -- they have

2  engaged with.  Let me -- I'll hear from Counsel, but I

3  think -- what else do you need from the settlement

4  agreements?

5          MR. CAFFAS:  There would be the possibility that

6  Ms. Smith has signed a release with this party releasing

7  that party and any of their affiliates, parent companies,

8  subsidiaries that could apply to SunPath or potentially

9  another party that made the calls in this issue, even if she

10  didn't sue for a specific call that she's suing SunPath for

11  here.  That would certainly be relevant to our claims and

12  defenses in this case.

13          THE COURT:  I agree.

14          MR. CAFFAS:  Yeah.

15          THE COURT:  What else do you need from the

16  settlement agreements?

17          MR. CAFFAS:  Well, in addition to the settlement

18  agreements, it would be anything memorializing the formal or

19  informal demands.

20          THE COURT:  Why?

21          MR. CAFFAS:  For example -- because -- similar

22  reasons, Your Honor.  If Ms. Smith says she received a call

23  from somebody and reaches out and makes a demand to that

24  person, that would be memorializing what could have created

25  an established business, if, on that call, she made an

46

1    inquiry about that product and then created an established

2    business relationship with that caller, that then -- and

3    then that caller potentially is responsible for some of the

4    calls at issue here, that would be relevant information that

5    goes to --

6            THE COURT:  You mean that individual person or

7    that there would be -- or the entity?

8            MR. CAFFAS:  The entity that they are calling --

9            THE COURT:  Wouldn't that be covered by the -- so

10   if I enter an order, hypothetically, that just says:

11   "Plaintiff is required to disclose to defendant all

12   settlement agreements, formal or informal, in which -- and

13   identify the parties who she has settled with and identify

14   the specific terms of any releases that she has engaged in

15   or that she has executed," right, why is that not enough?

16           MR. CAFFAS:  I think it would also include -- need

17   to include, Your Honor, the dates of the settlements that --

18           THE COURT:  The dates.  The dates of the

19   settlement agreement and the dates the agreements cover.

20           MR. CAFFAS:  Correct.  And I think this would fall

21   under what you're stating, but it would also need to include

22   the claims -- the basis for the claims that those settlement

23   agreements arose from, if that makes sense.  So if it's for

24   calls that occurred during the relevant time period or not,

25   that would be something that would obviously be relevant to

47

```
 1   what we're seeking here.
 2           THE COURT:  Well, that would be covered by the
 3   dates; correct?
 4           MR. CAFFAS:  Yeah.  I didn't want to confuse, for
 5   example, if a settlement agreement was executed on
 6   April 21st, 2022, versus it was for calls that occurred on
 7   April 20th of 2020.
 8           THE COURT:  Well, I think they have to disclose
 9   both.
10           MR. CAFFAS:  Right.
11           THE COURT:  Both the time period in which the
12   settlement agreements covers, the date that the settlement
13   agreements was entered, who the parties to the agreement
14   were, and the scope of the release.  It seems like from -- I
15   think -- I take your point, I think, but I am trying to just
16   kind of narrowly tailor this, because I'm not sure that it
17   should be a complete free-for-all.
18           For example, one of the things you asked for is
19   the specific monetary compensation.
20           MR. CAFFAS:  Well, Your Honor, that --
21           THE COURT:  Why's --
22           MR. CAFFAS:  Sorry.
23           THE COURT:  No.  Go ahead.
24           MR. CAFFAS:  That would go to her potential
25   fitness as a class representative.  In one of the cases we
```

48

```
 1   cited -- I believe it was Roman v. Pierce that was just
 2   decided in the last couple of weeks -- that plaintiff's
 3   fitness and motivations as a class representative and the
 4   monetary amounts they would have received in separate
 5   settlement is relevant to, at the very least, their
 6   credibility before a jury.
 7           THE COURT:  Okay.  Anything else along those lines
 8   from you, Mr. Caffas?  Anything else?
 9           MR. CAFFAS:  No, I don't believe that we have
10   anything else to add, pending anything Mr. Peluso has to say
11   that we would need to respond to.
12           THE COURT:  All right.  Mr. Peluso.
13           MR. PELUSO:  Yes, Your Honor.  I don't really have
14   a lot of objections to most of what Your Honor was just
15   talking with Mr. Caffas about.  You know, as far as
16   providing them with a list of defendants who Ms. Smith has
17   settled with before, the dates of those settlement
18   agreements, the -- I guess the call range that was the
19   subject of those settlements, that all seems reasonable.
20           THE COURT:  And the scope of the releases, who
21   exactly is being released.
22           MR. CAFFAS:  Right.  And the scope of the release.
23   That's all fine.
24           I think the financial part, though, is a bridge
25   too far, and I just -- I really struggle to see what that
```

49

1    has to do with her fitness as a class representative.  It's

2    obviously highly confidential information, and I don't

3    really -- I guess I don't see what that has to do with her

4    willingness in this case to put her name on the complaint,

5    participate in discovery, sit for a deposition, testify at

6    the trial, you know, kind of stand up and be a class

7    representative.

8            What she was paid to settle a prior case, I'm just

9    not really sure what that has to do with her fitness to

10   serve as a class rep here.

11           THE COURT:  It also implicates the interest of the

12   entities with whom Ms. Smith had settled with; right?  I

13   mean, it's --

14           MR. CAFFAS:  If I could respond, Your Honor.

15           I would just generally say that confidentiality is

16   not a basis to be withholding anything.  We cited this in

17   our reply brief.  And if there's a concern about

18   confidentiality, we can enter a protective order, and that

19   won't be shared with anything besides --

20           THE COURT:  So walk me through the relevance of

21   the -- of how you think the specific terms of the settlement

22   agreement impact your suitability as a class representative.

23           MR. CAFFAS:  As I've already stated, Your Honor,

24   at the very least, there is a question of her credibility

25   before a jury based on her motivation for participating in

50

```
 1   this lawsuit as a threshold issue.  We've cited authority in
 2   our briefs that states that courts have found this relevant
 3   before, and it is a relevant determination based on the
 4   balancing test per Rule 26.
 5            THE COURT:  Well, I'll tell you what I'm going to
 6   do.  I'm going to deny that at this point.  If they seek to
 7   certify this as a class, I will -- I'll revisit that
 8   requirement.
 9            But, at this point, there's no motion to certify a
10   class based on what we currently have before the Court.
11   This case is pushing ahead.  It doesn't seem like that is
12   going to be a heavy lift.  If there is an effort to certify
13   a class, we can revisit that issue.
14            But I think, based on the current posture of the
15   case, I will order the plaintiff to provide a list of all
16   parties with whom she has settled, the date of the
17   settlement agreement, the timeline -- or the time period for
18   which the settlement covers, as well as the scope of all
19   releases executed.  And if they make an effort to -- and
20   that is done without prejudice to the defense motion or
21   ability to revisit this issue, if there is an effort to
22   certify a class.
23            MR. CAFFAS:  Understood, Your Honor.
24            MR. PELUSO:  Just one quick request for
25   clarification.  Are we just talking about settlement
```

51

```
 1    agreements related to telemarketing TCPA or any, you know,

 2    related state -- statutes, you know, related to

 3    telemarketing calls; or are we talking about just any

 4    general settlement agreement from, I don't know, she got bit

 5    by a dog, right, something -- unrelated subject matter?

 6              THE COURT:  Well, I -- look, I think that if --

 7    the purpose is to try to identify if there's any overlap.

 8    Right.  Essentially.  If there's any overlap between any

 9    prior settlement agreement and any entity that is either

10    SunPath or associated with SunPath.  And we're talking about

11    a relatively short time frame.  Right.  My understanding is

12    it's just from 2017 until now.  Is that all you've asked

13    for?

14              MR. CAFFAS:  I believe so.  I can double check

15    the --

16              THE COURT:  I think that's what it says in 21.

17              MR. CAFFAS:  21.

18              THE COURT:  So if we're just talking about the

19    last five years, I think to err on the side of caution, I

20    would ask plaintiff to -- or direct plaintiff to provide all

21    settlement agreements that she's entered into.

22              If there is something that is clearly beyond the

23    scope, right, you know, for example, like a medical

24    malpractice issue or something like that, that is -- raises

25    privacy interests and is clearly outside the bounds of this
```

52

```
 1    cause of action, then you can submit something ex parte in
 2    camera to exclude that.  But since we're only talking about
 3    the last five years --
 4              MR. PELUSO:  It's probably not going to be that.
 5              THE COURT:  It's probably not going to be too
 6    much.  But, if there is something, I'd be happy to look at
 7    it.
 8              MR. PELUSO:  Understood, Your Honor.
 9              MR. CAFFAS:  Understood, Your Honor.
10              THE COURT:  All right.
11              MR. CAFFAS:  And, I apologize.  There was one
12    other issue that we had raised that was the -- whether the
13    request for admissions to -- request for admissions 7, 8 and
14    16 should be deemed admitted.  And we believe that, based on
15    the evasiveness and the non-answers provided in both the
16    initial answers and supplemental answers, they should be.
17              MR. PELUSO:  This was 7, 8 and 16?
18              MR. CAFFAS:  7, 8 and 16.
19              And, Your Honor, the issue that we have is that
20    the questions were all posed in the present sense.  We're
21    asking for what knowledge or information Ms. Smith has in
22    her possession, custody or control.  And the non-answer that
23    was received was basically something along the lines that
24    she wasn't able to answer based on what she has.  And, at
25    present, months later, we're still getting an answer that
```

```
1    she doesn't know what she has.  This was timely and

2    appropriate when it was served, and there's no reason why

3    she just can't give a simple admit or deny.

4              THE COURT:  All right.  So let's go through them

5    real quick.  Let's just go through them.

6              So what is request for admission 7?  Can you just

7    read that into the record?  What's 7?

8              MR. CAFFAS:  Your Honor, request for admission 7

9    states that:  "You are in possession of no written or audio

10   evidence that SunPath, or any party allegedly acting on

11   SunPath's behalf, contacted you via your cell phone -- your

12   cell phone -- excuse me -- your cellular telephone number

13   before May 26, 2020."

14             And the initial response was:  "At this time,

15   plaintiff lacks sufficient knowledge and information to

16   either admit or deny this request."

17             And the supplemental response, it's very lengthy.

18   I can read that into the record, Your Honor, as well if

19   you'd like.

20             THE COURT:  I'm reading it.  All right.

21             All right.  Mr. Peluso, anything you want to say

22   on that?

23             MR. PELUSO:  Your Honor, I think our supplemental

24   response, you know, lays it out.  We admit that she's not

25   currently in possession of any audio evidence.  We admit
```

54

```
 1    that she's not presently aware of any written evidence.  But

 2    it sort of clarifies that we're working on accessing the

 3    cell phone bills, and that may provide some additional

 4    information responsive to this request.  And we're not --

 5    we're not trying to hide the ball.  We're, you know, going

 6    through, I don't know, three or four sentences here, trying

 7    to explain exactly what we admit and what we don't know.

 8              I guess the point is, Your Honor, we don't want to

 9    just simply say -- we don't want to deny and then turn

10    around two weeks later and get information from AT&T which

11    we've kind of pivoted to an admit.  So we're trying to

12    explain the sort of chain of logic here as opposed to just

13    denying the request.  We're trying to actually give the

14    defendant some insight into where we are.

15              MR. CAFFAS:  Your Honor, if I might respond.

16              THE COURT:  Sure.

17              MR. CAFFAS:  I think Mr. Peluso has just revealed

18    that the answer has and still remains that this is admitted.

19    If there's some reason that he might need to supplement it,

20    he can do so when that is necessary.  But, based on the

21    bounds of Rule 36, if an answer is evasive when submitted in

22    a timely fashion -- and these were submitted back in

23    September -- it should have been admitted then.  We're here

24    in mid-November, and we're still receiving non-responses.

25    So -- especially considering that the representation seems
```

```
 1    to be that, at present, it is admitted.
 2              MR. PELUSO:  Well, and that's what it says, Your
 3    Honor.  I mean, we're not trying to be evasive.  The
 4    supplemental response says:  "Plaintiff admits she's not
 5    currently in possession of audio evidence."  "Plaintiff
 6    admits she is not presently aware of any written evidence."
 7    So we're not trying to be evasive; we're --
 8              THE COURT:  It does seem like they've admitted the
 9    key issues there.  And if -- and if what changes that is,
10    you know, they get more records from AT&T, if that's all
11    that changes, well, the defendant's on notice of that.
12              But what I read that to be is -- and if you think
13    it's not clear, we can clarify it now, is, as Counsel said,
14    they're admitting that they're not in possession of any
15    written or recorded evidence in that regard.
16              So I'm just not sure what the dispute is.  It
17    sounds like -- it sounds like it is admitted, based on the
18    current -- based on where things stand now, it is admitted.
19    If there is a little bit of an exception, defendant is aware
20    of it.  And, quite frankly, you know -- and, again, this is
21    a little bit off topic here, but -- and I'm not sort of in
22    the habit of suggesting how a party should move forward.
23    But, given the fact that, with respect to the AT&T
24    information, you know, you thought it was in their
25    possession, it's not in their possession, they're trying to
```

56

1    get it from AT&T, it seems to me it would be pursuant for

2    the defendant to issue their own subpoena.  If you wind up

3    getting the same information twice from the defendant, from

4    AT&T, that's fine.  And I appreciate the plaintiff, again,

5    you know, making those efforts.  But, you don't have that

6    much time.  And it is sort of your responsibility to make

7    sure that your client gets the information if you now know

8    that it's in the possession of a third party.

9              But, you know, I've looked at the response, and

10   it's a little bit of a long-winded response, but,

11   essentially, I -- I read request for admission 7 to be

12   admitted.  And, again, if there's a little bit of a caveat

13   there, you know, it's not something that you're going to be

14   ambushed with.  You know, it's going to deal with that AT&T

15   information.

16             Is that correct?

17             MR. PELUSO:  Yes, Your Honor.

18             THE COURT:  So I think I would -- if I were you,

19   sir, I would declare victory and move on to the next one.

20   It seems like it's admitted.

21             MR. CAFFAS:  Understood.

22             And 8 is essentially requesting the same

23   information for a different time period.  So can I assume

24   that the analysis there would be the same?

25             MR. PELUSO:  I think our response, Your Honor, is

                                                              57

```
1    almost identical.

2              MR. CAFFAS:  Yeah.  It's a --

3              THE COURT:  Yeah.  So 7 and 8 are admitted.

4              MR. CAFFAS:  And, with respect to Number 16, Your

5    Honor, which reads that:  "During each of the calls

6    described in paragraphs 23 and 24 of your complaint, the

7    caller did not state that he or she was calling from or on

8    behalf of SunPath."

9              THE COURT:  And what was the supplemental response

10   to 16?

11             MR. CAFFAS:  The -- so I'll read the -- they're

12   relatively short, so I'll read both.

13             The response is:  "At this time, plaintiff lacks

14   sufficient knowledge and information to either admit or deny

15   this request."  And the supplemental response is deny.  "For

16   every call that was answered or that left a voice mail

17   message, the caller did not identify themselves by first and

18   last name.  The complete breakdown of the calls at issue can

19   be found in plaintiff's supplemental response to

20   Interrogatory Number 1."

21             Now, I will just note that this doesn't respond to

22   the request.

23             THE COURT:  It doesn't answer the specific

24   question.  Right.

25             MR. CAFFAS:  And I would, again, ask that, at this
```

58

1   stage, it was not responsive whenever the initial response

2   was submitted.  And, paired with Rule 36, it should just be

3   deemed admitted.

4        THE COURT:  What I'm going to do is, I'm going to

5   give them a little bit of a -- I'm going to order plaintiff

6   to respond with specificity to specifically admit or deny by

7   Wednesday.

8        MR. CAFFAS:  And we have nothing further, Your

9   Honor.

10        THE COURT:  And Wednesday is the 23rd.  Okay.

11        Anything else that you -- that we can wrestle with

12   today that would keep you guys in a position to keep moving

13   this forward?

14        MR. CAFFAS:  I don't believe so, Your Honor.

15        THE COURT:  All right.  Is there any use to even

16   talking about any sort of settlement at this point, or are

17   the parties just -- the class issue or other issues are just

18   going to make that not productive at this point?

19        MR. CAFFAS:  Yes.  At this point, I think the best

20   way to summarize the position is that, based on plaintiff's

21   assessment of damages in this case, even the individual

22   settlement discussions that have been had have not been

23   productive.

24        THE COURT:  Well, I specialize in not productive

25   settlement discussions, and it's my job to make not

59

```
 1    productive settlement discussions productive.  So -- and I
 2    will tell you -- and this is Judge Brinkema?
 3              MR. CAFFAS:  Yes, Your Honor.
 4              THE COURT:  I can almost assure you that, at some
 5    point, Judge Brinkema will order you to undergo a settlement
 6    conference.  So, at some point, the three of us will be in a
 7    settlement conference together with your clients.  You know,
 8    she won't do it until you get to the -- you know, the final
 9    pretrial era, you know, either right before or right after
10    the pretrial.  But it's going to happen at some point.  So,
11    you know, sometimes it's better to have them sooner rather
12    than later.
13              I'm not going to say it's going to be fruitful.
14    Whether to settle is obviously exclusively in the control of
15    the parties.  But we will probably all, at some point, be in
16    a room together talking about whether we can't find common
17    ground or not.  If there's going to be an effort to certify
18    this as a class, it probably doesn't make sense to do it
19    until that effort has run its course.  But, you know,
20    maybe -- you know, that's up to you guys to talk to your
21    clients and figure out a little bit of -- a little bit of
22    timing.  But I do suspect that she's going to want to --
23    before this will go to trial, she's going to want to have us
24    give it a shot; okay?
25              MR. CAFFAS:  Yeah.  My only other position on
```

                                                              60

1   that, Your Honor, is that I concur with the position that it

2   might be premature because it's our understanding that

3   plaintiff still does intend to try and certify a class, and

4   there may be a discussion of whether there will be an effort

5   to extend discovery that we have to discuss before that

6   point.

7           THE COURT:  Have you ever tried a case before

8   Judge Brinkema?

9           MR. CAFFAS:  I have, yes.

10          THE COURT:  Yes.  If you know, she does not -- you

11  know, extending things are not sort of her favorite thing to

12  do.

13          MR. CAFFAS:  I know.  I understand that very much,

14  Your Honor.

15          THE COURT:  So, it is -- you know, oftentimes, you

16  know, parties think, well, this happens in other districts,

17  or, you know -- and they're very surprised at the pace -- or

18  they are very surprised at the limited time that they're

19  given to do things.  So just bear that in mind; all right?

20          MR. CAFFAS:  Yes.

21          THE COURT:  All right.  Thank you, guys.  Have a

22  great weekend.

23          MR. CAFFAS:  Thank you, Your Honor.

24              (Proceedings adjourned at 11:55 a.m.)
                -----------------------------------
25  I certify that the foregoing is a true and accurate

                                                            61

1  transcription of my stenographic notes.

2

3  *Stephanie Austin*

4           Stephanie M. Austin, RPR, CRR

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

62