IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

**RUTH SMITH**, individually and on behalf of all others similarly situated,

   Plaintiff,

  v.

**SUNPATH, LTD.**, a Massachusetts corporation,

   Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

I. **INTRODUCTION**

 Defendant SunPath, Ltd. ("Defendant" or "SunPath") markets and administers vehicle service contracts to consumers nationwide. Rather than conduct its telemarketing in-house, SunPath relies exclusively on third party marketers to conduct telemarketing on its behalf. SunPath supplies its marketers with training and marketing materials, and then turns a blind eye as its telemarketers place thousands of illegal calls to Virginia residents registered on the National Do Not Call Registry without any prior express invitation or permission—all in violation of the Virginia Telephone Privacy Protection Act ("VTPPA").

 One of SunPath's marketers, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"), placed unlawful calls to Plaintiff Ruth Smith ("Plaintiff" or "Smith") and thousands of other potential class members in an effort to sell SunPath's vehicle service contracts. In the process, SunPath accepted all the benefits of American Protection's telemarketing while supposedly ignoring its conduct. While SunPath will argue that its hands-off approach to monitoring its marketers shields it from liability, that is of

1

course untrue: as will be explained at the appropriate time, the VTPPA expressly holds companies like SunPath jointly and severally liable for unlawful calls when it hires third parties to place the offending calls on its behalf. For present purposes, what matters is that this question—whether SunPath can be held liable for American Protection's VTPPA violations—can be answered for *everyone* in the entire Class in a single stroke.

Indeed, this matter presents a textbook case for class certification. American Protection placed thousands of calls to Virginia telephone numbers registered on the Do Not Call Registry—all to market SunPath's vehicle service contracts. Despite wide-ranging discovery, American Protection cannot show any prior express consent from any of the class members. As such, common issues abound for which this case will provide common answers, including: (1) whether SunPath is liable for American Protection's conduct, (2) whether the calls in question constitute "telephone solicitations", (3) whether the class members consented to be called, and (4) whether SunPath acted willfully and knowingly. The answers to these questions rely on the same evidence, are identical for each class member, and will drive the resolution of the litigation for the proposed Class as a collective whole.

The remaining requirements under Rule 23 are met as well. The proposed Class, which consists of thousands of class members, is sufficiently numerous. Plaintiff Smith's claims are typical of those of the class members, and Plaintiff is an adequate representative and is represented by counsel experienced and well-versed in class action litigation. Further, the common issues of whether SunPath is liable of American Protection's calls, whether the calls were "telephone solicitations", and whether any consent was obtained predominate over any supposed individual issues and a class action is the superior method for resolving the claims at issue. Consequently, Plaintiff Smith seeks certification of the following Class:

All persons who either reside in Virginia or who have telephone numbers with a Virginia area code, who (1) on or after May 14, 2018 through December 31, 2021; (2) had a number registered on the national Do Not Call Registry for at least thirty one days; (3) received at least one call placed by Chukran Management Group, LLC d/b/a American Protection Corp.; (4) that is reflected in the records produced by Five9, Inc.

Accordingly, and as explained below, the Court should certify the proposed Class.

## II.    BACKGROUND FACTS

### *SunPath engages third-party marketers to conduct marketing efforts on its behalf*

Defendant SunPath is company that develops and administers vehicle service contracts to consumers nationwide. (Compl. ¶ 6.) Rather than conduct its telemarketing in-house using employees, SunPath contracts with third-party marketers to conduct telemarketing on its behalf. (SunPath Depo. Tr., excerpts of which are attached hereto as Ex. A, at 35:19-25; Call Center Marketing Agreement, attached hereto as Ex. B.) SunPath requires its marketers to agree to its form contract, or "Call Center Marketing Agreement", which requires them, in part, "to actively market [SunPath's] Products." (Ex. B, at pg. 1.)

After agreeing to SunPath's terms, marketers set out to solicit consumers to purchase SunPath's vehicle service plans. (*Id.*; American Protection Depo. Tr., excerpts of which are attached hereto as Ex. C, at 48:22-49:7.) Once a potential client is located, marketers would gather necessary information from the potential client and submit the information for approval to SunPath. (Ex. C, at 30:16-22.) If SunPath approves the sale, then the marketer is responsible for collecting monthly payments from client under the policy. (*Id.* at 61:24-62:2) The marketer is required to pay SunPath for a set amount, or the "cost", of the policy. (*Id.* at 61:5-23.) The marketers then continue to service the client's contract throughout the life of the agreement. (*Id.* at 60:6-19.)

***SunPath's enters into an agreement with American Protection to place telemarketing calls to solicit sales of its vehicle service plans***

On June 29, 2017, SunPath entered into a call center marketing agreement with Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"). (Ex. B at pg. 1.) SunPath also appointed American Protection as its agent in the State of Florida sell its auto warranty products. (Florida Appointment Record, attached hereto as Ex. D.) Between 2017 and 2022, American Protection engaged in soliciting sales on behalf of SunPath. (Ex. C, at 25:6-15.) To sell the vehicle service contracts, American Protection contacted potential clients by telephone. (*Id.* at 24:5-18; 32:1-8.)

On May 26, 2020, despite her registration on the National Do Not Call registry ("DNC Registry"), Plaintiff began receiving relentless telemarketing calls from American Protection soliciting her to purchase SunPath's vehicle service plans. (Declaration of Taylor T. Smith ("Smith Decl.") ¶ 6, attached hereto as Ex. E.) In total, Plaintiff received 172-calls between May and August 2020 placed by American Protection on behalf of SunPath. (*Id.*) After one of the calls, American Protection also sent a follow-up email soliciting Plaintiff to purchase SunPath's products and services. (May 28, 2020 Email, attached hereto as Ex. F.)

Smith wasn't alone. On November 30, 2022, in response to a subpoena, Five9, Inc. ("Five9")—the provider of the telephone system that American Protection used to place the calls at issue—produced American Protection's call records spanning from 2018 to the present. (Smith Decl. ¶ 4.) The records reflect hundreds of thousands (likely millions) of calls placed by American Protection throughout the class period. (*Id.*) The calls to Plaintiff are reflected in the call records. (*Id.* ¶ 6.) Additionally, the data includes identifying information with respect to all the calls, including the names of the persons called and their mailing addresses (street, city, state, and zip code). (*Id.* ¶ 5.)

For the purposes of this motion, Plaintiff's counsel conducted a review of two months of the call records, which demonstrate that the records plainly satisfy the Rule 23 requirements. (*Id.* ¶ 7.) In May 2020, the records reflect 4,745 calls placed to 386 unique telephone numbers corresponding with Virginia addresses. (*Id.* ¶ 8.) Of those number, 151 of the telephone numbers were registered on the national DNC Registry. (*Id.*) All of these calls were placed by American Protection on behalf of SunPath. (Ex. C, at 73:24-74:5; 217:23-218:8.)

In June 2020, the records reflect 3,298 calls placed to 452 unique telephone numbers corresponding with Virginia addresses. (Smith Decl. ¶ 9.) Of those number, 174 of the telephone numbers were registered on the national DNC Registry. (*Id.*) All of these calls were placed by American Protection on behalf of SunPath. (Ex. C, at 73:24-74:5; 217:23-218:8.)

American Protection's telemarketing practices were careless. Indeed, its representative testified that if failed to maintain records of consent for the individuals that it calls:

> Q. Okay. Does American Protection maintain records of prior express consent from the individuals that it places calls to?
>
> A. No.

(Ex. C, at 83:25-84:3.) As for Plaintiff, American Protection has no clue how it received her contact information (*Id.* at 100:5-16) and no record of her providing any prior express written consent (*Id.* at 155:18-156:2).

Worse yet, its actions to comply with the National DNC Registry and state telemarketing laws fell woefully short. Indeed, American Protection's representative testified that it let its subscription to the National DNC Registry expire "a couple of years ago". (*Id.* 231:6-21.) Given this testimony, it is unsurprising that American Protection testified that it does not run any of the numbers that it receives from lead generators against the National DNC Registry. (*Id.* at 83:13-24.)

And with respect to the Virginia Telephone Privacy Protection Act, American

Protection's representative explained the company lacked any policies and procedures to

ensure compliance with the Act and had not even heard of the Act until this lawsuit was

filed. Specifically, he testified as follows:

> Q. Okay. And does American Protection have any specific policies or procedures that relate to compliance with the Virginia Telephone Privacy Act?
>
> A. No.
>
> Q. Prior to this lawsuit, did you have -- were you aware of the Virginia Telephone Privacy Act?
>
> A. No.

(*Id.* 156:12-18.)

Based on these facts and as further explained below, the record firmly supports

certification.

## III.    ARGUMENT

Class certification is appropriate when the proponent of certification demonstrates that

each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has

been satisfied. Fed. R. Civ. P. 23; *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-

14, 117 S.Ct. 2231 (1997). Rule 23(a) requires that (i) the proposed class is so numerous that

joinder of all individual class members is impracticable (numerosity); (ii) that there are common

questions of law and fact among the class members (commonality); (iii) that the proposed

representative's claims are typical of those of the class (typicality); and (iv) that both the named

representative and its counsel have and will continue to adequately represent the interests of the

class (adequacy). Fed. R. Civ. P. 23(a).

Plaintiff seeks certification here under both Rule 23(b)(2) and 23(b)(3). Under Rule

23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on

6

grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate…." Fed. R. Civ. P. 23(b)(2). To certify a class under Rule 23(b)(3), on the other hand, there must be questions of law or fact common to the proposed class members that predominate over any questions affecting only individual members, and the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

As explained below, the proposed Class satisfies Rules 23(a), (b)(2), and (b)(3) and should be certified.

### A.    The Class Is Ascertainable—Class Members Can Be Identified By Reference To Objective Criteria, American Protection's Call Records.

Although not explicitly required by Rule 23, the Fourth Circuit has recognized that Rule 23 "contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654–55 (4th Cir. 2019) (citing *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014)). Under this "ascertainability" requirement, "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* at 655; *see also In re Jeld-wen Holding, Inc. Sec. Litig.*, No. 3:20-CV-112-JAG, 2021 WL 1186326, at *9 (E.D. Va. Mar. 29, 2021) (citing *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (To be ascertainable, class membership must "be 'readily identifiable' by use of 'objective criteria'"). Plaintiff "need not 'identify every class member at the time of certification.'" *Id.* Instead, she must only "ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member' at some point.'" *Id.* Objective criteria can include call records. *See Krakauer*, 925 F.3d at 658 (finding call records to be sufficient to establish ascertainable).

The proposed Class is ascertainable by reference to objective criteria. Plaintiff seeks to

represent a class of Virginia consumers who've received at least one unsolicited telephone solicitations placed by American Protection on behalf of SunPath during the class period whose numbers were registered on the National DNC Registry. Through discovery, Plaintiff has obtained American Protection's call records during the class period. (Smith Decl. ¶ 4.) All of the calls contained within the call records were placed on behalf of SunPath. (AP, at 73:24-74:5.) Based on a two-month sampling of these records, Proposed Class Counsel was able to identify 325 individual telephone numbers, which include a Virginia address and were registered on the national Do Not Call Registry. (Smith Decl. ¶¶ 8-9.) Put simply, there is nothing subjective about whether a class member's number appears in American Protection's calling records, whether it ties to an address located in Virginia, or whether they received an outbound call. While it is unnecessary for Plaintiff to identify each potential class member at this time, it is clear that class membership will be based on objective criteria, the call records. As such, membership in the proposed Class is ascertainable.

**B.      The Proposed Class Meets Each Of The Requirements Of Rule 23(a).**

In addition to being ascertainable, the proposed Class is sufficiently numerous and shares common question. Further, Plaintiff's claims are typical and it, along with its counsel, will fairly and adequately represent the interests of the class.

**1.      The Class consists of thousands of aggrieved members.**

Numerosity is satisfied where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is not a specific number of class members needed to establish numerosity; however, courts generally find the numerosity requirement to be satisfied when the class size exceeds forty members. *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) ("[a]s a general guideline, ... a class that encompasses fewer than

20 members will likely not be certified ... while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone," (quoting 1 Newberg on Class Actions § 3:12 (5th ed. 2021))). At this stage, Plaintiff is not required to identify a "specific number" to "maintain a class action." *Id.* Rather, the Court is entitled to make common sense assumptions in order to find support for numerosity. *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ¶ 7.20, 66 (4th ed. 2001); *see also Mitchell-Tracey v. United Gen. Title Ins. Co.*, 237 F.R.D. 551, 556 (D. Md. 2006).

Numerosity is not an impediment to certification in this case. That is, American Protection placed thousands of unlawful telephone solicitations to individuals who fall into the defined Class. As previously stated, a two-month sampling revealed 325 Virginia residents that received unlawful calls from American Protection on behalf of SunPath. (Smith Decl. ¶¶ 8-9.) While the total number of class members is not known at this time, it is clear that it will be more than forty. Further, neither SunPath nor American Protection has been able to produce any consent from any of the called numbers. Numerosity is plainly satisfied here.

### 2.      The Class shares common questions of law and fact.

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court explained in *Dukes*, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

9

To satisfy the Rule 23(a)(2) commonality requirement, "there need be only a single issue common to the class." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 199 (E.D. Va. 2015) (citation omitted). The issues are also not required to be identical. *Sustainable Forest, L.L.C. v. Qwest Commc'ns Int'l, Inc.*, No. CV 0:01-2935-CMC, 2005 WL 8146267, at *6 (D.S.C. Nov. 28, 2005). Rather, when "common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Haywood v. Barnes*, 109 F.R.D. 568, 581 (E.D.N.C. 1986) (citing Wright and Miller, *Federal Practice and Procedure: Civil* § 1778 (1972)). Commonality has been characterized as a relatively low and easily surmountable hurdle. *Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Several common issues will drive the instant litigation, including whether SunPath can be held liable for the calls that American Protection made on its behalf, whether the calls can be considered "telephone solicitations" under the VTPPA, whether SunPath or American Protection obtained consent from any of the class members, and whether SunPath acted willfully.

**(a)     Whether SunPath can be liable for the calls.**

The first common issue asks whether SunPath can be liable for the calls placed by American Protection. The VTPPA holds "a seller on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call" to be "jointly and severally liable" for calls in violation of the Act placed by "telephone solicitor making or initiating the telephone call". Va. Code Ann. § 59.1-514.1 (West). At this stage in the litigation, the question is whether the liability determination can be proven using common evidence.

Here, common evidence will be used to show that SunPath can be held liable as a "seller"

under the VTPPA for the calls placed by American Protection. Indeed, SunPath entered into a

Call Center Marketing Agreement with American Protection to place telemarketing calls on its

behalf. (Ex. B.) SunPath also designated American Protection as its agent in the State of Florida

to sell its vehicle service contracts. (Ex. D.) Moreover, American Protection testified that it

placed calls to solicit the sale of SunPath's vehicle service contracts (Ex. C, at 29:22-30:7.)

Consequently, American Protection acted as a "telephone solicitor" on behalf of SunPath within

the meaning of the VTPPA. And because American Protection placed the calls for the purpose of

selling SunPath's vehicle service contracts, SunPath can be held jointly and severally liable for

calls as a "seller" under the VTPPA. And this doesn't change depending on who the class

member happens to be—the answer to the question of whether SunPath can be held liable for the

calls placed by American Protection is the same for everyone.

### (b)    Whether the calls constitute telephone solicitations.

The second common issue asks whether the class members received telephone

solicitations. The VTPPA defines a "telephone solicitation call" as:

> (i) any telephone call made or initiated to any natural person's residence in the
> Commonwealth, to any landline or wireless telephone with a Virginia area code, or
> to a landline or wireless telephone registered to any natural person who is a resident
> of the Commonwealth or (ii) any text message sent to any wireless telephone with
> a Virginia area code or to a wireless telephone registered to any natural person who
> is a resident of the Commonwealth, for the purpose of offering or advertising any
> property, goods, or services for sale, lease, license, or investment, including
> offering or advertising an extension of credit or for the purpose of fraudulent
> activity, including engaging in any conduct that results in the display of false or
> misleading caller identification information on the called person's telephone.

Va. Code Ann. § 59.1-510 (West).

Here, American Protection's representative testified that it contacts consumers for the

purpose of selling vehicle service contracts. (Ex. C, at 32:1-8.) And during the class period,

American Protection only sold vehicle service contracts. (*Id.* at 213:21-5.) Put succinctly,

whether American Protection's calls can be considered "telephone solicitation calls" will be the same with respect to every single call that was placed. Indeed, American Protection testified that their sales purpose did not change throughout the class period. As such, if the calls to Plaintiff were "telephone solicitation", then all of the calls were "telephone solicitations" and vice-versa.

**(c)     Whether the class members consented to be called.**

The third common issue asks whether any of the class members provided prior express invitation or permission (or consent) to be called. Prior express invitation or permission must be "evidenced by a signed, written agreement stating that the person agrees to be contacted by or on behalf of a specific party and including the telephone number to which the call may be placed". Va. Code Ann. § 59.1-514(D) (West). To date, neither American Protection nor SunPath has been able to produce any record of prior express invitation or permission for either Plaintiff or any class member. Indeed, American Protection's representative testified that it kept no such consent records:

> Q. Okay. Does American Protection maintain records of prior express consent from the individuals that it places calls to?
>
> A. No.

(Ex. C, at 83:25-84:3.) Because no evidence of consent has been produced, consent is also a common issue for the Class. *See Blair v. CBE Grp., Inc.*, 309 F.R.D. 621, 629 (S.D. Cal. 2015) ("courts should not simply accept a party's argument that consent requires individualized inquiries without evidence demonstrating consent is, in fact, an individualized issue." (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012))); *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 399 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019) (rejecting an argument that consent required individualized inquiries in a TCPA class action where the defendant failed to produce substantiating evidence); *Salam v. Lifewatch, Inc.*, No. 13

CV 9305, 2016 WL 8905321, at *3 (N.D. Ill. Sept. 6, 2016) ("While issues of consent may prohibit the certification of a class in TCPA class action suits, Defendant must 'set[ ] forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone.'" (citation omitted))).

### (d)     Whether SunPath acted willfully.

A fourth common issue asks whether SunPath acted willfully. The VTPPA sets statutory damages at $500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation. Va. Code Ann. § 59.1-515 (West). But where willfulness is shown, the Court has the discretion to increase the damages award for the first and second violation to an amount not exceeding $5,000. *Id.* Moreover, the inquiry into whether a defendant acted willfully or knowingly focuses on the "intent" of the defendant, and "not any unique or particular characteristics related to potential class members." *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 WL 8933624, at *7 (N.D. Cal. Aug. 22, 2016).

In this case, SunPath acted the same with respect to every class member. That is, SunPath contracted with American Protection to market its products and services. After that, it permitted American Protection to engage in telemarketing on its behalf for years without any intervention. In short, there is simply no evidence that SunPath's intent or actions varied with respect to any individual class members. As such, a fact finder could either conclude that SunPath acted willfully with respect to the entire class or to none. *Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2017 WL 5054287, at *14 (N.D.W. Va. July 11, 2017) ("where defendant's conduct is uniform as to the class, class certification is appropriate.").

Therefore, the case will produce common answers to several questions of law and fact.

### 3.   Plaintiff's claims are typical.

Plaintiff's claims are typical as well. The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]ypicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *McKnight v. Cir. City Stores, Inc.*, No. CIV. A. 3:95CV964, 1996 WL 454994, at *5 (E.D. Va. Apr. 30, 1996) (citation omitted).

"The test for determining typicality is whether the claim or defense arises from the same course of conduct leading to the class claims, and whether the same legal theory underlies the claims or defenses." *Bulmash v. Travelers Indem. Co.*, 257 F.R.D. 84, 88 (D. Md. 2009) (citing *Robinson v. Fountainhead Title Group Corp.*, 252 F.R.D. 275, 287–88 (D. Md. 2008)). But "[t]he claims of the class representative need not be identical to those of the other class members, however." *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 295 (E.D. Va. 2004). "For instance, factual variances in the claimed damages, or differences in the availability of certain defenses, do not defeat typicality, so long as the class claims are based on the same legal or remedial theory." *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003) (citation omitted).

Plaintiff's claims are typical. To start, Smith is a member of the proposed Class. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016) (typicality "requires that the class representative 'be part of the class and possess the same interest and suffer the same injury as the class members.'"). Further, Plaintiff and the Class were subjected to a uniform course of conduct: everyone received unwanted telephone solicitations from American Protection; the calls were placed to market vehicle service contracts; and neither SunPath nor

14

American Protection has produced any record of consent for anyone.

Because Plaintiff's claims arise out of the same course of conduct as the class members' claims, typicality is satisfied.

### 4.  Plaintiff and her counsel are adequate representatives.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Amchem Products, Inc.*, 117 S.Ct. at 2250-2251. "[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are 'qualified, experienced, and generally able to conduct the litigation.'" *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Nelson v. Warner*, 336 F.R.D. 118, 124 (S.D.W. Va. 2020).

Applied here, Plaintiff's interests are aligned with the interests of the proposed class. Plaintiff has stepped forward and lend her name and time to this case. Smith has responded to discovery requests, produced responsive documents within its possession, and has provided testimony during a full day deposition. In short, Plaintiff has vigorously represented the interests of the class and will continue to do so throughout the duration of this litigation.

Plaintiff has also retained experienced attorneys with extensive experience in consumer class actions. Indeed, proposed class counsel are respected members of the legal community who have sufficient experience in class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Woodrow & Peluso, LLC, attached hereto as Ex. G.) Plaintiff's

counsel have also devoted significant time and resources toward this litigation, and will continue to commit the resources necessary to represent the class. Plaintiff and her counsel have no conflicts of interest with the class and have demonstrated a commitment to vigorously prosecuting this action. Thus, Rule 23(a)(4) adequacy is met.

### C.    The Proposed Class Meets The Requirements Of Rule 23(b)(2).

Once Rule 23(a) is satisfied, the inquiry turns to Rule 23(b). In this case, Plaintiff seeks certification under both Rule 23(b)(2) and (b)(3). Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted.'" *Dukes*, 131 S. Ct. 2451 at 2557. While Rule 23(b)(2) does not have a predominance or superiority requirement, it is well settled that the proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006).

In this case, SunPath subjected Plaintiff and the Class to a uniform course of conduct. SunPath hired third-party companies to conduct call marketing efforts on its behalf. All of SunPath's marketers sign a form contract, the Call Center Marketing Agreement, which governs their relationship with SunPath. (Ex. A, at 18:3-7; Ex. B.) SunPath's only claim that it has procedures in place to ensure compliance with the VTPPA (or the TCPA for that matter) is the "Standards of Conduct" section of its marketing agreements. (Ex. A, at 45:13-25.) However, SunPath has not implemented any independent policies or procedures to ensure that its sales representatives comply with the VTPPA. (*Id.* at 46:1-47:20) Likewise, SunPath has not implemented a do not call list. (Ex.A, at 56:1-3.) The result of SunPath's intentionally hands off

16

approach is that it enables its marketers to engage in unlawful telemarketing, from which it will ultimately reap the benefits. As such, Plaintiff seeks an injunction requiring SunPath to implement stricter policies and procedures to ensure that its marketers comply with the VTPPA.

Given that SunPath subjected Plaintiff and the Class to a uniform course of conduct, the Court should issue an Order granting certification pursuant to Rule 23(b)(2).

### D.       The Proposed Class Meets The Requirements Of Rule 23(b)(3).

Certification is also warranted under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### 1.       Common questions of law and fact predominate.

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (citation omitted).

The predominance inquiry "is not simply a matter of counting common versus noncommon questions and checking the final tally." *Soutter v. Equifax Info. Servs.*, LLC, 307 F.R.D. 183, 214 (E.D. Va. 2015). Instead, the test "test is qualitative rather than quantitative." *Id.* "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified

notwithstanding the need to resolve individualized issues." *Id.* (citing *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013)). As an example, if "common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Id.* (citation omitted).

The common questions set forth in Section B.2, *supra*, will succeed or fail based on common proof. Here, American Protection acted in the same manner with respect to all class members. American Protection placed calls for the purposes of selling vehicle service contracts, including SunPath's products. Further, it failed to adopt any policies or procedures to ensure compliance with the VTPPA. Additionally, there is no record of prior express invitation, permission, or consent for any of the calls placed. As such, the common questions in this case are subject to common proof, cut to the core of the case, and aren't trumped by any individual truths.

SunPath may assert that American Protection placed calls on behalf of other vehicle service contract companies as well. But this doesn't pose an issue with respect to class certification. Rather, the central inquiry is whether the calls in question were initiated to promote SunPath's products and services. Whether the calls ultimately resulted in the sale of a SunPath product or service is immaterial. *See Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583, at *7 (N.D. Cal. May 5, 2017) ("Whether a call from Alliance ultimately resulted in installation of a system with an Alarm.com component is circumstantial evidence and certainty not dispositive."); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013) (denying a similar argument and explaining, "The TCPA violations, if any, occurred when the messages were *sent*, not when class members phoned in and were pitched products or services of Stonebridge or any other Trifecta client." (emphasis in original)). As American Protection's designee confirmed, at the time the call was placed, <u>all</u> of

the calls that it placed could have resulted in the sale of a SunPath product or service. (Ex. C, at

73:24-74:5.) And in any case, its designee testified that during the time it worked with SunPath it

"mostly sold SunPath products." (*Id.* at 215:10-11.) Because each of the calls were placed for the

purpose of soliciting consumers to purchase SunPath's vehicle service contracts, this issue is a

common question for the Class.

　　In short, if SunPath violated the VTPPA with respect to the calls placed by American

Protection to Plaintiff, then it violated the VTPPA with respect to every single class member. As

such, the Court should find that the common issues predominate over any supposed

individualized issues.

## 2.　A class action is superior to any other method of adjudication.

　　Finally, Rule 23(b)(3) requires that the class action mechanism be superior to other

available methods for adjudicating the controversy. Fed. R. Civ. P 23(b)(3). "Superiority

'depends greatly on the circumstances surrounding each case,' but 'requires the court to find that

the objectives of the class-action procedure really will be achieved.'" *Soutter*, 307 F.R.D. at 217.

Rule 23(b)(3) includes the following non-exhaustive list of factors pertinent to this inquiry:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already begun by or against class members; (C) the desirability or
> undesirability of concentrating the litigation of the claims in the particular forum;
> and; (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "The most compelling rationale for finding superiority in a class action

[is] the existence of a negative value suit." *Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 445

(E.D. Va. 2004) (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir.1996));

*see also Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 400 (M.D.N.C. 2015), aff'd, 925 F.3d

643 (4th Cir. 2019) ("[I]f the goal of the TCPA is to remove a 'scourge' from our society, it is

unlikely that 'individual suits would deter large commercial entities as effectively as aggregated

class actions and that individuals would be as motivated ... to sue in the absence of the class action vehicle.'").

As a result of low statutory damages and the uniformity of telemarketing practices, courts routinely certify class actions involving violations of telemarketing laws. *See Krakauer*, 311 F.R.D. at 400 (granting class certification in a TCPA case); *Mey v. Venture Data, LLC,* No. 5:14-CV-123, 2017 WL 10398569, at *15 (N.D.W. Va. June 6, 2017); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413 (W-AJB), 2008 WL 4155361, at *8 (S.D. Cal. Sept. 5, 2008) (holding in a TCPA action that "[t]he class action procedure is the superior mechanism for dispute resolution in this matter. The alternative ... would be costly and duplicative."); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1308 (D. Nev. 2014) (granting class certification in a TCPA class).

In this case, the proposed class action is a superior method of adjudication. That is, Plaintiff is seeking statutory damages for each violation of the VTPPA, which amounts to $500 for the first violation, $1,000 for the second violation, and $5,000 for each subsequent violation. (Comp. ¶¶ 54, 61.) Given the small amount of damages likely to be recovered, pursuing suits on an individual basis would be prohibitively expensive for all members of the Class. Further, no other VTPPA actions are currently pending against SunPath. In the end, individualized trials would only result in duplicative cases, inconsistent rulings, and a waste of judicial resources. Moreover, a class action is superior here because the case is easily manageable. That is, as previously explained, the common issues in this case predominate of any individualized issues. And a trial in this action will involve nearly all class wide proof. Indeed, American Protection failed to adopt any procedures to ensure compliance with the VTPPA, placed numerous calls to numbers registered on the DNC Registry, and lacks consent for any class member. As such, the

20

Court should find that the superiority requirement is satisfied here.

## IV.   CONCLUSION

The proposed Class is worthy of certification. The Class is sufficiently numerous, common questions of law and fact predominate over individual issues, Plaintiff's claims are typical of those of the class members, and she is an adequate representative and is represented by counsel experienced and well-versed in class action litigation. Further, common issues predominate over any supposed individual issues and a class action is the superior method for resolving the claims at issue. As such, Plaintiff respectfully requests that the Court certify the Class, appoint Patrick H. Peluso, and Taylor T. Smith of Woodrow & Peluso, LLC as Class Counsel, appoint Plaintiff Ruth Smith as Class Representative, order that a Notice Plan be submitted within thirty (30) days of certification, and grant all other and further relief that the Court deems reasonable and just.

Dated: December 14, 2022

**RUTH SMITH**, individually and on behalf of all others similarly situated,

By: */s/ Francis J. Driscoll, Jr.*
One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on December 14, 2022.

/s/ Francis J. Driscoll, Jr.