**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

**RUTH SMITH,** individually and on behalf of
all others similarly situated,

        *Plaintiff,*

*v.*                                Case No. 1:22-cv-00081 (LMB/WEF)

**SUNPATH, LTD.,** a Massachusetts corporation,

        *Defendant.*

## DEFENDANT SUNPATH, LTD.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

        Defendant SunPath, Ltd., by counsel, hereby submits its Memorandum in Support of its Motion to for Summary Judgment.

## I.    INTRODUCTION AND BACKGROUND

        Plaintiff claims that she received telephone calls from a non-party in violation of the Telephone Consumer Protection Act ("TCPA") and Virginia Telephone Privacy Protection Act ("VTPPA").[1] Yet there is no genuine factual dispute that SunPath did not make any of the calls that form the basis of Plaintiff's claims, or direct any other party to make unlawful telephone solicitation calls to Plaintiff.  SunPath is the administrator of vehicle service contracts ("VSCs").  Plaintiff has never purchased a VSC administered by SunPath.  Indeed, SunPath's first contact with Plaintiff was when her lawyer asserted these claims to SunPath's own counsel.

---

[1]    While Count I of Plaintiff's Complaint alleges violations of the TCPA, Plaintiff has since informed SunPath she no longer intends to proceed with any claims under Count I, and will be dismissing Count I and proceeding solely on claims relating to Counts II and III of the Complaint concerning alleged violations of the VTPPA.  This motion therefore focuses solely on Plaintiff's remaining state VTPPA claims.

The record is clear that SunPath had no role in making any call to Plaintiff.  Instead, Plaintiff claims that SunPath may be jointly and severally liable under the VTPPA for the actions of the non-party she alleges made the calls at issue, American Protection Corp., a d/b/a of Chukran Management Group LLC ("American Protection").  American Protection had an agreement with SunPath that permitted it to sell SunPath-administered VSCs alongside those of SunPath's competitors, as an independent contractor, and explicitly within the bounds of all applicable laws.  But SunPath asserted no control over American Protection's marketing practices or over the actions of any sub-contractor that American Protection hired to make calls to consumers.  American Protection bought SunPath-related products at wholesale rates and independently controlled all facets of its sales and marketing operations, including who it employed, what it sold, the rates it which it sold it, and whether it would offer a SunPath-related product or a product of any of SunPath's many competitors.  Indeed, a SunPath-administered VSC was never even offered to Plaintiff on any call at issue in this case.

Plaintiff's VTPPA claims therefore fail for several reasons.  First, Plaintiff created an "established business relationship" ("EBR") with American Protection by first inquiring about its products before American Protection made any calls to her (American Protection mailed her an advertisement a few days before she called it the first time).  Indeed, American Protection's first contact with Plaintiff was when *she placed a call to American Protection*, to request information from American Protection.  Plaintiff's motivations for making this inquiry to American Protection are irrelevant—the inquiry itself created an EBR that remained in place until she made a seller-specific do-not-call request to American Protection.  While this EBR was in place, Plaintiff's claims for violations of the VTPPA fail as a matter of law because the calls were not "telephone solicitation calls" actionable under the VTPPA in the first place.

Furthermore, while the VTPPA contains a presumption that a "seller" as defined by the statute is jointly and severally liable for unlawful "telephone solicitation calls" made by a third-party under certain prescribed circumstances, there are threshold flaws that defeat Plaintiff's claims before the presumption even applies here.  First, the calls at issue do not qualify as "telephone solicitation calls" at all:  American Protection was *calling her back* under an established business relationship.  But even assuming that they were, SunPath still cannot be held liable for any call American Protection made because SunPath-related products were not offered or even discussed during the calls at issue.  Liability under the relevant section of the VTPPA is dependent upon the party's products, goods, or services being offered *on the call* at hand, so the absence of any mention of SunPath or its products on any of the calls at issue dooms Plaintiff's VTPPA claims.

VTPPA liability also cannot attach to SunPath because SunPath is not a "seller" under the VTPPA because it does not sell the VSCs it administers.  American Protection (and any other independent third-party authorized to sell SunPath-administered VSCs) offers other companies' products alongside SunPath's, and it does not compensate SunPath directly for any particular sales—it buys SunPath-related products from SunPath at wholesale rates and resells them for whatever price it can fetch on the competitive retail market.  As such, American Protection does not make any calls "on behalf of" or for the benefit of SunPath.  American Protection is like the sporting goods store that buys sneakers at wholesale and hopes to make a profit and sell its inventory; Dick's doesn't sell "on behalf of" Nike or Adidas any more than American Protection sells "on behalf of" any of the various underlying claims administrators of the products it sells.  And even if the VTPPA's presumption of joint liability could apply to SunPath, the facts at hand show that SunPath easily rebuts this presumption, as it has not authorized and did not have any

knowledge of any alleged unlawful calling practices by American Protection that are the subject of Plaintiff's claims.

Finally, Plaintiff's claims under Va. Code § 59.1-512 for a caller's failure to properly identify themselves during a solicitation call must be dismissed for all of the subject calls that went unanswered.

Plaintiff's VTPPA claims fail for the foregoing reasons, and the Court should therefore grant summary judgment in SunPath's favor and dismiss all of Plaintiff's claims against SunPath, with prejudice.

## II.    LISTING OF UNDISPUTED FACTS

Pursuant to Local Civil Rule 56(B), the following undisputed material facts support the Court's grant of this Motion:

1.    Plaintiff alleges that she received a series of calls from non-party American Protection and on at least one of these calls from American Protection she was offered a VSC administered by SunPath. *See* Compl. ¶¶ 23-25, ECF No. 1; Plaintiff's Second Supplemental Discovery Responses at 7-9 (Responding to Interrogatories 2 and 3 that Plaintiff does not allege SunPath made any of the calls at issue, but that SunPath is vicariously liable for calls made by American Protection), attached as **Exhibit 1**.

2.    SunPath is the administrator of certain VSCs: it administers and pays for covered claims that customers make under their SunPath-administered service contracts.  Declaration of Andrew Garcia ¶ 4, ECF No. 11-1.

3.    American Protection is an independent third-party company that was authorized to market and sell VSCs administered by SunPath via a "Call Center Marketing Agreement"

between SunPath and American Protection dated June 29, 2017 ("Marketing Agreement"), which is attached as **Exhibit 2**.

4.      SunPath does not sell the VSCs it administers; the contracts it administers are sold by third-party sellers.  *See* Garcia Decl. ¶ 7.   SunPath does not have any role in the sales of the VSCs it administers, does not make any outbound sales calls to consumers, and more specifically, did not make any of the alleged calls to Plaintiff that form the basis of Plaintiff's complaint.  *See id*.

5.      American Protection, via its own employees or subcontractors, is the only party that Plaintiff alleges made the calls at issue.  *See* Ex. 1 at 7 (Plaintiff's Second Supplemental Answer to Interrogatory 2, in which "Plaintiff acknowledges that SunPath did not make the calls to her itself/directly."); *id*. at 8-9 (Plaintiff's First and Second Supplemental Answers to Interrogatory 3, in which Plaintiff alleges Sunpath may be vicariously liable for calls at issue due to the actions of American Protection.); Deposition of Plaintiff Ruth Smith ("Smith Dep.") at 205:14-22 ("Can you tell me which party actually placed the calls in this case? . . . A: So it was American Protection on behalf of SunPath."), excerpts attached as **Exhibit 3**.

6.      The Marketing Agreement between American Protection and SunPath states that "[American Protection] is at all times acting as an independent contractor and not as an employee of [SunPath].  Nothing herein shall be construed to create a relationship of employer and employee, a partnership, joint venture, or association between [SunPath] and [American Protection]."  Marketing Agreement at ¶ 9.

7.      The Marketing Agreement further states that "[American Protection] . . . shall use utmost good faith and best efforts to ensure that their respective operations are conducted in

connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties." *Id.* at ¶ 30.

8.       At all times American Protection was authorized to sell SunPath-related products, American Protection was permitted to market and sell the products of other companies alongside SunPath's, including those of SunPath's competitors.   Garcia Decl. ¶¶ 9-10; SunPath's Responses to Plaintiff's Discovery Requests ("SunPath Disc. Resp.") at 10 (SunPath's Response to Interrogatory 12), attached as **Exhibit 4**; Deposition of American Protection ("AP Dep."), at 21:4-6 ("Q: Okay.  Is SunPath the only company that American Protection works with? A: No."), excerpts attached as **Exhibit 5**; *id.* at 23:10-12 ("Q: Did you ever work exclusively with just SunPath?  A: I don't believe so."); *id.* at 74:1-5 ("Q: . . . So at the time American Protection places a call, does it know which company's vehicle service plans it will be pitching on the call? A: No."); *see also* SunPath Deposition at 79:17 to 80:13 (SunPath did not restrict American Protection from offering other companies' products), excerpts attached as **Exhibit 6**.

9.       SunPath did not exercise any control over how American Protection undertook to market SunPath-administered (or any other party's) contracts—American Protection had complete control and direction over its marketing operations, including how it obtained consumer leads, what scripts it used, what equipment it used, and whether it offered consumers a SunPath-related product or the product of a SunPath competitor. *See* Garcia Decl. ¶ 12-14; *see also* AP Dep. at 26:1-3 ("Q: Throughout the time you worked with SunPath, were you in regular contact with them? A: No."); *id.* at 38:12-23 ("[D]id SunPath recommend that you use this specific [Customer Relationship Management system]?  A: No. . . . Q: Did you provide SunPath with access to that CRM?  A: No."); *id.* at 39:9-14 ("Q: Does SunPath have any systems that they provided American Protection with access to? A: No.   Q: Does SunPath provide any

6

resources to American Protection? A: No."); *id.* at 43:4-7 ("Q: Okay. Did SunPath ever provide any guidance on telemarketing?   A: Whatever is listed within the Seller Agreement with SunPath."); *id.* at 43:17-23 ("Q: Okay.  Did SunPath ever provide any training to American Protection?  A: No. Q: Does SunPath ever have any seminars, gatherings, or meetings that they would invite American Protection to?   A: No."); *id.* at 100:20-22 ("Q: Does SunPath ever provide leads to American Protection? A: No."); SunPath Dep. at 75:6 to 78:17 (SunPath has never offered guidance or training related to how to market or sell its products to American Protection or any other third party); *id.* at 79:22 to 80:2 ("Q: [D]id the agreement that SunPath has with American Protection or any third party restrict those parties from offering other companies' products? For example, SunPath's competitors' products? A: No. No. They – they all offer other products.").

10.   SunPath exercised no control over where American Protection set up its offices or how it hired its own sub-contractors.  *See* AP Dep. at 220:9 to 221:21.

11.   American Protection did not itself maintain employees that conducted its marketing activities; it retained subcontractors to do so, none of whom were known to SunPath. AP Dep. at 79:13-22 ("Q: You previously testified that American Protection does not have employees . . . [h]ow does American Protection place  telephone calls to potential clients?  . . . A: Who? We work with some subcontractors  . . . that are speaking to the consumers."); *id.* at 221:10-13 ("Q: To your knowledge, would SunPath even know the names of any of American Protection's employees or independent contractors, besides yourself?  A: No."); SunPath Dep. at 76:7-10 ("Q: To your knowledge, would SunPath have any knowledge of any subcontractor that American Protection would have hired in order to market or sell any product?  A: No."); AP

Dep. at 226:16-20 (American Protection's subcontractors were paid by American Protection, never by SunPath).

12.     Furthermore, SunPath does not compensate American Protection in any way— American Protection covered all of its own expenses, and was ultimately compensated under the Marketing Agreement by receiving the difference between the wholesale prices of the SunPath VSCs and whatever price American Protection charged consumers, which was at the discretion of American Protection. Garcia Decl. ¶¶ 14-15; AP Dep. at 45:25 to 47:8 ("SunPath does not compensate [American Protection] for the sales."); *id.* at 60:24 to 61:12 ("Q: Now, these contracts, they're on a monthly basis, right? These customers pay a certain amount each month? A: Yes.  Q: Okay. Who do they pay that amount to?  A: To [American Protection].  Q: And then does a share of that each month go to SunPath or . . . how does that work? A: No. . . . No. SunPath bills us for the policy.").

13.     The revenue generated by American Protection was not essential to SunPath's business, and represented a "very small" proportion of SunPath's overall revenue.  SunPath Dep. at 72:16 to 73:3.

14.     Plaintiff did not receive calls from American Protection unexpectedly; before American Protection made any calls to Plaintiff, she first made at least one call to American Protection on May 26, 2020 to inquire about the products they sold.  *See* AP Dep. at 81:24 to 82:3 ("As it relates to this particular case that we are gathered here today to discuss, this was a consumer that received a mailer from us and called us to receive information."); *see id.* at 199:17-20 ("In this case, the plaintiff gave us a credit card number and agreed to the terms of a sale, so as far as [American Protection's subcontractor], she had written consent [to call] from a customer of [American Protection]."); *see also* Screenshots of American Protection CRM

system, attached as **Exhibit 7** (reflecting that Ms. Smith was sent "Direct Mail" on 5/22/2020); Smith Dep. at 92:10-18 ("Q: And in the process of trying to determine [who was trying to contact you], did you make an inquiry about who they were and what they were selling? A: Yeah, I was trying to determine who was trying to contact me."); AP Dep. at 180:10-20 (transcription of recording produced as SMITH_000027, in which "Samantha calling with American Protection" left a voicemail requesting Ms. Smith provide the VIN number for her BMW that had previously been discussed with American Protection); *see also* **Exhibit 8** (Line of data extracted from Five9, Inc.'s ("Five9") Subpoena response showing the first interaction with Plaintiff's telephone number is labeled as "INBOUND" on May 26, 2020).[2]

15.    SunPath's name was not mentioned during any of the calls at issue—as Plaintiff testified at deposition, her complete recollection of whether SunPath or another company's name was mentioned during the calls at issue was contained in the notes she created at the time of the calls, yet those notes do not contain a single mention of SunPath. *See* Smith Dep. 53:9 to 54:6; *see also* Ruth Smith Call Notes (Bates labeled SMITH000031-36, which contain no reference to SunPath), attached as **Exhibit 9**.

---

[2]    With respect to Exhibit 8, SunPath does not contend that it is admissible; Five9, is a so-called "UCaaS" or Unified Communications as a Service platform provider that provides a variety of communications-related products that companies use in a variety of ways to communicate with customers and prospects and to track and manage various data relating to the user's sales and marketing practices. Five9 was never deposed and thus the data set, by itself, lacks necessary testimony from a competent witness qualified to explain its meaning. SunPath therefore does not maintain that this information will be admissible at trial. While Plaintiff claims not to remember making such a call (*see* Smith Dep. at 167:20 to 170:21 (Plaintiff representing that she does not remember making a call to American Protection)), SunPath simply notes here that the Five9 data that Plaintiff identified in her exhibit list appears to corroborate American Protection's testimony that Plaintiff first made a call to American Protection four days after she was sent a direct mail advertisement, and before American Protection made any calls to Plaintiff. That is, while there is much in the Five9 data that is difficult or impossible for a layperson with no personal knowledge about the meaning of the data to ascertain, the very first instance of Plaintiff's phone number in the produced records is in a row of data in which the word "INBOUND" is used on the day at issue.

16.     Likewise, the sales script American Protection produced in this case does not contain any mention of SunPath's name.  AP Dep. at 234:2-6 ("Q: Is it correct that, in [American Protection's sales script], as written, SunPath's name isn't mentioned in the sales script or on the – the cover of the – the script at all?  A: Correct."); American Protection Sales Script, attached as **Exhibit 10**.

17.     SunPath's name was not mentioned during such calls because American Protection sold multiple companies' products, and was unaware of what product would be offered until after the consumer provided her vehicle information.  AP Dep. at 74:1-5 ("Q: . . . So at the time American Protection places a call, does it know which company's vehicle service plans it will be pitching on the call?  A: No."); *id.* at 32:9 to 33:16 (when American Protection spoke with any consumer, he or she would first need the consumer's vehicle information before determining what products they qualified for).

18.     Nor was SunPath's name in the email Plaintiff received after she made her inquiry regarding American Protection's products; as Plaintiff testified, she received an email from American Protection that did not contain any reference to SunPath, and did not see SunPath's name at all until clicking a separate link in the email that then re-directed Plaintiff to American Protection's webpage.  It was on this webpage where a SunPath VSC was listed.  *See* Smith Dep. at 206:1 to 208:1 (Describing the actions Plaintiff took after receiving an email from American Protection); *see also* Email from American Protection to Plaintiff and Screenshot from American Protection's webpage (Bates labeled SMITH000022-26), attached as **Exhibit 11**.

19.     Plaintiff has no personal knowledge supporting her allegation that American Protection made calls "on behalf of" SunPath; indeed, when asked at deposition what the basis of her belief that American Protection acted on behalf of SunPath is, she could only respond

"[b]ecause of the – I believe because the telemarketer and also because of all the, you know, calls that I received." Smith Dep. at 157:15-20.

20.    Plaintiff admits she has never communicated with anyone from SunPath, that no one from American Protection ever represented to her that they were operating "on behalf of" SunPath, and that she does not know anything about the "ins and outs" of the relationship between American Protection and SunPath. *Id.* at 157:21 to 158:9; 162:8 to 163:6.

21.    Plaintiff did not purchase a vehicle service contract administered by SunPath as a result of any calls made by American Protection or otherwise.

22.    Plaintiff did not make a do-not-call request to American Protection until June 11, 2020. *See* Email between Plaintiff and American Protection (Bates labeled SMITH000029-30), attached as **Exhibit 12**.

23.    In SunPath's investigation relating to Plaintiff's claims in this case, SunPath requested information from American Protection.  American Protection responded by insisting it did not violate any telemarketing laws in association with Plaintiff's claims.  *See* SunPath Dep. at 73:14 to 74:15 (American Protection represented to SunPath's in-house counsel that American Protection did not violate any telemarketing laws that are at issue in this case); Ex. 4, SunPath Disc. Resps. at 5-6 (Answer to Interrogatory 6).

24.    American Protection only made calls to potential customers that had requested to be contacted by American Protection, either by providing consent to be called via a website, or via first calling in themselves to American Protection.  *See* AP Dep. at 77:17-25 ("Q: Does American Protection ever place telemarketing calls to consumers that it hasn't previously sent a mailer to?  A: We only contact prospects that have requested information about those services . . . we have no interest in just contacting folks that have no interest in our products."); *id.* at 84:15

to 85:4 ("Q: How does American Protection ensure that individuals that it's placing calls to have provided prior express consent?  . . . A: I mean I review to make sure that the proper opting language is present, that our name is clearly stated, that the consumer understands they will receive a call from us, and that it authorizes us, to receive a call . . . within the means we would be using."); *see also id.* at 138:23 to 139:23 (Q: "Is it fair . . . to say that [American Protection's] subcontractors place calls on behalf of American Protection to solicit sales of vehicle service contracts? A: No, we don't . . . We return requests for contacts from potential customers.  We don't just solicit . . . and call.  We have folks that are calling and requesting information, and in some cases, we reach out to people with requested information."); *id.* at 195:25 to 196:20 (American Protection's business practices are only to call people who have "opted in," meaning they "requested to be contacted from [American Protection], specifically . . . either via online, via a website, or via calling in.").

25.    SunPath is not aware of any complaints involving telemarketing activities of American Protection that occurred prior to the calls that form the basis of Ruth Smith's claims in this lawsuit, is not aware of any instance in which American Protection was found to have violated any law involving telemarketing, and never authorized American Protection to violate any laws involving telemarketing or ratified any conduct by American Protection that may have violated any telemarketing laws.  *See* SunPath's Supplemental Response to Plaintiff's Discovery Requests at 3, attached as **Exhibit 13**; *see also* SunPath Dep. at 81:5-10 ("Q: [D]o you have any knowledge at all of American Protection being accused of telemarketing violations prior to the calls that are at issue in this case that Ruth Smith has filed against SunPath? A: No.").

26.    More specifically, SunPath has never directed or authorized American Protection to violate the TCPA, VTPPA, or any other laws governing telemarketing, or ratified any conduct

by American Protection that may have violated, the TCPA, VTPPA, or any other laws involving telemarketing. *See* SunPath Dep. at 81:19 to 83:3; AP Dep. at 234:16 to 237:5.

## III.   LEGAL STANDARD

Summary judgment should be granted where no genuine issue of material fact exists for resolution at trial, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotations omitted).

A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.* The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "And the moving party need not necessarily 'produce evidence showing the absence of a genuine issue of material fact.'" *Smith v. Schlage Lock Co., LLC*, 986 F.3d 482, 486 (4th Cir. 2021) (quoting *Celotex*, 477 U.S. at 325). "Rather, 'the burden on the moving party may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.*; *see also Cray Commc'ns, Inc. v. Novatel Comput. Sys., Inc.*, 33 F.3d 390, 393 (4th Cir. 1994) ("[U]nder *Celotex*, the moving party on a summary judgment motion need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case.") (internal quotations omitted). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has]

the burden of proof[,]" then the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322. The non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 252.

## IV. ARGUMENT

### A. The Calls at Issue Were Made Pursuant to an Established Business Relationship and Therefore Are Not "Telephone Solicitation Calls" Pursuant to the VTPPA.

This case should be dismissed as to all claims for calls that occurred while Plaintiff had an established business relationship ("EBR") with American Protection. Due to the EBR, Plaintiff's claims for violations of section 59.1-514 of the VTPPA fail as a matter of law because those calls were never "telephone solicitation calls" in the first place.

Count II of Plaintiff's Complaint alleges violations of Va. Code § 59.1-514(B) for making "telemarketing solicitation call(s)" to phone numbers on the National Do Not Call Registry. *See* Compl. ¶¶ 47-54. The VTPPA defines a "telephone solicitation call" as:

> (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or to a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth or (ii) any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the called person's telephone.

Va. Code § 59.1-510. However, Va. Code § 59.1-514(D) lists exceptions to what is considered a "telemarketing solicitation call," and one such exception includes any telephone call made to a person "(ii) with whom the person on whose behalf the telephone call is made has an established

business relationship[.]"   Thus, calls to people with whom the caller has an EBR are not "telemarketing solicitation calls," by definition.

The VTPPA's EBR exception provides that a call is not considered a "telemarketing solicitation call" if the party is making a call to prior or existing consumers within 18 months of the last transaction with that consumer, or three months after the consumer's last inquiry.  Va. Code § 59.1-510 (defining an "established business relationship").   If a consumer requests not to receive telephone solicitation calls before the applicable time period expires, the caller has 30 days to honor that request.[3]

There is no dispute that Plaintiff made an inquiry to American Protection regarding the products it sold by calling American Protection on May 26, 2020.[4]   This created an EBR that

---

[3]      While the VTPPA does not provide explicit guidance regarding the time-frame to honor a do-not-call request that terminates an EBR, the analogous TCPA Do-Not-Call regulations, which are incorporated by the VTPPA, clarify that a do-not-call request must be honored within 30 days of receiving the request, such that calls to such numbers are not actionable until after such grace period expires.  *See* Va. Code § 59.1-514(B) (incorporating 47 C.F.R. § 64.1200, which provides in subsection 64.1200(d)(3) that an entity making calls for telemarketing purposes must honor a do-not-call request within 30 days); *see also Bryant v. King's Creek Plantation, LLC*, No. 4:20-cv-00061, 2020 U.S. Dist. LEXIS 226044, at *8-9 (E.D. Va. June 22, 2020) (noting that the VTPPA is analogous to the TCPA's DNC provision, comparing 47 C.F.R. § 64.1200(c)(2) with Va. Code § 59.1-514(B)); *Hamilton v. Spurling*, Case No. 3:11cv00102, 2013 U.S. Dist. LEXIS 38585, at *34 n.12 (S.D. Ohio Mar. 20, 2013) ("[A]s the FCC report points out, it is not until a person who has an EBR with a telemarketer requests to be placed on a DNC list that a company must comply with the dictates of Section 64.1200." (quoting *Charvat v. Dispatch Consumer Servs.*, 769 N.E.2d 829, 834 (2002)).

[4]      *See* AP Dep. at 81:24 to 82:3 ("As it relates to this particular case that we are gathered here today to discuss, this was a consumer that received a mailer from us and called us to receive information."); *see id.* at 199:17-20 ("In this case, the plaintiff gave us a credit card number and agreed to the terms of a sale, so as far as [American Protection's subcontractor], she had written consent [to call] from a customer of [American Protection]."); *see also* Screenshots of American Protection CRM system, Ex. 7 (reflecting that Ms. Smith was sent "Direct Mail" on 5/22/2020); Smith Dep. at 92:10-18 ("Q: And in the process of trying to determine [who was trying to contact you], did you make an inquiry about who they were and what they were selling? A: Yeah, I was trying to determine who was trying to contact me."); AP Dep. at 180:10-20 (transcription of recording produced as SMITH_000027, in which "Samantha calling with American Protection" left a voicemail requesting Ms. Smith provide the VIN number for her

permitted American Protection to call Plaintiff back for a three-month period because such calls are excluded from the VTPPA's definition of "telephone solicitation call," and therefore such calls do not present actionable claims under the VTPPA's do-not-call provision in Va. Code § 59.1-514.[5]  The EBR then remained in place until June 11, 2020, when Plaintiff made her first and only do-not-call request.[6] At this point, American Protection had 30 days to honor that request (i.e., until July 11, 2020).

Accordingly, any of Plaintiff's claims against SunPath pursuant to  Va. Code § 59.1-514 which are based upon  its relationship with American Protection and which are predicated on calls made during the EBR period (i.e. between May 26, 2020 and July 11, 2020) should be dismissed.  Any calls American Protection made to Plaintiff during this timeframe were not "telephone solicitation calls" and are not actionable under the VTPPA's do-not-call provision.[7]

---

BMW that had previously been discussed with American Protection); *see also* Ex. 8 (Line of data extracted from Five9's Subpoena response showing the first interaction with Plaintiff's telephone number is dispositioned as "INBOUND" on May 26, 2020).

[5]    Decisions regarding the TCPA's EBR exception likewise show that the existence of the EBR exempts analogous do-not-call claims  *See, e.g., Rowan v. US Dealer Servs., Inc.*, Civ. No. 21-09945 (KM)(LDW), 2022 U.S. Dist. LEXIS 127153, at *13-14 (D.N.J. July 18, 2022), *appeal dismissed*, No. 22-2522 (3rd Cir. Nov. 21, 2022) (granting summary judgment in favor of TCPA defendant because the calls at issue were made pursuant to an established business relationship with a related business that was not a party to the case);  *Thomas-Lawson v. Koons Ford of Balt., Inc.*, Civil Case No. SAG-19-3031, 2020 U.S. Dist. LEXIS 59517, at *12-13 (D. Md. Apr. 6, 2020) (dismissing TCPA claims for failure to plead calls were actionable "telephone solicitations" due to existing EBR).

[6]    Plaintiff did not make a do-not-call request to American Protection until June 11, 2020. *See* Email, Ex. 12.

[7]    This would dispose of all claims based on the calls cited in Plaintiff's Complaint and listed in her November 11, 2022 Supplemental Response to Interrogatory 1, which includes only calls that occurred between May 26, 2020 and June 9, 2020.  *See* Compl. ¶ 24; Ex. 1 at 2-6. Plaintiff submitted a Third Supplemental Response to Interrogatory 1 on December 8, 2020, in which Plaintiff claims she "seeks damages and recovery for all calls placed to her cellular telephone number ending in 9650, which are reflected in the call records produced by Five9, Inc."  *See* Plaintiff's Third Supplemental Responses to SunPath's Discovery Requests at 6-7, attached as **Exhibit 14**.  SunPath posits that any Five9 records Plaintiff refers to are inadmissible, and further disputes the characterization of any data produced by Five9 as "call

**B.      SunPath Is Not Jointly Liable for Any Actions of American Protection.**

Even assuming, *arguendo*, that any calls American Protection made to Plaintiff were considered "telephone solicitation calls," all of Plaintiff's VTPPA claims against SunPath still fail because SunPath cannot be held jointly liable for any acts of American Protection.  Because SunPath does not make any telemarketing calls at all and has never made any calls to Plaintiff, Plaintiff's theory is that SunPath is vicariously liable for calls made by American Protection.  But notably, the VTPPA *does not* impose strict liability on any party considered to be a "seller" under the statute for the conduct of anyone making a call that is authorized to market the company's products.  *See Mantian Zhu v. Dish Network, LLC*, 808 F. Supp. 2d 815, 818 (E.D. Va. 2011) ("There is no evidence in the legislative history of the act that Virginia's legislature intended to impose strict liability on a company for the conduct of anyone making a phone call and claiming to represent the company.").

Rather, Va. Code § 59.1-514.1 presents a rebuttable presumption. Va. Code § 59.1-514.1(A) provides that a "seller on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call in violation of any provision of [the VTPPA] . . . shall be jointly and severally liable for such violation." And a "telephone solicitation call offering or advertising a seller's property, goods, or services shall be presumed to have been made or initiated on behalf of or for the benefit of the seller" unless rebutted by a showing of clear and convincing evidence "that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit and that the telephone

---

records," which itself constitutes an impermissible lay opinion about which Plaintiff has no personal knowledge.  Therefore, Plaintiff's December 8, 2022 Third Supplemental Answer to Interrogatory 1 does not create a dispute regarding the number of calls at issue, because it does not provide any admissible evidence as to the number of calls at issue or when such calls occurred.  *See* Fed. R. Civ. P. 56(c)(1)(B) (a material fact is not in dispute when "an adverse party cannot produce admissible evidence to support the fact").

solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent." Va. Code § 59.1-514.1(B).

SunPath cannot be found jointly liable for any conduct of American Protection that may have violated the VTPPA because no SunPath-related VSC was ever offered on any call to Plaintiff. Therefore, SunPath is not a "seller on whose behalf or for whose benefit" American Protection made any call to Plaintiff at issue in this case. And even if SunPath was considered a "seller" to which section 59.1-514.1(B)'s presumption applies, the factual record in this case shows that SunPath overcomes this presumption because it had no affiliation with or knowledge of the calls to Plaintiff at issue here.

        **1.**        **SunPath's Property, Goods, or Services Were not Offered to Plaintiff on any Call.**

SunPath cannot be held jointly and severally liable for the conduct of American Protection because SunPath was not mentioned on any call at issue. Again, the presumption of liability for a third-party's calls only applies if the subject "***telephone solicitation call*** offer[s] or advertis[es] a seller's property, goods, or services." Va. Code § 59.1-514.1(B) (emphasis added). But there is no material factual dispute that SunPath's name was never mentioned on any ***call*** between American Protection (via its own subcontractors) and Plaintiff. The first time Plaintiff ever saw (and crucially, not heard) SunPath's name was when she received an email from American Protection after inquiring about *American Protection*'s products and then took an additional step to click a hyperlink in that email. At that point, she was re-directed to *American Protection*'s website. There, she finally saw that a SunPath-related VSC was available for purchase based on the specifications of her vehicle that she had provided to American

Protection.[8]  Thus, Plaintiff did not even *see*—not hear—SunPath's name until she was two steps removed from her call with American Protection.

The VTPPA only applies to the content of the "telephone solicitation call," *not* the content on a website a consumer is re-directed to from an email the consumer received after expressing interest about a type of product discussed on a call.  And SunPath's name was not mentioned during any calls because American Protection sold multiple companies' products, and was unaware of what product would be offered until the consumer provided his or her vehicle information.[9]  This further illustrates why a *SunPath-related* product was not and could not have been offered during such calls as required for a finding of joint and several liability per Va. Code § 59.1-514.1(B).  SunPath therefore cannot be held jointly liable for any of the calls at issue.

### 2.    SunPath Is not a Seller as Defined by the VTPPA.

SunPath cannot be considered a "seller" under the VTPPA, and therefore cannot be subjected to joint and several liability for the conduct of American Protection.   Per Va. Code § 59.1-510, "'Seller' means any person on whose behalf or for whose benefit a telephone

---

[8]     As Plaintiff stated at deposition, her complete recollection of whether SunPath or another company's name was mentioned during the calls at issue was contained in the notes she created at the time of the calls, yet those notes do not contain a single mention of SunPath—nor was SunPath's name contained in American Protection's sales script or the email Plaintiff received. *See* Smith Dep. 53:9 to 54:6 (Plaintiff's recollection of the calls is contained in her call notes); *see also* Ruth Smith Call Notes (Bates labeled SMITH000031-36, which contain no reference to SunPath), Ex. 9; AP Dep. at 234:2-6 ("Q: Is it correct that, in [American Protection's sales script], as written, SunPath's name isn't mentioned in the sales script or on the – the cover of the – the script at all?  A: Correct."); Smith Dep. at 206:1 to 208:1 (Describing the actions Plaintiff took after receiving an email from American Protection); *see also* Email from American Protection to Plaintiff and Screenshot from American Protection's webpage (Bates labeled SMITH000022-26), Ex. 11.

[9]     AP Dep. at 21:4-6 ("Q: Okay.  Is SunPath the only company that American Protection works with? A: No."); *id.* at 23:10-12 ("Q: Did you ever work exclusively with just SunPath?  A: I don't believe so."); *id.* at 74:1-5 ("Q: . . . So at the time American Protection places a call, does it know which company's vehicle service plans it will be pitching on the call?  A: No."); *id.* at 32:9 to 33:16 (when American Protection spoke with any consumer, they would first need the consumer's vehicle information before determining what products they qualified for).

solicitation call offering or advertising the person's property, goods, or services is made or initiated." It is Plaintiff's burden to prove that this term applies to SunPath before Va. Code § 59.1-514.1(B)'s rebuttable presumption applies. Yet, Plaintiff cannot do so because the factual record in this case is clear that any of the calls at issue were not "on behalf of" or "for the benefit" of SunPath.

Most obviously, SunPath is not a seller because it does not sell anything. SunPath is the administrator of VSCs: it administers and pays for covered claims customers make under their SunPath-administered service contracts. SunPath does not sell the VSCs it administers—its products are sold by third-party sellers, much like auto manufacturers' cars are sold by independent dealers.[10]

More specific to the VTPPA's definition of the term, SunPath does not benefit from any specific sales American Protection makes via telemarketing efforts. American Protection purchased the SunPath VSCs at a wholesale price and was ultimately compensated under the Marketing Agreement by receiving the difference between the wholesale prices of the SunPath VSCs and whatever price American Protection charged its consumers. This latter price was at the sole discretion of American Protection.[11] Moreover, Plaintiff has never purchased a VSC administered by SunPath, so it certainly received no benefit in this case relating to calls made to Plaintiff, regardless of how the term "benefit" is construed.

---

[10]    Garcia Decl. ¶ 4, 7.

[11]    Garcia Decl. ¶¶ 14-15; AP Dep. at 45:25 to 47:8 ("SunPath does not compensate [American Protection] for the sales."); *id.* at 60:24 to 61:12 ("Q: Now, these contracts, they're on a monthly basis, right? These customers pay a certain amount each month? A: Yes. Q: Okay. Who do they pay that amount to? A: To [American Protection]. Q: And then does a share of that each month go to SunPath or . . . how does that work? A: No. . . . No. SunPath bills us for the policy.").

Furthermore, American Protection did not make any calls "on behalf" of SunPath. In fact, the record shows that subcontractors American Protection hired, and who had no relationship with SunPath,[12] made the calls at issue to sell the products marketed by American Protection, the only "seller" in this case. SunPath has no relationship whatsoever with the subcontractor(s) responsible for making any call to Plaintiff, and is a further step removed from any telephone solicitations that may be governed by the VTPPA.

Furthermore, there is no factual dispute that American Protection's subcontractors did not know what company's products would be offered to any consumer when a call was received or made: The product being offered—whether a SunPath-related product or a competitor's—was not determined until after a consumer provided information related to his or her vehicle.[13] Much like a grocery store is not acting "on behalf" of every company whose products line its shelves, and a bar is not acting "on behalf of" every brewery whose beer is on tap, American Protection could not be considered to be acting "on behalf of" SunPath or any other party whose products it sold. *See Worsham v. Disc. Power, Inc.*, Civil Action No. RDB-20-0008, 2022 U.S. Dist. LEXIS 139580, at *21 (D. Md. Aug. 4, 2022) (dismissing analogous TCPA claims on a motion for summary judgment because "at best, Hound Energy and AGR were responsible for

---

[12]    *See* AP Dep. at 79:13-22 ("Q: You previously testified that American Protection does not have employees . . . [h]ow does American Protection place calls to potential clients? . . . A: Who? We work with some subcontractors . . . that are speaking to the consumers."); *id*. at 221:10-13 ("Q: To your knowledge, would SunPath even know the names of any of American Protection's employees or independent contractors, besides yourself? A: No."); SunPath Dep. at 76:7-10 ("Q: To your knowledge, would SunPath have any knowledge of any subcontractor that American Protection would have hired in order to market or sell any product? A: No."); AP Dep. at 226:16-20 (American Protection's subcontractors were paid by American Protection, never by SunPath).

[13]    *See* AP Dep. at 74:1-5 ("Q: . . . So at the time American Protection places a call, does it know which company's vehicle service plans it will be pitching on the call? A: No."); *id*. at 32:9 to 33:16 (when American Protection spoke with any consumer, they would first need the consumer's vehicle information before determining what products they qualified for).

independently soliciting customers for Discount Power, not for 'act[ing] on the principal's behalf and subject to the principal's control.'") (internal citations omitted).[14]   It is clear that *American Protection*, not SunPath, is the party on whose behalf the calls were being made because American Protection's subcontractors announced this on voicemail recordings Plaintiff produced.[15]   There is no dispute that American Protection is the only party that sold anything in this case, and it did so as an independent contractor, as provided by the terms of the Marketing Agreement, and for its own benefit.

Accordingly, SunPath is not considered a "seller" under the VTPPA.  Because any joint liability pursuant to Va. Code § 59.1-514.1 is conditioned on the non-calling party's status as a seller, Plaintiff's VTPPA claims against SunPath necessarily fail.

---

[14]     *See also*, *e.g.*,  *Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 365  (N.D. Ind. 2021) (citing *Carlisle v. Deere & Co.*, 576 F.3d 649 (7th Cir. 2009)) (finding that a dealer is not an agent of the manufacturers of the products it sells, especially when the dealer sells multiple brands); *In re Monitronics Int'l, Inc.*, 223 F. Supp. 3d 514, 527-28 (N.D.W. Va. 2016) (granting summary judgment because "the mere fact that a dealer uses a suppliers name does not render it an agent of the supplier, just as every bar which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise."); *Makaron v. GE Sec. Mfg.*, CV-14-1274-GW (AGRx), 2015 U.S. Dist. LEXIS 75240, at *19-20 (C.D. Cal. May 18, 2015) (granting motion for summary judgment due to lack of actual agency despite license to use trademarks and logos because applicable contracts indicated the dealers were independent contractors).

[15]     *See* AP Dep. at 180:10-20 (transcription of recording produced as SMITH_000027, in which "Samantha calling with *American Protection*" left a voicemail for Plaintiff).  If SunPath were hypothetically to be considered the party this call was made "on behalf of," compliance under the VTPPA's solicitor identification provision, Va. Code § 59.1-512, requiring the caller to identify himself and the party he is calling on behalf of, would be unachievable.  This would require that the caller give their name, the seller they were actually calling from, and then every separate company whose products the seller may sell, regardless of whether the caller would be offered any of those companies' products.  This is clearly not what the statute contemplates, just as SunPath is clearly not the party any call at issue was made "on behalf of."

3.    **The Factual Record Supports that SunPath Had No Connection to any Allegedly Unlawful Calling Practices that Could Subject it to Joint Liability Under the VTPPA's Rebuttable Presumption.**

Because SunPath-related products were not mentioned on any call, and SunPath is not considered a "seller" under the VTPPA, Plaintiff's VTPPA claims fail without needing to examine the applicability of Va. Code § 59.1-514.1(B)'s presumption of joint liability for another party's telephone solicitation calls.  But even if this presumption did apply to SunPath in this case, the presumption is rebutted here.

"The presumption [that a telephone solicitation call offering or advertising a seller's property, goods, or services was made or initiated on behalf of or for the benefit of the seller] may be rebutted if it is shown by clear and convincing evidence that the seller did not retain or request the telephone solicitor to make telephone solicitation calls on the seller's behalf or for the seller's benefit and that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor without the seller's knowledge or consent."  Va. Code § 59.1-514.1(B).

The Marketing Agreement between SunPath and American Protection states that "[American Protection] . . .  shall use utmost good faith and best efforts to ensure that their respective operations are conducted in connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties."  Marketing Agreement at ¶ 30.[16]

---

[16]    A duty to comply with the VTPPA or the analogous TCPA can be delegated to independent contractors.  *See Mantian Zhu*, 808 F. Supp. 2d at 819;  *see also Worsham*, 2022 U.S. Dist. LEXIS 139580, at *18;  *Simmons v. Charter Commc'ns., Inc.*, 222 F. Supp. 3d 121, 137 (D.Conn. 2016) ("there is no better way to ensure compliance with the TCPA than to include such compliance as an essential term of the contract.").

As discussed above, a "telephone solicitation call" under the VTPPA excludes calls made pursuant to an established business relationship. Va. Code § 59.1-514(D).  The definition also excludes calls made with the person's prior express invitation or permission to be called.  *Id.*  Therefore, if American Protection was engaged in making "telephone solicitation calls" as defined by the VTPPA, i.e., not within either of these exceptions, it was acting *outside the scope* of its contractual authority by violating the VTPPA without SunPath's knowledge and contrary to its contractual commitments to SunPath.  Moreover, the VTPPA's provision regarding joint liability only applies to "prohibited acts," (*see* Va. Code § 59.1-514.1 titled "Joint Liability of seller and telephone solicitor for *prohibited acts*; rebuttable presumption.") (emphasis added), which again would be outside the scope of American Protection's authority under the Marketing Agreement.

In other words, pursuant to the express terms of the agreement between SunPath and American Protection, there was no scenario in which SunPath authorized American Protection to make "telephone solicitation calls" or engage in any "prohibited acts" that could subject it to joint liability under the VTPPA.   Indeed, another court very recently ruled on summary judgment that SunPath could not be held liable for a third-party seller's actions allegedly made in violation of the TCPA, because any unlawful conduct was explicitly prohibited under the applicable agreement, and therefore was not authorized by SunPath.  *See Black v. SunPath Ltd.*, Case No. 3:21-cv-00023, 2022 U.S. Dist. LEXIS 165799, at *9-10 (M.D. Tenn. Sep. 14, 2022), *appeal filed*, No. 22-5927 (6th Cir. Oct. 18, 2022) ("By relying on the formal contract between the parties, without any additional evidence of a broader, implicit understanding between SunPath and [an independent third-party seller], [Plaintiff] has placed herself in the difficult position of trying to establish authority to perform an act based on an agreement that clearly and

emphatically forbids that act under any circumstances.") (citing *Kern v. VIP Travel Servs.*, Case No. 1:16-CV-8, 2017 U.S. Dist. LEXIS 71139, at *19 (W.D. Mich. May 10, 2017)).

Beyond the plain language of the Marketing Agreement, which is sufficient to rebut the applicable presumption, the record is clear that SunPath has no knowledge that American Protection ever undertook to make unlawful "telephone solicitation calls." In SunPath's investigation relating to Plaintiff's claims in this case, SunPath requested information from American Protection, to which American Protection responded by insisting it did not violate any telemarketing laws in association with Plaintiff's claims.[17] American Protection testified at deposition that it only made calls to potential customers that had requested to be contacted by American Protection, either by providing consent to be called via a website, or via first calling in themselves to American Protection.[18] SunPath is not aware of any complaints involving telemarketing activities of American Protection that occurred prior to the calls that form the basis of Plaintiff's claims in this lawsuit, is not aware of any instance in which American Protection was found to have violated any law involving telemarketing, and has at no point authorized

---

[17]     *See* SunPath Dep. at  73:14 to 74:15 (American Protection represented to SunPath's in house counsel that American Protection did not violate any telemarketing laws that are at issue in this case); SunPath Disc. Resps. at 5-6 (Answer to Interrogatory 6).

[18]     *See* AP Dep. at 77:17-25 ("Q: Does American Protection ever place telemarketing calls to consumers that it hasn't previously sent a mailer to?  A: We only contact prospects that have requested information about those services . . . we have no interest in just contacting folks that have no interest in our products."); *id.* at 84:15 to 85:4 ("Q: How does American Protection ensure that individuals that it's placing calls to have provided prior express consent?  . . . A: I mean I review to make sure that the proper opting language is present, that our name is clearly stated, that the consumer understands they will receive a call from us, and that it authorizes us, to receive a call . . . within the means we would be using."); *see also id*. at 138:23 to 139:23 (Q: "Is it fair . . . to say that [American Protection's] subcontractors place calls on behalf of American Protection to solicit sales of vehicle service contracts? A: No, we don't . . . We return requests for contacts from potential customers.  We don't just solicit . . . and call.  We have folks that are calling and requesting information, and in some cases, we reach out to people with requested information."); *id*. at 195:25 to 196:20 (American Protection's business practices are only to call people who have "opted-in," meaning they "requested to be contacted from [American Protection], specifically . . . either via online, via a website, or via calling in.").

American Protection to violate any laws involving telemarketing or ratified any conduct by American Protection that may have violated any telemarketing laws.[19]

Based on this record—when the alleged unlawful calls were made "without the seller's knowledge or consent"—summary judgment in favor of the SunPath, to the extent it can even be considered a "seller," is appropriate.  *See Hodgin v. UTC Fire & Sec. Ams. Corp.*, 885 F.3d 243, 253 (4th Cir. 2018) (granting summary judgment for defendants in part because the record showed defendants repudiated any allegedly unlawful acts by third-party telemarketers); *see also Black*, 2022 U.S. Dist. LEXIS 165799, at *12-13 (granting summary judgment in favor of SunPath because there was no evidence that SunPath had knowledge of and subsequently ratified the relevant allegedly unlawful calling practices of a third party).

Furthermore, the record clearly shows that while SunPath had an agreement with American Protection that authorized it to market SunPath-related products alongside those of other companies, SunPath did not direct or control how American Protection conducted its operations.  Here, SunPath had no relationship whatsoever with any of the subcontractors American Protection hired and who made any calls to consumers.  As explained in Section II(B)(2), *supra*, neither American Protection nor its subcontractors acted "on behalf of" SunPath or for SunPath's benefit—SunPath did not directly financially benefit from any sale made by American Protection, and had no knowledge of how American Protection's subcontractors

---

[19]    *See* SunPath's Supplemental Response to Plaintiff's Discovery Requests at 3, Ex.12; *see also* SunPath Dep. at 81:5-10 ("Q: [D]o you have any knowledge at all of American Protection being accused of telemarketing violations prior to the calls that are at issue in this case that Ruth Smith has filed against SunPath? A: No."); *id*. at 81:19 to 83:3 (SunPath has never directed or authorized American Protection to violate the TCPA, VTPPA, or any other laws governing telemarketing, or ratified any conduct by American Protection that may have violated any laws involving telemarketing.); AP Dep. at 234:16 to 237:5 (same).

decided who to contact or whether those subcontractors would offer any consumer SunPath-related products or another company's products.

Finally, Plaintiff cannot offer any material evidence to show that American Protection made calls "on behalf of" SunPath.  She admittedly has never interacted with SunPath in any way.  No one from American Protection ever conveyed to her that it operated "on behalf of" SunPath.  And Plaintiff lacks any knowledge as to the specifics of the relationship between SunPath and American Protection.[20]  Besides reading SunPath's name on a website she visited separate from any call at issue, Plaintiff and SunPath were strangers to each other until Plaintiff's attorneys contacted SunPath in the form of a pre-suit demand.  *See Black*, 2022 U.S. Dist. LEXIS 165799, at *11 (granting summary judgment dismissing claims against SunPath because SunPath did not manifest to Plaintiff that a third-party marketer was authorized to operate on its behalf).[21]

---

[20]    *See* Smith Dep. at 157:21 to 158:9; 162:8 to 163:6 (Plaintiff admits she has never communicated with anyone from SunPath, that no one from American Protection ever represented to her that they were operating "on behalf of" SunPath, and that she does not know anything about the "ins and outs" of the relationship between American Protection and SunPath.); *id.* at 157:15-20 (The basis of Plaintiff's belief that American Protection acted on behalf of SunPath is "[b]ecause of the – I believe because the telemarketer and also because of all the, you know, calls that I received."); *id.* at 206:1 to 208:1 (Plaintiff testified that SunPath's name was not in the email Plaintiff received after she made her inquiry regarding American Protection's products, and she did not see SunPath's name at all until clicking a separate link in the email that then re-directed Plaintiff to American Protection's webpage.); *see also* Email from American Protection to Plaintiff and Screenshot from American Protection's webpage (Bates labeled SMITH000022-26), Ex. 11.

[21]    SunPath also notes that under Virginia law, vicarious liability has never been imposed on a party for the acts of an independent contractor via a theory of apparent agency based on a third-party's belief that the purported agent is authorized to act on behalf of a principal.  *See Giordano v. Atria Assisted Living, Virginia Beach, LLC*, 429 F. Supp. 2d 732, 738 (E.D. Va. 2006) (In Virginia, "[t]he apparent agency relationship is not easily established, even in circumstances where the alleged apparent agent seems closely connected to the principal.") (internal citation omitted); *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 307-08 (2005) ("[I]n Virginia, we have not previously imposed vicarious liability on an employer for the negligence of an independent contractor on the basis of apparent or ostensible agency, or agency by estoppel."); *see also S. Floors & Acoustics, Inc. v. Max-Yeboah*, 267 Va. 682, 690 n.1 (2004)

For the foregoing reasons, even if Va. Code § 59.1-514.1's presumption of joint liability is found to apply to SunPath, the factual record supports via clear and convincing evidence that none of the calls at issue in this case were made on behalf of SunPath, and SunPath has no knowledge of and has not consented to any party making unlawful telemarketing calls. Accordingly, Plaintiff's VTPPA claims against SunPath should be dismissed.

### C.   Plaintiff's Claims Pursuant to Va. Code § 59.1-512 Fail as to All Calls at Issue that Went Unanswered.

Count III of Plaintiff's Complaint alleges violations of Va. Code § 59.1-512, which provides that "A telephone solicitor who makes a telephone solicitation call shall identify himself by his first and last names and the name of the person on whose behalf the telephone solicitation call is being made promptly upon making contact with the called person."  In addition to the arguments set forth above that SunPath cannot be subjected to any joint liability for alleged VTPPA violations stemming from calls made by American Protection, Plaintiff's claims also fail under Count III for all calls that went unanswered.  More specifically, Plaintiff describes 54 calls in her Supplemental Response to Interrogatory 1, of which Plaintiff describes 46 as "unanswered," without any further description of the contents of any call. Ex. 1 at 2-6. Accordingly, there is no dispute that Plaintiff did not speak with anyone that failed to properly identify themselves as required by Va. Code § 59.1-512 during any of these calls.  Plaintiff's claims pursuant to Count III should therefore be dismissed as to all of these unanswered calls.

---

("As a general rule, an owner who employs an independent contractor is not liable for injuries to third persons caused by the contractor's negligence." (quoting *Kesler v. Allen*, 233 Va. 130, 134 (1987))).

## V.      CONCLUSION

WHEREFORE, Defendant SunPath requests that this Court grant its Motion for Summary Judgment, and grant such other relief as it deems necessary.

Dated: December 23, 2022                    Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Gregory M. Caffas*
Gregory M. Caffas (VSB No. 92142)
Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
gcaffas@rothjackson.com
mroth@rothjackson.com

Joseph P. Bowser (VSB No. 88399)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com

*Counsel for SunPath, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that I caused the above and foregoing Defendant SunPath, Ltd.'s Memorandum in Support of its Motion for Summary Judgment to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on December 23, 2022.

/s/ *Gregory M. Caffas*
Gregory M. Caffas