# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

**RUTH SMITH**, individually and on behalf of all
others similarly situated,

        Plaintiff,

        v.

**SUNPATH, LTD.**, a Massachusetts corporation,

        Defendant.

Case No. 1:22-cv-00081-LMB-WEF

## PLAINTIFF'S OBJECTIONS AND RESPONSES TO
## DEFENDANT'S FIRST SET OF DISCOVERY REQUESTS

Plaintiff Ruth Smith ("Smith" or "Plaintiff"), by and through her undersigned counsel, for

her responses and objections to Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") First Set

of Discovery Requests, states as follows: all responses and objections contained herein are based

only upon such information presently available to Plaintiff. Further discovery, investigation,

research and analysis may supply additional facts and/or add meaning to known facts. The

responses below are given without prejudice to Plaintiff's right to later produce additional

documents or information.

## INTERROGATORIES

1.     Identify all telephone calls to Your Cellular Telephone Numbers for which you

seek recovery in this Lawsuit that you allege were made by or on behalf of SunPath, and state all

factual bases for your contention that each call was made by or on behalf of SunPath.

ANSWER: Objection, this interrogatory also seeks information that is more readily in the

possession, custody, or control of Defendant and/or third parties. This interrogatory is also

premature. Without waiving said objections, Plaintiff will produce documents evidencing the

1

calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

SUPPLEMENTAL ANSWER: Objection, this interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory is also premature. Without waiving said objections, Plaintiff will produce documents evidencing the calls that she received by or on behalf of SunPath. The calls at issue were placed for the purpose of selling SunPath's products and services. Plaintiff will supplement this response following the receipt of relevant calling data from third parties.

On May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 410-844-6327 directed to her cellular telephone number ending in 9650. Upon answering the calls, Plaintiff heard a pause and a click, which is indicative of an automatic telephone dialing system. On information and belief, this call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The caller did not identify themselves by their first and last name. Further, the caller solicited Plaintiff to purchase SunPath's products and services.

Also on May 26, 2020, Plaintiff received two unsolicited calls from the caller ID 281-709-0786 at 4:45 p.m. and 6:51 p.m. directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 28, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. Plaintiff received three calls at 10:07 a.m., 1:52 p.m., and 1:54 p.m., which went unanswered. Plaintiff answered three calls at

10:57 a.m., 12:51 p.m., and 3:08 p.m. Upon answering the 10:57 a.m. and 12:51 p.m. calls, Plaintiff heard music and a three to five second delay before being connected to "Samantha" (no last name was provided). Upon answering the 3:08 p.m. call, Plaintiff heard music and a three to five second delay before being connected to "Rebecca" (no last name was provided) before being transferred to "Samantha" (no last name was provided). Following the 3:08 p.m. call, Plaintiff received an email from Samantha Jaeger. Plaintiff also received a call at 11:51 a.m, which was unanswered and "Samantha" (no last name was provided) left a voicemail message. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. Further, all of the calls were placed for the purpose of soliciting the sale of SunPath's products and services.

On May 29, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 29, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On May 30, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff

asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 1, 2020, Plaintiff received seven unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 10:14 a.m., 5:11 p.m., 5:12 p.m., 5:41 p.m., 7:08 p.m., 7:09 p.m., and 7:10 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 1, 2020, Plaintiff received one unsolicited call from the caller ID 281-709-0849 directed to her cellular telephone number ending in 9650. After this call went unanswered, the caller left a voicemail message, in which they did not identify themselves by first and last name. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's products and services.

On June 2, 2020, Plaintiff received three unsolicited calls from the caller ID 281-709-0786 directed to her cellular telephone number ending in 9650 at the following times: 1:44 p.m., 4:13 p.m., and 5:34 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 3, 2020, Plaintiff received three unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: at 1:05 p.m., 5:34 p.m., and 7:21 p.m. These calls went unanswered. On information and belief, the calls

4

were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 4, 2020, Plaintiff received one unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 5, 2020, Plaintiff received five unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 10:52 a.m., 10:53 a.m., 11:31 a.m., 12:32 p.m., and 2:46 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 6, 2020, Plaintiff received two unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 2:17 p.m. and 2:18 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

On June 8, 2020, Plaintiff received eight unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 12:59 p.m., 1:00 p.m., 1:21 p.m., 4:51 p.m., 4:52 p.m., 7:31 p.m., and two calls at 7:32 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing

system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

Also on June 8, 2020, Plaintiff received an unsolicited call from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at 1:00 p.m. The caller left a voicemail soliciting the sale of SunPath's products and services and did not identify themselves by first and last name. On information and belief, the call was placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of this call was to solicit the sale of SunPath's products and services.

On June 9, 2020, Plaintiff received four unsolicited calls from the caller ID 407-479-7228 directed to her cellular telephone number ending in 9650 at the following times: 11:10 p.m., 4:32 p.m., and two calls at 7:39 p.m. These calls went unanswered. On information and belief, the calls were placed using the Five9, Inc. dialing system, which Plaintiff asserts constitutes an ATDS. The purpose of these calls was to solicit the sale of SunPath's products and services.

Plaintiff reserves the right to supplement this response following the receipt of relevant documents and data from third parties, which identify all of the calls at issue in this case.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has requested the relevant call records from her telephone service provider, AT&T. She was informed on November 16, 2022 that the records would be mailed to her. As of today, November 30, 2022, Plaintiff has not received the records in the mail from AT&T. When she does, the relevant records will be produced.

2.      If you contend that SunPath is directly liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

SUPPLEMENTAL ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, the calls at issue were place for the purpose of soliciting Plaintiff to purchase SunPath's vehicle service contracts. (*See* SMITH000022-26.) As such, SunPath is a "seller" within the meaning of Va. Code Ann. § 59.1-514.1 (West). Accordingly, Plaintiff asserts that SunPath is directly liable under Va. Code Ann. § 59.1-514.1 (West) for the calls in violation of the VTPPA.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has stated all facts currently in her knowledge in response to this interrogatory. Plaintiff acknowledges that SunPath did not make the calls to her itself/directly. Instead, the calls were placed by third parties.

3.    If you contend that SunPath is vicariously liable for any of the telephone calls identified in your answer to Interrogatory No. 1, identify such telephone calls and state all facts in support of such contention with respect to each such call.

ANSWER: Objection, this contention interrogatory is grossly premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at

7

issue were placed for the purpose of selling SunPath's products and services. Moreover, Plaintiff directs SunPath's attention to its contractual agreements with Chukran Management Group, LLC and other third parties. Additionally, in the context of the VTPPA claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1 (West). Otherwise, investigation continues, and Plaintiff will supplement this response following the receipt of relevant documents and data.

SUPPLEMENTAL ANSWER: Objection, this contention interrogatory is premature. The interrogatory also seeks information that is more readily in the possession, custody, or control of Defendant and/or third parties. Without waiving said objections, Plaintiff states that the calls at issue were placed for the purpose of selling SunPath's products and services, specifically its vehicle service contracts. Indeed, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection") testified that it placed calls for the purpose of soliciting sales of SunPath's vehicle service contracts. Further, American Protection asserts that SunPath provided training to assist in selling its products and services. Further, Plaintiff directs SunPath's attention to its contractual agreements with American Protection, which governs the relationship with SunPath and reveals substantial control that SunPath asserts of American Protection's operations and telemarketing. Additionally, Plaintiff also directed SunPath's attention to documents produced, which reflect SunPath's appointment of American Protection as its agent in the State of Florida for the purposes of selling automobile warranties. Plaintiff also asserts that SunPath is liable for American Protection's actions by ratifying its acts and omissions, including accepting the benefits of the telemarketing calls at issue. Additionally, in the context of the VTPPA claims, Plaintiff asserts that SunPath is liable under Va. Code Ann. § 59.1-514.1 (West) as set forth in response to Interrogatory No. 2 above. Otherwise, investigation continues, and Plaintiff will supplement this response following the receipt of relevant documents and data.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has already

stated the facts currently in her knowledge in response to this interrogatory, and points SunPath

to the deposition transcript from American Protection's deposition for additional details. To the

extent additional information may be learned between now and the close of discovery, the

interrogatory will be supplemented as such additional information becomes available.

18.     If you contend that you suffered any compensable harm(s) as a result of the calls

or text messages identified in your answer to Interrogatory No. 1, then state all facts in support of

such contention and identify the amount of damages you are seeking in this action for such

harm(s) and from which Defendant.

ANSWER: Objection, this interrogatory is premature as discovery has just commenced.

This interrogatory also seeks information more readily in the possession, custody, or control of

Defendant and/or third parties. This interrogatory also calls for a legal conclusion. Without

waiving said objections, Plaintiff states that she is entitled to $500 - $1,500 per call received in

violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000

per call for the second call received in violation of the VTPPA, and $5000 per call for each

subsequent call received in violation of the VTPPA. Plaintiff is unable to provide a full and

complete computation of damages at this time. Discovery is ongoing and Plaintiff will

supplement this response following receipt of relevant data from Defendant and any other

relevant sources regarding the number of calls made. Plaintiff further states that the legal harms

she suffered include aggravation, nuisance, invasions of privacy that result from the receipt of

Defendant's unwanted calls, loss of value realized for the monies it paid to its wireless carrier,

interruption and loss of use and enjoyment of her telephone (including the related data, software, and hardware components), and wear and tear on her cellphones.

SUPPLEMENTAL ANSWER: Objection, this interrogatory is premature as discovery has just commenced. This interrogatory also seeks information more readily in the possession, custody, or control of Defendant and/or third parties. This interrogatory also calls for a legal conclusion. Without waiving said objections, Plaintiff states that she is entitled to $500 - $1,500 per call received in violation of the TCPA, $500 per call for the first call received in violation of the VTPPA, $1,000 per call for the second call received in violation of the VTPPA, and $5,000 per call for each subsequent call received in violation of the VTPPA. Consequently, based on the information currently available to Plaintiff, she seeks $81,000 in damages for violations of the TCPA, and she seeks $261,500 in damages for violations of the VTPPA. Plaintiff is unable to provide a full and complete computation of all class members' damages at this time. Discovery is ongoing and Plaintiff will supplement this response following receipt of relevant data from Defendant and any other relevant sources regarding the number of calls made. Plaintiff further states that the legal harms she suffered include aggravation, nuisance, invasions of privacy that result from the receipt of Defendant's unwanted calls, loss of value realized for the monies it paid to its wireless carrier, interruption and loss of use and enjoyment of her telephone (including the related data, software, and hardware components), and wear and tear on her cellphones.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Plaintiff has stated the damages calculation to the best of her ability at this time. When Plaintiff receives her call records from AT&T, she will be in a better position to split out the damages sought for each individual call she received, and will do so promptly once the records are in her physical possession.

10

21.   Identify any and all settlement agreements you have entered into with any party regarding claims for alleged unlawful telephone calls or text messages, including any alleged violations of the TCPA or VTPPA, from January 26, 20217 to present, including the parties to those agreements and the amount of any monetary compensation or other consideration you received under the terms of such agreements.

ANSWER: Objection, this interrogatory is also overbroad, unduly burdensome, and beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. Here, this interrogatory seeks information regarding settlement and lawsuits that has no relevance to the claims and defenses in this lawsuit. Plaintiff further objects to the extent this interrogatory seeks information protected by the attorney client privilege and/or confidentiality agreements. This interrogatory is also designed to harass.

SUPPLEMENTAL ANSWER: Plaintiff reiterates her objection that the information sought is beyond the scope of discovery set forth by FRCP 26(b)(1), as this interrogatory seeks information that is in no way related to the claims and allegations at issue. However, in light of the Court's order, below Plaintiff states the name of the case, date of the settlement, and release language for each settlement she has been a party to related to alleged unlawful text messages or phone calls since January 2017. Note that these cases all pre-date the calls which gave rise to this case and are therefore irrelevant, as Plaintiff previously stated. Furthermore, please note that there are two settlements unrelated to telemarketing which are not included below. One is a divorce, the other is related to mislabeled food products.

1.   Defendant/Company: Vehicle Protection Specialist

Date of agreement: September 30, 2019

Release: "In consideration of the promises contained herein and the relinquishment of Complainants' legal rights regarding any claims arising out of or related to any actual or alleged violations of law the Complainant, his heirs, dependents successors, legal representatives and assigns, do hereby release, acquit and forever discharge Company, along with each of their officers, directors, shareholders, employees, assigns, successors, servants, and attorneys, from any and all claims, liabilities, demands, suits, and causes of action of every nature and kind, whether vested or contingent from the beginning of time, up to the date of this signed agreement."

2.   Defendant/Company: My Financial Solutions

Date of Agreement: August 1, 2019

Release: "In consideration of the promises contained herein and the relinquishment of Complainants' legal rights regarding any claims arising out of or related to any actual or alleged violations of law the Complainant, his heirs, dependents successors, legal representatives and assigns, do hereby release, acquit and forever discharge Company, along with each of their officers, directors, shareholders, employees, assigns, successors, servants, and attorneys, from any and all claims, liabilities, demands, suits, and causes of action of every nature and kind, whether vested or contingent from the beginning of time, up to the date of this signed agreement."

3.   Defendant/Company: Vehicle Protection Specialist

Date of Agreement: July 23, 2019

Release: "In consideration of the promises contained herein and the relinquishment of Complainants' legal rights regarding any claims arising out of or related to any actual or alleged violations of law the Complainant, his heirs, dependents successors, legal representatives and assigns, do hereby release, acquit and forever discharge Company, along with each of their officers, directors, shareholders, employees, assigns, successors, servants, and attorneys, from any and all claims, liabilities, demands, suits, and causes of action of every nature and kind, whether vested or contingent from the beginning of time, up to the date of this signed agreement."

## REQUESTS FOR ADMISSION

7.      You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number before May 26, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Plaintiff admits that she is not currently in possession of any audio evidence reflecting any communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020. Plaintiff also admits that she is not presently aware of any written evidence that are in her possession reflecting communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020. However, Plaintiff can neither admit nor deny whether she is, in fact, in possession of written evidence reflecting calls placed by SunPath or any party acting on behalf of SunPath directed to her cellular telephone before May 26, 2020 because she has access

13

to her cellular telephone bills, which may reflect such calls reflecting the full scope of all calls at issue in this case. Additionally, SunPath refused to identify third parties that may have placed calls to Plaintiff in discovery, which may reveal responsive documents and information.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Admit, as of this date, given the information currently in Smith's physical possession. To the extent the cellphone records referenced above, or other discovery,  changes the answer, a supplement will be sent.

8.      You are in possession of no written or audio evidence that SunPath or any party allegedly acting on SunPath's behalf contacted you via Your Cellular Telephone Number after June 9, 2020.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Plaintiff admits that she is not currently in possession of any audio evidence reflecting any communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. Plaintiff also admits that she is not presently aware of any written evidence that are in her possession reflecting communications by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020. However, Plaintiff can neither admit nor deny whether she is, in fact, in possession of written evidence reflecting calls placed by SunPath or any party acting on behalf of SunPath directed to her cellular telephone after June 9, 2020 because she has access to her cellular telephone bills, which may reflect such calls once third parties identify the full scope of the calls. Additionally, SunPath refused to identify third parties that may have placed calls to Plaintiff in

14

discovery, which may reveal responsive documents and information.

NOVEMBER 30, 2022 SECOND SUPPLEMENTAL ANSWER: Admit, as of this date, given the information currently in Smith's physical possession. To the extent the cellphone records referenced above, or other discovery, changes the answer, a supplement will be sent.

16.    During each of the calls described in Paragraphs 23-24 of your Complaint, the caller did not state that he or she was calling from or on behalf of SunPath.

RESPONSE: At this time Plaintiff lacks sufficient knowledge and information to either admit or deny this request.

SUPPLEMENTAL RESPONSE: Deny. For every call that was answered or that left a voicemail message, the caller did not identify themselves by first and last name. A complete breakdown of the calls at issue can be found in Plaintiff's supplemental response to Interrogatory No. 1.

Dated: November 30, 2022

RUTH SMITH, individually and on behalf of all others similarly situated,

By:  _/s/ Patrick H. Peluso_
         One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675

Facsimile: (303) 927-0809

Attorneys for Plaintiff and the Classes

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above papers was

served upon counsel of record by electronic mail on November 30, 2022.

*/s/ Patrick H. Peluso*