## CALL CENTER MARKETING AGREEMENT

THIS CALL CENTER MARKETING AGREEMENT (the "Agreement") is entered into effective as of June 29, 2017 by and between SunPath LTD, a Delaware corporation (hereinafter referred to as the "Company"), and Chukran Management Group, LLC, a Florida limited liability company (hereinafter referred to as "CCM").

WHEREAS, Company develops and/or administers automobile service contracts for individual automobile consumers ("Customers"), and

WHEREAS, CCM desires to market and sell the products identified and defined in Addendum A ("Products") to prospective Customers in the Territory referenced below, and

WHEREAS, Company desires to have CCM market the Products to Customers for which CCM will be compensated as set forth below.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties hereby agree as follows:

## GENERAL PROVISIONS

1) The Company grants CCM authority to solicit Customers on a non-exclusive basis only in the territory defined in Addendum B hereto (hereinafter referred to as the "Territory") and under the terms of the Agreement. CCM shall not solicit the sale of Products anywhere other than in the Territory without the prior written permission of the Company and then only after an amendment to this Agreement is executed by Company and CCM.

2) CCM shall at all times adhere to Company's written Standards of Conduct prescribed by Company from time to time and in its sole discretion. CCM acknowledges receipt of the Standards of Conduct, and has no authority to deviate from, alter or amend same. The Company reserves the right to reject any prospective Customer and to terminate any and all agreements entered into with any Customer in its sole discretion. A copy of the Standards of Conduct is attached hereto as Exhibit 1.

3) The Company agrees to provide CCM with Product forms, promotional materials, rates and other materials (the "Promotional Materials") needed to properly secure and service Customers procured by CCM. CCM shall not alter, substitute or supplement the Promotional Materials without Company's written authorization and approval.

4) CCM shall install, or arrange for the installation, of the Company's Products in accordance with the Company's policies and procedures as changed and/or updated from time to time.

5) CCM agrees to actively market the Products. This Agreement in no way requires CCM to exclusively market the Products offered by Company. CCM recognizes and acknowledges that it has no exclusive rights to market or sell the Products.

6) CCM shall perform such other acts as are necessary for the proper conduct of the business and for the protection and safeguarding of the interests of the Company in accordance with the Company's policies and procedures.

7) CCM shall provide continued maintenance and servicing to Customers in accordance with the Company's policies and procedures.

8) CCM shall provide to the Company, no less than once a month, all information required by Company for each Product marketed to Customers.

9) CCM is at all times acting as an independent contractor and not as an employee of the Company. Nothing herein shall be construed to create a relationship of employer and employee, a partnership, joint venture, or association between the Company and CCM.

Exhibit
0003

## REMITTANCE OF PRODUCT NET COST

10) All amounts constituting Product Seller Cost and/or Net Price which are received by CCM (hereafter a "Full Pay") shall be held in trust by CCM for Company's sole benefit. CCM acknowledges that Product Seller Cost and/or Net Price collected by CCM is all times the property of Company, and that neither CCM, nor any third party, may claim to have any rights or interest therein. Unless CCM utilizes the services of an installment pay provider approved by Company in its sole discretion, CCM shall retain the Seller Cost/ Net Price from each Product contract sold and act as a fiduciary for Company. Full Pays collected by CCM in accordance with this section shall be remitted to Company by CCM at times and places designated by Company in its sole discretion.

## COVENANT and WARRANTY to PROVIDE CUSTOMER REFUND

11) When pursuant to the terms and conditions of this Agreement, a Product as defined herein, or applicable state law, CCM is required to provide a refund to a Service Contract Customer, CCM at all times covenants and warrants that it shall make such timely refund payments, without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COVENANT and WARRANTY to RETURN UNEARNED PREMIUM

12) When pursuant to the terms and conditions of CCM's agreement with any installment pay plan provider or finance company, CCM is required to refund unearned premium, CCM at all times covenants and warrants that it shall make such timely refund payments to the installment pay plan provider or finance company, when required and without application of fees or other charges, unless such fees or other charges are approved by Company in writing. This provision shall survive termination of this Agreement.

## COMPENSATION

13) CCM's compensation ("Compensation") shall be defined as an amount realized for each Product contract sold, specifically the difference between the Retail Price charged by CCM and the Net Price as supplied by Company, and at all times inclusive of any down payment, the minimum of which is five percent (5%).   For purposes of this Agreement, a "sold" program is defined as a contract that has been executed by the Customer, submitted to the Company for approval and approved by the Company accompanied by full payment or financing approved by the Company.

14) Payment or realization of compensation to CCM is the sole responsibility of CCM and CCM shall indemnify and hold the Company harmless from any loss, cost, damage or expense, including reasonable attorneys' fees, incurred by the Company as a result of any claim asserted by CCM that compensation had not been paid.

15) The compensation paid or realized by CCM constitutes all compensation paid or payable to CCM for services pursuant hereto, including all expenses incurred by CCM in the performance of its duties as detailed herein.  In all cases CCM shall be solely responsible for all of its expenses.

## TERM OF AGREEMENT

16) Unless otherwise terminated in accordance with the Termination section below, this Agreement will become effective upon its execution and remain in effect for a period of one (1) year.  This Agreement shall automatically renew for successive periods of one (1) year thereafter, unless either party gives written notice to the other in accordance with the Termination section below.  Written notice shall be made at least thirty (30) days prior to the end of the current term



## TERMINATION

17) Either party may terminate this Agreement by giving written notice to the other of such termination at least thirty (30) days prior to the end of the current term.  Written notice shall be sent via registered mail; return receipt requested, to the address designated in the Notice section of this Agreement and shall be effective thirty (30) days after date of receipt.

18) This Agreement may  be terminated immediately for cause upon written notice from Company to CCM if:

    i)    CCM commences a voluntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of its property or assets;

    ii)    An involuntary case or other proceeding under any bankruptcy or insolvency law, or seeks the appointment of a trustee, receiver, liquidator, custodian or similar official of all or any substantial part of CCM's property or assets, is commenced against the CCM and CCM consents to any relief requested or such proceeding is not stayed or discharged within thirty (30) days;

    iii)    Breach by CCM of any provisions contained herein;

    iv)    CCM makes an assignment of any rights or delegation of any duties under this Agreement without express written consent of the Company; or

    v)    CCM fails to remit any amount due to the Company pursuant to this Agreement and such failure continues for more than ten (10) days after written notice of such failure has been received by CCM.

19) Unless specifically set forth in this Agreement, termination of this Agreement will not impair the right of CCM to receive compensation for Products sold and paid for prior to the effective date of such termination. CCM does not have exclusive rights to any Customer and will only receive compensation on Products sold directly through the efforts of CCM prior to any termination.  Company has no obligation to provide compensation to CCM after the effective date of termination for Products sold after such date.

## CONFIDENTIALITY

20) As used in this Section 20, the term "Confidential Information" shall refer to this Agreement, the Products any and all information and data related to this Agreement or any program made available to CCM, including but not limited to, cost and pricing information, financial data, claims data, claims processing procedures, computer software, reserves, loss experience and other actuarial data of any kind, marketing plans, business strategies, methods of operation, course of dealing, contract terms, policies and procedures concerning regulatory requirements, budgets, projections, accounting and control procedures, and customer, service center and field lists. All Confidential Information provided by one party (the "Providing Party") to the other party (the "Receiving Party") shall be kept confidential by the Receiving Party and shall not be used by the Receiving Party for any purpose other than the performance of its obligations under this Agreement, and the Receiving Party shall not disclose the terms or conditions of any Confidential Information to any third party without the prior written consent of the Providing Party; provided however, that outside legal counsel, consultants or accountants retained by a party to this Agreement are not considered third parties for the purposes of this Section 20.  The prohibitions of the previous sentence do not apply to Confidential Information which is publicly known or which is disclosed pursuant to the subpoena power of any court, tribunal, regulatory authority or other body so empowered, provided the parties shall avail themselves of any rules and regulations of the regulatory authority or other body in order to keep Confidential Information non-disclosed.  Any party to this Agreement which receives any such request from a regulatory authority or other body shall communicate such request to the other parties as soon as possible. Said Confidential Information shall be kept confidential by the parties to this Agreement for a period of three (3) years from the date of termination of this Agreement.

## NOTICE

21) Except as otherwise provided herein, whenever it is provided herein that any notice, demand, request, consent, approval, declaration or other communication shall or may be given to or served upon any of the parties by another, or whenever any of the parties desires to give or serve upon another a communication with respect to this Agreement, each such notice, demand, request, consent, approval, declaration, or other communication shall be in writing and either shall be delivered in person with receipt acknowledged, or by registered or certified mail, return receipt requested, UPS Overnight or Federal Express, postage prepaid, addressed as follows:

| | |
|---|---|
| If to the Company: | SunPath, LTD<br>50 Braintree Hill Office Park – Suite 310<br>Braintree, MA 02184 |
| If to the CCM: | Chukran Management Group, LLC<br>10627 Cocosolo Way<br>Boynton Beach, FL 33437<br>Attention : Kobi Chukran |

or at such other address or to such addresses as may be substituted or added by notice given by the party to receive such notice as herein provided. The giving of any notice required pursuant hereto may be waived in writing by the party entitled to receive such notice. Every notice, demand, request, consent, approval, declaration or other communication pursuant hereto shall be deemed to have been duly given or served on the date on which personally delivered or three (3) Business Days after mailing or one (1) Business Day if UPS Overnight or Federal Express is used.

## INDEMNIFICATION

22) The Company hereby agrees to indemnify CCM and hold it harmless from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature which may be sustained or incurred as a result of the performance of the Products, or in connection with any consumer claim for coverage arising thereunder, or the refund concerning the Products by or through the Company, or any expense which CCM may sustain or incur in defending or prosecuting any such action, or the acts or omissions of Company. Notwithstanding the forgoing, the Company shall have no liability or for any loss, damages, or judgment if due to deceptive, misleading, or misrepresentation or the Products by CCM. In no event does the Company agree to indemnify and hold harmless any third parties employed by or contracted by CCM.

CCM shall hold the Company harmless and indemnify the Company from any and all liability, losses, claims, costs, damages, suits, reasonable attorney's fees and expenses of whatever kind or nature, including any and all payments due to a third party from CCM, whether punitive, consequential or otherwise, which may be sustained or incurred as a result of or in connection with any claims, including, but not limited to any action, suit, or other proceeding which may be brought in connection therewith, arising out of or related to: (i) CCM's sale of Product; (ii) the negligent acts, omissions or intentional wrongdoing of CCM; (iii) the violation by CCM of applicable laws in connection with the offering or provision of its services; or (iv) a breach of this Agreement by CCM; (v) CCM's, or any of their officers, directors, employees negligent acts, omissions, intentional misconduct, or breach of any covenant or warranty contained in this Agreement.

## MISCELLANEOUS PROVISIONS

23) Assignment. This Agreement may not be assigned by CCM without the prior written consent of the Company. The Company may assign this Agreement without CCM's consent. Any assignments hereunder shall not relieve the assigning party from its obligations under this Agreement. The assignee of this Agreement shall assume, by instrument reasonably acceptable to the other party to this Agreement, the assignor's obligations hereunder.

24) Property Rights.  Any property, including but not limited to, solicitation materials, rates, contracts and forms utilized under this Agreement are the sole and exclusive property of the Company.  This provision shall survive the expiration or termination of this Agreement.

25) No Benefit to Third Parties.  The rights and privileges afforded by this Agreement are solely for the benefit of the parties hereto and in no circumstances shall any other person have any rights or privileges or be entitled to any benefits under this Agreement.

26) Changes and Waiver.  This Agreement may be amended or modified, and the terms and conditions of this Agreement may be waived, only by the written consent of the Company and CCM.  The failure of any party at any time to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same, and no waiver of any nature by any party, whether by conduct or otherwise, shall be deemed to be a continuing waiver.

27) Entire Agreement.  This Agreement sets forth the entire agreement and understanding of the parties with respect to the transactions contemplated hereby.  All prior agreements and understandings between the parties, whether oral or in writing, are superseded.

28) Governing Law.  This Agreement shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Massachusetts.

29) Severability.  If any one or more of the provisions contained in this Agreement or any document executed in connection herewith shall be or become invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions contained herein or therein shall not in any way be affected or impaired; provided, however, that in such case the parties shall, if possible, achieve the purpose of the invalid provision by agreeing to a new, legally valid provision which shall become part of this Agreement.

30) Law and License.  Company and CCM each shall use utmost good faith and best efforts to ensure that their respective operations are conducted in connection with the Products are in compliance in all material respects with all applicable laws, rules and regulations of all jurisdictions in which it performs its duties.

31) Counterparts; Facsimile Signatures.  This Agreement may be executed in any number of separate counterparts, each of which shall, collectively and separately, constitute one agreement.  Facsimile signatures will be accepted by both parties as execution original signatures.

32) Announcements.  The parties shall consult and confer with each other prior to making any announcement concerning any of the transactions contemplated in this Agreement.

33) Jurisdiction.  The parties hereby consent to the non-exclusive jurisdiction of the federal and state courts located in the Commonwealth of Massachusetts in any and all actions between the parties arising under or in connection with this Call Center Marketing Agreement. CCM will not under any circumstance refuse service of process, and agrees to promptly make all required responsive to confirm same.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

SUNPATH, LTD.                                    CHUKRAN MANAGEMENT GROUP, LLC


X: _____          X: _____

Name: _____          Name: _KoBi chukran____

Date: _____          Date: _6/29/17____

5

## ADDENDUM A - AUTHORIZED PRODUCTS

CCM IS hereby authorized to mark-up and sell the following Company Products to all Customers as described in this agreement:

1) VSC Product - Horizon
2) VSC Product – Mileage Plus
3) VSC Product – Secure Advantage

## ADDENDUM B - TERRITORY

The geographic territory in which CCM may solicit the sale of Products offered by the Company shall be exclusive and limited to:

All states in the continental US, except: TBD

EXHIBIT 1 – STANDARDS of CONDUCT

See attached

8



June 29, 2017

Chukran Management Group, LLC
10627 Cocosolo Way
Boynton Beach, FL 33437

Re: Supplement to Non-Disclosure Agreement

Dear Kobi:

The purpose of this letter is to provide supplemental assurances to Chukran Management Group, LLC with regard to the Non-Disclosure Agreement between our offices. Specifically, at no time will SunPath LTD, or its affiliates, ever share Chukran Management Group, LLC information or data with the Vehicle Protection Association ("VPA") without the express written direction of an authorized officer of Chukran Management Group, LLC. In addition, at no time will SunPath LTD, or its affiliates, charge Chukran Management Group, LLC any fee for services provided by the VPA.

If you have any questions, please feel free to call me. Kindly acknowledge receipt of this letter in the space designated.

Very truly yours,

Andrew Garcia
President

AGREED AND ACCEPTED

Kobi Chukran
Chukran Management Group, LLC

25 BRAINTREE HILL PARK   //   SUITE 100   //   BRAINTREE, MA 02184   //   888.990.7786   //   FAX 855.786.7500