

# Transcript of Ruth Smith

**Date:** December 2, 2022
**Case:** Smith -v- SunPath, Ltd.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

**Page 53**

1      (Discussion off the record from 11:00
2  a.m. to 11:00 a.m.)
3      MR. CAFFAS: Let's go back on the
4  record.
5      Can you reread my last question, Kelly.
6      (The reporter read the requested
7  testimony.)
8  BY MR. CAFFAS:
9   Q  Why would you have to refer to your
10 notes?
11  **A  For the exact language.**
12  Q  Do you remember anything about the
13 language that led you to make that statement that
14 the purpose of the call was to solicit the sale of
15 SunPath's vehicle service contracts?
16  **A  Based on my memory, they gave the name**
17 **of the company and what they were -- what they**
18 **were -- I think what they were selling.**
19  Q  When you say the name of the company,
20 what was the name of the company?
21  **A  SunPath.**
22  Q  You say that they used the word

**Page 54**

1  "SunPath" as the name of the company, not another
2  company's name?
3      MR. SMITH: Objection, misstates the
4  witness's testimony.
5  **A  I would have to refer to my notes for**
6  **exactly what the...**
7  BY MR. CAFFAS:
8   Q  I'll represent to you that we have not
9  received any notes at all that show what your
10 recollection is of any of these calls.
11     MR. SMITH: Objection. That misstates
12 the question.
13 BY MR. CAFFAS:
14  Q  You're saying that any of your notes
15 regarding the calls that we're talking about were
16 given to counsel, right?
17  **A  After my -- after I received the calls,**
18 **yes, I put it on my notes and I submitted it.**
19  Q  I'm going enter what will be -- I think
20 this is Exhibit 5.
21     MR. CAFFAS: Is that correct?
22     THE REPORTER: 4.

**Page 55**

1      MR. CAFFAS: 4.
2      (Smith Deposition Exhibit No. 4 was
3  marked for identification and was attached to the
4  deposition transcript.)
5  BY CAFFAS:
6   Q  This is a packet of documents, Exhibit
7  4, and you'll notice these are Bates stamped. By
8  Bates stamped, they have a label at the bottom
9  right corner and it says Smith and a series of
10 numbers to make it easier to reference. So these
11 are Bates labeled SMITH1 through 20.
12     Now, these are the documents that we
13 received from your counsel with the exception of
14 an e-mail from a company called American
15 Protection and two recordings. I want you to take
16 a few minutes to look through the documents that I
17 have shown you, and can you confirm whether or not
18 this is a full collection of the documents that
19 you say that you had given to counsel that reflect
20 the notes that you provided in this case.
21  **A  To the best of my knowledge, this is all**
22 **of the screenshots provided.**

**Page 56**

1   Q  Now, is it correct to say that there are
2  no notes in that production that contain your
3  description or recollection of any of the calls
4  that you've described?
5  **A  So these are the lists of the**
6  **screenshots.**
7   Q  So is it accurate that the notes that
8  you're referring to about your recollection of the
9  calls, those aren't contained in that set of
10 documents?
11  **A  I'm not sure how that's like compiled.**
12  Q  In the set of documents that I just
13 handed you, can you confirm just with a yes or no,
14 if you can, whether or not the notes that you're
15 referring to are in that set of documents?
16  **A  Of the -- no.**
17  Q  And I'll represent to you that with the
18 exclusion of an e-mail that contains I believe the
19 SunPath policy quote that you're referring to, we
20 received no other documents, written documents,
21 from you at all. Are you saying that --
22     MR. SMITH: Objection. That

89

1 that call was received and what number you
2 received that telephone call from?
3     A   At this time, I don't believe I have it.
4     Q   Do you have your voicemail saved on your
5 phone?
6     A   I don't keep them for long periods of
7 time.
8     Q   Is there a reason why you got rid of
9 this voicemail that's the subject of the claims in
10 the lawsuit?
11    A   You're talking about the second
12 voicemail?
13    Q   Yes.
14    A   Yeah, I don't remember receiving that
15 voicemail.  That specific voicemail, I don't
16 remember.  The first one I do.
17    Q   Are you saying that you don't -- you
18 didn't provide this to your counsel, or you just
19 don't remember receiving it or giving it to your
20 counsel?
21    A   I don't remember receiving that
22 voicemail.

90

1     Q   Do you have any reason to doubt that you
2 did receive it and provide it to your counsel?
3     A   You're saying do I have a doubt that I
4 received it and didn't provide it to my counsel?
5 I'm sorry.  I'm not understanding.
6     Q   You say you don't remember receiving it.
7 Do you have any reason to doubt that this call was
8 made to you, resulted in this voicemail that you
9 received, and then you then passed it on to your
10 counsel?
11    A   So to the best of my knowledge,
12 everything that I received, I provided, but I do
13 not remember that second voicemail.
14    Q   Do you know why you received -- did you
15 ask to receive a quote regarding the vehicle
16 service contract that was attached to the e-mail
17 that you received from Samantha Yaeger?
18        MR. SMITH:  Object to form.
19        You can answer.
20    A   I was trying to understand who was
21 trying to contact me.
22 BY MR. CAFFAS:

91

1     Q   And in the process of trying to
2 understand who is contacting you, did you request
3 to receive that product?
4         MR. SMITH:  Object, vague,
5 argumentative.
6         MR. CAFFAS:  Argumentative?
7         MR. SMITH:  Yeah.
8         MR. CAFFAS:  Can you explain?
9         MR. SMITH:  You're trying to suggest the
10 answer to her.
11        MR. CAFFAS:  Before you answer, Kelly,
12 could you read my question again.
13        (The reporter read the requested
14 question.)
15    A   So I was trying to understand who was
16 trying to contact me.
17        MR. CAFFAS:  Can you reread the
18 question, please.
19        (The reporter read the requested
20 question.)
21    A   Did I request to see the specific
22 product?  No.  I was asking I believe that I

92

1 wanted them to have them e-mail me something to
2 validate who they were.
3 BY MR. CAFFAS:
4     Q   So you made an inquiry about who they
5 were and what they were selling?
6         MR. SMITH:  Objection, argumentative.
7     A   No.  I was trying to determine who was
8 trying to contact me.
9 BY MR. CAFFAS:
10    Q   Right.  And in the process of trying to
11 determine that, did you make an inquiry about who
12 they were and what they were selling?
13        MR. SMITH:  Objection, asked and
14 answered, argumentative, and calls for a legal
15 conclusion.
16        You can answer.
17    A   Yeah, I was trying to determine who was
18 trying to contact me.
19 BY MR. CAFFAS:
20    Q   And in the process of doing so, did you
21 make an inquiry about who they were and what they
22 were selling?

157

1  Q  You don't know anything about their
2 business practices?
3  A  I just know it's a telemarketer. It's a
4 third party on behalf of, you know, SunPath. I
5 don't know specifically what they're --
6  Q  You say you know it's a third party on
7 behalf of SunPath?
8    MR. SMITH: Objection, misstates the
9 witness's testimony.
10    MR. CAFFAS: Kelly, can you read Ms.
11 Smith's response back, please.
12    (The reporter read the requested
13 answer.)
14 BY MR. CAFFAS:
15  Q  What is the basis of your belief that
16 American Protection is a third party on behalf of
17 SunPath?
18  A  Because of the -- I believe because of
19 the telemarketer and also because of all the, you
20 know, calls that I received.
21  Q  Did anybody from American SunPath [sic]
22 specifically say I, American Protection, am a

158

1 third party on behalf of SunPath?
2    MR. SMITH: Objection, asked and
3 answered, argumentative.
4 BY MR. CAFFAS:
5  Q  You can answer.
6  A  Not -- not to my knowledge, no.
7  Q  Have you ever communicated directly with
8 SunPath?
9  A  Not to my knowledge, no.
10  Q  So you understand there's a difference
11 between American Protection and SunPath?
12    MR. SMITH: Object to form.
13    You can answer.
14  A  So American Protection is a third party
15 on behalf of SunPath.
16 BY MR. CAFFAS:
17  Q  So is it correct that you understand
18 that they are different companies?
19    MR. SMITH: Object to form.
20    Go ahead.
21  A  Yes, but they are -- but they're
22 connected.

159

1 BY MR. CAFFAS:
2  Q  How are they connected?
3  A  It's a third party on behalf of SunPath.
4  Q  Have you purchased a Coca-Cola or Pepsi
5 product from a grocery store?
6  A  Yes.
7  Q  When you purchased that product from the
8 grocery store, is the name of the grocery store on
9 the receipt?
10  A  I would -- I would assume, yes.
11  Q  When you purchase a product from the
12 grocery store, do you believe that the maker of
13 the product controls how the grocery store
14 displays that product?
15    MR. SMITH: Objection, calls for
16 speculation.
17    You can answer.
18  A  You're buying a Coca-Cola. It's going
19 to be Coca-Cola wherever it was or whatever the
20 brand is, yes.
21 BY MR. CAFFAS:
22  Q  So do you believe that Coca-Cola

160

1 controls -- what grocery store do you go to?
2  A  I go to Whole Foods.
3  Q  Okay. Do you believe that if you buy a
4 Coca-Cola from Whole Foods that Coca-Cola controls
5 how Whole Foods sells their product?
6    MR. SMITH: Objection, calls for
7 speculation.
8    Go ahead.
9  A  I believe that they do -- that there's a
10 certain way that their products are displayed and
11 where in the grocery store they are, et cetera.
12 BY MR. CAFFAS:
13  Q  And do you believe that Whole Foods is a
14 third party on behalf of Coca-Cola?
15    MR. SMITH: Objection, vague, confusing,
16 calls for a legal conclusion.
17  A  Yeah, I'm not -- I guess I don't
18 understand.
19 BY MR. CAFFAS:
20  Q  So you said something along the lines of
21 you understand that American Protection is a third
22 party on behalf of SunPath. Is that right?

161

1  A  They were soliciting, yes.
2  Q  So in the analogy that I'm drawing, do
3 you then believe that Whole Foods in selling
4 Coca-Cola's products is a third party on behalf of
5 Coca-Cola the same way that you're saying that
6 American Protection is a third party on behalf of
7 SunPath?
8      MR. SMITH: Object to form.
9  A  Right. I think it's hard to compare the
10 two, but -- so I...
11 BY MR. CAFFAS:
12  Q  Why?
13      MR. SMITH: Object to form.
14  A  I mean, Whole Foods is designed or any
15 grocery store is designed to carry other people's
16 products, so it's a direct relationship. I don't
17 know the in's and out's of what the connections
18 are here, but -- so I -- it's just hard for me to
19 give you an answer.
20 BY MR. CAFFAS:
21  Q  So you have no basis to say whether or
22 not the relationship between American Protection

162

1 and SunPath is similar or different from Coca-Cola
2 and Whole Foods, for example?
3      MR. SMITH: Objection, harassing,
4 argumentative.
5  A  I just know that they're a third party
6 on behalf of SunPath.
7 BY MR. CAFFAS:
8  Q  But you don't know anything about the
9 in's and out's of that relationship?
10  A  Between American Protection and SunPath?
11  Q  Correct. You don't know anything about
12 the in's and out's in the relationship?
13  A  Right. I don't.
14  Q  Do you have any reason to believe, for
15 example, that SunPath controls sales scripts that
16 American Protection uses when it contacts
17 consumers?
18  A  I don't.
19  Q  Do you have any reason to believe that
20 SunPath determines what phone numbers American
21 Protection calls?
22  A  I don't know anything, I mean, about

163

1 what they -- in terms of what phone numbers or how
2 they get them.
3  Q  Do you have any reason to believe that
4 SunPath determines what companies' products that
5 American Protection offers to consumers?
6  A  I don't know.
7  Q  Ruth, I'd like to direct you back to
8 your complaint, specifically on page 7 of your
9 complaint. There's paragraph 29, which is the
10 very top of that page. You state or the complaint
11 states, "All of the calls at issue here were
12 placed via an ATDS at the direction and oversight
13 of defendant," defendant meaning SunPath, the only
14 defendant here. "Defendant knew about, directed,
15 ratified, and benefited from those calls."
16      So to specifically address the statement
17 that the calls were placed at the direction and
18 oversight of defendant, do you have any idea how
19 that could be true?
20      MR. SMITH: Objection, calls for a legal
21 conclusion.
22  A  Yeah, I rely on my counsel.

164

1 BY MR. CAFFAS:
2  Q  Do you personally know any facts that
3 would lead you to state that the calls at issue
4 were placed at the direction or oversight of
5 SunPath?
6      MR. SMITH: Same objection.
7  A  Yeah. I rely on my counsel.
8 BY MR. CAFFAS:
9  Q  You rely on your counsel for what?
10  A  To determine the direction and
11 oversight.
12  Q  Well, I'm not asking about your counsel
13 determining anything. I'm asking about what you
14 know or don't know that would lead you to say that
15 American Protection, for example, if they're
16 making the calls, did anything at the direction of
17 SunPath?
18  A  I rely on them for that.
19  Q  You rely on "them" being your counsel?
20  A  Yes.
21  Q  And you rely on them to say what facts
22 you know?

165

1  MR. SMITH: Objection, misstates the
2 testimony.
3  A  That is not -- I rely on their guidance,
4 not...
5 BY MR. CAFFAS:
6  Q  Right, and I'm not asking for your
7 counsel's legal guidance, I'm asking for what
8 facts, what information do you know, that is, if
9 anything?
10  MR. SMITH: Objection, calls for a legal
11 conclusion.
12  A  I rely on my counsel.
13  MR. SMITH: Let me take a break and grab
14 a water.
15  MR. CAFFAS: We'll go off the record.
16  (A brief recess was had from 2:38 p.m.
17 to 2:40 p.m.)
18  MR. CAFFAS: Let's go back on the
19 record.
20  I think it might be productive if I ask
21 Kelly to again read back the question that I
22 asked.

166

1  Could you read the last question,
2 Kelly.
3  (The reporter read the requested
4 question.)
5  A  I don't -- I don't know.
6 BY MR. CAFFAS:
7  Q  I'll ask the same thing about the
8 potential oversight that you're claiming that the
9 defendant had over any party making calls. Do you
10 have any facts that support that SunPath exercised
11 any oversight over anyone making calls?
12  MR. SMITH: Objection, calling for a
13 legal conclusion.
14  You can answer.
15  A  Is it specific to a certain number, or
16 just all?
17 BY MR. CAFFAS:
18  Q  Any specific one.
19  A  Yeah, I don't know.
20  Q  There's a statement in here that
21 defendant knew about the calls. Do you have any
22 facts or evidence that you're aware of that

167

1 supports that SunPath knew about any specific
2 calls that are the basis of your claims?
3  A  I would defer to my counsel. I don't
4 know.
5  Q  So just generally, what evidence do you
6 have to support your contention that SunPath is
7 responsible or liable for the actions of any other
8 party that made the calls that form the basis of
9 your claims?
10  MR. SMITH: Objection, calls for a legal
11 conclusion.
12  You can answer.
13  A  I rely on my counsel.
14 BY MR. CAFFAS:
15  Q  Are you aware that American Protection,
16 the company that sent you an e-mail after making
17 presumably some of the calls at issue, was deposed
18 in this case?
19  A  I don't remember.
20  Q  I will represent to you that American
21 Protection has been deposed and they have
22 represented that they did not make any calls to

168

1 you until after they first received a call from
2 you regarding information about their products.
3 Do you recall making a call to American Protection
4 prior to receiving any of the calls that are the
5 basis of your claims?
6  A  I do not.
7  Q  Are you saying that you've never called
8 American Protection directly at all?
9  MR. SMITH: Objection to form.
10  A  Yeah, I don't remember making any calls.
11  MR. CAFFAS: I will introduce to you
12 what will be Exhibit 10.
13  (Smith Deposition Exhibit No. 10 was
14 marked for identification and was attached to the
15 deposition transcript.)
16 BY MR. CAFFAS:
17  Q  Now, Exhibit 10 is a document that was
18 produced by American Protection in response to a
19 subpoena that was served by your counsel in this
20 case. Do you recognize this document?
21  A  I don't.
22  Q  And just to describe this for the

169

1 record, this is what appears to be some kind of
2 mail notice or something akin to a postcard that
3 reads at the top Vehicle Alert Notice, Please
4 Respond Within Five Days, and the same number to
5 call in to. I will represent to you that American
6 Protection represented in their deposition that
7 one of these mailers was mailed to you, and in
8 response you called in requesting information
9 about the products American Protection sells. Do
10 you confirm that you -- excuse me. Can you
11 confirm whether or not you called American
12 Protection in response to a mailer similar to this
13 exhibit?
14 　　A　Yeah, I don't remember receiving a
15 mailer and I don't remember making a phone call
16 based on that mailer.
17 　　Q　Just to clarify slightly, are you saying
18 that you categorically did not make such a call,
19 or you just don't remember?
20 　　A　I believe -- no, I did not make the
21 call. I did not remember making the call.
22 　　Q　Again, just to clarify, you have never

170

1 made a call in response to receiving a mailer
2 similar to this?
3 　　A　Yeah, I don't remember ever receiving a
4 mailer like this before.
5 　　Q　Okay. Just to clarify because I think
6 you said both things. You don't remember, or you
7 did not?
8 　　A　And just to make sure I understand,
9 you're specifically talking if I ever received a
10 mailer for my vehicle saying that you have a
11 five-day notice?
12 　　Q　First we'll say yes. Have you received
13 a mailer similar to the exhibit that I've just
14 shown you?
15 　　A　No, I do not remember ever receiving a
16 mailer.
17 　　Q　Okay. And then that would mean that you
18 then are saying that you did not make a call in
19 response to receiving such a mailer?
20 　　A　Correct. I do not ever remember making
21 a phone call, no.
22 　　Q　Have you ever visited a website where

171

1 you requested to receive a call regarding vehicle
2 service contracts?
3 　　A　Not to my knowledge, no.
4 　　Q　And likewise, have you ever visited a
5 website where you input your personal information,
6 including your phone number, and may have
7 consented to receive calls regarding vehicle
8 service contracts?
9 　　A　Not to my knowledge, no.
10 　　Q　Have you ever visited any website where
11 you requested information regarding information
12 for your car insurance?
13 　　A　Not to my knowledge, no.
14 　　Q　So you've never visited any website
15 where you requested a quote for car insurance?
16 　　A　No. My insurance is through -- my
17 father pays for it, so he takes care of all that
18 stuff.
19 　　Q　Have you ever filed a lawsuit involving
20 telemarketing calls other than this one?
21 　　A　Yes.
22 　　Q　When was that?

172

1 　　A　I'd have to refer to the documentation,
2 but I have. I cannot remember.
3 　　Q　Was that on more than one occasion?
4 　　A　Yes.
5 　　Q　Do you remember how many specific cases
6 that would be?
7 　　A　Again, I'd have to -- I don't want to
8 get the number incorrect, so I'd have to...
9 　　Q　Would you be able to say whether it was
10 more or less than five?
11 　　A　I don't want to -- I just don't know a
12 hundred percent.
13 　　Q　It was more than one?
14 　　A　Yes.
15 　　Q　Is it around five? Is it less than ten
16 you can say?
17 　　A　I don't -- again, I don't remember. I
18 just -- I need to check.
19 　　Q　Are these -- I'm specifically at this
20 point asking about lawsuits that were filed in
21 court, right? And you say that there's been more
22 than one of these besides the present case?

205

1  MR. SMITH: Objection, misstates the
2 witness's testimony.
3  A  Again, to the best of my knowledge, and
4 I think I'm also waiting on the AT&T call logs,
5 so...
6  MR. CAFFAS: I have nothing further.
7  MR. SMITH: I just have a few follow-up
8 questions.
9  THE WITNESS: Sure.
10  EXAMINATION BY COUNSEL FOR THE PLAINTIFF
11 BY MR. SMITH:
12  Q  So earlier you testified that SunPath
13 made the calls at issue. I just want to clarify.
14 Can you tell me which party actually placed the
15 calls in this case?
16  A  So it's --
17  MR. CAFFAS: Objection, speculation,
18 misstating the witness's testimony.
19 BY MR. SMITH:
20  Q  You can answer.
21  A  So it was American Protection on behalf
22 of SunPath.

206

1  Q  Okay. Earlier you reviewed an e-mail
2 that was marked as Exhibit 6. See that?
3  A  Yes.
4  Q  Can you turn to page SMITH22.
5  A  Yes. Got it.
6  Q  Can you review SMITH22, SMITH23, and
7 SMITH24.
8  A  I reviewed it.
9  Q  All right. Do you know what these three
10 pages are or how they relate to the e-mail on
11 SMITH25?
12  MR. CAFFAS: I'm going to object to
13 vague as -- could you clarify which three pages
14 you're referring to?
15  MR. SMITH: Yeah, the ones we just
16 discussed, 22 through 24, how they relate to
17 SMITH -- the e-mail on SMITH25.
18  A  So these are the options for the plans
19 for the --
20 BY MR. SMITH:
21  Q  Do you know how you would access that?
22  A  I believe there was a link.

207

1  Q  Can I direct your attention to SMITH26.
2  A  I'm trying to find it. It's on page 26
3 with the Buy Now?
4  Q  The Buy Now link? Okay. After you
5 clicked the Buy Now link, what would happen?
6  MR. CAFFAS: Sorry. I didn't catch.
7 I'm not sure if the court reporter did. Can you
8 repeat that last question and answer?
9  THE WITNESS: Okay. So I --
10  MR. SMITH: Yeah. Sure. Hold on.
11 BY MR. SMITH:
12  Q  All right. Just to clarify your
13 testimony, are you stating that on page SMITH26
14 you clicked the Buy Now, which would take you to
15 the document that starts on SMITH22?
16  A  Yes. Based on my -- the best of my
17 knowledge, yes.
18  Q  Okay. Do you see on SMITH22 where it
19 says Your Plan?
20  A  I do at the top of the page on the left.
21  Q  Below that it says Coverage Provided by
22 SunPath?

208

1  A  Yes.
2  Q  So is it a fair statement that this is
3 an e-mail from American Protection that would have
4 solicited you to purchase a SunPath vehicle
5 service protection plan?
6  A  Yes.
7  Q  Okay. Does this change your testimony
8 as to whose products were being sold via the calls
9 at issue in this case?
10  A  So it's SunPath.
11  Q  Okay. I just want to clarify. American
12 Protection was placing calls to sell SunPath's
13 products and services?
14  A  On behalf, yes.
15  Q  Is it fair to say that you rely on your
16 counsel to conduct an investigation in this case?
17  A  Yes.
18  Q  To gather facts?
19  A  Yes.
20  Q  Are you aware that there were call logs
21 obtained in this case from Five9, Incorporated?
22  A  Yes.

213

1  CERTIFICATE OF SHORTHAND REPORTER
2      ELECTRONIC NOTARY PUBLIC
3      I, Kelly Carnegie, Certified Shorthand
4  Reporter, Registered Professional Reporter, the
5  officer before whom the foregoing proceedings were
6  taken, do hereby certify that the foregoing
7  transcript is a true and correct record of the
8  proceedings; that said proceedings were taken by
9  me stenographically and thereafter reduced to
10 typewriting under my direction; that reading and
11 signing was requested; and that I am neither
12 counsel for, related to, nor employed by any of
13 the parties to this case and have no interest,
14 financial or otherwise, in its outcome.
15      IN WITNESS WHEREOF, I have hereunto
16 electronically set my hand and affixed my notarial
17 seal this 5th day of December, 2022.
18
   My commission expires:
19 July 31, 2026
20
21 _Kelly Carnegie_____
   NOTARY PUBLIC IN AND FOR THE
22 COMMONWEALTH OF VIRGINIA - PRINCE WILLIAM COUNTY
   Notary Registration Number: 7060756