IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SUNPATH, LTD.**, a Massachusetts corporation,<br><br>Defendant. | Case No. 1:22-cv-00081-LMB-WEF |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO COUNT II OF HER COMPLAINT**

**I.   INTRODUCTION**

Defendant SunPath, Ltd. ("Defendant" or "SunPath") sells and administers vehicle service contracts ("VSCs") to consumers nationwide. Rather than conduct its sales in-house, SunPath relies exclusively on third-party marketers to sell its VSCs on its behalf and for its benefit. One of those marketers, Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"), placed over one hundred calls to Plaintiff Ruth Smith ("Plaintiff" or "Smith") to solicit her to purchase a SunPath VSC without first securing any consent—a clear violation of the Virginia Telephone Privacy Protection Act ("VTPPA"). As such, Plaintiff now seeks summary judgment with respect to Count II of her Complaint.

The undisputed record is clear that Plaintiff is entitled to summary judgment with respect to Count II. That is, despite registering her telephone number on the National Do No Call Registry, American Protection placed 172 calls to Plaintiff for the purpose of soliciting her to purchase SunPath's VSCs. And neither American Protection nor SunPath has any record of prior express invitation, permission, or consent to place the calls at issue. Plaintiff does not, however, seek

1

recovery for all of the calls. Rather, she concedes that she feigned an interest in SunPath's VSCs during a May 28, 2020 call to ascertain the identity of the company placing the annoying calls. As a result, she concedes that she created an established business relationship ("EBR") with American Protection on that date. Nevertheless, she later terminated that EBR on June 11, 2020, by communicating, in writing, her lack of interest in the VSCs being pitched and clearly requesting that American Protection "not call [her] anymore." Consequently, Plaintiff agrees that the calls placed throughout the duration of the EBR are not actionable. This leaves 122 telephone solicitations for which Plaintiff seeks judgment in her favor.

SunPath is liable for the calls at issue. While SunPath will argue that its hands-off approach to monitoring its marketers shields it from liability, that is of course untrue: the VTPPA expressly holds companies like SunPath jointly and severally liable for unlawful calls when it hires third parties to place the offending calls on its behalf or for its benefit. Here, there is no question that SunPath retained American Protection to place telemarketing calls to solicit clients for its VSCs. Indeed, the contract between the two parties is titled "Call Center Marketing Agreement". The record is also clear that SunPath had knowledge of and consented to American Protection's calling practices. Put simply, SunPath is a "seller" as defined by the VTPPA and should be held jointly and severally liable for the 122 unlawful calls.

For these reasons and as set forth below, the Court should grant summary judgment in favor of Plaintiff with respect to Count II of her Complaint.

## II. LISTING OF UNDISPUTED FACTS

Pursuant to Local Civil Rule 56(B), the following undisputed material facts support the instant Motion:

***SunPath's enters into an agreement with American Protection to place telemarketing calls to solicit sales of its vehicle service plans***

1. Defendant SunPath is company that develops and administers vehicle service contracts ("VSCs") to consumers nationwide. (*See* Call Center Marketing Agreement, attached hereto as Ex. A at pg. 1; *see also* Declaration of Andrew Garcia, Dkt. 11-1 ¶ 4.)

2. Rather than conduct its sales in-house using employees, SunPath contracts with third-party marketers to conduct telemarketing on its behalf. (*See* SunPath Depo. Tr., excerpts of which are attached hereto as Ex. B, at 35:19-25; Dkt. 11-1 ¶¶ 7, 9.) SunPath requires its marketers to agree to its form contract, named the "Call Center Marketing Agreement". (Ex. A at pg. 1.)

3. SunPath's designee testified that it derives 100 percent of its revenue from third party sales of its VSCs. (SunPath Depo.Tr., Ex B, at 71:12-19.).

4. On June 29, 2017, SunPath entered into a call center marketing agreement with Chukran Management Group, LLC d/b/a American Protection Corp. ("American Protection"). (Ex. A, pg. 1.)

5. The Call Center Marketing Agreement requires American Protection to "actively market" SunPath's products and limits the territory in which it is permitted to solicit customers. (Ex. A, pg. 1).

6. Additionally, the agreement states that SunPath will provide "Promotional Materials" to American Protection, which cannot be altered, substituted, or supplemented without SunPath's written authorization. (*Id.*)

7. The Call Center Marketing Agreement also requires American Protection to perform acts necessary to protect and safeguard the interests of SunPath, and requires it to maintain and service customers in accordance with SunPath's policies and procedures. (*Id.*)

8. Between 2017 and 2022, American Protection engaged in soliciting sales on behalf of SunPath. (AP Depo Tr., excerpts of which are attached hereto as Ex. C, at 25:6-15; *see also*

3

Statement of Uncontested Facts, Dkt. 56 ¶¶ 5-6.)

9. SunPath concedes that during all times relevant to this complaint "American Protection was authorized to sell SunPath-related products". (Statement of Uncontroverted Facts, Dkt. 56 ¶ 5.)

10. To sell the VSCs, American Protection contacted potential clients by telephone. (AP Depo Tr., Ex C, at 24:5-18; 32:1-8.) American Protection would also mail potential clients postcards and letters with the hope that the recipients would call American Protection. (*Id.* at 76:19-77:3.)

11. Once a potential client is located, American Protection would gather necessary information from the potential client and submit the information for approval or rejection to SunPath. (*Id.* at 30:16-22.)

12. If SunPath approves the sale, then American Protection is responsible for collecting monthly payments from client under the policy. (*Id.* at 61:24-62:2) American Protection is required to pay SunPath for a set amount, or the "cost", of the policy. (*Id.* at 61:5-23.) American Protection then continues to service the client's contract throughout the life of the agreement. (*Id.* at 60:6-19.)

13. SunPath's Call Center Marketing Agreement specifies how American Protection is compensated for the sale of its VSCs. (Ex. A, at pg. 2.) Specifically, the agreement states in relevant part:

> 13) [American Protection's] compensation ("Compensation") shall be defined as an amount realized for each Product contract sold, specifically the difference between the Retail Price charged by [American Protection] and the Net Price as supplied by [SunPath], and at all times inclusive of any down payment, the minimum of which is five percent (5%). For the purposes of this Agreement, a "sold" program is defined as a contract that has been executed by the Customer, submitted to [SunPath] for approval and approved by [SunPath] accompanied by full payment or financing approved by [Sunpath].

4

> 14) Payment or realization of compensation to [American Protection] is the sole responsibility of [American Protection] and [American Protection] shall indemnify and hold [SunPath] harmless from any loss, cost, damage or expense, including reasonable attorneys' fees, incurred by [SunPath] as a result of any claim asserted by [American Protection] that compensation had not been paid.
>
> 15) The compensation paid or realized by [American Protection] constitutes all compensation paid or payable to [American Protection] for services pursuant hereto, including all expenses incurred by [American Protection] in the performance of its duties as detailed herein. In all cases [American Protection] shall be solely responsible for all of its expenses.

(*Id.* at pg. 2.) Hence, American Protection was compensated for each sale by receiving the difference between the sale price and the "net price" set by SunPath for the sale of its VSCs. (*Id.*; *see also* AP Depo. Tr., Ex C, at 46:20-47:8.) Under the Call Center Marketing Agreement, American Protection is required collect the payments from the customers and hold SunPath's portion of the proceeds, or "net price", "in trust" for SunPath's benefit. (Ex. A, at pg. 2.)

14. SunPath designated American Protection as a licensed representative or agent in the State of Florida to sell its auto warranties. (*See* Florida Licensee Detail, attached hereto as Ex. D; September 20, 2021 Re-Appointment Email, attached hereto as Ex. E; SunPath Depo. Tr., Ex. B, at 29:18-32:14 (explaining SunPath's involvement in the Florida appointment and licensing process); AP Depo. Tr., Ex. C, at 39:15-23 (describing SunPath's appointment of American Protection as its "agent" in the State of Florida).

15. During the course of its relationship, SunPath approved hundreds of contracts that were sold by American Protection. (SunPath Depo. Tr., Ex. B, at 40:10-22.).

16. American Protection communicated with SunPath "weekly" regarding various matters, including "business matters, production information, product pricing . . ., [and] claim information." (*See* AP Depo. Tr., Ex. C, at 26:4-27:22 (discussing American Protection's communications with SunPath's employees).

17. SunPath would inform American Protection of certain individuals who should be

5

added to their DNC lists. (*Id.* at 43:9-14.)

***Plaintiff receives hundreds of calls placed by American Protection soliciting the sale of SunPath's vehicle service contracts***

18. Plaintiff is a resident of the State of Virginia. (Statement of Uncontested Facts, Dkt. 56 ¶ 1.)

19. Plaintiff is the primary and customer user of the telephone number ending in 9650, which also has a Virginia area code. (*See* Plaintiff's Response to SunPath's Interrogatory No. 10, attached hereto ax Ex. F.)

20. Plaintiff registered her telephone number on the National DNC Registry on November 8, 2019. (*See* Statement of Uncontested Facts, Dkt. 56 ¶ 8.)

21. Between May 26, 2020 and August 18, 2020, Plaintiff received 172 calls initiated by American Protection. (*See* Summary of Five9 call records relating to Plaintiff's phone number, attached hereto as Ex. G[1]; *see also* Declaration of Ruth Smith ("Smith Decl."), attached hereto as Ex. H ¶ 4.)

22. Plaintiff placed one call to American Protection on May 26, 2020, which went unanswered. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G, ln. 2; *see also* Smith Decl., Ex. H ¶ 5.)

23. Upon receiving a call placed by American Protection on May 28, 2020, at 12:51 p.m. ET, Smith feigned an interest in the products being offered by American Protection to ascertain the identity of the calling entity. (*See* Smith Decl., Ex. H ¶ 6; *see also* Notes of May 28, 2020 Call, attached hereto as Ex. I; *see also* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G, ln. 9.)

---

[1] The Five9 Call Records data file is available in native format for inspection by the Court upon request.

6

24. As a result of her feigned interest, American Protection sent a follow up email to Smith on May 28, 2020, which identified American Protection at the caller and contained a link soliciting her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, attached hereto as Ex. J; *see also* AP Depo. Tr., Ex. C, at 189:1-191:8 (explaining that the email and link attached as Ex. J was generated by American Protection's Inline CRM system)).

25. On June 11, 2020, at 8:49 a.m. ET, Smith sent an email to American Protection which stated that she was no longer interested in purchasing any VSC and stated, in no uncertain terms, "Do not call me anymore." (June 11, 2020 Email, attached hereto as Ex. K.)

26. Despite the June 11, 2020 email, American Protection continued to place 116 calls to Plaintiff between June 11, 2020 and August 18, 2020. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G; *see also* Smith Decl., Ex. H ¶ 8.)

27. Even after July 11, 2020, American Protection continued to place 50 telephone solicitation calls to Plaintiff. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G; *see also* Smith Decl., Ex. H ¶ 8.)

28. American Protection conceded that it lacked any written evidence of prior express invitation or permission to place calls to Plaintiff and was not aware of where it obtained her contact information. (AP Depo. Tr., Ex. C, at 155:18-156:2; 100:5-16.)

29. SunPath likewise does not possess any record of prior express invitation, permission, or consent for it to place telemarketing calls to Plaintiff. (Statement of Uncontested Facts, Dkt. 56 ¶ 9.)

30. American Protection only solicited her to purchase one VSC, which was a SunPath VSC. Smith specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (*See* Smith Depo. Tr.,

excerpts of which are attached hereto as Ex. L, at 53:12-21 ("Q: Do you remember anything about the language that led you to make that statement that the purpose of the call was to solicit the sale of SunPath's vehicle service contracts? A: Based on my memory, they gave the name of the company and what they were -- what they were -- I think what they were selling. Q: When you say the name of the company, what was the name of the company? A: SunPath.").

Further, the May 28, 2020 follow-up email that American Protection sent to Plaintiff contained a link soliciting her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, Ex. J; *see also* AP Depo. Tr., Ex. C, at 189:1-191:8 (explaining that the email and link attached as Ex. J was generated by American Protection's Inline CRM system)).

Added to this, American Protection's internal CRM system reveals that it created quotes for only a "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020 Email as being SunPath's VSC. (*Compare* CRM Screenshots, attached hereto as Ex. M, pg. 1, *with* May 28, 2020 Email and Link to American Protection Webpage, Ex. J.) The CRM system reveals no other VSC quotes. (*See* CRM Screenshots, Ex. M, at pg. 1.)

Additionally, American Protection's designee testified that after it identified the plan that a customer was best qualified for, they would pitch them to purchase only that company's plan. (AP Depo. Tr., Ex. C, at 35:3-10) If the customer was ultimately rejected for coverage by SunPath, American Protection would not later attempt to solicit the consumer to purchase a plan from a competing VSC company. (*Id.* at 37:11-15.)

31. Plaintiff never purchased a SunPath product (Statement of Uncontested Facts, Dkt. 56 ¶ 12).

## III. ARGUMENT

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Sillah v. Azar*, 774 F. App'x 165, 166 (4th Cir. 2019) (citing *Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015) (quoting Fed. R. Civ. P. 56(a))). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *McKnight v. Pickens Police Dep't*, No. 22-1427, 2022 WL 17729227, at *1 (4th Cir. Dec. 16, 2022) (citing *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 423 (4th Cir. 2018)). To survive summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Id.* (citing *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

As explained below, Plaintiff is entitled to summary judgment with respect to Count II of her Complaint.

### A. No reasonable juror reviewing the record could conclude that the calls at issue did not violate VA. CODE ANN. § 59.1-514.

The VTPPA prohibits "telephone solicitors" from initiating "telephone solicitation calls" to numbers registered on the National DNC Registry. VA. CODE ANN. § 59.1-514(B) (West). The Act defines a "telephone solicitor" as "any person who makes or initiates, or causes another person to make or initiate, a telephone solicitation call on its own behalf or for its own benefit or on behalf of or for the benefit of a seller." *Id.* § 59.1-510 (West). Further, a "telephone solicitation call" is defined as:

> (i) any telephone call made or initiated to any natural person's residence in the Commonwealth, to any landline or wireless telephone with a Virginia area code, or

> to a landline or wireless telephone registered to any natural person who is a resident of the Commonwealth or (ii) any text message sent to any wireless telephone with a Virginia area code or to a wireless telephone registered to any natural person who is a resident of the Commonwealth, for the purpose of offering or advertising any property, goods, or services for sale, lease, license, or investment, including offering or advertising an extension of credit or for the purpose of fraudulent activity, including engaging in any conduct that results in the display of false or misleading caller identification information on the called person's telephone.

*Id.* However, the definition shall not include a telephone call made to any person: (1) with that person's "prior express invitation or permission as evidenced by a <u>signed, written agreement</u>"; (2) with whom "the person on whose behalf the telephone call is made has an established business relationship"; or (3) with whom "the telephone solicitor making the telephone call has a personal relationship." *Id.* § 59.1-514 (West) (emphasis added). However, "[t]he exemption for an established business relationship or a personal relationship shall not apply when the person called previously has stated that he does not wish to receive telephone solicitation calls as provided in subsection A." *Id.*

The undisputed evidence demonstrates that Plaintiff received calls in violation of the VTPPA. That is, on November 8, 2019, Plaintiff registered her telephone number on the National DNC Registry.[2] (*See* Statement of Uncontested Facts, Dkt. 56 ¶ 8.) Notwithstanding her registration, Plaintiff received 172 calls initiated by American Protection directed to her cellular telephone between May 26, 2020 and August 18, 2020. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G; *see also* Smith Decl., Ex. H ¶ 4.) All of the calls were placed by American Protection for the purpose of soliciting Plaintiff to purchase a SunPath VSC. (*See* Smith Depo. Tr., Ex. L, at 53:12-21; *see also* May 28, 2020 Email and Link to American Protection Webpage, Ex. J (email containing link soliciting the sale of SunPath's VSC); *see also*

---

[2] Plaintiff is a Virginia resident whose cellular telephone number ending in 9650 contains a Virginia area code. (*See* Statement of Uncontested Facts, Dkt. 56 ¶ 1; Plaintiff's Response to SunPath's Interrogatory No. 10, Ex. F.)

AP Depo. Tr., Ex. C, at 189:1-191:8 (explaining that the email and link attached as Ex. J was generated by American Protection's Inline CRM system); *also compare* CRM Screenshots, Ex. M, pg. 1, *with* May 28, 2020 Email and Link to American Protection Webpage, Ex. J (revealing that American Protection's CRM system only created quotes for SunPath's "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020 Email as being SunPath's VSC)). Moreover, American Protection conceded that it lacked any written evidence of prior express invitation or permission to place calls to Plaintiff and was not aware of where it obtained her contact information. (AP Depo. Tr., Ex. C, at 155:18-156:2; 100:5-16.) SunPath likewise does not possess any record of prior express invitation, permission, or consent for it to place telemarketing calls to Plaintiff. (Statement of Uncontested Facts, Dkt. 56 ¶ 9.) Further, neither SunPath nor American Protection has put forth any evidence of a "personal relationship" with Smith. These are clear cut violations of the VTPPA.

Plaintiff does not, however, seek damages for all of the calls at issue. Of the three exceptions to the definition of a "telephone solicitation", only the EBR defense has any application in this case. The VTPPA defines an EBR as:

> [A] relationship between the called person and the person on whose behalf the telephone solicitation call is being made or initiated based on (i) the called person's purchase from, or transaction with, the person on whose behalf the telephone solicitation call is being made or initiated within the 18 months immediately preceding the date of the call or (ii) the called person's inquiry or application regarding any property, good, or service offered by the person on whose behalf the telephone solicitation call is being made or initiated within the three months immediately preceding the date of the call.

VA. CODE ANN. § 59.1-510 (West) (emphasis added). Since the parties agree that Plaintiff never purchased a SunPath product (dkt. 56 ¶ 12), SunPath must rely on Smith's inquiry or application regarding its products. Whether a consumer's inquiry is sufficient to establish an EBR turns on the nature of the inquiry, which "must … be such to create an expectation on the part of the

11

consumer that a particular company will call them." *Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *4 (S.D. Ohio Sept. 30, 2019) (citing 68 Fed. Reg. 44,144) (applying the TCPA's EBR definition).[3] "'[A]n inquiry regarding a business's hours or location,' for example, would not establish an EBR." *Id.*

Relevant here, upon answering a call on May 28, 2020, at 12:51 p.m. ET, Smith feigned an interest in the products being offered by American Protection to ascertain the identity of the calling entity.[4] (Smith Decl., Ex. H ¶ 6; *see also* Notes of May 28, 2020 Call, Ex. I; *see also* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G, ln. 9.) As a result of her feigned interest, American Protection sent a follow up email to Smith on May 28, 2020, which identified American Protection at the caller and again solicited her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, Ex. J.) At this point, Plaintiff concedes that she established a business relationship with American Protection sufficient to permit it to continue to place calls to her. *See Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *4-5 (S.D. Ohio Sept. 30, 2019) (finding a feigned inquiry regarding a company's products to be sufficient to establish an EBR). On June 11, 2020, at 8:49 a.m. ET, after receiving additional calls, Smith sent an email to American Protection which stated that she was no longer interested in purchasing any VSC and stated "Do not call me anymore." (June 11, 2020 Email, Ex. K.) At this point, Plaintiff terminated her prior EBR with American Protection and all subsequent calls are unlawful. *See* VA. CODE ANN. § 59.1-514 (West). However, between May 28, 2020 and

---

[3] The VTPPA's EBR definition is substantially similar to the Telephone Consumer Protection Act's definition of an EBR. *See* 47 C.F.R. § 64.1200(f)(5).

[4] SunPath claims that Plaintiff established an EBR on May 26, 2020 by placing a call to American Protection. (Dkt. 66 pg. 15.) As set forth more fully in Plaintiff's opposition to SunPath's motion for summary judgment, Plaintiff could not have *inquired* into SunPath's products during the May 26th call because the call was never answered. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G, ln. 2; *see also* Smith Decl., Ex. H ¶ 5.)

12

June 11, 2020, Plaintiff had an EBR with American Protection, and Plaintiff agrees that the calls placed during this timeframe are not actionable.

Despite her termination of the EBR on June 11, 2020, American Protection continued to place 116 calls to Plaintiff between June 11, 2020 and August 18, 2020. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. G; *see also* Smith Decl., Ex. H ¶ 8.) While SunPath has sought to read a 30-day grace period into the VTPPA to minimize the damages associated with these calls (dkt. 66, pg. 16), the VTPPA contains no such provision. Instead, and as explained more fully in her opposition to SunPath's motion for summary judgment, the VTPPA makes clear that an EBR exemption does not apply where the person "**previously** has stated that he does not wish to receive telephone solicitation calls as provided in subsection A." Va. Code Ann. § 59.1-514 (West) (emphasis added). Consequently, Plaintiff seeks summary judgment with respect to 122 calls (including 6 calls prior to the May 28, 2020 inquiry and 116 calls placed to her after June 11, 2020 termination of the EBR). All of these calls were unlawful "telephone solicitations" as defined by the VTPPA.[5]

Because Plaintiff received 122 telephone solicitations in violation of the VTPPA, Plaintiff is entitled to summary judgment with respect to Count II of her complaint.

### B. Because SunPath retained American Protection to solicit consumers via telemarketing, it can be held liable as a "seller" for the violations of the Act.

The VTPPA provides that the seller "on whose behalf or for whose benefit" the unlawful call was made and the solicitor who initiated the call "shall be jointly and severally liable for such violation." VA. CODE ANN. § 59.1-514.1(A). A "seller" is defined as "any person on whose behalf or for whose benefit a telephone solicitation call offering or advertising the person's property,

---

[5] As explained in Plaintiff's opposition to SunPath's motion for summary judgment, even if the Court finds that a 30-day grace period applies to the termination of an EBR, there are still 50 telephone solicitation calls more than 30-days after Plaintiff's stop request.

13

goods, or services is made or initiated." *Id.* § 59.1-510 (West). The Act further applies a presumption of responsibility to companies like SunPath whose products are offered to consumers via telemarketing, and as a result of that presumption, Defendant "shall be" jointly and severally liable for the calls, regardless of any agency relationship as follows:

> A telephone solicitation call offering or advertising a seller's property, goods, or services shall be presumed to have been made or initiated on behalf of or for the benefit of the seller, whether or not any agency relationship exists between the telephone solicitor and the seller, whether or not the seller supervised or directed the conduct of the telephone solicitor, and whether or not the telephone solicitor is shown to have acted at the seller's direction and request when making or initiating the telephone solicitation call.

*Id.* § 59.1-514.1(B). To rebut this presumption, the seller must show by "clear and convincing evidence" that: (1) it did not retain or request the solicitor to make such calls on its behalf or for its benefit; and (2) the calls were made "without the seller's knowledge or consent." *Id.* § 59.1-514.1(B).

In this case, the undisputed evidence demonstrates that SunPath should be held liable for the calls at issue as a "seller." Specific to the calls placed to Plaintiff, American Protection only solicited her to purchase one VSC, which was a SunPath VSC. Indeed, Plaintiff testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (Smith Depo. Tr., Ex. L, at 53:12-21.) Added to this, American Protection sent Plaintiff a follow-up email, which contained a link soliciting her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, Ex. J.) Finally, American Protection's CRM system reveals that it created quotes for only a "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020 Email as being SunPath's VSC. (*Compare* CRM Screenshots, Ex. M, pg. 1, *with* May 28, 2020 Email and Link to American Protection Webpage, Ex. J.) Even if SunPath was correct that its name was not used during the calls (it is not correct), it makes no difference. Rather, the presumption applies to calls offering or

14

advertising a company's *products* regardless of the use of its name. Because the calls at issue advertised SunPath's products, the presumption that the calls were made on behalf of or for the benefit of SunPath applies.

Try as it may, SunPath cannot overcome the presumption of responsibility. Indeed, SunPath expressly retained American Protection for the express purpose of "actively" soliciting the sale of its auto warranties via telemarketing. (Call Center Marketing Agreement, Ex. A; Dkt. 11-1 ¶ 9.) It further concedes that during all times relevant to this complaint "American Protection was authorized to sell SunPath-related products". (Dkt. 56 ¶ 5.) And it designated American Protection as a licensed representative or agent in the State of Florida to sell its auto warranties. (*See* Florida Licensee Detail, Ex. D; September 20, 2021 Re-Appointment Email, Ex. E; SunPath Depo. Tr., Ex. B, at 29:18-32:14; AP Depo. Tr., Ex. C, at 39:15-23.) Put simply, SunPath cannot credibly contend that it did not "retain or request" American Protection to place the calls at issue on its behalf. This alone is enough to maintain application of the VTPPA's presumption.

Nevertheless, even if SunPath were to argue that it did not "request or retain" American Protection to sell its products, it also cannot credibly claim that the calls were made without its "knowledge or consent." *See* VA. CODE ANN. § 59.1-514.1(B). During the course of its relationship, SunPath approved hundreds of contracts that were sold by American Protection. (SunPath Depo. Tr., Ex. B, at 40:10-22.). Throughout that time, American Protection communicated with SunPath frequently regarding various matters. (*See* AP Depo. Tr., Ex. C, at 26:4-27:22 (discussing American Protection's communications with SunPath's employees on a "weekly" basis). Finally, SunPath would also inform American Protection of certain individuals who should be added to their DNC lists. (*Id.* at 43:9-14.) Together, the undisputed facts demonstrate that in addition to retaining and requesting American Protection to place

15

telemarketing calls on its behalf, SunPath also had knowledge that American Protection was in fact placing calls to solicit the sale of its VSCs and consented to its practices by accepting and approving each contract that it sold.

Accordingly, the VTPPA's presumption applies to SunPath as a "seller" under the Act, such that it can be held "jointly and severally liable" for any calls by its telemarketers that violated the Act. The Court should hold therefore hold SunPath liable for the violations of the VTPPA stemming from the calls placed by American Protection.

### D. The Court should award damages and attorneys' fees and costs to Plaintiff.

The VTPPA authorizes any natural person who is aggrieved by a violation of the Act to seek damages in the sum of "$500 for a first violation, $1,000 for a second violation, and $5,000 for each subsequent violation." VA. CODE ANN. § 59.1-515(A). As detailed above, the undisputed evidence establishes that Plaintiff received 122 telephone solicitation calls in violation of the VTPPA. Applying the VTPPA's damages provisions, the Court should award Plaintiff $601,500 in damages.[6]

Additionally, the VTPPA also provides that an aggrieved person may be awarded their attorneys' fees and costs. *Id.* § 59.1-515 (C). Accordingly, the Court should also award Plaintiff her attorneys' fees and costs for prosecuting this action as provided by the statute. Pursuant to Fed. R. Civ. P. 54(d)(2)(B), Plaintiff will file a motion supporting her request for attorneys' fees within 14 days of entry of final judgment.

### IV. CONCLUSION

Summary judgment should be granted in Plaintiff's favor. American Protection placed

---

[6] If the Court applies the 30-day grace period following Plaintiff's stop request, the Court should award $271,500 in damages for 56 telephone solicitations in violation of the VTPPA, including 6 calls prior to May 28, 2020 and 50 calls after July 11, 2020.

16

more than one hundred calls to Plaintiff for the express purpose of selling SunPath's VSCs. SunPath cannot carry its burden to demonstrate that an EBR exists for the 122 calls in violation of the Act. Nor can SunPath carry its burden to demonstrate that it is not a "seller" as defined by the VTPPA. Accordingly, the Court should grant summary judgment in favor of Plaintiff and award such relief as it deems necessary and just.

Dated: January 6, 2023

**RUTH SMITH**,

By: _/s/ Francis J. Driscoll, Jr._
      One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso (admitted *pro hac vice*)
ppeluso@woodrowpeluso.com
Taylor T. Smith (admitted *pro hac vice*)
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on January 6, 2023.

/s/ Francis J. Driscoll, Jr.