IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | Case No. 1:22-cv-00081-LMB-TCB |
| *Plaintiff,* | |
| *v.* | **RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| **SUNPATH, LTD.,** a Massachusetts corporation, | |
| *Defendant.* | |

## I.    INTRODUCTION

This case challenges Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") serial violations of the Virginia Telephone Privacy Protection Act ("VTPPA").[1] In an attempt to market and sell its vehicle service contracts, SunPath contracted with telemarketing agents like Chukran Management Group LLC, d/b/a American Protection ("American Protection") that—acting on SunPath's behalf and for its benefit—placed unsolicited telemarketing calls to consumers like Plaintiff Smith who registered their phone numbers on the National Do Not Call ("DNC") Registry specifically to avoid the receipt of such calls.

Defendant has moved for summary judgment with respect to Plaintiff's VTPPA claims, arguing that her claims fail or should "be dismissed" because: (1) the calls at issue were supposedly made pursuant to an established business relationship and therefore were not solicitation calls; (2) SunPath cannot be held jointly or severally liable for the actions of

---

[1] Plaintiff no longer intends to pursue her claims related to the TCPA, and, as indicated in her concurrently-filed Motion for Summary Judgment, Plaintiff seeks to proceed with a determination of her VTPPA claims.

American Protection because SunPath is not a "seller" and its products were supposedly not offered on the calls to Plaintiff; and (3) Plaintiff's claims for failure of callers to self-identify by first and last name cannot be applied to calls that she did not answer. While Plaintiff concedes the final point that the claim for failure to identify does not apply to calls she did not answer, Defendant's remaining arguments for summary judgment or "dismissal" are not supported by undisputed facts. Rather, SunPath's litany of "undisputed facts" is instead a series of legal arguments in which Defendant selectively interprets the underlying factual record (to which there are generally few disputes) in its favor. When considering the complete factual record, including evidence that weighs against the legal arguments that SunPath implores the Court to adopt, Defendant's arguments for summary judgment or "dismissal" fail—SunPath is simply not entitled to judgment as a matter of law.

First, Defendant's argument that the calls at issue were made pursuant to an established business relationship ("EBR") is not without dispute. SunPath contends that an EBR was established on May 26, 2020, when Plaintiff made a call to American Protection that was not answered. Plaintiff does not dispute making such a call, but whether the unanswered May 26, 2020 call constitutes an "inquiry" sufficient to establish an EBR is a genuine issue that remains for determination; Plaintiff contends that the EBR between herself and American Protection, if any, began on May 28, 2020, when she actually spoke at length with a representative regarding the products in question. Further, while it is undisputed that Plaintiff requested the calls stop on June 11, 2020, the applicability of the TCPA's 30-day rule for callers to honor stop requests to VTPPA claims is uncertain, and it otherwise should not be applied to immunize the actions of a caller who failed to honor the request at all. Even if it were to apply here, Plaintiff still received fifty (50) calls marketing SunPath's products more than thirty days after her stop request.

Second, the factual record does not support judgment as a matter of law in favor of SunPath on its belief that it cannot be held jointly and severally liable under the VTPPA for calls made by American Protection. Though a dispute exists as to whether SunPath's name was mentioned on the calls, the facts support a finding that Defendant is a "seller" as defined in the statute and its products or services were being offered to Plaintiff on the calls. Likewise, there is no "clear and convincing" evidence to rebut the VTPPA's presumption that the calls were initiated on behalf or for the benefit of SunPath because the Call Center Marketing Agreement ("CCMA") plainly retained American Protection's services to do so.

Accordingly, and as explained below, Defendant's Motion to Summary Judgment should be denied. Plaintiff does, however, concede that her claims for violation of Section 59.1-512 of the VTPPA—failure of callers to identify themselves by first and last name—is inapplicable to calls that Plaintiff did not answer.

## II.   DISPUTED MATERIAL FACTS

Pursuant to Local Civil Rule 56(B), Plaintiff hereby responds to each of Defendant's purported "undisputed facts," including record cites to support each dispute. As a preliminary note, because SunPath's statement of "undisputed facts" comprises legal arguments and conclusions in addition to facts, Plaintiff has included statements of dispute responding to such arguments:

1.      Disputed as phrased and not supported by the proffered evidence. Plaintiff received 172 calls placed by American Protection. (*See* Summary of Five9 call records relating to Plaintiff's phone number, attached hereto as Ex. A[2]; *see also* Declaration of Ruth Smith ("Smith Decl."),

---

[2] The Five9 Call Records data file is available in native format for inspection by the Court upon request.

3

attached hereto as Ex. B ¶ 4.) American Protection only solicited her to purchase one VSC, which was a SunPath VSC. Smith specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (*See* Smith Depo. Tr., excerpts of which are attached hereto as Ex. C, at 53:12-21 ("Q: Do you remember anything about the language that led you to make that statement that the purpose of the call was to solicit the sale of SunPath's vehicle service contracts? A: Based on my memory, they gave the name of the company and what they were -- what they were -- I think what they were selling. Q: When you say the name of the company, what was the name of the company? A: SunPath.").

Further, the May 28, 2020 follow-up email that American Protection sent to Plaintiff contained a link soliciting her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, attached hereto as Ex. D; *see also* AP Depo. Tr., attached hereto as Ex. E, at 189:1-191:8 (explaining that the email and link attached as Ex. D was generated by American Protection's Inline CRM system)).

Added to this, American Protection's internal CRM system reveals that it created quotes for only a "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020 Email as being SunPath's VSC. (*Compare* CRM Screenshots, attached hereto as Ex. F, pg. 1, *with* May 28, 2020 Email and Link to American Protection Webpage, Ex. D.) The CRM system reveals no other VSC quotes. (*See* CRM Screenshots, Ex. F, at pg. 1.)

Additionally, American Protection's designee testified that after it identified the plan that a customer was best qualified for, they would pitch them to purchase only that company's plan. (AP Depo. Tr., Ex. E, at 35:3-10) If the customer was ultimately rejected for coverage by SunPath,

American Protection would not later attempt to solicit the consumer to purchase a plan from a competing VSC company. (*Id.* at 37:11-15.)

Finally, Plaintiff disputes SunPath's characterization that she seeks to hold it "vicariously liable" for the calls placed by American Protection. In addition to vicarious liability, Plaintiff asserts that SunPath is "directly liable under VA. CODE ANN. § 59.1-514.1 (West) for the calls in violation of the VTPPA." (Plaintiff's Second Supplemental Responses to Discovery, p. 7, attached hereto as Ex. G.)

      2.      Undisputed.

      3.      Undisputed.

      4.      Disputed as phrased. Plaintiff does not dispute that SunPath does not directly sell any of its VSCs, but Plaintiff disputes the claim that SunPath "does not have any role" in the sales of its VSCs. SunPath contracts with third-parties who solicit the sale of SunPath's VSCs via its Call Center Marketing Agreements. (*See* Call Center Marketing Agreement, attached hereto as Ex. H.) SunPath derived 100 percent of its revenue from third party sales of its VSCs. (SunPath Depo. Tr., excerpts of which are attached hereto as Ex. I, at 71:12-19.)

      5.      Undisputed.

      6.      Undisputed.

      7.      Undisputed.

      8.      Undisputed.

      9.      Disputed. Plaintiff disputes the contention that "SunPath did not exercise any control over how American Protection" marketed Defendant's products. The Call Center Marketing Agreement requires American Protection to "actively market" SunPath's products and limits the territory in which it is permitted to solicit customers. (Ex. H, at pg. 1). Additionally,

SunPath provides "Promotional Materials" to American Protection, which cannot be altered, substituted, or supplemented without SunPath's written authorization. (*Id.*) The Call Center Marketing Agreement also requires American Protection to perform acts necessary to protect and safeguard the interests of SunPath, and requires it to maintain and service customers in accordance with SunPath's policies and procedures. (*Id.*)

10.     Undisputed.

11.     Undisputed.

12.     Disputed. SunPath's Call Center Marketing Agreement specifies how American Protection is compensated for the sale of its VSCs. (Ex. H, at pg. 2.) Specifically, the agreement states in relevant part:

> 13) [American Protection's] compensation ("Compensation") shall be defined as an amount realized for each Product contract sold, specifically the difference between the Retail Price charged by [American Protection] and the Net Price as supplied by [SunPath], and at all times inclusive of any down payment, the minimum of which is five percent (5%). For the purposes of this Agreement, a "sold" program is defined as a contract that has been executed by the Customer, submitted to [SunPath] for approval and approved by [SunPath] accompanied by full payment or financing approved by [Sunpath].

> 14) Payment or realization of compensation to [American Protection] is the sole responsibility of [American Protection] and [American Protection] shall indemnify and hold [SunPath] harmless from any loss, cost, damage or expense, including reasonable attorneys' fees, incurred by [SunPath] as a result of any claim asserted by [American Protection] that compensation had not been paid.

> 15) The compensation paid or realized by [American Protection] constitutes all compensation paid or payable to [American Protection] for services pursuant hereto, including all expenses incurred by [American Protection] in the performance of its duties as detailed herein. In all cases [American Protection] shall be solely responsible for all of its expenses.

(*Id.*) Hence, American Protection was compensated for each sale by receiving the difference between the sale price and the "net price" set by SunPath for the sale of its VSCs. (*Id.*; *see also* AP Depo. Tr., Ex. E, at 46:20-47:8.) Under the Call Center Marketing Agreement, American

Protection is required collect the payments from the customers and hold SunPath's portion of the proceeds, or "net price", "in trust" for SunPath's benefit. (Ex. H, at pg. 2.)

13.    Disputed. While American Protection's sales alone may represent a "small portion" of its overall revenue, 100 percent of SunPath's revenue is generated by third party sales. (SunPath Depo. Tr., Ex. I, at 71:12-19.)

14.    Disputed and not supported by the proffered evidence. After being sent a mailing from American Protection (*see* Ex. F), Plaintiff placed a call to American Protection on May 26, 2020. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. A, ln. 2; *see also* Smith Decl., Ex. B ¶ 5.) However, the May 26, 2020 call was "abandoned" and never answered by American Protection. (*Id.*) Accordingly, Plaintiff could not have "inquired" about any product offered by American Protection during this call.

Thereafter, American Protection placed three outbound telephone solicitation calls to Plaintiff on May 26, 2020. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. A, lines 3-5.) American Protection then placed three additional outbound telephone solicitation calls to Plaintiff on May 28, 2020. (*Id.*, at lines 6-9.) On the third call on May 28, 2020, Plaintiff answered and spoke with a representative of American Protection for 16 minutes and 48 seconds. (*Id.*, at line 9.) During this call, Plaintiff feigned an interest in the products being offered in order to identify the entity placing the calls. (*See* Smith Decl., Ex. B ¶ 6; *see also* Notes of May 28, 2020 Call, attached hereto as Ex. J; *see also* Summary of Five9 call records relating to Plaintiff's phone number, Ex. A, ln. 9.)

15.    Disputed. Smith specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (*See* Smith Depo. Tr., Ex. C, at 53:12-21 ("Q: Do you remember anything about the language

that led you to make that statement that the purpose of the call was to solicit the sale of SunPath's vehicle service contracts? A: Based on my memory, they gave the name of the company and what they were -- what they were -- I think what they were selling. Q: When you say the name of the company, what was the name of the company? A: SunPath."). This recollection is reinforced by the May 28, 2020 email received by Plaintiff, which contained a link soliciting her to purchase a SunPath VSC. (*See* Ex. D.) Further, SunPath permits American Protection to use SunPath's name to market its VSCs (*see* AP Depo. Tr., Ex. E, at 45:16–18), and the Call Center Marketing Agreement states that "[SunPath] desires to have [American Protection] market the Products to Customers." (Ex. H, at pg. 1.)

      16.      Undisputed.

      17.      Disputed. While American Protection did work with other VSC companies, its representative testified that after it identified the plan that a customer was best qualified for, they would pitch them to purchase said plan. (AP Depo. Tr., Ex. E, 35:3-10) If the customer was ultimately rejected for coverage by SunPath, American Protection would not later attempt to solicit the consumer to purchase a plan from a competing VSC company. (*Id.*, at 37:11-15.) Added to this, American Protection's CRM system reveals that it only created quotes for a "Diamond 48/75,000" VSC plan, which is the same plan identified in the May 28, 2020 Email as SunPath's VSC. (*Compare* CRM Screenshots, attached hereto as Ex. F, pg. 1, *with* May 28, 2020 Email and Link to American Protection Webpage, Ex. D.)

      18.      Undisputed.

      19.      Disputed. Smith specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (Smith Depo. Tr., Ex. C, at 53:12-21.) This recollection is reinforced by the May 28, 2020 email

8

received by Plaintiff, which contained a link soliciting her to purchase a SunPath VSC. (May 28, 2020 Email and Link to American Protection Webpage, Ex. D.) Further, SunPath permits American Protection to use SunPath's name to market its VSCs (AP Depo. Tr., Ex. E, at 45:16–18), and the Call Center Marketing Agreement states that "[SunPath] desires to have [American Protection] market the Products to Customers." (Ex. H, at pg. 1.)

20.     Disputed. Plaintiff does not dispute that she did not communicate with anyone from SunPath. Plaintiff disputes the assertion that "no one from American Protection ever represented to her that they were operating 'on behalf of' SunPath." Again, Smith specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue. (Smith Depo. Tr., Ex. C, at 53:12-21.) Further, the May 28, 2020 Email reveals that American Protection was soliciting Plaintiff to purchase SunPath's VSC. (May 28, 2020 Email and Link to American Protection Webpage, Ex. D.)

21.     Undisputed.

22.     Disputed as phrased. Plaintiff sent an email on June 11, 2020, at 7:49 a.m. CDT, which stated in relevant part: "I am contacting you to let you know that I am not interested in purchasing any vehicle protection/warrenty [sic] for my car. Do not call me anymore." (June 11, 2020 Email, attached hereto as Ex. K.)

23.     Disputed. While Plaintiff does not dispute that American Protection made such a representation, Plaintiff disputes the veracity of the underlying representation. American Protection's representative testified that it let its subscription to the National DNC Registry expire "a couple of years ago" (AP Depo. Tr., Ex. E, at 231:6-21) and further testified that American Protection does not run any of the numbers that it receives from lead generators

against the National DNC Registry. (*Id.* at 83:13-24). Additionally, with respect to the VTPPA, American Protection's representative explained the company lacked any policies and procedures to ensure compliance with the Act and had not even heard of the Act until this lawsuit was filed:

> Q. Okay. And does American Protection have any specific policies or procedures that relate to compliance with the Virginia Telephone Privacy Act?
>
> A. No.
>
> Q. Prior to this lawsuit, did you have – were you aware of the Virginia Telephone Privacy Act?
>
> A. No.

(*Id.* at 156:12–18.) American Protection also permitted its subcontractors to utilize only their first name when placing calls to prospective clients. (*Id.* at 88:21-89:2.)

24.   Disputed. While American Protection claimed that it only places calls to individuals who previously consented, its designee testified that American Protection failed to maintain records of consent for the individuals that it calls:

> Q. Okay. Does American Protection maintain records of prior express consent from the individuals that it places calls to?
>
> A. No.

(*Id.* at 83:25-84:3.) As for Plaintiff, American Protection has no clue how it received her contact information (*Id.* at 100:5-16) and no record of her providing any prior express written consent (*Id.* at 155:18-156:2). Further, after Plaintiff expressly stated that she was not interested in making any purchases and requested that she no longer receive calls—thereby terminating any existing business relationship—Plaintiff received 116 additional calls, including 50 calls more than thirty days after Plaintiff requested that they stop. (*See* Summary of Five9 call records relating to Plaintiff's phone number, Ex. A; *see also* Smith Decl., Ex. B ¶ 8.)

25.     Disputed. Whether SunPath "ratified any conduct" is a legal conclusion, and Plaintiff maintains that SunPath ratified the conduct of American Protection by accepting the benefits of its reckless telemarketing activities. Indeed, SunPath expressly approves each sale by American Protection on a case-by-case basis. (AP Depo. Tr., Ex. E, at 35:3-36:4.)

26.     Disputed. Whether SunPath "ratified any conduct" is a legal conclusion, and Plaintiff maintains that SunPath ratified the conduct of American Protection by accepting the benefits of its reckless telemarketing activities. Indeed, SunPath expressly approves each sale by American Protection on a case-by-case basis. (*Id.*)

## III.   ARGUMENT

### A.     A Genuine Dispute Exists As To Which Of The 172 Calls Plaintiff Received Were Made Pursuant To An Established Business Relationship—Legal Determinations Must Be Made Regarding Which Call Constituted An "Inquiry" And Which Calls, If Any, Were Permissible After Plaintiff's Stop Request.

In its first argument, Defendant contends that Plaintiff's case "should be dismissed as to all claims for calls that occurred while Plaintiff had an [EBR] with American Protection." (Dkt. 66 at 14.) This argument is based on the VTPPA's definition of and exemptions to what constitutes a "telephone solicitation call." Plaintiff does not dispute that, to the extent she is found to have had an EBR with American Protection for some portion of the calls, she would be unable to pursue claims for such portion. However, Plaintiff is factually and legally supported in her dispute as to what call may have created an EBR and whether some or all of the calls she received after her stop request are actionable.

As Defendant points out, the VTPPA defines "telephone solicitation call" as a call made "for the purpose of offering or advertising any property, goods, or services." VA. CODE ANN. § 59.1-510. The prohibition of such calls does not, however, include calls "with whom the person

11

on whose behalf the telephone call is made has an established business relationship." *Id.* § 59.1-514(D). An EBR is said to exist: (1) for 18 months after the called person made a purchase from the company on whose behalf the call is made; or (2) for 3 months after the called person's "inquiry or application regarding any property, good, or service" offered by the company. *Id.* § 59.1-510. The exemption "shall not apply," however, when a called person has stated that they "do[] not wish to receive telephone solicitation calls." *Id.* § 59.1-514(D). The VTPPA provides that no such calls shall be initiated to someone who has made a "stop request," and that request "shall be honored for at least 10 years from the time the request is made." *Id.*

Here, there are four distinct periods of calls received by Plaintiff, each of which may receive its own legal determination as to whether such calls were prohibited:

(1)     the six (6) calls received between May 26, 2020, and May 28, 2020—these calls occurred after Plaintiff made a call to American Protection that wasn't answered, and before she feigned interest in and discussed the VSC products with SunPath's telemarketer;

(2)     the fifty (50) calls received between May 28, 2020, and June 11, 2020—these calls occurred after Plaintiff feigned interest in and discussed the VSC products with a telemarketer, and before she made her "STOP" request;

(3)     the sixty-six (66) calls received between June 11, 2020, and July 11, 2020—these calls occurred no more than thirty days after Plaintiff's stop request; and

(4)     the fifty (50) calls received after July 11, 2020—these calls occurred more than thirty days after Plaintiff's stop request.

Accordingly, Plaintiff will address each of these call batches in turn.

12

*First Six Calls*

Prior to the first six calls that Plaintiff received—three received on May 26, 2020 and three received on May 28, 2020—Plaintiff admits that she made a call of her own to the American Protection phone number, but call records confirm that the call was "abandoned" and never answered. (Ex. B ¶ 5; Ex. A, ln. 2.) Defendant contends that the EBR began on Plaintiff's outbound call, arguing that "[t]here is no dispute that Plaintiff made an inquiry to American Protection regarding the products it sold by calling American Protection on May 26, 2020." (Dkt. 66 at 15.) But there is frankly no legal support for this position.

As defined in the VTPPA, the inquiry must be "regarding any property, good, or service" offered by the company, and Plaintiff's call was never answered. *See id.* § 59.1-510. Guidance on the federal TCPA is instructive on the establishment of an EBR: the term refers to a "prior or existing relationship formed by a *voluntary two-way communication* between a person or entity and a business" on the basis of an inquiry related to products or services. *E&G, Inc. v. Mount Vernon Mills, Inc.*, No. 6:17-CV-318-TMC, 2019 WL 4034951, at *3 (D.S.C. Aug. 22, 2019) (citing 47 C.F.R. § 64.1200 (f)(6)); *see also Charvat v. Southard Corp.*, No. 2:18-CV-190, 2019 WL 13128407, at *2 (S.D. Ohio Sept. 30, 2019) (same). The FCC further clarified that the inquiry must be such "to create an expectation on the part of the consumer that a particular company will call them"; this would not include, for example, inquiries related to a business's hours or location. F.C.C., *Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991*, 68 FR 44144-01, 44159 (2003). Defendant has not produced and cannot produce any evidence to demonstrate the nature of Plaintiff's inquiry on May 26, 2020, because no such inquiry occurred. Plaintiff ended her call before reaching a representative, and thus there was no inquiry or even a "voluntary two-way communication" to support the

13

establishment of an EBR. Thus, Plaintiff disputes the applicability of any EBR to the first six calls she received.

*Fifty Calls After May 28 Conversation*

On May 28, 2020, on the sixth call that Plaintiff received, she spoke with a representative for sixteen minutes and feigned an interest in the products being offered in an effort to identify the entity making the calls. (Ex. B ¶ 6; Ex. A, ln. 9.) Even though she was feigning interest, Plaintiff concedes that the conversation on May 28 was a voluntary two-way conversation and inquiry sufficient to establish an EBR, such that the fifty calls that she received between May 28, 2020, and June 11, 2020, would be exempt from the VTPPA's definition of "telephone solicitation calls."

*Sixty-six Calls Within 30 Days After Stop Request*

On June 11, 2020, Plaintiff made a request that American Protection stop calling her—Defendant does not dispute this request. (Ex. K; Dkt. 66 at 16.) At the time of this request, Plaintiff affirmatively ended any EBR in existence, and the VTPPA's exemption no longer applied to protect the calls made from liability. VA. CODE ANN. § 59.1-514(D); *see also Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1123 (W.D. Mo. 2020) (noting that a "seller-specific do-not-call request . . . terminates an EBR for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller") (citing 47 C.F.R. § 64.1200(f)(5)(i)).

Defendant does not dispute that this request ended the EBR, but it claims that, "[a]t this point, American Protection had 30 days to honor that request (i.e., until July 11, 2020)." (Dkt. 66 at 16.) This thirty-day rule does not appear in the VTPPA—it is pulled from the Code of Federal Regulations ("CFR") supporting the TCPA. Defendant encourages the implementation of this

14

rule because: (1) "the VTPPA does not provide explicit guidance regarding the time-frame to honor a do-not-call request that terminates an EBR"; and (2) the statute elsewhere incorporates the CFR. *Id.* Neither of these assertions is completely accurate.

First, the VTPPA does provide guidance regarding the time-frame for honoring a stop request: "Any such request not to receive telephone solicitation calls shall be honored *for at least 10 years from the time the request is made*." VA. CODE ANN. § 59.1-514(A) (emphasis added). Thus, by the plain language of the statute, Plaintiff's request should have been honored from June 11, 2020, to June 11, 2030. This period does not include a "thirty-day rule," and it is twice as long as the five-year period specified in the TCPA. *Compare id., with, e.g.,* 47 C.F.R. § 64.1200(d)(6). Second, the VTPPA's "incorporation" of the CFR is a result of reference to "the National Do Not Call Registry maintained by the federal government pursuant to [47 C.F.R. § 64.1200]." VA. CODE ANN. § 59.1-514(B). This reference to the DNC list established by federal law does not amount to a wholesale adoption of federal law in place of the state statute. Accordingly, Plaintiff disputes the applicability of the federal "thirty-day rule" as a safe harbor for the sixty-six calls that were made to Plaintiff the first month after her stop request. The calls should have stopped immediately.

Nevertheless, even if the thirty-day rule were applicable to this case, the rule states that telemarketers "must honor a residential subscriber's do-not-call request within a reasonable time—not [to] exceed thirty days from the date of such request." 47 C.F.R. § 64.1200(d)(3). This rule does not automatically absolve telemarketers from liability for any calls made in the thirty days after receiving a stop request, especially when the telemarketer *fails* to honor the stop request at all. Here, Defendant has not proffered any evidence to suggest that Plaintiff's stop request was honored within any reasonable time, let alone thirty days. Rather, the evidence

15

suggests that American Protection *continued* calling Plaintiff even after the thirty-day period. (Ex. A; *see also* Smith Decl., Ex. B ¶ 8.) Thus, even if the thirty-day rule were operative in this case, it should not apply to any of the calls received by Plaintiff because her stop request was not honored within a reasonable time.

***Fifty Calls More Than 30 Days After Stop Request***

Finally, and even in the event that the TCPA's thirty-day rule were applied in this case to shield Defendant from liability for the sixty-six calls it made in the first month after Smith's stop request, there is no protection and no EBR to shield the fifty calls that Plaintiff received more than thirty days after her stop request. Defendant recognizes in its motion that the maximum period during which calls could be protected—by function of both an EBR beginning at the unanswered call (which should not be considered an inquiry) and application of the CFR's thirty-day rule after Smith's stop request—would run from May 26, 2020 to July 11, 2020. Thus, the calls received after July 11, 2020, are not subject to any protection, and Plaintiff would still proceed with regard to at least fifty calls.

In short, Defendant has not stated an adequate basis for judgment as a matter of law regarding whether many of the calls Plaintiff received were exempt from liability. Plaintiff concedes that the fifty calls that she received between May 28, 2020 and June 11, 2020 are exempt as made pursuant to an EBR, but the remaining 122 calls are in dispute.

### B.    SunPath May Be Held Jointly And Severally Liable For The Calls Under The VTPPA.

Defendant's next basis for seeking summary judgment is on the issue of joint and several liability established by the VTPPA for sellers of a product that is offered on a telephone solicitation call. (Dkt. 66 at 17–22.) SunPath contends that the VTPPA's presumption and assignment of liability to sellers does not apply to it because: (1) Defendant's products or

16

services were supposedly not offered to Plaintiff on the calls; (2) Defendant supposedly is not a "seller"; and (3) Defendant supposedly "had no connection" to the calls at issue. As explained below, the factual record does not support SunPath's position on any of these points, and Defendant is not entitled to summary judgment in its favor on the application of joint and several liability through the VTPPA's presumption.

Defendant contends that the VTPPA does not impose strict liability on sellers, based on *Zhu v. Dish Network*, LLC, 808 F. Supp. 2d 815, 818 (E.D. Va. 2011). However, this is not good law. *Zhu* was decided in 2011—approximately eight years before the VTPPA was amended to add the relevant presumption and application of joint liability to the statute. As of 2019, under the VTPPA, it is "presumed" that telemarketing calls advertising a company's products were made on behalf of the company:

> A telephone solicitation call offering or advertising a seller's property, goods, or services **shall be presumed** to have been made or initiated on behalf of or for the benefit of the seller, **whether or not any agency relationship exists** between the telephone solicitor and the seller, **whether or not the seller supervised or directed the conduct** of the telephone solicitor, and **whether or not the telephone solicitor is shown to have acted at the seller's direction and request** when making or initiating the telephone solicitation call.

VA. CODE ANN. § 59.1-514.1(B) (emphasis added). The Act provides that the seller "on whose behalf or for whose benefit" the unlawful call was made and the solicitor who initiated the call "shall be jointly and severally liable for such violation." *Id.* § § 59.1-514.1(A). To rebut this presumption, the seller must show by "clear and convincing evidence" that: (1) it did not retain or request the solicitor to make such calls on its behalf or for its benefit; **and** (2) the calls were made "without the seller's knowledge or consent." *Id.* § 59.1-514.1(B). Here, the statute's presumption and standard of liability apply to Defendant and the calls at issue.

## 1.   SunPath's VSCs were offered to Plaintiff on the calls.

First, SunPath contends that the presumption that calls were made on its behalf or for its benefit does not apply because, according to Defendant, its products were not offered on the calls. (Dkt. 66 at 18–19.) Defendant relies heavily on the contention that Plaintiff did not hear the name "SunPath" on the calls that she received. Plaintiff testified that SunPath's name was identified on at least one of the calls, but, even if Defendant's contention were true, this consideration does not impact the statute's application.

To be sure, the VTPPA's presumption applies to calls "offering or advertising a seller's property, goods, or services." VA. CODE ANN. § 59.1-514.1(B). The statute makes no mention of whether the seller must be identified by name on the call—only that the call must offer or advertise the seller's goods. *Id.* Nevertheless, Smith testified that she recalled American Protection identifying SunPath as the company whose products were being pitched during the calls at issue. (Ex. C at 53:12-21.) Her recollection is reinforced by the follow-up email she received on May 28, 2020, which contained a link soliciting purchase of a SunPath VSC. (Ex. D.) Further, American Protection's representative testified that, after identifying the best VSC plan for a given consumer, American Protection would exclusively solicit the purchase of that plan, and it would not later attempt to solicit the purchase of a VSC from a competing company if the first was rejected. (Ex. E at 35:3-10, 37:11-15.) Given that American Protection's CRM system revealed that the only quote it created for Plaintiff was for a "Diamond 48/75,000" VSC plan—the same plan identified by email as SunPath's VSC—the only product that was offered to Plaintiff on the calls was Defendant's VSC. (*Compare* Ex. F at 1, *with* Ex. D.)

In light of these facts, it is evident that the calls at issue were made to market or solicit the purchase of Defendant's vehicle service contract products, regardless of whether the name

18

"SunPath" was spoken on some or all of the calls. These facts are sufficient to create a genuine issue, and Defendant is not entitled to summary judgment on this point.

### 2. SunPath cannot credibly contend that it is not a "seller" as defined by the VTPPA.

Next, Defendant claims that it is not a "seller" as the term is defined in the VTPPA. (Dkt. 66 at 19–22.) SunPath claims that the calls attempting to solicit purchase of its VSCs were neither made on its behalf nor for its benefit. But the facts in this case suggest otherwise, and SunPath qualifies as a seller.

The VTPPA defines a "seller" as "any person on whose behalf or for whose benefit a telephone solicitation call offering or advertising the person's property, goods, or services is made or initiated." VA. CODE ANN. § 59.1-510. In the context of the presumption established in Section 514.1, this definition is rendered redundant—the statute assigns joint and several liability to "seller[s] on whose behalf or for whose benefit a telephone solicitor makes or initiates a telephone solicitation call" in violation of the statute (*id.* § 59.1-514(A)), and likewise a call offering or advertising a seller's products "shall be presumed to have been made or initiated *on behalf of or for the benefit of a seller.*" *Id.* § 59.1-514(B) (emphasis added). Thus, if Defendant's products or services were offered or advertised on the call, it is presumed that the calls were made on behalf of or for the benefit of SunPath, and SunPath is therefore presumed to be the seller as defined. It would make little sense to require a plaintiff to doubly prove that calls were made on behalf of or for the benefit of a particular company, especially when the statute applies a presumption to that particular fact. As explained above, the facts here support a finding that SunPath's VSC products were offered on the calls, and accordingly Defendant is presumed to be the "seller."

However, and despite SunPath's protestations, the facts here demonstrate that American

19

Protection made calls on behalf of and for the benefit of SunPath. SunPath testified that it derives 100 percent of its revenue from third-party sales of its VSCs, and to sell its VSCs, SunPath contracts with third-parties like American Protection who offer the products to consumers in order to solicit sales. (Ex. I, at 71:12-19.) The Call Center Marketing Agreement also requires that American Protection collect payments from customers and hold SunPath's portion of the proceeds, or "net price", "in trust" for SunPath's benefit. (Ex. H at 2.)

These facts completely refute Defendant's contention that the calls made by third-party marketers like American Protection were not made on behalf of and for the benefit of SunPath—they account for all of SunPath's revenue, and given that SunPath does not sell directly to consumers, it must rely on others to make sales on its behalf. Defendant attempts to liken this relationship to that of a grocery store with items on its shelves or a bar with multiple beers on tap, simply because American Protection can market products for other companies as well. (Dkt. 66 at 21–22) (citing *Worsham v. Disc. Power, Inc.*, Civil Action No. RDB-20-0008, 2022 U.S. Dist. LEXIS 139580, at *21 (D. Md. Aug. 4, 2022). The analogy is of little use here due to the differences in industries and consumer choice. A customer can walk into a grocery store or bar and select the goods they want to purchase—it would be unusual for a brewery to contractually obligate a bar to engage in wide-scale telemarketing to "actively market" and solicit the purchase of a particular beer. But that is what has occurred here: SunPath contracted with American Protection to "actively market" SunPath's products (Ex. H at 1.), and after determining which consumers it would market Defendant's products to, American Protection would not present alternate contracts or attempt to solicit the purchase of a competing product to any given consumer. (Ex. E at 35:3-10, 37:11-15.)

The factual record supports both the presumption and a direct finding that the calls at

issue were made "on behalf of or for the benefit of" SunPath, thereby rendering Defendant a "seller" as defined in the VTPPA. The facts do not support judgment as a matter of law in Defendant's favor.

 2. **The factual record does not contain "clear and convincing" evidence to rebut the presumption that the calls were made on behalf of or for the benefit of SunPath.**

As a third means of attempting to evade the VTPPA's standard of joint and several liability, Defendant contends that the underlying facts in this case are sufficient to rebut the presumption that the calls were made on behalf of or for the benefit of SunPath. (Dkt. 66 at 23–28.) However, in order to rebut the presumption, the facts must show by clear and convincing evidence that Defendant did not retain or request American Protection to make solicitation calls and that the calls were made without the seller's knowledge. Such a showing is not supported by the factual record.

Once again, the VTPPA creates a presumption that calls made offering or advertising a particular seller's product were made "on behalf of or for the benefit of" said seller, such that they may be held jointly and severally liable for the calls. VA. CODE ANN. § 59.1-514.1(B). This presumption can be rebutted:

> The presumption may be rebutted if it is shown by **clear and convincing evidence** that the seller **did not retain or request the telephone solicitor to make telephone solicitation calls** on the seller's behalf or for the seller's benefit **and** that the telephone solicitation calls offering or advertising the seller's property, goods, or services were made by the telephone solicitor **without the seller's knowledge or consent**.

*Id.* (emphasis added). In other words, SunPath must demonstrate with "clear and convincing" evidence *both* that it did not retain American Protection to make solicitation calls for its benefit, *and* that the calls were made without its knowledge or consent. The evidence is insufficient to

rebut this presumption.

Much of Defendant's argument is that, because the contract required that American Protection use "good faith and best efforts" to ensure compliance with applicable laws, any potentially unlawful call falls outside the scope of the contracted telemarketing activity. (Dkt. 66 at 23–25.) This argument is flawed for at least two reasons. First, it is unsurprising that SunPath would require American Protection to comply with the law because any contract authorizing a telemarketer to violate the TCPA or any state telemarketing law would be void *ab initio*. *See, e.g.*, *Meuse v. Henry*, 296 Va. 164, 183, 819 S.E.2d 220, 230 (2018). Taken to its logical end, SunPath's position would prevent any seller from being held liable for the unlawful actions of its third-party telemarketers—eviscerating the VTPPA's presumption and attachment of liability completely—so long as the seller told its downline agents not to break the law. Such a standard would immunize all sellers from liability under the Virginia law, which is designed specifically to attach liability to those sellers.

However, and secondly, the presumption must be rebutted by clear and convincing evidence as to *both* portions: (1) that the seller did not "retain or request" that the telemarketer make solicitation calls on its behalf or for its benefit; **AND** (2) that the calls were made without the seller's knowledge or consent. VA. CODE ANN. § 59.1-514.1(B). The contract's "good faith" compliance provision could perhaps be evidence that any unlawful calls were made without SunPath's consent, but the evidence plainly demonstrates that Defendant retained American Protection for the purpose of making calls to sell its VSCs. SunPath expressly contracted with American Protection to "actively market" SunPath's products, and it provided "Promotional Materials" to American Protection to enable it to do so. (Ex. H at 1.) Further, the Call Center Marketing Agreement required American Collection to collect payments from customers and

22

hold SunPath's portion of the proceeds "in trust" for SunPath's benefit, (Ex. H at 2), and, as stated above, third-party sales like the ones made by American Protection account for 100 percent of SunPath's revenue. (Ex. I at 71:12-19.)

The evidence in this case does not, by a "clear and convincing" standard, suggest that Defendant did not retain American Protection for the purpose of making telemarketing calls to solicit the purchase of SunPath's products. Quite the opposite—the contract between SunPath and American Protection clearly demonstrates that Defendant retained American Protection for the purpose of "actively marketing" its products to consumers. Thus, even if the Court accepts Defendant's argument that it did not consent to any unlawful telemarketing calls made on its behalf, Defendant has failed to establish both prongs required to successfully rebut the presumption from which its liability arises. Accordingly, Defendant is not entitled to summary judgment.

**C.      Plaintiff Concedes That Her Claims For Violation of Section 59.1-512 Of The VTPPA Are Inapplicable To Unanswered Calls.**

Defendant's final bid for summary judgment refers to Count III of Plaintiff's Complaint, which is Smith's claim for violation of Section 59.1-512 of the VTPPA. (Dkt. 66 at 28.) Specifically, Defendant argues that Plaintiff's claims for failure of callers to identify themselves by first and last name, as is required by Section 59.1-512, cannot be applied to any calls that Plaintiff did not answer. (*Id.*) Of course, if Plaintiff did not answer a particular call, she cannot testify to any communications made on such call and thus cannot attest to such callers failing to adequately identify themselves. Thus, Plaintiff concedes that her claims related to VA. CODE ANN. § 59.1-512 are not applicable to any calls that she did not answer. However, Plaintiff maintains—and SunPath does not dispute in its Motion for Summary Judgment—that the representatives on calls that she did answer failed to identify themselves by first and last name,

as required by the VTPPA. Therefore, as it pertains to the calls she answered, Smith's third cause of action is not subject to dismissal or summary judgment in Defendant's favor.

## IV.    CONCLUSION

While Plaintiff concedes that her claim for failure of callers to identify themselves by full name cannot apply to calls she did not answer, the remainder of Defendant's motion for summary judgment should be denied in its entirety. A genuine issue exists as to both the origin of the EBR between Plaintiff and American Protection and the timeframe in which American Protection had to stop calling Plaintiff after she made a stop request and ended the EBR, and even if both issues were decided favorably to Defendant, there are still at least fifty calls unprotected by any EBR. Further, the factual record supports the application of the VTPPA's standard of joint and several liable to SunPath—SunPath is a seller whose products were offered on the solicitation calls in question, and Defendant has failed to rebut the statutory presumption by clear and convincing evidence. Accordingly, the Court should deny Defendant's Motion to Summary Judgment and grant any further relief as it deems necessary, reasonable, and just.

Respectfully Submitted,

**RUTH SMITH**, individually and on behalf of all others similarly situated,

Dated: January 6, 2023

By: _/s/ Francis J. Driscoll, Jr._
        Counsel for Plaintiff

Francis J. Driscoll, Jr.
frank@driscolllawoffice.com
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso*
ppeluso@woodrowpeluso.com

24

Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809
*Attorneys for Plaintiffs and the Class*

* *Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on January 6, 2023.

/s/ Francis J. Driscoll, Jr.