**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | |
| *v.* | Case No. 1:22-cv-00081 (LMB/WEF) |
| **SUNPATH, LTD.,** a Massachusetts corporation, | |
| *Defendant.* | |

**DEFENDANT SUNPATH, LTD.'S REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Defendant SunPath, Ltd. ("SunPath"), by counsel, submits its Reply to Plaintiff's Response in Opposition to SunPath's Motion for Summary Judgment ("Opposition"), ECF No. 76.

## I.   SunPath's Undisputed Facts Are Undisputed.

### A.  Plaintiff Mischaracterizes the Record Evidence to Manufacture a Dispute of Fact that is Not Real.

Plaintiff's Opposition fails to prove that any of the undisputed facts are genuinely disputed.  In a transparent effort to stave off the Court's resolution of SunPath's Motion for Summary Judgment in its favor, Plaintiff mischaracterizes record evidence in a failed attempt to muddy the record.  The three most prevalent mischaracterizations involve Plaintiff's and American Protection's deposition testimony, and the Marketing Agreement ("Agreement") between SunPath and American Protection. The facts listed in SunPath's Memorandum in Support of its Motion for Summary Judgment ("Memo"), ECF No. 66, are undisputed once Plaintiff's mischaracterizations are properly disregarded.  Therefore, no questions of fact are left for the jury. All that remains are legal questions for the Court to determine.

It is undisputed that SunPath's name was never mentioned on any of the calls at issue. *See* SunPath's Memo at 9. Plaintiff claims that she "specifically testified that she recalled that American Protection identified SunPath as the company whose products were being pitched during the calls at issue." Opp'n at 4. But, the full context of Plaintiff's testimony plainly shows that "her complete recollection of whether SunPath or another company's name was mentioned during the calls at issue was contained in the notes she created at the time of the calls." Memo at 9.[1] Yet, those notes do not contain a single mention of SunPath. *See* Memo **Ex. 9**, ECF No. 66-9

---

[1] *See* Deposition of Plaintiff Ruth Smith ("Smith Dep.") at 52:12-19; 53:9-54:2; 54:5-6 (Q: "The next line of that paragraph and the final line says, 'Further, the caller solicited plaintiff to purchase SunPath's vehicle service contracts.' Can you describe how the caller solicited you to purchase SunPath's vehicle service contract. A: I would have to – for the exact information, **I**

(Plaintiff's call notes containing no reference to SunPath).[2]   This is not a surprise:  It was not until later when American Protection emailed her a link to another document that she learned of SunPath's identity.  *See* Memo **Ex. 11**, ECF No. 66-11.  Moreover, "the sales script American Protection produced in this case does not contain any mention of SunPath's name." Mem at 10; *see also* Memo **Ex. 10**, ECF No. 66-10 (American Protection sales script). Thus, it is undisputed that SunPath's name was never mentioned on any of the calls at issue.

Plaintiff then mischaracterizes the deposition testimony of American Protection in a failed attempt to create a dispute as to the fact that Plaintiff was never offered a SunPath VSC on the calls at issue. Plaintiff claims that "[i]f the customer was ultimately rejected for coverage by SunPath, American Protection would not later attempt to solicit the consumer to purchase a plan from a competing VSC company." Opp'n at 4-5. First, this claim is irrelevant because there is no evidence that SunPath rejected Plaintiff for coverage. The only record evidence is that **Plaintiff rejected** a VSC she had been offered by American Protection. *See* Memo **Ex. 12,** ECF No. 66-12 (Plaintiff's email to American Protection). Plaintiff never actually purchased a SunPath VSC. *See* Statement of Uncontested Facts ¶ 12, ECF No. 56. Thus, SunPath never heard of Plaintiff until her attorney approached it for money to settle these claims.  SunPath certainly never had an

---

**would have to refer to my notes**. . . . Q: Why would you have to refer to your notes? A: For the exact language. Q: Do you remember anything about the language that led you to make that statement that the purpose of the call was to solicit the sale of SunPath's vehicle service contracts? A: Based on my memory, they gave the name of the company and what they were – what they were – I think what they were selling. Q: When you say the name of the company, what was the name of the company? A: SunPath. Q: You say that they used the word 'SunPath' as the name of the company, not another company's name? . . .  A: **I would have to refer to my notes for exactly what the…**") (emphasis added), attached as **Exhibit 1**.

[2] Plaintiff tries to claim that a May 28, 2020 email from American Protection reinforces her recollection that SunPath was mentioned on one of the calls with American Protection. *See* Opp'n at 18. Plaintiff's deposition testimony defeats that claim. She testified that it was her notes she would need to rely on, not the email, to see what company names were stated on the calls at issue. *See* Smith Dep. at 52:12-19; 53:9-54:2; 54:5-6. Plaintiff cannot now contradict her deposition testimony and claim her recollection instead relies on that email.

opportunity to reject a sale to Plaintiff.  Second, Plaintiff mischaracterizes that testimony by stating "American Protection's representative testified that, after identifying the best VSC plan for a given consumer, American Protection would exclusively solicit the purchase of that plan, and it would not later attempt to solicit the purchase of a VSC from a competing company if the first was rejected." Opp'n at 18. But, American Protection's actual testimony does not address what happens when *the consumer* rejects an offered VSC.[3] A consumer's rejection of an offered VSC is all that is applicable in this case. *See* Memo **Ex. 12**. Plaintiff cannot rely on that irrelevant testimony to create an issue of fact.

Finally, Plaintiff's Opposition repeatedly mischaracterizes SunPath's Agreement with American Protection. But, her interpretation of it cannot create any disputed triable facts as "[t]he interpretation of a contract is a question of law[.]" *Frahm v. United States*, 492 F.3d 258, 262 (4th Cir. 2007) (citing *Scarborough v. Ridgeway*, 726 F.2d 132, 135 (4th Cir. 1984)).   Thus, when Plaintiff's red herrings are properly ignored, the Court is left with an undisputed record that is ripe for summary judgment in SunPath's favor.

### B.  Plaintiff Improperly Relies on Inadmissible and Improper Evidence.

Plaintiff's Opposition also improperly relies upon inadmissible documents, namely the records recently produced by Five9, Inc. ("Five9") and Plaintiff's newly crafted declaration. *See* Opp'n **Ex. A,** ECF No. 76-1; **Ex. B**, ECF No. 76-2; *see also* Opp'n at 3-4. Neither are admissible[4] and Plaintiff cannot rely on them now.[5] In addition to being inadmissible, Plaintiff's

---

[3] *See* Deposition of American Protection ("AP Dep.") 37:11-15 (": Okay. And if SunPath rejects the contract, would American Protection ever say, All right, well, then we have these other options with one of the other companies that you work with? A: No."), excerpts attached as **Exhibit 2**.
[4] The inadmissibility of the Five9 records is addressed more fully in SunPath's First Motion in Limine, ECF No. 84. *See also* Memo at 9 n.2; 16-17 n.7 (addressing the inadmissibility of the

declaration cannot be used to oppose summary judgment because it is based exclusively on Five9 records about which she lacks personal knowledge.[6] For example, Plaintiff points to the Five9 data to support her claim that a call that she made to American Protection was "abandoned and never answered."  Opp'n at 13.  Plaintiff relies solely on the Five9 records for that claim. *See* Opp'n **Ex. B**. ¶ 4.  But, she lacks personal knowledge of their meaning and interpretation.  These records are nothing more than unexplained, non-self-explanatory content that Five9 produced in response to a subpoena for American Protection data that Plaintiff served late in the discovery window and which Five9 only authenticated well after the close of discovery.  Notably, the Five9 records contain the term "Abandon." It is not self-explanatory what this term means. Plaintiff took no deposition of a Five9 representative to explain the meaning of this mishmash of data.  This leaves both the parties and the Court without a key to decipher it.

Furthermore and as addressed below, there is no available witness with specialized knowledge of the Five9 records that can explain them through admissible testimony. Without

---

Five9 records). The inadmissibility of Plaintiff's declaration is addressed in SunPath's Motion to Strike Plaintiff's Declaration, ECF No. 82.

[5] *See Guessous v. Fairview Prop. Invs. LLC*, 828 F.3d 208, 216 (4th Cir. 2016) ("The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial" and can only "do so by offering sufficient proof in the form of **admissible** evidence[.]") (internal quotations and citations omitted) (emphasis added); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

[6] *See* Smith Dep. 147:3-148:11 ("Q: You contend that June 9 was the last call that you received that you're seeking damages for in this case? A: Again, whatever I provided initially was correct, but I know that there's the call logs that were received. So that is correct, what's in the logs. Q: Can you clarify what you mean by that? A: So when I submitted all the documentation that I had, that was to the best of my knowledge at the time, but I understand that the call logs have different information, and they are – they are correct. Q: [W]hen you say the call logs, are you referring to call logs that you believe your counsel has received but you have not yet reviewed? A. Yes. They just came this week, yes. Q: So when you say that you believe that the call logs confirm this not to be the case, is that based on representations from counsel? A: Because it's an accurate – because of the logs that were received by the company versus what I have. Q: Right, And I'm just saying you haven't reviewed these call logs that you're referring to, right? A: Correct. Q: So how do you know that the call logs confirm this? A: I rely on my counsel.").

such, Plaintiff's declaration is inadmissible and cannot be used to defeat summary judgment. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence[.]").[7]

Further, the Five9 records have never been authenticated as "call records," as Plaintiff contends. *See* Declaration of Five9 Representative ("Five9 Decl."), attached as **Exhibit 3**. Therefore, Plaintiff's characterization of the Five9 data as "call records" is inadmissible speculation.[8]

Plaintiff's declaration is also improper for summary judgment purposes because it supplements and contradicts her discovery responses and deposition testimony.[9] As explained above, Plaintiff testified at her deposition that she had no personal knowledge of the Five9 records and had not even reviewed them. Plaintiff cannot now contradict her deposition testimony by claiming that the Five9 records "represent[] an accurate reflection of the calls that

---

[7] *See* Fed. R. Evid. 602 and 701; *see also Steves & Sons Inc. v. Jeld-Wen, Inc.*, Civil Action No. 3:16cv545, 2018 U.S. Dist. LEXIS 5061, at *4 (E.D. Va. Jan. 10, 2018) ("The modern trend favors the admission of opinion testimony [under Rule 701], provided that it is well founded on personal knowledge" (citing *MCI Telecomms. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990))).

[8] It is obvious they are not simply call records of the type traditionally produced by phone companies because the column titled "DURATION" contains many entries of 00:00:00. All calls take *some* time. Moreover, there are numerous other temporal-related categories in those records that make it further inscrutable as to what they may mean, and Plaintiff never elicited any such testimony from Five9, whether during discovery or to this day. Indeed, Plaintiff only recently secured a declaration from Five9 purporting to authenticate the records, but that declaration simply refers to the voluminous data as "records"—not "call records," as Plaintiff would have it. *See* **Ex. 3**. "Records" is as illuminating as calling it "digital stuff."

[9] *See Gomez v. Haystax Tech, Inc.*, 761 Fed. Appx. 220, 229 (4th Cir. 2019) (When a party fails to provide information as required by Fed. R. Civ. P. 26(e) "the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." (citing Fed. R. Civ. P. 37(c)(1))); *see also Alba v. Merrill Lynch & Co*, 198 Fed. Appx. 288, 300 (4th Cir. 2006) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984))).

[she] recall[s] receiving from" American Protection. Opp'n **Ex. B** ¶ 2.[10] Plaintiff's declaration cannot be considered in evaluating SunPath's entitlement to summary judgment.

The Five9 records are also inadmissible because there is no witness who can properly testify to them. Five9 (a publicly traded company based in California) cannot testify at trial because Plaintiff untimely disclosed the entire entity as a potential trial witness at 5:46 PM on the last day of discovery.[11] Plaintiff has neither sought leave for, nor provided substantial justification for, her untimely disclosure. The harm and prejudice to SunPath is self-evident. Until that disclosure, the Five9 spreadsheets were simply a non-party's unauthenticated data dump of unidentified data produced in response to Plaintiff's subpoena late in the discovery

---

[10] Plaintiff's declaration also serves to improperly supplement and contradict her timely discovery responses. Since August 29, 2022, Plaintiff had a duty to fully answer and supplement her answer to an interrogatory asking her to identify all calls she sought recovery for in this Lawsuit. *See* SunPath's First Set of Discovery Request to Plaintiff Ruth Smith at 7, attached as **Exhibit 4**. In her initial answer and two supplemental answers, Plaintiff never identified more than 54 calls, none of which occurred after June 9, 2020. Then the day before the end of discovery Plaintiff untimely supplemented her answer a third time to claim she is now seeking recovery for calls she claims are reflected in the inadmissible Five9 records. *See* Memo **Ex. 14** at 6-7, ECF No. 66-14. Based on Plaintiff's declaration, apparently that totals 118 *more calls* that occurred after June 9, 2020. Plaintiff cannot now rely on the contradictory statements in her declaration to support her claim *to more than three times* the amount of calls she was seeking recovery for throughout the entire discovery period. The dramatic incongruence between the calls Plaintiff knew about and the unidentified "records" produced by Five9 further highlights why Plaintiff cannot reasonably assume them to be "call records."

[11] *See* Plaintiff's Second Supplemental Initial Disclosures at 3, dated December 9, 2022 (listing Five9 and its unidentified "agents, former agents, employees, former employees, and records custodians of Five9"), attached as **Exhibit 5**; *see also* August 5, 2022 Order, ECF No. 25 (ordering discovery completed by "December 9, 2022" and that "no person may testify whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained.") (emphasis in Court's Order); *see also Gomez,* 761 Fed. Appx. at 229, 233-34 ("When a party fails to make a disclosure 'as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless'. . . . [holding] the district court did not abuse its discretion in excluding . . . witnesses . . . [disclosed] the last day of discovery.") (internal citations omitted).

window.  This Court's Orders, its Local Rules, the Federal Rules, and *Gomez* all confirm that Five9 should be precluded from testifying at trial.

Since Five9 cannot testify at trial, Plaintiff has no witness with specialized knowledge to testify to the Five9 records. Again, the Five9 records are not self-explanatory. They are complex data that require specialized skill and knowledge to decipher and explain.  An expert witness competent in elucidating their meaning is needed to explain them.  Any lay testimony about them, even if they were somehow relevant, would create an undue risk of confusion and would be misleading to the jury.[12] *See* Fed. R. Evid. 403, 602, 701, 702.

Plaintiff untimely produced the Five9 Decl. on January 6, 2023. *See* **Ex. 2**. Plaintiff cannot use the Five9 Decl. due to its untimely production.[13] Even if Plaintiff could offer the Five9 Decl., it does not state that the Five9 records are *call* records.  By its own terms, the Declaration refers to the spreadsheets simply as "records."  Records of what, we do not know. Neither SunPath, the Court, nor the jury should be made to guess. Therefore, Plaintiff cannot offer them as "call records." *See* Fed. R. Evid 901(a).

## II.    All the Calls at Issue Were Either Made Pursuant to an Established Business Relationship or Did Not Offer or Advertise a SunPath Product.

---

[12] *See Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 101 (D. Md. 2020) (Excluding testimony where "there is no basis for the Court to conclude that [the witness] has 'specialized knowledge' regarding medical billing practices[.]"); *see also Abrams v. Nucor Steel Marion, Inc.*, Case No. 3:13 CV 137, 2015 U.S. Dist. LEXIS 154161, at *128 (N.D. Ohio Nov. 9, 2015) (refusing to permit Plaintiff to present a "'data dump' [of] EPA records for a jury to decipher."); *see also Butzer v. CoreCivic, Inc.*, 5:17-cv-360-Oc-30PRL, 2019 U.S. Dist. LEXIS 41026, at *9 (M.D. Fla. Jan. 9, 2019) (denying a motion to take judicial notice of documents where it was argued that "admitting [] complex documents to the jury without explanatory testimony would cause confusion.").

[13] *See* August 5, 2022 Order ("Exhibits not so disclosed and listed will not be permitted at trial except for impeachment or rebuttal") (emphasis in Court's Order); *see also Lafleur v. Dollar Tree Stores, Inc.*, Case No.: 2:12-cv-363, 2013 U.S. Dist. LEXIS 205078, at *8 (E.D. Va. Aug. 29, 2013) (Ordering the exclusion of untimely declarations where "Plaintiffs fail[ed] to provide substantial justification as to why the Declarations were proffered at or after the close of discovery," and failed to establish why the "late production was harmless.")

Plaintiff breaks down the calls at issue into four groups. *See* Opp'n at 12-16. Plaintiff concedes that SunPath is entitled to summary judgment for the calls in Group Two (50 "calls" occurring between May 28, 2020 and June 11, 2020). *See* Opp'n at 14. She fails to defeat SunPath's right to summary judgment for the calls in Group One (six calls occurring from May 26-28, 2020), Group Three (66 "calls" occurring from June 11, 2020-July 11, 2020), and Group Four (50 "calls" received after July 11, 2020).

### A.  Group One Calls

#### 1.  American Protection had the Right to Call Plaintiff.

Plaintiff has conceded that "she made a call of her own to [] American Protection" before receiving the six calls in Group One that led to her entering into a transaction with American Protection. *Id*. at 13. Plaintiff incorrectly argues that her call did not form an established business relationship ("EBR") with American Protection. *Id*. As Plaintiff correctly points out, the "TCPA is instructive on the establishment of an EBR: the term refers to a prior or existing relationship formed by a *voluntary two-way communication*[.]" *Id*. (internal quotation and citation omitted). Fatal to Plaintiff's argument is her mistaken belief that the initial voluntary two-way communication has to occur simultaneously.[14]

---

[14] The voluntary two-way communication between Plaintiff and American Protection occurred in one of two ways: First, American Protection sent a direct mailer to Plaintiff, *see* Opp'n **Ex. F**, ECF. No. 76-6, then Plaintiff voluntarily called American Protection on May 26, 2020. *See* Opp'n at 13. Second, *even if* Plaintiff fails to recall that this is what prompted her to call American Protection in the first place, Plaintiff still concedes that she voluntarily called American Protection on May 26, 2020, and American Protection then voluntarily returned her call. Either way, by Plaintiff first calling American Protection, there was a reasonable "expectation on the part of [Plaintiff] that" American Protection would return her call. *See Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA of 1991)*, 68 FR 44144-01, 44159 (2003). Therefore, the EBR was formed before the six calls in Group One occurred.

As common sense and decades of precedent dictate, when a consumer voluntarily provides her phone number to a company, the consumer has effectively asked the company to call them back. *See Aderhold v. car2go N.A., LLC*, CASE NO. C13-489RAJ, 2014 U.S. Dist. LEXIS 26320, at *10 (W.D. Wash. Feb. 27, 2014) ("In the 1992 Ruling, the FCC concluded that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." (internal quotations and citation omitted)). There is no requirement that the consumer's initial call to the company be answered, as Plaintiff mistakenly implies. The company's resulting callbacks are "invited calls[, ] not unsolicited telemarketing calls 'initiated' for the purpose of" offering or advertising property, goods, or services. *Newhart v. Quicken Loans, Inc.*, CASE NO. 9:15-CV-81250, 2016 U.S. Dist. LEXIS 168721, at *10 (S.D. Fla. Oct. 12, 2016) (citing 47 C.F.R. § 64.1200(f)(12)). Thus, the voluntary two-way communication creating an EBR is not required to occur simultaneously (which is obviously *always* the case in text message communications, which are regulated like "calls" under the TCPA). It is undisputed that Plaintiff's May 26, 2020 call to American Protection resulted in the formation of an EBR. Therefore, the Group One calls were not telephone solicitation calls and did not violate the VTPPA as a matter of law.[15]

### 2. SunPath Was Not The "Seller" For the Group One "Calls."

SunPath was not the "seller" for the Group One calls. American Protection did not make those calls for the benefit of, or on behalf of, SunPath. Plaintiff's Opposition argues that *after*

---

[15] The foregoing section relies, in part, on guidance from the FCC, the TPCA, and 47 C.F.R. 64.1200. The Virginia Legislature clearly intended for this federal regime to provide guidance for and be applicable to the VTPPA. *See* Va. Code § 59.1-514(D). Therefore, the Virginia Legislature knew how to memorialize any intent it had that the related federal regime not to apply to the VTPPA. Tellingly, the VTPPA is devoid of any language establishing such intent.

American Protection "identified the plan that a customer was best qualified for, they would pitch them to purchase [] that company's plan." Opp'n at 4. American Protection offers multiple companies' VSCs. *See* Memo at 6. It only determines which company's VSC it will offer a consumer once it speaks with the consumer and confirms the consumer's vehicle's characteristics, year, make, model, and mileage.[16] American Protection did not speak with Plaintiff until after it placed the Group One calls. Thus, American Protection could not have determined for which VSC Plaintiff was qualified before it made those calls. *See also* Opp'n **Ex. F** at 5 (a quote was made for Plaintiff on May 28, 2020). Therefore, those calls could not have been made for the benefit of, or on behalf of, SunPath. Nor did those calls offer or advertise a SunPath VSC as explained above.  Thus, SunPath cannot have been the VTPPA-defined "seller" for those calls. SunPath is entitled to summary judgment for the Group One calls for this independent reason.

### B. Plaintiff Relies on Inadmissible Evidence and Untimely Disclosures in Attempting to Hold SunPath Liable for the "Calls" in Groups Three and Four.

There are 116 "calls" in Groups Three and Four for which Plaintiff seeks to hold SunPath liable.[17] Plaintiff has no personal knowledge of those calls. *See supra* Section I.B.   The Five9 records are the *only* evidence supporting Plaintiff's claim that she received those "calls."[18] But the Five9 records are inadmissible. *See supra* Section I.B.  There are no witnesses that can offer admissible testimony relating to the Five9 records. *Id.* Thus, Plaintiff lacks any admissible

---

[16] *See* AP Dep. at 32:14-22 (Q. "Once you're in touch with the potential customer, you determine what they're qualified for? A. Yes. Q. Okay. How do you go about doing that? A. Based on the customer's vehicle characteristics, the year, make, model, and mileage.").

[17] For the reasons described above, SunPath disputes that these are properly classified as "calls." *See supra* Section I.B. They are more accurately described as "data entries."

[18] As they relate to the 116 "calls", Plaintiff's improper declaration and the pertinent portion of Plaintiff's untimely Third Supplemental Responses to SunPath's Discovery Requests rely solely on the Five9 records.

evidence that she even received the "calls" in Groups Three and Four. Plaintiff's Opposition does not address this issue. SunPath is entitled to summary judgment for those 116 "calls."

### C.  Group Three "Calls"

#### 1.  47 C.F.R. § 64.1200(d)(3)'s 30-Day Safe Harbor Provision Applies to the Group Three "Calls".

The Group Three calls occurred in the 30 days after Plaintiff sent her June 11, 2020 do-not-call request to American Protection. American Protection is entitled to 47 C.F.R. § 64.1200(d)(3)'s 30-day safe harbor provision. The 66 "calls" in Group Three occurred during the 30-day safe harbor. Therefore, they did not violate the VTPPA.

Plaintiff is correct that the VTPPA provides guidance for how long a do-not-call request must be honored. *See* Opp'n at 15. The VTPPA is devoid of guidance on how long a company has to begin complying with such a request. 47 C.F.R. § 64.1200(d)(3) provides the needed guidance. 47 C.F.R. § 64.1200(d)(3)'s 30-day safe harbor provision requires that do-not-call requests be honored within a reasonable period of time, not to "exceed **thirty days** from the date of such request."  Plaintiff's June 11, 2020 email to American Protection highlights why the 30-day safe harbor exists. Do-not-call requests are not made in an automated fashion. They can be received any time of day and in a variety of forms. The company receiving such requests needs an opportunity to process them. The 30-day safe harbor provision provides that opportunity.

Courts have held that calls occurring within the 30-day safe harbor do not provide a party with a cause of action.[19] Whether calls occurred after the 30-day safe harbor expired is irrelevant.

---

[19] *See Orsatti v. Quicken Loans, Inc.*, 2:15-cv-09380-SVW-AGRa, 2016 U.S. Dist. LEXIS 182873, at *19 (C.D. Cal. Sept. 12, 2016) (referring to 47 C.F.R. § 64.1200(d)(3) as a "safe harbor provision" and holding that calls occurring within the 30-day "safe harbor provision of the FCC regulation [do] not constitute a cause of action."); *see also Mattson v. Quicken Loans, Inc.*, Case No. 3:18-CV-00989-YY, 2018 U.S. Dist. LEXIS 180737, at *6 (D. Or. Oct. 22, 2018)

Plaintiff cites no authority in support of her argument that the 30-day safe harbor does not apply to the "calls" she received in the 30 days after June 11, 2020. Neither the VTPPA nor 47 C.F.R. § 64.1200 provides that a party can be held liable for calls occurring during 30-day safe harbor if calls occur after the 30-days safe harbor expires. SunPath is entitled to summary judgement for the Group Three "calls" since they all occurred during the 30-day safe harbor.

### 2. The TCPA and 47 C.F.R. § 64.1200 are Applicable to the VTPPA.

Plaintiff argues that the 30-day safe harbor provision in 47 C.F.R. § 64.1200(d)(3) does not apply to the VTPPA. *See* Opp'n at 15. Plaintiff's argument holds no weight.  In fact, she also relies on the TCPA and 47 C.F.R. § 64.1200 which the VTPPA expressly relies upon to frame the calls subject to that state law.[20] Plaintiff cannot have it both ways:  Either the TCPA and 47 C.F.R. § 64.1200 are applicable to the VTPPA or they are not. But since the TCPA and 47 C.F.R. § 64.1200 are applicable to the VTPPA, 47 C.F.R. § 64.1200(d)(3)'s 30-day safe harbor applies to claims under the VTPPA.

### D.  SunPath was not the "Seller" for the Group Three and Four "Calls".

Groups Three and Four include the 116 "calls" Plaintiff allegedly received after sending her June 11, 2020 email. Plaintiff, as the party opposing summary judgment, is entitled to **reasonable** inferences drawn in her favor.[21] But no reasonable inference can be made that SunPath was the "seller" for the Group Three and Four "calls."

---

(holding that "[a]llegations of calls **beyond** the 30-day safe-haven have been held to be sufficient to state a claim") (emphasis added).

[20] *Id*. at 13-14. (Plaintiff relies on the TCPA to provide guidance on what constitutes an EBR for purposes of meeting the VTPPA exemption. Plaintiff relies on 47 C.F.R. § 64.1200 to establish that Plaintiff's June 11, 2020 email "ended any EBR in existence," meaning the "VTPPA's exemption no longer applied[.]").

[21] *See Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995) (explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "permissible inferences must still be within the range of reasonable

Plaintiff claims American Protection only offered her one VSC before June 11, 2020. *See* Opp'n at 4. If that was actually a SunPath VSC, Plaintiff's June 11, 2020 email served as a clear rejection of it. It would be an unreasonable inference to draw from those facts that American Protection continued to call Plaintiff to offer her a SunPath product after she rejected it. That inference is made further unreasonable by the fact that American Protection was selling other companies' VSCs then. *See* Memo at 6. The only reasonable inferences that this Court can draw is that American Protection's calls to Plaintiff after June 11, 2020 (if they occurred) were unrelated to SunPath, did not offer or advertise SunPath's VSC, were not made on behalf of SunPath, and were not made for SunPath's benefit.  In fact, as to all her "calls," she has no evidence that SunPath was ever mentioned on *any* of them. SunPath is entitled to summary judgment for the Group Three and Four "calls."

### III.    Plaintiff's Opposition Fails to Establish that SunPath can be held Jointly and Severally Liable for the Calls Under the VTPPA.

Plaintiff's joint-and-several liability arguments begin with her misunderstanding of the VTPPA. Plaintiff mistakenly argues that the VTPPA imposes strict liability on entities meeting the applicable definition of "seller," and that *Zhu* is not good law. *See* Opp'n at 17. The VTPPA's inclusion of the *rebuttable* presumption is wholly inconsistent with Plaintiff's strict-liability theory. *See* Va. Code § 59.1-514.1(B). Therefore, *Zhu* remains good law.

#### A.  SunPath's VSC Was not Offered on Any Telephone Solicitation Call at Issue.

The VTPPA's "seller" definition and presumption are **contingent** on the seller's "property, goods, or services" being offered or advertised **during** the subject telephone solicitation calls. *See* Va. Code §§ 59.1-510; 59.1-514.1.  They have broad application in cases

---

probability" and that "whether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary") (internal quotations omitted).

where a seller outsources its telemarketing sales operations to a dedicated third-party marketing company that exclusively sells that seller's products.  This is typically the case where the seller provides the scripts the call center should use, monitors the operations as if they were its own, and exercises control over the call center.  But they become far more tenuous in cases like this -- one where the independent seller controls its own operations and independently resells the products of various competitors after purchasing them wholesale.[22]  Therefore, whether a company's name is stated on the telephone solicitation call is imperative to determining whether a company's product was *offered or advertised on the call*.  Despite Plaintiff's argument, nowhere does the VTPPA provide that such determination can be made by reviewing after-the-fact email correspondence and weblinks exchanged well after a call ends.  This would be illogical. The plain and unambiguous language of the VTPPA's seller definition and presumption shows that their applicability is determined based on what occurs during the call, not after.[23]

It is undisputed that SunPath's name was never mentioned on any call between American Protection and Plaintiff. Plaintiff's mischaracterization of Plaintiff's and American Protection's deposition testimony does not create any dispute as to that fact. *See supra* Section I.A. American Protection offered products from multiple companies at all relevant times. Therefore, there is no

---

[22] The VTPPA is not designed or intended to extend liability to companies whose products are sold by a telephone solicitor that also sells products from other companies. This is demonstrated by Va. Code § 59.1-512 which requires a telephone solicitor to identify "the name of the person on whose behalf the telephone solicitation call is being made[.]" If a telephone solicitor's calls are made on behalf of every company whose products it could potentially sell on the call, the telephone solicitor would have to name each individual company whose products it may ultimately sell in order to comply with Va. Code § 59.1-512. This is illogical and cannot be the intent of the VTPPA. It must be that a telephone solicitor reselling products from multiple companies only makes a telephone solicitation call on its own behalf.

[23] *See Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 571 F. Supp. 2d 712, 716 (E.D. Va. 2008) ("[I]n Virginia, where . . . a statutory term is plain and unambiguous, there is no need for judicial construction; the language will be applied as written.") (internal quotations omitted).

evidence that a SunPath product was ever offered or advertised to Plaintiff on any call at issue. The VTPPA's seller definition and presumption cannot apply to SunPath.

### B. Plaintiff Improperly Collapses "Telephone Solicitation Calls" into "Calls" in General.

To gloss over Plaintiff's proof problems, Plaintiff improperly expands the VTPPA's application to "telephone solicitation calls" into all "calls" writ large. As a result, Plaintiff improperly seeks to hold SunPath liable for *any* calls she received from American Protection. But only "telephone solicitation calls" violate the VTPPA.

First, the VTPPA's definition of "telephone solicitation call" requires the call to be "for the purpose of offering or advertising any property, goods, or services for sale[.]" Va. Code § 59.1-510. Plaintiff lacks evidence showing that any call at issue she received after June 9, 2020 was for such purpose. Plaintiff lacks personal knowledge relating to the calls at issue she now allegedly received after June 9, 2020. *See supra* Section I.B. American Protection did not provide any testimony relating to the context of calls that occurred after June 9, 2020, and Plaintiff never even knew they existed (if they ever did) until Five9's unexplained data dump appeared in the case late in discovery. Plaintiff cannot prove those calls were "telephone solicitation calls." No reasonable inference can be made based on this complete lack of evidence.

Second, a violation of Va. Code § 59.1-514(B) occurs when a "telephone solicitor [] initiate[s], or cause[s] to be initiated, a **telephone solicitation call** to a telephone number on the National" DNC Registry. *Id.* (emphasis added). The VTPPA defines "telephone solicitation call" and lists the type of calls that do not constitute a "telephone solicitation call." *See* Va. Code §§ 59.1-510; 59.1-514(D). When taken together, they render a "telephone solicitation call" unlawful *by definition*. The VTPPA's definition of "seller" is "any person **on whose behalf or for whose benefit** a **telephone solicitation call** . . . is made or initiated." Va. Code § 59.1-510 (emphasis

added). The Agreement only authorized American Protection to market SunPath's VSC lawfully. Therefore, any "telephone solicitation call" made by American Protection would be outside the scope of the Agreement. Those calls cannot be presumed to be made on behalf of or for the benefit of SunPath. *See Black v. SunPath, Ltd.*, Case No. 3:21-cv-00023, 2022 U.S. Dist. LEXIS 165799, at *9-10 (M.D. Tenn. Sep. 14, 2022), *appeal dismissed per stipulation*, No. 22-5927 (6th Cir. Dec. 27, 2022). It follows that SunPath cannot meet the VTPPA's definition of "seller" for any "telephone solicitation call" made by American Protection.

### C. The VTPPA's Definition of Seller is Not Redundant.

The VTPPA's seller presumption can only apply to SunPath once Plaintiff meets her burden of proving SunPath is a "seller" under the VTPPA. Plaintiff's contention that the seller presumption renders the VTPPA's definition of "seller" redundant is incorrect. *See* Opp'n at 19. Plaintiff's contention violates traditional canons of statutory interpretation.[24]

The proper seller-liability analysis under the VTPPA starts at Va. Code § 59.1-514.1(A), which provides that "[a] **seller** on whose behalf or for whose benefit a telephone solicitor makes or initiates a [VTPPA violating] telephone solicitation call . . . shall be jointly and severally liable for such violation." (emphasis added). Va. Code § 59.1-510 defines the term "seller" as it is used throughout the VTPPA, including as it is used in Va. Code § 59.1-514.1(A). Therefore, Plaintiff must first establish that SunPath meets the VTPPA's definition of "seller" before moving to Va. Code § 59.1-514.1(B)'s rebuttable presumption. The plain language of the VTPPA grounds the proper statutory-interpretation analysis, and cannot read the "seller" construct out of the statute as "redundant." The VTPPA's proper statutory-construction analysis

---

[24] Any dispute relating to the statutory interpretation of the VTPPA does not create a triable issue of fact. *See Health Keepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471 (4th Cir. 2011) ("[A] question of statutory interpretation, [is] a quintessential question of law") (quoting *Broughman v. Carver*, 624 F.3d 670, 674 (4th Cir. 2010)).

prevents the VTPPA's seller definition from being rendered redundant.[25] Therefore, Plaintiff must first prove that American Protection's telephone solicitation calls at issue were made on behalf of, or for the benefit of, SunPath. Only once Plaintiff does that can she invoke Va. Code § 59.1-514.1(B). But again, Plaintiff cannot prove the telephone solicitation calls at issue were made on behalf or for the benefit of SunPath. *See supra* II.D.; III.A; *infra* III.D. Therefore, SunPath is not the "seller" and Plaintiff is not entitled to apply the seller presumption here.

### D.  There is No Dispute That SunPath Was Not a VTPPA-defined "Seller."

#### 1.  Plaintiff Relies on Irrelevant Facts.

The VTPPA defines a "seller" as "any person on whose behalf or for whose benefit a telephone solicitation call offering or advertising the person's property, goods, or services is made or initiated." Va. Code § 59.1-510.  Plaintiff attempted to create a disputed fact regarding whether the calls at issue were made on behalf of, or for the benefit of, SunPath. Plaintiff's argument relies on two allegations. *See* Opp'n at 20. Plaintiff's argument fails as neither claim is evidence of or relevant to whether the calls at issue were made on behalf of, or for the benefit of, SunPath. Plaintiff failed to provide the full context relating to her point that American Protection was required to "hold SunPath's portion of the proceeds," or "net price", "in trust" for SunPath's benefit." *Id*. American Protection testified that was not how it worked in practice, and certainly not here, where American Protection never consummated any sale with Plaintiff.[26] This further weakens Plaintiff's mistaken argument.

---

[25] *See Hedin v. Thompson*, 355 F.3d 746, 750 (4th Cir. 2004) (refusing to adopt an interpretation that "would render a significant portion of the statute . . . without meaning" because "[a] court must attempt to interpret a statute so as to give each word meaning and to avoid creating surplusage.") (internal quotations omitted).

[26] *See* AP Dep. 63:23-64:7 ("Q: I'm trying to understand. If I understand this correctly, American Protection is required to hold the product seller cost in trust on behalf of SunPath after they make

## 2.  Plaintiff Failed to Address Salient Facts.

Plaintiff's Opposition fails to materially address three of the most important facts that make it impossible for SunPath to have been the "seller" for the calls at issue. First, SunPath does not sell anything. Since SunPath does not sell anything, it cannot be a "seller." Second, subcontractors hired by American Protection made the calls at issue. *See* Memo at 21. That fact further removes SunPath from being the "seller" for any of the calls at issue. Third, American Protection sells VSCs for multiple companies at the same time. *Id*. at 6.

American Protection selling products from multiple companies places SunPath in a position similar to a car manufacturer. Car manufacturers' vehicles are sold by licensed dealerships that sell a variety of vehicles. When people receive calls from a Ted Britt dealership, no one is under the mistaken belief that the dealership is calling on behalf of, or for the benefit of, Ford, Chevrolet, Lincoln, etc. The dealership is calling on its own behalf and for its own benefit, even if it did not make the product in question. Similarly, it is unreasonable for anyone to believe American Protection made calls on behalf of, or for the benefit of, SunPath.[27]

It is undisputed that American Protection makes calls to offer or advertise products from a variety of companies. Those calls are only made by American Protection on its own behalf and for its own benefit. This is because American Protection does not know which companies' VSC

---

the sale. . . . A: It is my understanding that American Protection would submit the cost of the product to SunPath.").

[27] SunPath previously used the example of a grocery store. *See* Memo at 21. Plaintiff argues the analogy is inapplicable because SunPath required American Protection to "actively market" SunPath's products. *See* Opp'n at 20. That "actively market" provision is no different than when Frito-Lay requires a grocery store to set up a special in-store promotional display for its products. It is not evidence that American Protection made calls on behalf of SunPath.

it is going to offer on any given call at the time the call is initiated.[28] The VTPPA is clear that seller liability is contingent on a company's product actually being offered or advertised on the call. *See* Va. Code. § 59.1-514.1. The VTPPA is devoid of any language or intent that seller liability can be assigned based on the mere possibility that a company's product could be offered on a call.

### E. The VTPPA Cannot Apply in Situations Where a Telephone Solicitor Offers or Advertises Products for Multiple Companies.

The language in Va. Code. § 59.1-514.1 indicates that the seller presumption was intended to apply to situations where a company outsources its telemarketing to third parties on an exclusive basis. This results in the telephone solicitor offering and advertising one company's product(s). In that situation, there is no confusion as to whose property, goods, or services are being offered on a call. That is determined before the call is even made. It also avoids the possibility of liability being determined by luck of the draw:  If SunPath were to be held liable in this case, it would only be because SunPath was the unlucky party whose VSC happened to be the best match for Plaintiff. This is illogical. It cannot be the Virginia Legislature's intent for seller liability to be determined by something as arbitrary as the year, make, model, or mileage of a person's vehicle. The only logical conclusion is that none of American Protection's telephone solicitation calls were made on behalf of or for the benefit of SunPath. Therefore, SunPath cannot be held liable as a "seller" under the VTPPA.

### F. SunPath Can Rebut the VTPPA's Seller Presumption.

The VTPPA's seller presumption is rebuttable. If it applied, SunPath would have to show by clear and convincing evidence that it did not retain or request American Protection to make

---

[28] *See* AP Dep. 32:14-22 (Q. "Once you're in touch with the potential customer, you determine what they're qualified for? A. Yes. Q. Okay. How do you go about doing that? A. Based on the customer's vehicle characteristics, the year, make, model, and mileage.").

telephone solicitation calls on its behalf or for its benefit, and that American Protection made the calls without SunPath's knowledge or consent. *See* Va. Code § 59.1-514.1(B). SunPath has addressed that American Protection was not retained or requested to make telephone solicitation calls on behalf of or for its benefit. *See supra* III.D. Plaintiff concedes that any unlawful calls made by American Protection were without SunPath's consent. *See* Opp'n at 22. It is undisputed that SunPath lacked any knowledge of American Protection making unlawful calls. *See* Memo at 12. Plaintiff failed to create a dispute as to SunPath's consent and knowledge. Plaintiff once again mischaracterizes deposition testimony. Plaintiff claims that "SunPath expressly approves each sale by American Protection on a case-by-case basis." Opp'n at 11. The relevant deposition testimony is that SunPath's approval of American Protection's sales was related only to whether *the subject vehicle* qualified for coverage, not whether the related call was lawful.[29] There is nothing to establish that SunPath had any knowledge relating to such calls. SunPath has rebutted the VTPPA's seller presumption to the extent it ever applied.

In short, SunPath is entitled to summary judgment on Plaintiff's claims on the undisputed record evidence.

---

[29] *See* AP Dep. 36:20-37:4 ("Q: Would you ever receive a rationale for why SunPath would have rejected one of American Protection's sales contracts? A: Yes. Q: What would those rationales be? A: It could have been that the title of the vehicle was rebuilt or rebranded. Q: Any other reasons? A: That's most of the – that would be the most.").

Dated: January 18, 2023

Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Joseph P. Bowser*
Joseph P. Bowser (VSB No. 88399)
Carl Taylor Smith (VSB No. 97376)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
tsmith@rothjackson.com
jbowser@rothjackson.com

Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
mroth@rothjackson.com

*Counsel for SunPath, Ltd.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that I caused Defendant SunPath, Ltd.'s Reply in Support of its Motion for Summary Judgment to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on January 18, 2023.


                           /s/ *Joseph P. Bowser*
                           Joseph P. Bowser