# EXHIBIT 1



# Transcript of Ruth Smith

**Date:** December 2, 2022
**Case:** Smith -v- SunPath, Ltd.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

49

1 review them before they were served?
2     MR. SMITH: Objection, asked and
3 answered. Also vague.
4     You can answer. Any time I don't
5 instruct you, you can answer the question.
6     A  So you asked me if -- could you restate
7 the question?
8 BY MR. CAFFAS:
9     Q  These supplemental interrogatory
10 responses that we're discussing, these were served
11 on November 11, 2022. Today is December 2, 2022,
12 so it was just a few weeks ago. You had said
13 before that you reviewed these supplemental
14 interrogatories and verified them prior to them
15 being served, correct?
16     A  Yes, I reviewed. To the best of my
17 knowledge, this is correct, yes.
18     Q  So just a couple weeks ago on November
19 11, you verified the information that we're
20 discussing that the caller did not identify
21 himself by their first and last name, right?
22     A  Yes. I reviewed the document to the

50

1 best of my knowledge, yeah.
2     Q  Did you review the notes that you're
3 referring to that were sent to your counsel when
4 you verified these interrogatory responses?
5     A  I believe I did, yes.
6     Q  And you're saying now that you can't
7 remember what those notes said at all?
8     A  I generally remember, but not
9 specifically. That's why I would have to refer to
10 them.
11     Q  And if the name of the caller was
12 included in those notes, is there a reason why you
13 didn't include it in your supplemental
14 interrogatory response?
15     A  So I defer to my counsel.
16     Q  You defer to your counsel on what?
17     A  On how the document was prepared. Or I
18 rely on my counsel. Excuse me.
19     MR. SMITH: He's just asking if you had
20 the name, would you have included it in the
21 response?
22     A  So if I specifically had the name for

51

1 this particular call, would I have provided a
2 response? Yes.
3 BY MR. CAFFAS:
4     Q  So then can I take it to -- so can I
5 understand that if you reviewed these notes two
6 weeks ago and didn't provide a name in the
7 response, then you don't know the name?
8     A  I would have to go back through my notes
9 specifically.
10     Q  So do you not know whether the name was
11 in your notes or not?
12     A  For this -- for this particular -- for
13 this particular number, the (410) 844-6327?
14     Q  Yes. I'm referring to the same sentence
15 we've been discussing, which is on the second
16 paragraph of your supplemental answer to
17 interrogatory one where you say that the caller
18 did not identify themselves by their first and
19 last name.
20     A  So you're asking me if I had -- if I had
21 the last name, it would be included, or the first
22 name?

52

1     Q  I believe your testimony today -- you
2 can correct me if I'm misunderstanding -- is that
3 you believe that that information is in the notes
4 that you reviewed a few weeks ago in order to
5 submit these on November 11. Is that right?
6     MR. SMITH: Object to form, misstates
7 the witness's testimony.
8     A  Yeah. I do not -- I do not have a last
9 name. I have to confirm about the first name if
10 it would be tied to that phone number.
11 BY MR. CAFFAS:
12     Q  The next line of that paragraph and the
13 final line says, "Further, the caller solicited
14 plaintiff to purchase SunPath's vehicle service
15 contracts." Can you describe how the caller
16 solicited you to purchase SunPath's vehicle
17 service contracts.
18     A  I would have to -- for the exact
19 information, I would have to refer to my notes.
20     MR. CAFFAS: Can we take a break to go
21 off the record, please?
22     MR. SMITH: Sure.

53

1  (Discussion off the record from 11:00
2 a.m. to 11:00 a.m.)
3  MR. CAFFAS: Let's go back on the
4 record.
5  Can you reread my last question, Kelly.
6  (The reporter read the requested
7 testimony.)
8 BY MR. CAFFAS:
9  Q  Why would you have to refer to your
10 notes?
11  **A  For the exact language.**
12  Q  Do you remember anything about the
13 language that led you to make that statement that
14 the purpose of the call was to solicit the sale of
15 SunPath's vehicle service contracts?
16  **A  Based on my memory, they gave the name**
17 **of the company and what they were -- what they**
18 **were -- I think what they were selling.**
19  Q  When you say the name of the company,
20 what was the name of the company?
21  **A  SunPath.**
22  Q  You say that they used the word

54

1 "SunPath" as the name of the company, not another
2 company's name?
3  MR. SMITH: Objection, misstates the
4 witness's testimony.
5  **A  I would have to refer to my notes for**
6 **exactly what the...**
7 BY MR. CAFFAS:
8  Q  I'll represent to you that we have not
9 received any notes at all that show what your
10 recollection is of any of these calls.
11  MR. SMITH: Objection. That misstates
12 the question.
13 BY MR. CAFFAS:
14  Q  You're saying that any of your notes
15 regarding the calls that we're talking about were
16 given to counsel, right?
17  **A  After my -- after I received the calls,**
18 **yes, I put it on my notes and I submitted it.**
19  Q  I'm going enter what will be -- I think
20 this is Exhibit 5.
21  MR. CAFFAS: Is that correct?
22  THE REPORTER: 4.

55

1  MR. CAFFAS: 4.
2  (Smith Deposition Exhibit No. 4 was
3 marked for identification and was attached to the
4 deposition transcript.)
5 BY CAFFAS:
6  Q  This is a packet of documents, Exhibit
7 4, and you'll notice these are Bates stamped. By
8 Bates stamped, they have a label at the bottom
9 right corner and it says Smith and a series of
10 numbers to make it easier to reference. So these
11 are Bates labeled SMITH1 through 20.
12  Now, these are the documents that we
13 received from your counsel with the exception of
14 an e-mail from a company called American
15 Protection and two recordings. I want you to take
16 a few minutes to look through the documents that I
17 have shown you, and can you confirm whether or not
18 this is a full collection of the documents that
19 you say that you had given to counsel that reflect
20 the notes that you provided in this case.
21  **A  To the best of my knowledge, this is all**
22 **of the screenshots provided.**

56

1  Q  Now, is it correct to say that there are
2 no notes in that production that contain your
3 description or recollection of any of the calls
4 that you've described?
5  **A  So these are the lists of the**
6 **screenshots.**
7  Q  So is it accurate that the notes that
8 you're referring to about your recollection of the
9 calls, those aren't contained in that set of
10 documents?
11  **A  I'm not sure how that's like compiled.**
12  Q  In the set of documents that I just
13 handed you, can you confirm just with a yes or no,
14 if you can, whether or not the notes that you're
15 referring to are in that set of documents?
16  **A  Of the -- no.**
17  Q  And I'll represent to you that with the
18 exclusion of an e-mail that contains I believe the
19 SunPath policy quote that you're referring to, we
20 received no other documents, written documents,
21 from you at all. Are you saying that --
22  MR. SMITH: Objection. That

145

1  American Protection from Samantha Yaeger that we
2  discussed earlier, is there a reason you didn't
3  respond in any way including to request not to
4  receive any more calls?
5      A   No.  I just didn't -- you know, I wasn't
6  interested in getting the insurance.
7      Q   Right, but you weren't interested in
8  receiving additional calls, correct?
9      A   Correct.
10     Q   So is there a reason why you didn't
11 respond to that e-mail stating that you didn't
12 wish to receive additional calls?
13     A   So I -- you know, I forwarded it to my
14 counsel.
15         MR. CAFFAS:  Can you read the question
16 back, Kelly.
17         (The reporter read the requested
18 question.)
19 BY MR. CAFFAS:
20     Q   Can you repeat your response?
21     A   Okay.  So I guess I didn't want to
22 correspond with the e-mail because I didn't want

146

1  any more, you know, back and forth.
2      Q   And you didn't think that requesting to
3  not to receive more calls would be an approach to
4  not receiving more calls?
5          MR. SMITH:  Object to form.
6  BY MR. CAFFAS:
7      Q   You can answer.
8      A   You said to object to not receiving more
9  calls?  I'm sorry.
10         MR. CAFFAS:  Kelly, could you read my
11 question again, please.
12         (The reporter read the requested
13 question.)
14     A   So based on here, I stated that I didn't
15 want to receive more calls.
16 BY MR. CAFFAS:
17     Q   So you thought that forwarding this
18 e-mail to an attorney rather than making a call or
19 making a request not to receive more calls would
20 be the best option to cease receiving calls?
21         MR. SMITH:  Object to form.
22     A   Yeah.  I just -- I didn't want to engage

147

1  with the correspondents.
2  BY MR. CAFFAS:
3      Q   You contend that June 9 was the last
4  call that you received that you're seeking damages
5  for in this case?
6      A   Again, whatever I provided initially was
7  correct, but I know that there's the call logs
8  that were received.  So that is correct, what's in
9  the logs.
10     Q   Can you clarify what you mean by that?
11     A   So when I submitted all the
12 documentation that I had, that was to the best of
13 my knowledge at the time, but I understand that
14 the call logs have different information, and they
15 are -- they are correct.
16     Q   And when you say the call logs, are you
17 referring to call logs that you believe your
18 counsel has received but you have not yet
19 reviewed?
20     A   Yes.  They just came this week, yes.
21     Q   So when you say that you believe that
22 the call logs confirm this not to be the case, is

148

1  that based on representations from counsel?
2      A   Because it's an accurate -- because of
3  the logs that were received by the company versus
4  what I have.
5      Q   Right.  And I'm just saying you haven't
6  reviewed these call logs that you're referring to,
7  right?
8      A   Correct.
9      Q   So how do you know that the call logs
10 confirm this?
11     A   I rely on my counsel.
12     Q   Do you believe that SunPath is the only
13 company that administers vehicle service
14 contracts?
15     A   No.
16     Q   So you're saying that if you received a
17 call soliciting you for vehicle service contracts
18 without mentioning they're SunPath's vehicle
19 service contracts, those would not be about
20 SunPath vehicle service contracts, right?
21     A   They may or may not.
22     Q   How do you discern the difference if

```
                                                   213
1       CERTIFICATE OF SHORTHAND REPORTER
2            ELECTRONIC NOTARY PUBLIC
3          I, Kelly Carnegie, Certified Shorthand
4   Reporter, Registered Professional Reporter, the
5   officer before whom the foregoing proceedings were
6   taken, do hereby certify that the foregoing
7   transcript is a true and correct record of the
8   proceedings; that said proceedings were taken by
9   me stenographically and thereafter reduced to
10  typewriting under my direction; that reading and
11  signing was requested; and that I am neither
12  counsel for, related to, nor employed by any of
13  the parties to this case and have no interest,
14  financial or otherwise, in its outcome.
15          IN WITNESS WHEREOF, I have hereunto
16  electronically set my hand and affixed my notarial
17  seal this 5th day of December, 2022.
18
    My commission expires:
19  July 31, 2026
20
21  _Kelly Carnegie_____
    NOTARY PUBLIC IN AND FOR THE
22  COMMONWEALTH OF VIRGINIA - PRINCE WILLIAM COUNTY
    Notary Registration Number: 7060756
```