# EXHIBIT 1



# Transcript of Ruth Smith

**Date:** December 2, 2022
**Case:** Smith -v- SunPath, Ltd.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

49

1 review them before they were served?
2     MR. SMITH: Objection, asked and
3 answered. Also vague.
4     You can answer. Any time I don't
5 instruct you, you can answer the question.
6   A  So you asked me if -- could you restate
7 the question?
8 BY MR. CAFFAS:
9   Q  These supplemental interrogatory
10 responses that we're discussing, these were served
11 on November 11, 2022. Today is December 2, 2022,
12 so it was just a few weeks ago. You had said
13 before that you reviewed these supplemental
14 interrogatories and verified them prior to them
15 being served, correct?
16   A  Yes, I reviewed. To the best of my
17 knowledge, this is correct, yes.
18   Q  So just a couple weeks ago on November
19 11, you verified the information that we're
20 discussing that the caller did not identify
21 himself by their first and last name, right?
22   A  Yes. I reviewed the document to the

50

1 best of my knowledge, yeah.
2   Q  Did you review the notes that you're
3 referring to that were sent to your counsel when
4 you verified these interrogatory responses?
5   A  I believe I did, yes.
6   Q  And you're saying now that you can't
7 remember what those notes said at all?
8   A  I generally remember, but not
9 specifically. That's why I would have to refer to
10 them.
11   Q  And if the name of the caller was
12 included in those notes, is there a reason why you
13 didn't include it in your supplemental
14 interrogatory response?
15   A  So I defer to my counsel.
16   Q  You defer to your counsel on what?
17   A  On how the document was prepared. Or I
18 rely on my counsel. Excuse me.
19     MR. SMITH: He's just asking if you had
20 the name, would you have included it in the
21 response?
22   A  So if I specifically had the name for

51

1 this particular call, would I have provided a
2 response? Yes.
3 BY MR. CAFFAS:
4   Q  So then can I take it to -- so can I
5 understand that if you reviewed these notes two
6 weeks ago and didn't provide a name in the
7 response, then you don't know the name?
8   A  I would have to go back through my notes
9 specifically.
10   Q  So do you not know whether the name was
11 in your notes or not?
12   A  For this -- for this particular -- for
13 this particular number, the (410) 844-6327?
14   Q  Yes. I'm referring to the same sentence
15 we've been discussing, which is on the second
16 paragraph of your supplemental answer to
17 interrogatory one where you say that the caller
18 did not identify themselves by their first and
19 last name.
20   A  So you're asking me if I had -- if I had
21 the last name, it would be included, or the first
22 name?

52

1   Q  I believe your testimony today -- you
2 can correct me if I'm misunderstanding -- is that
3 you believe that that information is in the notes
4 that you reviewed a few weeks ago in order to
5 submit these on November 11. Is that right?
6     MR. SMITH: Object to form, misstates
7 the witness's testimony.
8   A  Yeah. I do not -- I do not have a last
9 name. I have to confirm about the first name if
10 it would be tied to that phone number.
11 BY MR. CAFFAS:
12   Q  The next line of that paragraph and the
13 final line says, "Further, the caller solicited
14 plaintiff to purchase SunPath's vehicle service
15 contracts." Can you describe how the caller
16 solicited you to purchase SunPath's vehicle
17 service contracts.
18   A  I would have to -- for the exact
19 information, I would have to refer to my notes.
20     MR. CAFFAS: Can we take a break to go
21 off the record, please?
22     MR. SMITH: Sure.

53

1  (Discussion off the record from 11:00
2  a.m. to 11:00 a.m.)
3  MR. CAFFAS: Let's go back on the
4  record.
5  Can you reread my last question, Kelly.
6  (The reporter read the requested
7  testimony.)
8  BY MR. CAFFAS:
9  Q  Why would you have to refer to your
10 notes?
11 **A  For the exact language.**
12 Q  Do you remember anything about the
13 language that led you to make that statement that
14 the purpose of the call was to solicit the sale of
15 SunPath's vehicle service contracts?
16 **A  Based on my memory, they gave the name**
17 **of the company and what they were -- what they**
18 **were -- I think what they were selling.**
19 Q  When you say the name of the company,
20 what was the name of the company?
21 **A  SunPath.**
22 Q  You say that they used the word

54

1  "SunPath" as the name of the company, not another
2  company's name?
3  MR. SMITH: Objection, misstates the
4  witness's testimony.
5  **A  I would have to refer to my notes for**
6  **exactly what the...**
7  BY MR. CAFFAS:
8  Q  I'll represent to you that we have not
9  received any notes at all that show what your
10 recollection is of any of these calls.
11 MR. SMITH: Objection. That misstates
12 the question.
13 BY MR. CAFFAS:
14 Q  You're saying that any of your notes
15 regarding the calls that we're talking about were
16 given to counsel, right?
17 **A  After my -- after I received the calls,**
18 **yes, I put it on my notes and I submitted it.**
19 Q  I'm going enter what will be -- I think
20 this is Exhibit 5.
21 MR. CAFFAS: Is that correct?
22 THE REPORTER: 4.

55

1  MR. CAFFAS: 4.
2  (Smith Deposition Exhibit No. 4 was
3  marked for identification and was attached to the
4  deposition transcript.)
5  BY CAFFAS:
6  Q  This is a packet of documents, Exhibit
7  4, and you'll notice these are Bates stamped. By
8  Bates stamped, they have a label at the bottom
9  right corner and it says Smith and a series of
10 numbers to make it easier to reference. So these
11 are Bates labeled SMITH1 through 20.
12 Now, these are the documents that we
13 received from your counsel with the exception of
14 an e-mail from a company called American
15 Protection and two recordings. I want you to take
16 a few minutes to look through the documents that I
17 have shown you, and can you confirm whether or not
18 this is a full collection of the documents that
19 you say that you had given to counsel that reflect
20 the notes that you provided in this case.
21 **A  To the best of my knowledge, this is all**
22 **of the screenshots provided.**

56

1  Q  Now, is it correct to say that there are
2  no notes in that production that contain your
3  description or recollection of any of the calls
4  that you've described?
5  **A  So these are the lists of the**
6  **screenshots.**
7  Q  So is it accurate that the notes that
8  you're referring to about your recollection of the
9  calls, those aren't contained in that set of
10 documents?
11 **A  I'm not sure how that's like compiled.**
12 Q  In the set of documents that I just
13 handed you, can you confirm just with a yes or no,
14 if you can, whether or not the notes that you're
15 referring to are in that set of documents?
16 **A  Of the -- no.**
17 Q  And I'll represent to you that with the
18 exclusion of an e-mail that contains I believe the
19 SunPath policy quote that you're referring to, we
20 received no other documents, written documents,
21 from you at all. Are you saying that --
22 MR. SMITH: Objection. That

Page 89

1 that call was received and what number you
2 received that telephone call from?
3  A  At this time, I don't believe I have it.
4  Q  Do you have your voicemail saved on your
5 phone?
6  A  I don't keep them for long periods of
7 time.
8  Q  Is there a reason why you got rid of
9 this voicemail that's the subject of the claims in
10 the lawsuit?
11  A  You're talking about the second
12 voicemail?
13  Q  Yes.
14  A  Yeah, I don't remember receiving that
15 voicemail. That specific voicemail, I don't
16 remember. The first one I do.
17  Q  Are you saying that you don't -- you
18 didn't provide this to your counsel, or you just
19 don't remember receiving it or giving it to your
20 counsel?
21  A  I don't remember receiving that
22 voicemail.

Page 90

1  Q  Do you have any reason to doubt that you
2 did receive it and provide it to your counsel?
3  A  You're saying do I have a doubt that I
4 received it and didn't provide it to my counsel?
5 I'm sorry. I'm not understanding.
6  Q  You say you don't remember receiving it.
7 Do you have any reason to doubt that this call was
8 made to you, resulted in this voicemail that you
9 received, and then you then passed it on to your
10 counsel?
11  A  So to the best of my knowledge,
12 everything that I received, I provided, but I do
13 not remember that second voicemail.
14  Q  Do you know why you received -- did you
15 ask to receive a quote regarding the vehicle
16 service contract that was attached to the e-mail
17 that you received from Samantha Yaeger?
18      MR. SMITH: Object to form.
19      You can answer.
20  A  I was trying to understand who was
21 trying to contact me.
22 BY MR. CAFFAS:

Page 91

1  Q  And in the process of trying to
2 understand who is contacting you, did you request
3 to receive that product?
4      MR. SMITH: Object, vague,
5 argumentative.
6      MR. CAFFAS: Argumentative?
7      MR. SMITH: Yeah.
8      MR. CAFFAS: Can you explain?
9      MR. SMITH: You're trying to suggest the
10 answer to her.
11      MR. CAFFAS: Before you answer, Kelly,
12 could you read my question again.
13      (The reporter read the requested
14 question.)
15  A  So I was trying to understand who was
16 trying to contact me.
17      MR. CAFFAS: Can you reread the
18 question, please.
19      (The reporter read the requested
20 question.)
21  A  Did I request to see the specific
22 product? No. I was asking I believe that I

Page 92

1 wanted them to have them e-mail me something to
2 validate who they were.
3 BY MR. CAFFAS:
4  Q  So you made an inquiry about who they
5 were and what they were selling?
6      MR. SMITH: Objection, argumentative.
7  A  No. I was trying to determine who was
8 trying to contact me.
9 BY MR. CAFFAS:
10  Q  Right. And in the process of trying to
11 determine that, did you make an inquiry about who
12 they were and what they were selling?
13      MR. SMITH: Objection, asked and
14 answered, argumentative, and calls for a legal
15 conclusion.
16      You can answer.
17  A  Yeah, I was trying to determine who was
18 trying to contact me.
19 BY MR. CAFFAS:
20  Q  And in the process of doing so, did you
21 make an inquiry about who they were and what they
22 were selling?

Page 145

1  American Protection from Samantha Yaeger that we
2  discussed earlier, is there a reason you didn't
3  respond in any way including to request not to
4  receive any more calls?
5      A   No.  I just didn't -- you know, I wasn't
6  interested in getting the insurance.
7      Q   Right, but you weren't interested in
8  receiving additional calls, correct?
9      A   Correct.
10     Q   So is there a reason why you didn't
11 respond to that e-mail stating that you didn't
12 wish to receive additional calls?
13     A   So I -- you know, I forwarded it to my
14 counsel.
15         MR. CAFFAS:  Can you read the question
16 back, Kelly.
17         (The reporter read the requested
18 question.)
19 BY MR. CAFFAS:
20     Q   Can you repeat your response?
21     A   Okay.  So I guess I didn't want to
22 correspond with the e-mail because I didn't want

Page 146

1  any more, you know, back and forth.
2      Q   And you didn't think that requesting to
3  not to receive more calls would be an approach to
4  not receiving more calls?
5          MR. SMITH:  Object to form.
6  BY MR. CAFFAS:
7      Q   You can answer.
8      A   You said to object to not receiving more
9  calls?  I'm sorry.
10         MR. CAFFAS:  Kelly, could you read my
11 question again, please.
12         (The reporter read the requested
13 question.)
14     A   So based on here, I stated that I didn't
15 want to receive more calls.
16 BY MR. CAFFAS:
17     Q   So you thought that forwarding this
18 e-mail to an attorney rather than making a call or
19 making a request not to receive more calls would
20 be the best option to cease receiving calls?
21         MR. SMITH:  Object to form.
22     A   Yeah.  I just -- I didn't want to engage

Page 147

1  with the correspondents.
2  BY MR. CAFFAS:
3      Q   You contend that June 9 was the last
4  call that you received that you're seeking damages
5  for in this case?
6      A   Again, whatever I provided initially was
7  correct, but I know that there's the call logs
8  that were received.  So that is correct, what's in
9  the logs.
10     Q   Can you clarify what you mean by that?
11     A   So when I submitted all the
12 documentation that I had, that was to the best of
13 my knowledge at the time, but I understand that
14 the call logs have different information, and they
15 are -- they are correct.
16     Q   And when you say the call logs, are you
17 referring to call logs that you believe your
18 counsel has received but you have not yet
19 reviewed?
20     A   Yes.  They just came this week, yes.
21     Q   So when you say that you believe that
22 the call logs confirm this not to be the case, is

Page 148

1  that based on representations from counsel?
2      A   Because it's an accurate -- because of
3  the logs that were received by the company versus
4  what I have.
5      Q   Right.  And I'm just saying you haven't
6  reviewed these call logs that you're referring to,
7  right?
8      A   Correct.
9      Q   So how do you know that the call logs
10 confirm this?
11     A   I rely on my counsel.
12     Q   Do you believe that SunPath is the only
13 company that administers vehicle service
14 contracts?
15     A   No.
16     Q   So you're saying that if you received a
17 call soliciting you for vehicle service contracts
18 without mentioning they're SunPath's vehicle
19 service contracts, those would not be about
20 SunPath vehicle service contracts, right?
21     A   They may or may not.
22     Q   How do you discern the difference if

165

1  MR. SMITH: Objection, misstates the
2 testimony.
3  A  That is not -- I rely on their guidance,
4 not...
5 BY MR. CAFFAS:
6  Q  Right, and I'm not asking for your
7 counsel's legal guidance, I'm asking for what
8 facts, what information do you know, that is, if
9 anything?
10  MR. SMITH: Objection, calls for a legal
11 conclusion.
12  A  I rely on my counsel.
13  MR. SMITH: Let me take a break and grab
14 a water.
15  MR. CAFFAS: We'll go off the record.
16  (A brief recess was had from 2:38 p.m.
17 to 2:40 p.m.)
18  MR. CAFFAS: Let's go back on the
19 record.
20  I think it might be productive if I ask
21 Kelly to again read back the question that I
22 asked.

166

1  Could you read the last question,
2 Kelly.
3  (The reporter read the requested
4 question.)
5  A  I don't -- I don't know.
6 BY MR. CAFFAS:
7  Q  I'll ask the same thing about the
8 potential oversight that you're claiming that the
9 defendant had over any party making calls. Do you
10 have any facts that support that SunPath exercised
11 any oversight over anyone making calls?
12  MR. SMITH: Objection, calling for a
13 legal conclusion.
14  You can answer.
15  A  Is it specific to a certain number, or
16 just all?
17 BY MR. CAFFAS:
18  Q  Any specific one.
19  A  Yeah, I don't know.
20  Q  There's a statement in here that
21 defendant knew about the calls. Do you have any
22 facts or evidence that you're aware of that

167

1 supports that SunPath knew about any specific
2 calls that are the basis of your claims?
3  A  I would defer to my counsel. I don't
4 know.
5  Q  So just generally, what evidence do you
6 have to support your contention that SunPath is
7 responsible or liable for the actions of any other
8 party that made the calls that form the basis of
9 your claims?
10  MR. SMITH: Objection, calls for a legal
11 conclusion.
12  You can answer.
13  A  I rely on my counsel.
14 BY MR. CAFFAS:
15  Q  Are you aware that American Protection,
16 the company that sent you an e-mail after making
17 presumably some of the calls at issue, was deposed
18 in this case?
19  A  I don't remember.
20  Q  I will represent to you that American
21 Protection has been deposed and they have
22 represented that they did not make any calls to

168

1 you until after they first received a call from
2 you regarding information about their products.
3 Do you recall making a call to American Protection
4 prior to receiving any of the calls that are the
5 basis of your claims?
6  A  I do not.
7  Q  Are you saying that you've never called
8 American Protection directly at all?
9  MR. SMITH: Objection to form.
10  A  Yeah, I don't remember making any calls.
11  MR. CAFFAS: I will introduce to you
12 what will be Exhibit 10.
13  (Smith Deposition Exhibit No. 10 was
14 marked for identification and was attached to the
15 deposition transcript.)
16 BY MR. CAFFAS:
17  Q  Now, Exhibit 10 is a document that was
18 produced by American Protection in response to a
19 subpoena that was served by your counsel in this
20 case. Do you recognize this document?
21  A  I don't.
22  Q  And just to describe this for the

169

1 record, this is what appears to be some kind of
2 mail notice or something akin to a postcard that
3 reads at the top Vehicle Alert Notice, Please
4 Respond Within Five Days, and the same number to
5 call in to. I will represent to you that American
6 Protection represented in their deposition that
7 one of these mailers was mailed to you, and in
8 response you called in requesting information
9 about the products American Protection sells. Do
10 you confirm that you -- excuse me. Can you
11 confirm whether or not you called American
12 Protection in response to a mailer similar to this
13 exhibit?
14     A  Yeah, I don't remember receiving a
15 mailer and I don't remember making a phone call
16 based on that mailer.
17     Q  Just to clarify slightly, are you saying
18 that you categorically did not make such a call,
19 or you just don't remember?
20     A  I believe -- no, I did not make the
21 call. I did not remember making the call.
22     Q  Again, just to clarify, you have never

170

1 made a call in response to receiving a mailer
2 similar to this?
3     A  Yeah, I don't remember ever receiving a
4 mailer like this before.
5     Q  Okay. Just to clarify because I think
6 you said both things. You don't remember, or you
7 did not?
8     A  And just to make sure I understand,
9 you're specifically talking if I ever received a
10 mailer for my vehicle saying that you have a
11 five-day notice?
12     Q  First we'll say yes. Have you received
13 a mailer similar to the exhibit that I've just
14 shown you?
15     A  No, I do not remember ever receiving a
16 mailer.
17     Q  Okay. And then that would mean that you
18 then are saying that you did not make a call in
19 response to receiving such a mailer?
20     A  Correct. I do not ever remember making
21 a phone call, no.
22     Q  Have you ever visited a website where

171

1 you requested to receive a call regarding vehicle
2 service contracts?
3     A  Not to my knowledge, no.
4     Q  And likewise, have you ever visited a
5 website where you input your personal information,
6 including your phone number, and may have
7 consented to receive calls regarding vehicle
8 service contracts?
9     A  Not to my knowledge, no.
10     Q  Have you ever visited any website where
11 you requested information regarding information
12 for your car insurance?
13     A  Not to my knowledge, no.
14     Q  So you've never visited any website
15 where you requested a quote for car insurance?
16     A  No. My insurance is through -- my
17 father pays for it, so he takes care of all that
18 stuff.
19     Q  Have you ever filed a lawsuit involving
20 telemarketing calls other than this one?
21     A  Yes.
22     Q  When was that?

172

1     A  I'd have to refer to the documentation,
2 but I have. I cannot remember.
3     Q  Was that on more than one occasion?
4     A  Yes.
5     Q  Do you remember how many specific cases
6 that would be?
7     A  Again, I'd have to -- I don't want to
8 get the number incorrect, so I'd have to...
9     Q  Would you be able to say whether it was
10 more or less than five?
11     A  I don't want to -- I just don't know a
12 hundred percent.
13     Q  It was more than one?
14     A  Yes.
15     Q  Is it around five? Is it less than ten
16 you can say?
17     A  I don't -- again, I don't remember. I
18 just -- I need to check.
19     Q  Are these -- I'm specifically at this
20 point asking about lawsuits that were filed in
21 court, right? And you say that there's been more
22 than one of these besides the present case?

205

1  MR. SMITH: Objection, misstates the
2 witness's testimony.
3  A Again, to the best of my knowledge, and
4 I think I'm also waiting on the AT&T call logs,
5 so...
6  MR. CAFFAS: I have nothing further.
7  MR. SMITH: I just have a few follow-up
8 questions.
9  THE WITNESS: Sure.
10  EXAMINATION BY COUNSEL FOR THE PLAINTIFF
11 BY MR. SMITH:
12  Q So earlier you testified that SunPath
13 made the calls at issue. I just want to clarify.
14 Can you tell me which party actually placed the
15 calls in this case?
16  A So it's --
17  MR. CAFFAS: Objection, speculation,
18 misstating the witness's testimony.
19 BY MR. SMITH:
20  Q You can answer.
21  A So it was American Protection on behalf
22 of SunPath.

206

1  Q Okay. Earlier you reviewed an e-mail
2 that was marked as Exhibit 6. See that?
3  A Yes.
4  Q Can you turn to page SMITH22.
5  A Yes. Got it.
6  Q Can you review SMITH22, SMITH23, and
7 SMITH24.
8  A I reviewed it.
9  Q All right. Do you know what these three
10 pages are or how they relate to the e-mail on
11 SMITH25?
12  MR. CAFFAS: I'm going to object to
13 vague as -- could you clarify which three pages
14 you're referring to?
15  MR. SMITH: Yeah, the ones we just
16 discussed, 22 through 24, how they relate to
17 SMITH -- the e-mail on SMITH25.
18  A So these are the options for the plans
19 for the --
20 BY MR. SMITH:
21  Q Do you know how you would access that?
22  A I believe there was a link.

207

1  Q Can I direct your attention to SMITH26.
2  A I'm trying to find it. It's on page 26
3 with the Buy Now?
4  Q The Buy Now link? Okay. After you
5 clicked the Buy Now link, what would happen?
6  MR. CAFFAS: Sorry. I didn't catch.
7 I'm not sure if the court reporter did. Can you
8 repeat that last question and answer?
9  THE WITNESS: Okay. So I --
10  MR. SMITH: Yeah. Sure. Hold on.
11 BY MR. SMITH:
12  Q All right. Just to clarify your
13 testimony, are you stating that on page SMITH26
14 you clicked the Buy Now, which would take you to
15 the document that starts on SMITH22?
16  A Yes. Based on my -- the best of my
17 knowledge, yes.
18  Q Okay. Do you see on SMITH22 where it
19 says Your Plan?
20  A I do at the top of the page on the left.
21  Q Below that it says Coverage Provided by
22 SunPath?

208

1  A Yes.
2  Q So is it a fair statement that this is
3 an e-mail from American Protection that would have
4 solicited you to purchase a SunPath vehicle
5 service protection plan?
6  A Yes.
7  Q Okay. Does this change your testimony
8 as to whose products were being sold via the calls
9 at issue in this case?
10  A So it's SunPath.
11  Q Okay. I just want to clarify. American
12 Protection was placing calls to sell SunPath's
13 products and services?
14  A On behalf, yes.
15  Q Is it fair to say that you rely on your
16 counsel to conduct an investigation in this case?
17  A Yes.
18  Q To gather facts?
19  A Yes.
20  Q Are you aware that there were call logs
21 obtained in this case from Five9, Incorporated?
22  A Yes.

```
                                                         213
1    CERTIFICATE OF SHORTHAND REPORTER
2         ELECTRONIC NOTARY PUBLIC
3         I, Kelly Carnegie, Certified Shorthand
4    Reporter, Registered Professional Reporter, the
5    officer before whom the foregoing proceedings were
6    taken, do hereby certify that the foregoing
7    transcript is a true and correct record of the
8    proceedings; that said proceedings were taken by
9    me stenographically and thereafter reduced to
10   typewriting under my direction; that reading and
11   signing was requested; and that I am neither
12   counsel for, related to, nor employed by any of
13   the parties to this case and have no interest,
14   financial or otherwise, in its outcome.
15         IN WITNESS WHEREOF, I have hereunto
16   electronically set my hand and affixed my notarial
17   seal this 5th day of December, 2022.
18
     My commission expires:
19   July 31, 2026
20
21   Kelly Carnegie
     NOTARY PUBLIC IN AND FOR THE
22   COMMONWEALTH OF VIRGINIA - PRINCE WILLIAM COUNTY
     Notary Registration Number: 7060756
```