**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

**RUTH SMITH,** individually and on behalf of
all others similarly situated,

      *Plaintiff,*

*v.*

      Case No. 1:22-cv-00081-LMB-TCB

**SUNPATH, LTD.,**

      *Defendant.*

**MEMORANDUM IN SUPPORT OF DEFENDANT SUNPATH, LTD.'S
FIRST MOTION IN LIMINE**

**A.  Five9, Inc. Must Be Excluded From Testifying At Trial.**

Plaintiff seeks to hold SunPath, Ltd. ("SunPath") liable for phone calls she had with non-party American Protection Corp. ("American Protection").

American Protection sent Plaintiff an advertisement in the mail for its vehicle service plans.  Plaintiff called American Protection after receiving the advertisement.  American Protection returned her call.  On this returned call, Plaintiff agreed to purchase a service contract from American Protection.[1]  As a result, American Protection transmitted an email to Plaintiff after she agreed to purchase a service contract.  That email included a link that re-directed Plaintiff to American Protection's webpage. The webpage displayed a contract which SunPath would have served as the administrator of the service contract.  That was the first time Plaintiff learned of SunPath's identity, as SunPath's name was never mentioned in Plaintiff's calls with

---

[1] The purchase was never finalized due to the fact that the credit card transaction was never approved by Plaintiff's card issuer. This resulted in additional calls from American Protection to Plaintiff in an effort to obtain a valid credit card number.

1

American Protection. Up until the day before discovery ended, Plaintiff claimed to have received 54 calls from American Protection.[2]

Plaintiff now claims that she received 122 unlawful "calls."[3] *See* Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment at 14-16, ECF No. 76. The day before discovery closed, Plaintiff claimed she is entitled to damages for 116 of those "calls" based **solely** on then-unauthenticated data records produced by non-party Five9 (a publicly traded company based in California) on November 30, 2022.[4] Despite Plaintiff's claimed importance of the records, she failed to engage in due diligence to timely obtain them.[5]

On the evening of the day that discovery closed in this case, Plaintiff amended her Initial Disclosures to advise SunPath, for the first time, that she intended to offer at trial an unidentified witness from Five9, Inc. and a series of then-unauthenticated spreadsheets it had produced in response to a subpoena from Plaintiff. Plaintiff knew, for at least a month, that Five9 was one of the technology vendors that American Protection had used, yet waited until discovery closed to inform SunPath of her intention to offer a Five9 witness at trial as well as the Five9 records containing a still-cryptic dump of data.

Predictably, Plaintiff deposed American Protection and SunPath in this case. But she did not begin deposing American Protection until three months after discovery began. *See* Peluso

---

[2] *See* Plaintiff's Third Supplemental Discovery Responses at 2-6, dated December 8, 2022, attached as **Exhibit 1**.

[3] She also now claims she received 172 in total after receiving the Five9, Inc. ("Five9") "data" dump, roughly three times the number (54) that she consistently alleged during discovery from her own experience and accounting of the calls at issue. She concedes that 50 of the "calls" were subject to her EBR with American Protection, leaving 122 total "calls" (i.e., spreadsheet rows in the Five9 data).

[4] *See* **Ex. 1** at 6 ("Plaintiff seeks damages and recovery for all calls placed to her . . . which are reflected in the calls records produced by Five9, Inc.").

[5] *See* Declaration of Patrick H. Peluso ("Peluso Decl."), ECF No. 61-1, ¶¶ 6, 9 (Plaintiff did not subpoena Five9 until November 9, 2022, and did not receive the records until November 30, 2022, just seven business days before the close of discovery).

Decl. ¶ 5. Plaintiff never deposed Five9. Unpredictably, Plaintiff disclosed Five9 and unspecified Five9 representatives **for the first time** in Plaintiff's final amended Initial Disclosures at 5:46 P.M. on Friday, December 9, 2022 -- **the evening that discovery closed in this case.**[6]

This Court's August 5, 2022 Order could not have been more clear and it precludes Five9 from testifying at trial: "<u>no person may testify whose identity, being subject to disclosure or timely requested in discovery, was not disclosed in time to be deposed or to permit the substance of his knowledge and opinions to be ascertained.</u>" *Id.*, ECF No. 25.[7] Plaintiff's untimely disclosure of Five9 is made more egregious by the fact that she knew about Five9 a month before discovery closed, yet made no effort to secure testimony necessary to elucidate the records, or even authenticate them, during discovery.[8] Remarkably, Plaintiff did not disclose Five9 in her Supplemental Disclosures that she served two days after learning that Five9 was one of American Protection's technology vendors.[9] Plaintiff also never disclosed Five9 despite SunPath's specific discovery requests for all people that she believed had knowledge of the facts and circumstances at issue in this case, and all witnesses she intended to proffer at trial, even after Plaintiff lost a motion to compel this type of information.[10]

---

[6] *See* Plaintiff's Second Supplemental Initial Disclosures at 3 (listing Five9 and "agents, former agents, employees, former employees, and records custodians of Five9"), attached as **Exhibit 2**.

[7] The Court's Order memorializes the consequence of a party's failure to follow the disclosure rules in federal court. *See Gomez v. Haystax Tech., Inc.*, 761 Fed. Appx. 220, 229 (4th Cir. 2019) (Rule 26 requires parties to "disclose 'the name . . . of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims[,]" which "allow litigants to adequately prepare their cases for trial and to avoid unfair surprise.") (citing *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017)).

[8] *See* Peluso Decl. ¶ 6 (during American Protection's November 9, 2022 deposition, it stated that it "utilized a telephone system provided by Five9, Inc. to place calls during the relevant time period.").

[9] *See generally* Plaintiff's First Supplemental Initial Disclosures, dated November 11, 2022, attached as **Exhibit 3**.

[10] SunPath's Interrogatory 15 asked Plaintiff to "[i]dentify all persons, other than a person intended to be called as an expert witness at trial, who are likely to have knowledge of any of the

Plaintiff's decision not to depose Five9 or timely disclose it in her Initial Disclosures left SunPath reasonably assuming that Five9 was simply yet another third party that produced discovery in this case in response to a subpoena that Plaintiff did not intend to offer at trial.[11] Plaintiff should be precluded from offering testimony from Five9 at trial because it was not timely disclosed under the Court's August 5, 2022 Order or Rule 16(B) Scheduling Order, ECF No. 31.

Plaintiff did not seek leave of this Court to serve these late disclosures. *See* Local Civil Rule 16(B). Even if she did, her untimely disclosures were neither substantially justified nor harmless. "When a party fails to make a disclosure 'as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless.'" *Gomez*, 761 Fed. Appx. at 229 (citing Fed. R. Civ. P. 37(c)(1); *S. States Rack & Fixture, Inc. v. Sherwin Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003)).[12] In *Gomez*, the court held that "the district court did not abuse its discretion in excluding

---

[11] facts and/or allegations set forth in the Complaint . . . and indicate whether you intend to call them as a witness at trial." Plaintiff's Objections and Responses to Defendant's First Set of Discovery Requests at 9, attached as **Exhibit 4**. **Plaintiff never identified Five9 in response to this interrogatory despite supplementing her responses *three* times**. Plaintiff's first Supplemental Objections and Responses to Defendant's First Set of Discovery Requests dated November 11, 2022, attached as **Exhibit 5**, only mentioned that the calls at issue were supposedly made using a Five9 "dialing system." *See* **Ex. 5** at 2-6.

[11] Various third parties, such as AT&T (Plaintiff's phone company), Verizon and Lumen (other nationwide carriers) and American Vehicle Protection were subpoenaed for records in this case, and were never disclosed as potential trial witnesses. Plaintiff's unspecific disclosure of "Five9" as an entity leaves SunPath with no insight into who will serve as the company's trial witness. *See* Macrotrends, Five9 Number of Employees 2012-2022, https://www.macrotrends.net/stocks/charts/FIVN/five9/number-of-employees (last visited Jan. 4, 2023) (showing that on December 31, 2021, Five9 had 2,138 employees). It was not until weeks after the close of discovery that Plaintiff even secured a records custodian declaration from Five9 authenticating the records.

[12] Plaintiff "bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Id*. at 229-30 (quoting *Bresler v. Wilmington Trust Co*., 855 F. 3d. 178, 190 (4th Cir. 2017)). Plaintiff has known from the start that she only ever interacted with American Protection. She chose not to sue them, and to wait a significant period before deposing it. She

. . . witnesses . . . [disclosed] the last day of discovery." 716 Fed. Appx. at 233-34. This Court's Orders, its Local Rules, the Federal Rules, and *Gomez* all confirm that Five9 should be precluded from testifying at trial.

### B. The Five9 Records Must be Excluded from Trial.

Five9's inability to testify at trial renders the Five9 data dump of non-self-explanatory records inadmissible. The inadmissible Five9 records are identified as Exhibits 26-72 in Plaintiff's Trial Exhibit List at 2-4, ECF No. 54. *See also* Exhibit A to Plaintiff's Response in Opposition to SunPath's Motion for Summary Judgment, ECF No. 76-1 (containing entries from the Five9 records that allegedly relate to Plaintiff ("Five9 records summary")).

It is unclear and unknown what the Five9 records signify. Plaintiff assumes, for no obvious reason other than inflating her damages claim, that every row of a spreadsheet in which her phone number appears represents a call to her from American Protection. The Five9 records are complex internal documents that contain Five9-specific terminology that are not within the common knowledge of those not familiar with those records. Plaintiff, lacking any personal knowledge of the Five9 records, improperly speculates that they correlate to calls made by American Protection on a one-to-one basis. *See* **Ex. 1** at 6 (American Protection "calls placed to [Plaintiff's] cellular telephone number . . . are reflected in the [] records produced by Five9, Inc.").[13] The Five9 records are not-self-explanatory.

---

waited longer still to subpoena Five9, which simply produced a data dump of non-self-explanatory spreadsheets of data. These decisions were in her control, and the prejudice to SunPath in being deprived of the opportunity to depose Five9 abouts its data dump of non-self-explanatory records *is* self-explanatory. *See also* Local Civil Rule 16(B) ("Mere failure on the part of counsel to proceed promptly with the normal process of discovery shall not constitute good cause for an extension or continuance.").

[13] The Five9 records themselves constitute hearsay and may contain hearsay statements. When a party seeks to introduce hearsay evidence within hearsay evidence, "each part of the combined statement [must] conform[] with an exception to the rule." Fed. R. Evid. 805. Due to the lack of clarity surrounding the Five9 records, it is unknown exactly what information the Five9 records

It is obvious they are not simply call records of the type traditionally produced by phone companies because the column entitled "DURATION" contains multiple entries of 00:00:00. All calls take *some* time. That would presumably be reflected in the Five9 records if they were call records. Moreover, there are numerous other temporal-related categories in those records that make it further inscrutable as to what they may mean; Plaintiff never elicited any such testimony from Five9 either during discovery or to this day.

The Five9 records were produced without any key or index that explains the information within the many columns of data. The Five9 records contain 40 different columns of data, each with its own descriptor.  Many of these descriptors raise more questions than answers.  For example, while "call detail records" produced in TCPA cases routinely contain two temporal categories (i.e., beginning call time and end time), Five9's records contain at least *ten* different fields that appear to reflect some sort of temporal quantity.  Many of these are "0:00:00"—*no time*. *See* Five9 records summary. This presumably suggests the Five9 records reflect more than simply phone calls, but rather other interactions that a given American Protection user may have had with any given data point (such as viewing it, emailing, making notations to follow-up, and myriad other instances we can only guess at).  Indeed, approximately two-thirds of the entries that mention Plaintiff's phone number have one or more zero-time entries (i.e., "0:00:00"), and 71 of the entries have rows in which *all* of the seemingly temporal-related fields have zero-time data.  This renders Plaintiff's assumption that these are "call records" specious at best. *Id.*

---

contain. If the Five9 records reflect some type of interactions that employees or subcontractors of American Protection had with third parties, then the information within the Five9 records constitutes hearsay. As a result of this potential hearsay within hearsay, the Five9 records would be inadmissible. Plaintiff bears the burden of proving that the Five9 records and the information they contain fall within exceptions to the hearsay rule. *See Mitchell v. Target Corp.*, Civil Action No. ELH-18-2908, 2019 U.S. Dist. LEXIS 181353, at *17 (D. Md. Oct. 18, 2019) ("[T]he proponent of hearsay evidence must prove to the court by a preponderance of the evidence that the statement falls within an exception to the hearsay rule such that it is admissible." (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987))).

The idea that the records likely reflect interactions other than phone calls is further supported by the fact that 13 of the entries with zero-time entries in the "DURATION" column have entries of 00:00:01 or above in the "HANDLE TIME" and "ACW TIME" columns, whatever they may refer to. *Id*. The records provide no explanation for how any of the other nine columns appearing to reflect some sort of temporal quantity can have entries greater than the entry in the "DURATION" column. This casts further doubt on Plaintiff's assumption that every entry reflects a phone call.

There are other interpretive problems with this data set.  For example, Column D is entitled "TIME." *Id*. It appears the entries in the column correlate to a specific time of day. But there is no information indicating what time zone(s) they correspond to. That information would be important, for example, to determine whether a "call" was made before or after Plaintiff claims to have sent an email making a do-not-call request to American Protection on June 11, 2020 at 7:49 AM CDT.  *See* Plaintiff's email, ECF No. 76-11.

There are also several discrepancies between Plaintiff's discovery responses listing calls at issue and the Five9 records. One such discrepancy is the times and dates in the Five9 records that Plaintiff claims to be tied to "calls" she received. These do not fully match the times and dates Plaintiff included in her discovery responses. *Cf.* **Ex. 1** at 2-6 *with* Five9 records summary, ECF No. 76-1. For example, Plaintiff claims to have received five calls on May 29, 2020, but the Five9 records reflect seven entries from that day relating to Plaintiff's phone number. *Cf.* **Ex. 1** at 3 *with* Five9 records summary at 1.  Similarly, Column X is entitled "CAMPAIGN." *See* Five9 records summary. There are various inscrutable entries in that column, including "L2 Campaign" and "TIGER POSTED TRANSFERS." *Id*.  None are self-evident here.

Further, many of the entries are associated with "AGENT" "dcoletta@americanprotection.com," but American Protection testified at deposition that Ms. Coletta was a back-office employee who *never* made sales calls.  Instead, she made manually dialed, follow-up customer-service calls to clarify or resolve issues regarding a vehicle's VIN or (as with Plaintiff) a credit card that didn't process correctly. *Id.*; *see also* Deposition of American Protection at 183:15-185:8; 197:10-200:11, excerpts attached as **Exhibit 6**.  Importantly, Ms. Coletta **never** made sales calls, yet Plaintiff intends to invite the jury to assume that every single one of these rows on a spreadsheet represents an actionable "telephone solicitation call" for which she is entitled to damages.  There is no foundation for such speculation, and the only record evidence available about Ms. Coletta's role makes it clear that those calls were *anything but* sales calls.[14]  Her speculation only risks confusing the jury and prejudicing SunPath.

The Five9 records require a witness with personal and specialized knowledge to properly interpret and explain them to the jury. *See* Fed. R. Evid. 602, 701, 702. Plaintiff lacks any such witness she can call at trial. *See supra* Section A. Therefore, the probative value of the Five9 records, even if they are relevant, is substantially outweighed by the danger of misleading and confusing the jury. *See* Fed. R. Evid. 403. Moreover, their admission would cause unfair prejudice to SunPath.

Finally, as explained below, the Five9 records were not timely authenticated. *See* Fed. R. Evid. 901. Thus, the Five9 records must be excluded from trial.

---

[14] *See In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 21 FCC Rcd. 3787, 3812 (2006) (communications that have a commercial purpose are still not advertisements or telemarketing under the TCPA when their "purpose is to facilitate, complete, or confirm a commercial transaction [] the recipient previously agreed to").

### 1. The Probative Value of the Five9 Records is Substantially Outweighed by the Danger of Unfair Prejudice.

Neither of the parties have personal knowledge about what the Five9 records signify.[15] Plaintiff had not even seen the records at the time of her deposition, but merely embraced her counsel's opinion that each and every row of data reflected a recoverable telephonic sales call.[16]

Any attempt by Plaintiff to have a lay witness opine on the Five9 records would be inadmissible because such opinions would require specialized knowledge. *See* Fed. Rule Evid. 701(c) (a lay witness opinion cannot be "based on . . . specialized knowledge"). The Five9 records are complex data that require specialized skill and knowledge to decipher and explain. An expert witness competent in elucidating their meaning is needed to explain them.[17] It would

---

[15] *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also* Fed. R. Evid. 702.

[16] *See* Deposition of Ruth Smith at 147:3-148:11 ("Q: You contend that June 9 was the last call that you received that you're seeking damages for in this case? A: Again, whatever I provided initially was correct, but I know that there's the call logs that were received. So that is correct, what's in the logs. Q: Can you clarify what you mean by that? A: So when I submitted all the documentation that I had, that was to the best of my knowledge at the time, but I understand that the call logs have different information, and they are – they are correct. Q: When you say the call logs, are you referring to call logs that you believe your counsel has received but you have not yet reviewed? A. Yes. They just came this week, yes. Q: So when you say that you believe that the call logs confirm this not to be the case, is that based on representations from counsel? A: Because it's an accurate – because of the logs that were received by the company versus what I have. Q: Right, And I'm just saying you haven't reviewed these call logs that you're referring to, right? A: Correct. Q: So how do you know that the call logs confirm this? A: I rely on my counsel."), excerpts attached as **Exhibit 7**; *see also See Steves & Sons Inc. v. Jeld-Wen, Inc.*, Civil Action No. 3:16cv545, 2018 U.S. Dist. LEXIS 5061, at *4 (E.D. Va. Jan. 10, 2018) ("The modern trend favors the admission of opinion testimony [under Rule 701], provided that it is well founded on **personal knowledge**[.]" (citing *MCI Telecomms. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990))) (emphasis added).

[17] *See Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 101 (D. Md. 2020) (excluding testimony where "there is no basis for the Court to conclude that [the witness] has 'specialized knowledge' regarding medical billing practices[.]"); *see also Vigilant Ins. Co. of N.Y. v. McKenney's, Inc.*, C.A. No. 7:09-cv-02076-JMC, 2011 U.S. Dist. LEXIS 62342, at *10 (D. S.C. June 9, 2011) (holding that "[t]he value of medical equipment is not likely to be within common knowledge and may require specialized knowledge of medical equipment.").

be improper to allow a lay witness to speculate at trial about the Five9 records when only expert testimony would be proper.[18]

Without a proper witness to testify to the Five9 records, the risk of confusing and/or misleading the jury is dangerously high. This necessitates the exclusion of the Five9 records. *See* Fed. R. Evid. 403.[19]

**2. The Five9 Records Lack Proper Authentication.**

The Five9 Records were not timely authenticated and Five9 cannot authenticate them at trial since it cannot testify at trial. Therefore, the Five9 records are inadmissible. *See* Fed. R. Evid. 901. The burden was on Plaintiff to have the Five9 records timely and properly authenticated.[20] Plaintiff untimely produced a Five9 Declaration of Custodian of Records ("Five9 Decl.") on January 6, 2023, nearly a month after the close of discovery. *See* Five9 Decl. and related correspondence, attached as composite **Exhibit 8**. Plaintiff cannot use the Five9 Decl. due to her untimely production of it nearly a month after discovery closed. *See* August 5,

---

[18] *See Raynor v. Pugh*, 817 F.3d 123, 131 (4th Cir. 2016) (explaining that a layperson's interpretation of medical tests or "speculation regarding the causes" of a condition "constitute conclusory and inadmissible lay opinion[.]"); *see also Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 852 (S.D. W.Va. 2018) (allowing "[a]n experts' deciphering of the complicated internal documents . . . [that] will assist the jury[.]"); *United States ex rel. Jordan v. Northrop Grumman Corp.*, CASE NO.: CV 95-2985 ABC (Ex), 2003 U.S. Dist. LEXIS 29071, at *21-22 (C.D. Cal. Jan, 6, 2003) (permitting expert witness testimony as it could assist "the jury in understanding what threaten[ed] to be an overwhelming number of complex documents."); *United States v. Channon*, Cr. No. 13-966 JCH/KK, 2015 U.S. Dist. LEXIS 197616, at * 21-22 (D. N.M. Dec. 2, 2015) (when the government sought to present "massive Excel spreadsheets" which there was "difficulty in understanding[,]" the Court admitted expert testimony as "the jury d[id] not have one hundred hours to learn what the data represent[ed].").

[19] *See Abrams v. Nucor Steel Marion, Inc.*, Case No. 3:13 CV 137, 2015 U.S. Dist. LEXIS 154161, at *128 (N.D. Ohio Nov. 9, 2015) (refusing to permit Plaintiff to present a "'data dump' [of] EPA records for a jury to decipher."); *see Butzer v. CoreCivic, Inc.*, 5:17-cv-360-Oc-30PRL, 2019 U.S. Dist. LEXIS 41026, at *9 (M.D. Fla. Jan. 9, 2019) (denying a motion to take judicial notice of documents where it was argued that "admitting [] complex documents to the jury without explanatory testimony would cause confusion.").

[20] *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

2022 Order ("<u>Exhibits not so disclosed and listed will not be permitted at trial except for</u> <u>impeachment or rebuttal[.]</u>").[21] Plaintiff has provided no substantial justification for her untimely production of the Five9 Declaration, and the harm is self-explanatory:  SunPath should be focused on summary judgment and trial, not late-authenticated, but-still-inscrutable data dumps. Therefore, the Five9 records are inadmissible.

Even if Plaintiff could rely on the Five9 Decl., it does not authenticate the Five9 records as "call records."  Rather, the Declaration merely refers to the voluminous spreadsheets as "records."  Therefore, even if they had any probative value, Plaintiff cannot offer the Five9 records as "call records." *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, **the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is**.") (emphasis added). Therefore, any reference by Plaintiff or any other witness to the Five9 records as "call records" is rendered inadmissible speculation, and should be precluded at trial.

### C.  CONCLUSION

Based on the foregoing, SunPath respectfully requests that this Court exclude Five9, Inc. and its records and related exhibits (identified as exhibits 26-72 in Plaintiff's Exhibit List) from trial.

---

[21] *See also Lafleur v. Dollar Tree Stores, Inc.*, Case No.: 2:12-cv-363, 2013 U.S. Dist. LEXIS 205078, at *8 (E.D. Va. Aug. 29, 2013) (ordering the exclusion of untimely declarations where "Plaintiffs fail[ed] to provide substantial justification as to why the Declarations were proffered at or after the close of discovery," and failed to establish why the "late production was harmless.").

Dated: January 18, 2023

Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Joseph P. Bowser*
Joseph P. Bowser (VSB No. 88399)
Carl Taylor Smith (VSB No. 97376)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
jbowser@rothjackson.com
tsmith@rothjackson.com

Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535
(703) 485-3525 (fax)
mroth@rothjackson.com

*Counsel for SunPath, Ltd.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused Defendant SunPath, Ltd.'s Memorandum in Support of its First Motion in Limine to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on January 18, 2023.

/s/ *Joseph P. Bowser*
Joseph P. Bowser
