# EXHIBIT 6

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
 2                         ALEXANDRIA DIVISION
 3
       RUTH SMITH, individually and on
 4     behalf of all others similarly
       situated,
 5
                           Plaintiff,        Case No.
 6                                           1:22-cv-00081-LMB-
       vs.                                   WEF
 7
       SUNPATH, LTD., a Massachusetts
 8     corporation,
 9                         Defendant.
       _____/
10
11                          DEPOSITION OF
         RULE 30(b)(6) DEPOSITION OF CHUKRAN MANAGEMENT GROUP
12       d/b/a AMERICAN PROTECTION CORP. ("AMERICAN PROTECTION")
                             KOBI CHUKRAN
13
                     (Conducted Via Videoconference)
14
15
         DATE:              November 1, 2022
16
17       TIME:              11:03 a.m. to 2:06 p.m.
18
         PURSUANT TO:       Notice by counsel for Plaintiff
19                          for purposes of discovery, use at
                            trial or such other purposes as
20                          are permitted under the Federal
                            Rules of Civil Procedure
21
22       REPORTED BY:       Aaron T. Perkins, RMR, CRR, CRC
                            Notary Public, State of
23                          Florida at Large
24
                            Pages 1 to 128
25


                                                          Page 1
```

1  A. I believe so.
2  Q. Okay. And she starts this with saying, "This
3  is Samantha calling with American Protection."
4      Did you hear that?
5  A. Yes.
6  Q. Is that how subcontractors would typically
7  start a call?
8  A. Typically, they will identify who they -- who
9  they are and who they're calling from.
10 Q. But that's not -- I'm just trying to understand
11 if this call would be out of the ordinary.
12     Is that typically how a subcontractor would
13 identify themselves on behalf of American Protection?
14     MR. CAFFAS: Objection. Asked and answered.
15 Vague.
16     MR. TANDY: Objection.
17     MR. CAFFAS: And I think it's calling for
18 speculation and a legal conclusion, as to who
19 they're calling on behalf of.
20 BY MR. SMITH:
21 Q. You can answer.
22 A. They would usually -- they would usually have a
23 script, identify who they are and the company they're
24 calling from.
25 Q. Okay. So would you say that's typical or

Page 181

1  that's out of the ordinary for how they would identify
2  themselves?
3      MR. CAFFAS: Objection. He's answered that
4  twice now.
5      THE WITNESS: Again, I think that's how they
6  would -- they should.
7  BY MR. SMITH:
8  Q. Got it. She provides a telephone --
9      THE COURT REPORTER: I'm sorry.
10     MR. SMITH: Sorry. Go ahead.
11     THE COURT REPORTER: Could you state the
12 objection again? You kind of cut out.
13     MR. CAFFAS: I think I -- which -- which time?
14 The last time?
15     THE COURT REPORTER: Correct.
16     MR. CAFFAS: I just said objecting to asked and
17 answered twice now.
18     THE COURT REPORTER: Thank you. Sorry.
19     MR. CAFFAS: Not a problem.
20     MR. SMITH: Okay.
21 BY MR. SMITH:
22 Q. Kobi, she provides a telephone number which is
23 800-427-1806.
24 A. Yes.
25 Q. Is that American Protection's telephone number?

Page 182

1  A. Yes, it is.
2  Q. Okay. Do you know if the Five9 system keeps
3  recordings of calls?
4  A. Yes, it does.
5  Q. And could recordings of calls be downloaded?
6  A. Yes.
7      MR. SMITH: Give me a second. I'm going to
8  move to my next exhibit.
9  BY MR. SMITH:
10 Q. Okay. I'm going to play another recording for
11 you.
12     MR. SMITH: I'm going to mark it as Exhibit 14
13 to this deposition.
14     (Deposition Exhibit 14 was marked.)
15     MR. SMITH: This is another recording produced
16 by Plaintiff, and it's been produced in the
17 litigation and marked as "SMITH000028," so I'm going
18 to play it in full.
19     (At this time the recorded voicemail was played
20 for the witness.)
21     MS. COLETTA: Hi, good afternoon. This message
22 is for Ruth. This is Dawn with American Automotive
23 Protection Corp. I was calling to follow up with
24 you from your policy with us. I work here with
25 Samantha Jaeger. She asked me to give you a call,

Page 183

1  but please give us a call back at 800-427-1806. I'm
2  at extension 1191.
3      And, again, this is regarding your policy with
4  us, but it's important that you give us a call back
5  so we can confirm your information for the file.
6  Thank you so much, and have a nice evening.
7      Bye-bye.
8      (Recording concluded.)
9  BY MR. SMITH:
10 Q. Do you recognize that voice?
11 A. Yes.
12 Q. Can you tell me who that is?
13 A. Her name is Dawn.
14 Q. Do you know her last name?
15 A. Coletta, C-o-l-e-t-t-a.
16 Q. So what is Dawn's role?
17 A. Dawn's role is in the back office, so --
18 Q. Can you explain what that means?
19 A. Yeah. Assistance with if we need to obtain a
20 VIN number or a credit card.
21 Q. Okay. Is she an employee of
22 American Protection, or is she a subcontractor?
23 A. She's a subcontractor.
24 Q. Okay. Is she still working with you?
25 A. Yes.

Page 184

1  Q. Do you know how long she's worked with you?
2  A. A few years.
3  Q. Is there a difference between her role and
4  Samantha Jaeger's role?
5  A. Yes.
6  Q. Can you tell me that difference?
7  A. Samantha was in sales, while Dawn is more of
8  a -- again, of a back office or admin type of a role.
9  Q. When we previously talked about subcontractors,
10 you told me you had about one to two at any particular
11 time.
12    Were you referring to sales subcontractors?
13 A. Yes.
14 Q. Okay. Do you have any other subcontractors
15 that do back-end work besides Dawn?
16 A. Yes.
17 Q. Can you tell me their names?
18 A. Matt Conway.
19 Q. Can you spell that as well?
20 A. M-a-t-t C-o-n-w-a-y.
21 Q. Anyone else?
22 A. No.
23 Q. Give me a minute. I'm pulling up another
24 exhibit.
25    (Deposition Exhibit 15 was marked.)

Page 185

1  Q. The second sentence of this e-mail says, "I
2  enjoyed speaking with you today about your vehicle and I
3  wanted to provide you with the information below for
4  your review."
5    Do you see that?
6  A. Yes.
7  Q. Is it fair to say this e-mail would have
8  followed a phone call?
9  A. Yes.
10 Q. Okay. Is it common for American Protection to
11 send follow-up e-mails to potential clients?
12 A. Yes.
13 Q. You produced this document, correct?
14 A. I believe the plaintiff did.
15 Q. I think you produced the one we're going to
16 review next, not this one.
17    But in any regard, do you know which system
18 this e-mail would have been sorted?
19 A. Inline.
20 Q. Inline. Okay.
21    Do you know how far back American Protection
22 maintains records of e-mails?
23 A. No, I do not.
24 Q. Would it be for the entire relevant time
25 period?

Page 187

1  BY MR. SMITH:
2  Q. All right, Kobi. I'm showing you what's been
3  marked as Exhibit 15.
4    Do you recognize this document?
5  A. Yes.
6  Q. Can you tell me what it is?
7  A. This is the e-mail that was sent out to
8  Ruth Smith.
9  Q. Okay. That was sent on May 28th, 2020, at
10 3:30 p.m. Eastern; is that correct?
11 A. Yes.
12 Q. This was sent by Samantha Jaeger?
13 A. Yes.
14 Q. Do you see, in the e-mail, it says,
15 "Customer Number," and it says, "617RC12986"?
16 A. Yes.
17 Q. Do you know what that number is?
18 A. I believe that's assigned by Inline CRM.
19 Q. Okay. Would there be --
20    So would each lead within the system have a
21 different customer number?
22 A. I believe so.
23 Q. Okay. Is this e-mail following up regarding a
24 SunPath vehicle service contract plan?
25 A. I think so.

Page 186

1    MR. TANDY: Objection.
2    MR. CAFFAS: Can you say --
3    THE WITNESS: I'm not -- I'm not sure.
4    MR. TANDY: What?
5    MR. CAFFAS: Before Kobi answers, can you state
6    the basis of your objection?
7    MR. TANDY: Sure. My basis for the -- for the
8    objection is he asked the question for the entire
9    period, could he tell, and the answer was no, so
10   the -- this question, right, it's a -- it's
11   basically asked and answered. It seems to be the
12   same question in a -- in a different format.
13 BY MR. SMITH:
14 Q. You can answer the question.
15 A. Can you please repeat it? I want to make sure
16 I am --
17 Q. Yeah. Do you know if Inline CRM system
18 maintains records of e-mails throughout the entire
19 relevant time period?
20 A. I am not sure what is the policy of maintaining
21 e-mails. Honestly --
22 Q. That's --
23 A. -- it's so long ago, but I'm not sure. I'm not
24 sure. I cannot give you a --
25 Q. Okay. That's fine. Give me another minute.

Page 188

```
 1        MR. SMITH: Objection.
 2        THE WITNESS: No.
 3        MR. SMITH: Calls for speculation.
 4   BY MR. CAFFAS:
 5     Q. Can you repeat your answer, Mr. Chukran?
 6     A. No. Yes, I can repeat my question-- it
 7   was -- and my answer, it was no.
 8     Q. Thank you. I had -- I had heard you. I'm just
 9   continuing down my list. Thank you.
10        There was a recording played to you a few
11   minutes ago on which someone named Dawn had left a
12   voicemail, presumably for Plaintiff.
13        Do you remember that recording?
14     A. Yes.
15     Q. And you had said that Dawn worked on the -- the
16   backend of American Protection.
17        Is that how you described her position?
18     A. Yes.
19     Q. And does that mean that Dawn would have only
20   been making calls to someone who was already a customer
21   or who had already expressed interest in purchasing a
22   product from American Protection?
23        MR. SMITH: Objection. Calls for speculation.
24        THE WITNESS: Yes.
25   BY MR. CAFFAS:
```
Page 197

```
 1     Q. Would Dawn be making any kind of sales calls at
 2   all?
 3        MR. SMITH: Objection.
 4        THE WITNESS: No.
 5        MR. SMITH: Calls for speculation.
 6   BY MR. CAFFAS:
 7     Q. Would Dawn have been making any phone calls
 8   using the same dialing system that someone calling to
 9   make a solicitation call would have used?
10     A. Yes.
11     Q. Let me ask that in a different way.
12        So what -- what type of dialing system would
13   Dawn have been using to contact potentially Ms. Smith?
14     A. The same -- the same one that Samantha Jaeger
15   was using.
16     Q. Okay. So she, Dawn, in this case, would have
17   had -- would she not have manually dialed the person who
18   had already expressed interest to call them back?
19        MR. SMITH: Objection. Calls for speculation.
20   Lacks foundation.
21        THE WITNESS: Yes.
22   BY MR. CAFFAS:
23     Q. "Yes," she would have been manually dialing?
24     A. Yes.
25     Q. Okay. I'm just trying to rectify your answer
```
Page 198

```
 1   here.
 2        So it would seem that Ms. -- or Dawn would have
 3   known that someone had already expressed interest, so
 4   she would have used a telephone where she manually took
 5   that customer's information and called them, in
 6   particular, herself?
 7        MR. SMITH: Objection. Calls for speculation.
 8   Misstates the witness's testimony.
 9        THE WITNESS: Yes.
10   BY MR. CAFFAS:
11     Q. Okay. So do you --
12        Are you able to say, for a fact, whether that
13   was on a physical telephone, or would this be stored in
14   a computer system?
15     A. No. It was -- that was the same phone system
16   that would be virtual or via web browser.
17        In this case, the plaintiff gave us a credit
18   card number and agreed to the terms of the sale, so as
19   far as Dawn, she had written consent from a customer of
20   ours.
21     Q. Uh-huh. So my confusion, Mr. Chukran, is I
22   believe your testimony earlier was, when someone is
23   contacted as a potential -- to make a potential sale,
24   they are in a list, and they are being -- the
25   subcontractor of American Protection that is going to be
```
Page 199

```
 1   making the sale, is waiting for them to be connected
 2   with someone who picks up on a call, correct?
 3     A. Yes.
 4     Q. Whereas Dawn, who is calling once the consumer
 5   has already expressed interest in a product, appears to
 6   have known about this and is specifically calling them
 7   back, in particular; is that correct?
 8     A. Yes. She -- she manually dialed it, yes.
 9     Q. Okay. So that system demands that it be
10   manually dialed on occasion, too?
11     A. Yes.
12     Q. I also want to clarify something you had said
13   about whatever dialing system the subcontractors for
14   American Protection are using.
15        You had said that it is just dialing from a
16   list of leads, correct?
17     A. Yes.
18     Q. And, again, this would only be a list of leads
19   that were uploaded to the system of people that had
20   already requested to be called specifically by
21   American Protection?
22        MR. SMITH: Object to form.
23        THE WITNESS: Yes. Yes, or somebody that
24   called in on our toll-free number for information.
25   BY MR. CAFFAS:
```
Page 200

19 (Pages 197 - 200)

```
 1                   CERTIFICATE OF REPORTER

 2                      (VIA VIDEOCONFERENCE)

 3    STATE OF WISCONSIN:

 4    COUNTY OF WINNEBAGO:

 5

 6         I, COURTNEY N. LANGHOFF, RMR, CRR, FPR-C,

 7    Notary Public, State of Florida, certify that I was

 8    authorized to and did stenographically and remotely

 9    report the Zoom videoconference deposition of

10    KOBI CHUKRAN (CHUKRAN MANAGEMENT GROUP, LLC); that a

11    review of the transcript was requested; and that the

12    foregoing transcript, pages 134 through 248, is a true

13    and accurate record of my stenographic notes.

14         I further certify that I am not a relative,

15    employee, or attorney, or counsel of any of the parties,

16    nor am I a relative or employee of any of the parties'

17    attorneys or counsel connected with the action, nor am I

18    financially interested in the action.

19

20         DATED this 16th day of November, 2022.

21

22

23

              COURTNEY N. LANGHOFF, RMR, CRR, FPR-C

24

25
```