IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> **SUNPATH, LTD.,** a Massachusetts corporation, <br><br> *Defendant*. | Case No. 1:22-cv-00081-LMB-TCB <br><br> **PLAINTIFF'S OPPOSITION TO SUNPATH'S FIRST MOTION IN LIMINE** |

I.  INTRODUCTION

Defendant SunPath, Ltd.'s ("Defendant" or "SunPath") first motion in limine is an improper attempt to prevent the Court from considering key evidence revealing a complete picture of the damages in this case. To "support" its motion, SunPath attempts to feign a lack of knowledge regarding Five9, Inc. ("Five9")—a witness whose sole purpose is to authenticate documents—and its call records by claiming that it was caught off guard by the late disclosure on December 8, 2022 (8 days after the call records were received by Plaintiff and immediately produced to Defendant). The record tells a different story. Both Plaintiff and SunPath became aware of Five9 at the exact same time and both Parties received the Five9 call records on the same day. As such, there is no basis to take the "drastic measure" of excluding either Five9 or the call records in this case, and SunPath's motion fails for the following reasons.

First, Five9 and its call records were made known to SunPath in discovery. Indeed, SunPath concedes that it was aware of Five9 on November 9, 2022—a full month prior to the close of discovery (mot. at 2 n.5)—and it received the call records on the same day that Plaintiff received them. Despite being aware of Five9's identity and the documents that Plaintiff sought

from Five9, SunPath made no attempt to subpoena or question Five9 in any way. SunPath provides no explanation for this lack of diligence. Nor can SunPath identify any harm from the so-called untimely disclosure. Rather, Plaintiff is offering Five9 as a witness to authenticate the call records that it produced in response to a subpoena this case. This is not an eleventh-hour disclosure of a witness that possesses substantive testimony. For this reason, numerous courts have found that a late disclosure of a custodial declarations or witnesses called to authenticate evidence causes no harm to the opposing party.

SunPath's backup arguments to exclude the Five9 call records fare no better. It starts by feigning a lack of knowledge regarding what the records consist of and claiming that they require "specialized knowledge" to be understood. This is untrue. Courts routinely find that reviewing and summarizing data or spreadsheets does not require expert testimony, including call records. The Five9 call records at issue are not open to a multitude of interpretations. Rather, they are clearly records of phone calls placed using the Five9 dialer and are easily understood by a reasonable juror.

Finally, SunPath claims that the records should be excluded because they cannot be authenticated. But the records have been authenticated. (*See* Five9 Custodian Declaration, Ex. A.) While SunPath protests the production of the custodial declaration in January, the truth is that it was SunPath's refusal to stipulate to the admissibility of the records that necessitated the declaration. And Plaintiff produced the declaration immediately upon receiving it. For this reason, SunPath cannot demonstrate any prejudice if the Court considers the declaration for the purposes of authenticating the records. But to the extent the Court excludes the custodial declaration from consideration, Five9 should still be permitted to appear as a witness to authenticate its own business records.

As a final point, it is worth noting that SunPath's own Exhibit List references the call records that it now seeks to exclude. That is, exhibits 35, 37, and 38 state that SunPath may offer "Five9, Inc.'s Written Response to Plaintiff's Subpoena," "Logs Produced by Five9, Inc. in Response to Plaintiff's Subpoena," and "Summary of records relating to Plaintiff's Phone Number extracted from Five9 records". (*See* Dkt. 53 at 6-7.)

Accordingly, and as explained below, Defendant's First Motion in Limine should be denied.

## II. ARGUMENT

### A. Plaintiff satisfied her obligations under Rule 26 by promptly disclosing the Five9 and the Five9 call records and clearly communicating her intent to offer those records at trial.

SunPath begins its motion by claiming that Plaintiff waited until the evening of the last day of discovery to amend her initial disclosures "to advise SunPath, for the first time, that she intended to offer at trial an unidentified witness from Five9, Inc. and a series of then-unauthenticated spreadsheets it had produced in response to a subpoena." (Mot. at 2.) This would be problematic if it were true.[1] The problem for SunPath is that both parties learned of Five9's identity on the same day, received the Five9 records on the same day, and SunPath was notified repeatedly by both Plaintiff (at her deposition) and her counsel (via conferrals) that it intended to rely upon the Five9 data at class certification, summary judgment, and trial.

Relevant here, Rule 26 does not require supplemental initial disclosures unless the information "has not otherwise been made known to the other parties during the discovery process or in writing." *Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220, 230 (4th Cir. 2019)

---

[1] The claim that Plaintiff advised SunPath, "for the first time," that she intended to offer the Five9 records at trial is so groundless and unsupported by the record that it rules afoul of Fed. R. Civ. P. 11(b).

3

(citing Fed. R. Civ. P. 26(e)(1)(A)); *see also Quesenberry v. Volvo Grp. N. Am., Inc.*, 267 F.R.D. 475, 478 (W.D. Va. 2010) ("[a]s to material omissions [from initial disclosures], further disclosures are only necessary when the omitted or after-acquired information 'has not otherwise been made known to the other parties during the discovery process.'" (quoting 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2049.1 (2010)) (emphasis added)); *see also* Fed. R. Civ. P. 26(e), Advisory Committee Note ("There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition or when an expert during a deposition corrects information contained in an earlier report.").

SunPath learned of the identity of Five9 at the exact same time as Plaintiff. Indeed, on November 9, 2022, American Protection disclosed at its deposition that it utilized Five9's dialing software to place calls during the relevant time period. (*See* Declaration of Patrick H. Peluso ("Peluso Decl.") ¶ 3, attached hereto as Ex. B.). SunPath's attorney was present at that deposition. Later that same day, in response to the testimony, Plaintiff issued a documents subpoena to Five9 seeking, *inter alia*, the call records. (*See* Notice of Five9 Subpoena, attached hereto as Ex. C.) Hence, SunPath was first made aware of Plaintiff's intent to seek evidence from Five9 upon receipt of the notice of subpoena on November 9, 2022.[2] (*Id.*)

On November 30, 2022, Five9 produced the American Protection call records, which are also the subject of this motion, in response to Plaintiff's November 9th subpoena. (Peluso Decl. ¶ 5.) Roughly two hours later, Plaintiff produced the Five9 call records to SunPath. (*Id.* ¶ 6.) On

---

[2] The notice included Five9's address and the categories of documents that were being sought for use in this litigation.

4

December 2, 2022—less than 2 full days after the production of the Five9 call records—Plaintiff Smith testified during a full day deposition taken by SunPath. (*Id.* ¶ 8.) During her deposition, Smith testified repeatedly regarding her understanding that the Five9 "call logs" were obtained, which revealed a complete picture of all of the calls placed by American Protection for SunPath benefit. (*See* Excerpts of Smith Depo. Tr., attached hereto as Ex. D, at 29:5-16; 31:1-13; 63:7-64:78; 147:3-148:11; 208:20-209:20; 210:1-211:10.) Finally, Plaintiff's counsel discussed the Five9 call records with SunPath's counsel shortly after their production, including discussing their applicability to class certification as well as the calls at issue to Plaintiff. (Peluso Decl. ¶ 7.) Put simply, the implication that SunPath was caught off guard by the supplemental disclosure is unsupported by the record.

      As a final point here, the supplemental disclosures were only necessitated by SunPath's refusal to stipulate to the admissibility of the Five9 call records. That is, during its conferrals with Plaintiff's counsel, SunPath indicated that it didn't view the records as changing the calculus, which led Plaintiff to believe that SunPath was laying to groundwork to fabricate the claim that it wasn't aware of what the Five9 records were or how Plaintiff intended to use them.[3] As previously explained, this is untrue, but more importantly the supplementation of Plaintiff's discovery responses on December 8, 2022 (8 days after the data was produced) and its initial disclosures on the following day was not a *new* disclosure, but rather merely memorialized the prior disclosures to SunPath. *See United States v. Dish Network, LLC*, No. 09-3073, 2015 WL 2265800, at *7 (C.D. Ill. May 13, 2015) (refusing to exclude call records from evidence and holding that "the existence of the underlying factual data was disclosed in discovery" therefore

---

[3] SunPath's feigned lack of knowledge regarding the Five9 records is exposed by its reliance on the call records in its own motion for summary judgment to support its version of the calls at issue. (*See* Dkt. 66 pgs. 9, 15-16 n.4, 16 n.7.) SunPath cannot have it both ways.

"no supplemental disclosure was required.").

The Court should see SunPath's motion for what it is: an opportunist attempt to exclude crucial evidence and avoid answering for its actions on the merits.

**B.      SunPath suffered no harm and plaintiff's actions were substantially justified.**

Even where a party fails to timely supplement its disclosures, the exclusion of witness testimony is inappropriate when the delay is "substantially justified or is harmless." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017). But "[t]he exclusion of evidence is a drastic measure". *Taylor v. Illinois*, 484 U.S. 400, 417 n.23, 108 S. Ct. 646, 657, 98 L. Ed. 2d 798 (1988); *see also Outley v. City of N.Y.*, 837 F.2d 587, 591 (2d Cir. 1988) ("Because the evidence of these witnesses was so important, only extreme misconduct on the part of the plaintiff or extreme prejudice suffered by the defendants would justify the extraordinary sanction of preclusion in this case.").

To evaluate whether an untimely disclosure was substantially justified or harmless, courts consider the following five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Bresler*, 855 F.3d 178, 190 (4th Cir. 2017). "The first four factors listed above relate primarily to the harmlessness exception, while the last factor, addressing the party's explanation for its nondisclosure, relates mainly to the substantial justification exception." *Id.* Plaintiff bears the burden to establish that the untimely disclosure was substantially justified or harmless. *Id.*

The first factor, which analyzes the surprise by SunPath, cuts decidedly in Plaintiff's favor. As previously explained, both parties learned of the identity of Five9 on the same day and

6

received the Five9 call records on the same day. Further, Plaintiff expressed her intention to rely on the Five9 data repeatedly during her deposition. (*See* Smith Depo. Tr., Ex. D, at 29:5-16 (clarifying that the "call logs" reveal "a lot more phone calls" than what were reflected in her discovery responses); 31:1-13 (clarifying that the Five9 "call logs" revealed information regarding the calls); 63:7-64:11 (clarifying that her discovery responses were based on her knowledge "at the time" and her understanding that the "call logs" were just received); 147:3-148:11 (clarifying that her prior discovery responses were accurate to her recollection at the time, but stating that "call logs" were "correct" based on investigation performed by her counsel); 208:20-209:20 (confirming that she was aware that the Five9 call logs were obtained and produced to SunPath); 210:1-211:10 (confirming that the information detailed in the complaint and her discovery responses was accurate at the time she *reviewed* them, and clarifying that the Five9 call records would be accurate as of the date of her deposition).) Finally, Plaintiff's counsel discussed the Five9 call records with SunPath's counsel shortly after their production, including discussing their applicability to class certification as well as the calls at issue to Plaintiff. (Peluso Decl. ¶ 7.) Hence, SunPath faces no surprise by the introduction of the evidence.

The second factor, which analyzes whether SunPath had an opportunity to cure that surprise, also weighs in favor of Plaintiff. By its own admission, SunPath was aware of Five9 on November 9, 2022. (Mot. at 2 n.5; *see also* Ex. C.) Despite being aware of Five9 on November 9, 2022[4], SunPath made no attempt to seek discovery from Five9. It issued no subpoena for

---

[4] SunPath's suggestion that the Five9 subpoena was akin to other subpoenas issued in this case (mot. at 4 n.11) is groundless. The Five9 subpoena was the **only** subpoena in this action directed to a telephone service provider that sought call records. All other subpoenas sought to identify the end user of certain telephone numbers after American Protection falsely claimed that it didn't place the calls at issue. (Peluso Decl. ¶¶ 9-10.)

7

documents nor did make any attempt to take a deposition. Hence, to the extent that SunPath can credibly maintain that it was "surprised" by the late disclosure, it had 30-days to conduct discovery into Five9 as a witness and the documents that it may have. It voluntarily chose not to do so.

The third factor, which assesses the extent to which allowing evidence would disrupt the trial, also argues against excluding the witness or the evidence. Indeed, the call records in this case are the most reliable and clear picture of the calls placed by American Protection on behalf of SunPath. As such, excluding the records—not based on any rule of evidence or their reliability but rather based on a supposed discovery violation—would only serve to confuse the jury by requiring Plaintiff's testimony to be the sole source of the substance of all 178 calls that she received—calls which are easily ascertained by reviewing the Five9 records. And when Plaintiff establishes that she cannot recall precise details of any of the 178 calls, such as the time of a call or number of calls on a certain date, she can utilize the very same Five9 records under Fed. R. Evid. 612 to refresh her recollection even if the Court grants Defendant's motion in limine.[5] Put simply, excluding Five9's testimony and the Five9 records from evidence will only serve to render the trial more confusing to the jury.

The fourth factor, which evaluates the importance of the evidence, argues decidedly against granting SunPath's motion. As previously explained, the Five9 call records contain the

---

[5] *See United States v. Rydland*, 461 F. App'x 208, 210 (4th Cir. 2012) ("It is, of course, obvious from everyday experience that the latent memory of a witness may be revived by prior written statements which he <u>or others may have made</u>." (emphasis added)); *see also Mozingo v. Oil States Energy Servs., L.L.C.*, 341 F. Supp. 3d 534, 546 (W.D. Pa. 2018) ("'[w]itnesses may use any aid to refresh their recollections.' A witness may refresh his or her recollection using a document which is otherwise inadmissible."). This includes business records. *See Gunter v. S. Health Partners, Inc.*, No. 1:16CV262, 2021 WL 4255370, at *9 (M.D.N.C. Sept. 17, 2021) (permitting the use of pharmacy records to fresh a witness's recollection as to what medication he was taking).

most clear and reliable picture of all of the calls at issue in this case. To exclude Five9 and the call records, would result in a trial that is less about the merits of the underlying claims and more about Plaintiff's ability to recall with precision the details of calls received more than two years ago. Put simply, it is "entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Foman v. Davis*, 371 U.S. 178, 181, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).

      The fifth factor, the nondisclosing party's explanation for its failure to disclose the evidence, also argues in favor of denying the motion. While SunPath feigns surprise, the truth is that Plaintiff only supplemented her initial disclosures when it became clear that SunPath would not stipulate to the admissibility of the obviously admissible call records. This is not a case where Plaintiff intentionally withheld the name of a substantive witness until the end of discovery. Rather, Five9's testimony will be solely limited to authenticating the call records—records which were known to SunPath and are reliable. For this reason, courts typically find that the failure to disclose a witness whose sole purpose is to authenticate documents to be harmless. *See Dykzeul v. Charter Commc'ns, Inc.*, No. CV185826DSFGJSX, 2021 WL 4522545, at *4 (C.D. Cal. Feb. 3, 2021) ("Multiple courts, including the Ninth Circuit in unpublished decisions, have found the failure to disclose witnesses whose sole purpose is to authenticate documents the plaintiff knew about is harmless."); *Lam v. City & Cnty. of San Francisco*, 565 F. App'x 641, 643 (9th Cir. 2014) ("Four of the five declarants merely authenticated documents already in the record. The City's non-disclosure of these witnesses was harmless."); *Riddick v. AT&T*, No. 2:12-CV-02033-KJM-AC, 2017 WL 2214933, at *6 (E.D. Cal. May 19, 2017) (finding no harm and refusing to strike a custodian declaration produced after the close of discovery "where defendants gave plaintiffs the data underlying both declarations during discovery."); *see also*

*U.S. Bank Nat'l Ass'n as Tr. for Certificateholders of Harborview Mortg. Loan Tr. 2005-08 v. Heritage Ests. Homeowners Assocation*, No. 216CV01385GMNCWH, 2019 WL 346399, at *6 (D. Nev. Jan. 28, 2019), *aff'd sub nom. U.S. Bank, N.A. Tr. for Certificateholders of Harborview Mortg. Loan Tr. 2005-08, Mortg. Loan Pass-Through Certificates v. Heritage Ests. Homeowners Ass'n*, 831 F. App'x 858 (9th Cir. 2020) ("because Miles's testimony is limited to authenticating exhibits that SFR indisputably knew about, Plaintiff's failure to identify him by name did not prejudice SFR's ability to prosecute its case.").

The Court should rule in line with the weight of authority by declining to employ the "drastic measure" of exclusion.

### C. There Is No Basis To Exclude The Five9 Call Records From Evidence.

SunPath next asserts that the Five9 call records must be excluded from evidence because: (1) the Five9 records require "specialized knowledge" because "[i]t is unclear and unknown what the Five9 records signify" (mot. at 5-9); and (2) the "Five9 Records were not timely authenticated and Five9 cannot authenticate them at trial." (*id.* at 10-11.) As explained next, neither assertion is true.

#### 1. The Five9 Call Records Do Not Require Specialized Knowledge Or Expert Testimony.

SunPath's central argument for exclusion of the Five9 calls records is based on its false claim that testimony regarding the records would require "specialized knowledge". (Mot. at 9.) And for this reason, so the theory goes, "[n]either of the parties have personal knowledge about what the Five9 records signify." (*Id.*) SunPath grossly overstates the complexity of the call records.

Indeed, the Five9 call records do not require "specialized knowledge" to be understood. Rather, "[a] witness who does nothing more than review and summarize data in a computer

10

database is a lay witness, not an expert." *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 354751, at *3 (E.D. Va. Jan. 27, 2016) (citing *United States v. Dish Network, LLC*, 2015 WL 4635012, at *4 (C.D. Ill. Aug. 4, 2015); *United States v. Little*, 2005 WL 2334711, at *7 (E.D. Cal. Sept. 23, 2005)). For this reason, this Court has held that summarizing or reviewing the contents of a defendant's databases is "within the capacity of any reasonable lay person." *Id.* at *3 (E.D. Va. Jan. 27, 2016). Unsurprisingly, expert witnesses have been precluded from testifying in telemarketing related cases where all they did was summarize spreadsheets relating to calls. *See Legg v. Voice Media Grp., Inc.*, No. 13-62044-CIV-COHN, 2014 WL 1767097, at *2–3 (S.D. Fla. May 2, 2014) (excluding expert testimony in a TCPA case because his "estimate of class members is merely a count of telephone subscribers who sent 'STOP ALL' messages to VMG as reflected by a spreadsheet produced in discovery.").[6]

      Here, the Five9 records are "within the capacity of any reasonable lay person" to be understood. The records reveal details for each of the calls placed to Plaintiff, including the originating number, the receiving number, the direction of the call, the duration of the call, and other categories of information. (*See* Dkt. 76-1.) Put simply, the Five9 call records are not open to a multitude of interpretations. They are, rather, basic call records. For this reason, expert testimony, while potentially helpful, is unnecessary in this case.

      SunPath's motion fails to cite a single case that held that an expert is required to interpret call records. Instead, it relies on two cases involving medical billing practices, *see* mot. at pg. 9 n.17, two cases involving medical and clinical trials, *see id.* at pg. 10 n.18, and a case involving

---

[6] The *Wakefield v. Visalus, Inc.* trial, which resulted in a judgment exceeding $900 million in damages for violations of the TCPA, likewise featured carrier call records and was tried absent any expert witness testimony. *See Wakefield*, Case No. 3:15-cv-01857-SI (D. Or. 2015) (Dkts. 174, 199, 280).

11

scientific EPA records, *see id.* at pg. 10 n.19. All of which are inapposite. Likely realizing this, SunPath attempts to muddy the record by claiming—absent any evidence—that the records could "reflect more than simply phone calls, but rather other interactions that a given American Protection user may have had with any given data point (such as viewing it, emailing, making notations to follow-up, and myriad other instances we can only guess at)." (Mot. at 6.) This is nonsensical. Emails, notations, or other actions would simply not involve telephone numbers, a "Call ID", or a "Call Type". (*See* Dkt. 76-1.) Nor does SunPath offer any reason why Five9—a telephone service provider—would possess records of these matters or produce them in response to a subpoena seeking **call records**. If anything, SunPath's motion makes clear that it possesses the ability to argue all of the facts laid out in its motion to the jury. And "expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004) (4 *Weinstein's Federal Evidence* § 702.03[2] [a]).

  As a final point, to the extent that the Court finds expert testimony is necessary, it should reopen discovery and let both parties designate experts to testify at trial. On October 7, 2022, three days prior to her expert disclosure deadline, Plaintiff sought an extension of the expert discovery deadlines. (Dkt. 34.) In her motion, Plaintiff explained that she needed additional time to locate the call records. (*Id.* at pg. 6.) The Court ultimately declined to extend the discovery deadlines. (Dkt. 36.) This Court should not now hold its refusal to extend the expert deadlines against Plaintiff by claiming that expert testimony is required. Rather, if the Court believes that expert testimony is necessary to interpret the call records, the more appropriate route to take would be to reopen discovery to enable both parties to conduct expert discovery based on the information already produced in this case.

Because the call records are simple spreadsheets that can be interpreted by a lay witness, the Court should decline to exclude the Five9 records from trial.

### 2. The Five9 Call Records Have Been Properly Authenticated.

Next, SunPath claims that the Five9 call records "were not timely authenticated and Five9 cannot authenticate them at trial since it cannot testify at trial." (Mot. at 10.) While it is true that Five9 provided a custodian declaration to authenticate the call records on January 6, 2023 (*See* Ex. A.), the declaration was provided in response to SunPath's refusal to stipulate to the admissibility of the Five9 records. After that became apparent, Five9 provided the custodial declaration to attempt to avoid the burden of having to appear as a witness in this trial solely to authenticate the call records. (Peluso Decl. ¶ 11.) SunPath faces no prejudice should the Court permit the custodial declaration to be used to authenticate the Five9 records. *See Riddick v. AT&T*, No. 2:12-CV-02033-KJM-AC, 2017 WL 2214933, at *6 (E.D. Cal. May 19, 2017) (finding no harm and refusing to strike a custodian declaration produced after the close of discovery "where defendants gave plaintiffs the data underlying both declarations during discovery.").

But even if the Court excludes the declaration, Five9 can still appear and authenticate the call records at trial. As explained above, SunPath became aware of the Five9 at the same time as Plaintiff. Consequently, Plaintiff had no duty to supplement her initial disclosures. And even if she did, the failure to timely disclosure a witness to authenticate documents already in the record was harmless. *See Lam v. City & Cnty. of San Francisco*, 565 F. App'x 641, 643 (9th Cir. 2014) ("Four of the five declarants merely authenticated documents already in the record. The City's non-disclosure of these witnesses was harmless.").

### III. CONCLUSION

The motion should be denied. Plaintiff complied with her discovery obligations by

13

promptly disclosing Five9 and its call records to SunPath, and in any case, an 8-day delay in disclosing both is both substantially justified and harmless. Further, the Five9 call records do not require specialized knowledge to understand and have been authenticated. Accordingly, the Court should deny Defendant's First Motion in Limine and grant any further relief as it deems necessary, reasonable, and just.

Respectfully Submitted,

**RUTH SMITH**, individually and on behalf of all others similarly situated,

Dated: January 25, 2023

By: _/s/ Francis J. Driscoll, Jr._
       Counsel for Plaintiff

Francis J. Driscoll, Jr.
frank@driscolllawoffice.com
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, Colorado 80210
Tel: 720-213-0675
Fax: 303-927-0809
*Attorneys for Plaintiffs and the Class*

*\* Pro Hac Vice*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on January 25, 2023.

*/s/ Francis J. Driscoll, Jr.*
