# Exhibit B



# Planet Depos
We Make It Happen

# Transcript of Ruth Smith

**Date:** December 2, 2022
**Case:** Smith -v- SunPath, Ltd.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

```
1              IN THE UNITED STATES DISTRICT COURT
2              FOR THE EASTERN DISTRICT OF VIRGINIA
3                        Alexandria Division
4      ---------------------------x
5     RUTH SMITH, individually     :
6     and on behalf of all         :
7     others similarly situated,   :
8                     Plaintiffs,  : Case No.:
9       v.                         : 1:22-cv-00081-LMB-TCB
10    SUNPATH, LTD., a             :
11    Massachusetts corporation,   :
12                     Defendant.  :
13     ---------------------------x
14
15                 Deposition of RUTH SMITH
16                     McLean, Virginia
17                 Friday, December 2, 2022
18                      9:56 a.m. EST
19
20    Job No:   472707
21    Pages:    1 - 213
22    Reported by:  Kelly Carnegie, CSR, RPR
```

```
 1        Deposition of RUTH SMITH, held at the offices
 2   of:
 3
 4
 5
 6
 7
 8        Roth Jackson Gibbons Condlin, PLC
 9        8200 Greensboro Drive
10        Suite 820
11        McLean, Virginia 22102
12
13
14
15
16
17
18        Pursuant to Notice, before Kelly Carnegie,
19   Certified Shorthand Reporter, Registered
20   Professional Reporter, and Electronic Notary
21   Public in and for the Commonwealth of Virginia.
22
```

```
 1            A P P E A R A N C E S
 2    ON BEHALF OF THE PLAINTIFFS:
 3         TAYLOR T. SMITH, ESQUIRE
 4         Woodrow & Peluso, PLLC
 5         3900 East Mexico Avenue
 6         Suite 300
 7         Denver, Colorado 80210
 8         (720) 907-7628
 9
10
11
12
13    ON BEHALF OF THE DEFENDANT:
14         GREGORY M. CAFFAS, ESQUIRE
15         Roth Jackson Gibbons Condlin, PLC
16         8200 Greensboro Drive
17         Suite 820
18         McLean, Virginia 22102
19         (703) 485-3533
20
21
22
```

```
 1                    C O N T E N T S
 2    EXAMINATION OF RUTH SMITH                          PAGE
 3         By Mr. Caffas                                    6
 4         By Mr. Smith                                   205
 5
 6                    E X H I B I T S
 7         (Exhibits attached to the transcript.)
 8    SMITH DEPOSITION EXHIBITS                          PAGE
 9    Exhibit 1   Amended Notice of Deposition of
10                Ruth Smith                                9
11    Exhibit 2   Class Action Complaint and
12                for Jury Trial                           15
13    Exhibit 3   Plaintiff's Supplemental
14                Objections and Responses to
15                Defendant's First Set of
16                Discovery Requests                       23
17    Exhibit 4   Cell Phone Screenshots
18                SMITH000001 - SMITH000020                55
19    Exhibit 5   Verizon Subpoena Response                78
20    Exhibit 6   5/28/2020 E-mail w/Attachment
21                SMITH000022 - SMITH000026                86
22    Exhibit 7   AT&T Subpoena Response                  106
```

```
 1          E X H I B I T S   C O N T I N U E D
 2     Exhibit 8   Plaintiff's Objections and
 3                 Responses to Defendant's First
 4                 Set of Discovery Requests        137
 5     Exhibit 9   Plaintiff's Objections and
 6                 Responses to Defendant's First
 7                 Set of Discovery Requests        149
 8     Exhibit 10  Vehicle Alert Notice Mailer      168
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
```

1   screenshots and documents that you provided to
2   your counsel in order to draft this complaint,
3   right?
4        A    Uh-huh, right.
5        Q    And then on November 11, we received
6   these supplemental interrogatory responses.  Is
7   there anything that you learned in between the
8   time that you submitted that information relating
9   to what was in the complaint and when you
10  submitted these supplemental interrogatory
11  responses?
12       A    So at the time when I submitted the
13  logs, it was the best of my knowledge.  But now
14  based on the call logs that we found in discovery,
15  my understanding is there was a lot more phone
16  calls made to me than what I reported.
17       Q    But you have not reviewed the call logs
18  that you're referring to?
19       A    I defer to my counsel.
20       Q    And the call logs that you're referring
21  to, did you learn the information that you're
22  referring to before or after you submitted these

```
 1   BY MR. CAFFAS:
 2       Q    So then would it be accurate to say that
 3   between when you submitted the complaint and the
 4   information you knew at the time of the complaint
 5   and when you submitted the information in the
 6   supplemental interrogatory responses that are in
 7   front of you, you didn't learn any new
 8   information?
 9       A    I learned the information just very
10   recently, so it would be after.
11       Q    And when you say the information that
12   you learned recently, you're referring to --
13       A    The call logs.
14       Q    So there's nothing else new that you
15   learned from --
16       A    Not to my knowledge, no.
17       Q    So I'll direct you again to the calls
18   that you describe in that first paragraph there.
19   So do you see where I'm pointing to where it says,
20   "On May 26, 2020, plaintiff received two
21   unsolicited calls from the caller ID
22   (410) 844-6327 directed to her cellular telephone
```

1    Q   Specifically with respect to the
2  document marked SMITH11, if you'll take a look at
3  that document, you'll see that it says at 6:25 you
4  missed a call.  Is it your understanding that
5  means you didn't answer that call?
6    A   Yes.
7    Q   Okay.  But your interrogatory response
8  says, "Upon answering the calls," plural.  So it
9  is your understanding that you only answered one
10 of the two calls?
11   A   So I know that -- so based on my
12 knowledge from what I submitted at the time, and
13 then from once the call logs were received.
14   Q   I thought you said the call logs weren't
15 received.
16   A   Not my -- are you talking about from
17 AT&T to me?  That has not been received yet.
18       MR. SMITH:  She's referring to the call
19 logs produced in this case.
20       MR. CAFFAS:  Okay.
21 BY MR. CAFFAS:
22   Q   So it's my understanding your testimony

1  was those call logs weren't received until after
2  you submitted these supplemental interrogatory
3  responses.  Are you saying that your supplemental
4  interrogatory response is not correct and would
5  need to be changed?
6       A    No.  My understanding is that they
7  just -- they just came.  They just were received.
8       Q    And I'm asking if you're saying that
9  that means that your statement that upon answering
10 these calls, plaintiff heard a pause and a click,
11 so that indicates you answered both calls, right?
12           MR. SMITH:  Object to form.
13      A    I'd have to refer back to -- I don't --
14 I don't remember because you're asking
15 specifically.  It says the calls, and you said
16 there's the one missed call.
17 BY MR. CAFFAS:
18      Q    So to reiterate, you said that the
19 documents marked SMITH4 and SMITH11 --
20      A    Yes.
21      Q    SMITH11 are screenshots from the calls
22 that you're describing in the second paragraph of

1   with the correspondents.
2   BY MR. CAFFAS:
3       Q   You contend that June 9 was the last
4   call that you received that you're seeking damages
5   for in this case?
6       A   Again, whatever I provided initially was
7   correct, but I know that there's the call logs
8   that were received. So that is correct, what's in
9   the logs.
10      Q   Can you clarify what you mean by that?
11      A   So when I submitted all the
12  documentation that I had, that was to the best of
13  my knowledge at the time, but I understand that
14  the call logs have different information, and they
15  are -- they are correct.
16      Q   And when you say the call logs, are you
17  referring to call logs that you believe your
18  counsel has received but you have not yet
19  reviewed?
20      A   Yes. They just came this week, yes.
21      Q   So when you say that you believe that
22  the call logs confirm this not to be the case, is

1  that based on representations from counsel?
2     A   Because it's an accurate -- because of
3  the logs that were received by the company versus
4  what I have.
5     Q   Right.  And I'm just saying you haven't
6  reviewed these call logs that you're referring to,
7  right?
8     A   Correct.
9     Q   So how do you know that the call logs
10 confirm this?
11    A   I rely on my counsel.
12    Q   Do you believe that SunPath is the only
13 company that administers vehicle service
14 contracts?
15    A   No.
16    Q   So you're saying that if you received a
17 call soliciting you for vehicle service contracts
18 without mentioning they're SunPath's vehicle
19 service contracts, those would not be about
20 SunPath vehicle service contracts, right?
21    A   They may or may not.
22    Q   How do you discern the difference if

1   A   Yes.
2   Q   So is it a fair statement that this is
3   an e-mail from American Protection that would have
4   solicited you to purchase a SunPath vehicle
5   service protection plan?
6   A   Yes.
7   Q   Okay. Does this change your testimony
8   as to whose products were being sold via the calls
9   at issue in this case?
10  A   So it's SunPath.
11  Q   Okay. I just want to clarify. American
12  Protection was placing calls to sell SunPath's
13  products and services?
14  A   On behalf, yes.
15  Q   Is it fair to say that you rely on your
16  counsel to conduct an investigation in this case?
17  A   Yes.
18  Q   To gather facts?
19  A   Yes.
20  Q   Are you aware that there were call logs
21  obtained in this case from Five9, Incorporated?
22  A   Yes.

1      Q    Are you aware that those call logs were
2   provided to SunPath?
3      A    Yes.
4      Q    Is it your testimony that the call logs
5   produced by Five9, Incorporated are accurate?
6           MR. CAFFAS:  Objection, calls for
7   speculation.
8   BY MR. SMITH:
9      Q    The call logs that were produced to
10  SunPath, is it your testimony that the records of
11  the calls are accurate?
12          MR. CAFFAS:  Objection, calls for
13  speculation.
14  BY MR. SMITH:
15     Q    You can answer.
16     A    Just to make sure -- I just want to make
17  sure I understand.  That's what you obtained,
18  that --
19     Q    Yes.
20     A    Okay.  Yes, yes.
21          MR. CAFFAS:  Objection to form.
22  BY MR. SMITH:

```
1      Q   We previously discussed the complaint
2   and your discovery responses in this case.  At the
3   time you executed -- sorry.  We'll take them one
4   at a time.
5          At the time you reviewed the complaint,
6   were those facts complete and accurate to the best
7   of your recollection at that time?
8      A   At that time.
9      Q   Okay.
10     A   To the best of my knowledge, correct.
11     Q   And at the time you reviewed each of the
12  discovery responses, were those responses accurate
13  to the best of your knowledge at that time?
14     A   Yes, at that time to the best of my
15  knowledge.
16     Q   And was the information contained in
17  both the complaint and the discovery responses
18  based on information that you provided to your
19  counsel near the time of the call?
20     A   Yes.
21     Q   If your --
22         MR. CAFFAS:  Objection to vague on the
```

1  last question. "Informed", I guess.
2  BY MR. SMITH:
3      Q   If your discovery responses conflict
4  with the call logs that we produced in this case,
5  do you agree that the call logs would be accurate?
6      A   Yes.
7          MR. CAFFAS:  Objection, calls for
8  speculation.
9      A   Yes.  I believe that the call logs would
10 be accurate.
11 BY MR. SMITH:
12     Q   Do you have any recollection during any
13 of the calls that the caller identifying
14 themselves by their first and last name?
15     A   I do not.
16         MR. SMITH:  I don't have any further
17 questions.
18         MR. CAFFAS:  Nothing further for me
19 either.  We can go off the record.
20         MR. SMITH:  Before we do, can we reserve
21 signature.
22         (Off the record at 3:47 p.m. EST)