# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **RUTH SMITH,** individually and on behalf of all others similarly situated, *Plaintiff*, v. **SUNPATH, LTD.,** a Massachusetts corporation, *Defendant*. | Case No. 1:22-cv-00081 (LMB/WEF) |

**JOINT NOTICE OF SUPPLEMENTAL AUTHORITY**

The Parties, by counsel, hereby submits this Joint Notice of Supplemental Authority.

1. **Defendant SunPath, Ltd.'s Position**

On January 23, 2023, the Federal Communications Commission ("FCC") issued a declaratory ruling. *See In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling, DA-23-62 (2023) ("2023 Declaratory Ruling"). The 2023 Declaratory Ruling addressed a request from the U.S. Department of Health and Human Services ("HHS") relating to the ability of various participants in the HHS-related programs to "make autodialed and prerecorded or artificial voice calls or send autodialed text messages to raise awareness of the eligibility and enrollment requirements for [] governmental health care programs without violating the Telephone Consumer Protection Act (TCPA)." *Id.* ¶ 1. The 2023 Declaratory Ruling included two salient points that support SunPath Ltd.'s ("SunPath") Motion for Summary Judgment, ECF No. 65.

First, the FCC reiterated its long-standing holding that it "a consumer simply providing their telephone number constitutes [the consumer's] 'prior express consent' to be contacted at that

1

number regarding information closely related to the purpose for which they provided the number, absent instructions to the contrary." *Id*. ¶ 3 (citing *In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Report and Order, 7 FCC Rcd 8752, 8769 ¶ 31 (1992)).[1] The FCC further noted that it has previously "clarified that a party who provides his or her wireless number to a creditor as part of a credit application reasonably evidences prior express consent by the cell phone subscriber to be contacted at the number regarding the debt." *Id*. ¶ 3 n.9 (internal quotations and citations omitted). This proposition supports the conclusion that Plaintiff's May 26, 2020 call to American Protection provided American Protection with the right to return Plaintiff's call.

Second, the FCC also reiterated that the use of live operator calls and direct mail to contact consumers are not subject to the TCPA *at all*. *Id*. ¶ 24 (stating that HHS has "alternative options of communicating with enrollees that are not otherwise subject to the TCPA, and therefore may avoid TCPA restrictions altogether[,]" including the use of "live operator[] [calls] rather than prerecorded voice messages" and "direct mail"). Thus, the FCC is reminding callers that live-operator calls to numbers received in the context of the purpose of the callers' calls, even if listed on the National Do-Not-Call Registry, are not subject to and do not violate the TCPA. Here, American Protection's sole methods of contacting Plaintiff, *viz.* direct mail and live-operator calls, do not violate the TCPA, which the Virginia Telephone Privacy Protection Act ("VTPPA") is modeled after and relies upon in establishing which calls are subject to the VTPPA.

---

[1] *See also id*. ¶ 13 n.37 ("The [FCC] has made clear in several contexts that persons who knowingly release their telephone numbers for a particular purpose have in effect given their invitation or permission to be called at the number which they have given for that purpose, absent instructions to the contrary.") (internal quotations and citation omitted).

2

The FCC's 2023 Declaratory Ruling further supports SunPath's Motion for Summary Judgment in that the six calls at issue in Plaintiff's "Group One" did not violate the VTPPA.

### 2. Plaintiff's Position

SunPath's so-called supplemental "authority" is completely inapposite. It is related to the federal Telephone Consumer Protection Act, not the VTPPA, and involves completely different types of communications than those at issue in this case.

First, SunPath improperly conflates "prior express consent" under the TPCA for *informational* calls, which do not require any written consent, with "prior express written consent" for *telemarketing* calls, which do require written consent.

> Under that authority, the FCC has created a "two-tier system of consent" for TCPA liability, with different kinds of calls requiring different kinds of consent. *Rotberg v. Jos. A. Bank Clothiers, Inc.*, 345 F.Supp.3d 466, 477 (S.D.N.Y. 2018). First, prerecorded calls that **do not include "telemarketing"** are lawful as long as the called party has provided "**prior express consent**." 47 C.F.R. § 64.1200(a)(1)-(2). Second, prerecorded calls that **do include "telemarketing"** require "prior express **written** consent[.]" § 64.1200(a)(2) (emphasis added). **Prior express consent** is a "**lower threshold**[,]" *see Rotberg*, 345 F.Supp.3d at 477—**a called party generally provides such consent simply by giving her phone number to a business in connection with a transaction**. *See, e.g., Van Patten*, 847 F.3d at 1044. **Prior express written consent**, by contrast, is harder to obtain—to provide such consent, **a party must sign a written agreement** that "clearly authorizes" the caller to send "telemarketing messages using a[ ]...prerecorded voice[.]" § 64.1200(f)(9).

*Derossett v. Jonathan C. Patrowicz, D.O., P.A.*, No. CV DKC 21-1294, 2022 WL 4448859, at *5 (D. Md. Sept. 23, 2022) (emphasis added). Hence, the purpose of the calls is what matters. If a call introduces an advertisement or constitutes telemarketing, the caller must have secured <u>written</u> consent. Conversely, if a caller is only placing informational calls, the caller need only secure "prior express consent", which can be oral. But it still must be express, and be provided prior to the call.

3

Indeed, the new FCC Order SunPath points to is related to the so-called "healthcare exception". That is, the FCC exempts from the *written* consent requirement calls that deliver a "health care message" made by or on behalf of a "covered entity" as defined by HIPAA. *Latner v. Mount Sinai Health Sys., Inc.*, 879 F.3d 52, 54–55 (2d Cir. 2018). This FCC Order simply reiterated its prior holdings in this regard. The FCC clarified that "Consumers who have applied for benefits in governmental health care programs expect and likely welcome calls and texts that inform them of requirements that may affect the provision of health care benefits for which they have applied, including the potential loss of coverage." *See In Re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Declaratory Ruling, DA-23-62 (2023) ("2023 Declaratory Ruling") ¶ 15.) Hence, the Order was limited to individuals who applied for *government benefits* and received *informational* calls to inform them regarding those benefits, neither of which is applicable to this case. But, and as SunPath ignores, the FCC went on to explain that this same consent is insufficient for calls that contain *advertising* or constitute *telemarketing* as follows:

> We caution, as NCLC urges, that <u>consumers in this context have not consented to calls or texts that contain advertising or constitute telemarketing</u>. Consent to make an autodialed or prerecorded call or send an automated text that contains advertising or constitutes telemarketing, must be in writing and after certain disclosures. The mere provision of a telephone number does not satisfy these conditions.

*Id.* ¶ 16 (citations omitted) (emphasis added). The Order reiterates that written consent is not required solely because the calls, while commercial in nature, do not qualify a telemarketing because the intent is to inform enrollees about the state of their benefits:

> *Calls to Residential Telephone Lines.* We confirm that calls made using an artificial or prerecorded voice message to a residential telephone line to raise awareness of the eligibility for and enrollment in Medicaid, CHIP, BHP, and Marketplace, as HHS has described them, are exempt from the prior express consent requirement as "**calls made for a commercial purpose but [which do] not include or introduce an advertisement or constitute telemarketing" because these calls**

4

> **appear to simply inform enrollees about the state of their benefits and how to ensure they do not lose such benefits**. Nothing in HHS's request suggests that these communications will advertise a particular insurance product or any other product or service, and thus they do not appear to be advertising or telemarketing. As a result, this exemption is available for calls from local governments, governmental contractors, and managed care entities acting under contract and pursuant to the authorization and direction of a governmental agency in regard to determinations of eligibility for or enrollment in these governmental health coverage programs. **Of course, if such calls do contain telemarketing or advertising, and are made by "persons" under the TCPA who lack derivative immunity as noted above, they would require prior express written consent**. And, in all cases, these calls must satisfy the Commission's identification requirements if they use artificial or prerecorded voice messages.

*Id.* ¶ 23 (citations omitted) (emphasis added).

SunPath's, frankly strange, attempt to conflate the consent requirements for informational and telemarketing calls should be swiftly disregarded. Indeed, its failure to even address the portion of the Order that relates to telemarketing speaks volumes. And in any case, the VTPPA—which is not affected by the FCC's Order—expressly requires "that person's prior express invitation or permission as evidenced by a **signed, written agreement** stating that the person agrees to be contacted by or on behalf of a specific party and including the telephone number to which the call may be placed". Va. Code Ann. § 59.1-514 (West) (emphasis added). Put simply, the FCC's Order has no applicability to the claims at issue in this case and the Court should decline to consider the Order.

**Second,** SunPath's claim that "live operators" or "direct mail" contact does not implicate the TCPA also misstates the Order. Under the TCPA, the general rule is a company must secure prior express consent to place prerecorded or autodialed calls to consumers. The Order's statement that "callers can use live operators rather than prerecorded voice messages and/or non-autodialed text messages" doesn't change anything about the rules under the TCPA. It is unlawful to place prerecorded or autodialed calls to cellular telephone without securing prior express consent—the

5

FCC is simply reiterating that if a company places calls to cellular telephones without using such technology, the portions of the TCPA dealing with those technologies are not implicated and the calls can be made without risk of running afoul of those statutory provisions. The same is true of direct mail, which does not implicate a statute governing telephone communications.

But most importantly here, SunPath misses the point that the VTPPA and the Do Not Call Registry rules (which are at issue in this case) do not hinge on the type of dialing technology used to play the calls. "Calls that 'violat[e] the do-not-call requirements' 'need not be automated to violate the regulations.'." *Klassen v. Protect My Car Admin Servs., Inc.*, 599 F. Supp. 3d 1243, 1245-46 (M.D. Fla. 2021). (quoting *Somogyi v. Freedom Mortg. Corp.*, No. CV 17-6546 (JBS/JS), 2018 WL 3656158, at *4 (D.N.J. Aug. 2, 2018); *see also* (Lauri A. Mazzuchetti & Robert I. Steiner, 9 *Business and Commercial Litigation in Federal Courts* § 96:5 (4th ed. 2020) ("Under the TCPA and its regulations, telemarketers generally are prohibited from contacting consumers who place their phone numbers on the National Do Not Call Registry (even without using autodialers or prerecorded messages) ...."). In other words, calls need not be autodialed or prerecorded to run afoul of the DNC rules.

Indeed, SunPath conflates two separate concepts: prior express consent in the ATDS context and an established business relationship in the DNC context are two completely different things. An EBR is indeed an exemption to calls that would otherwise violate the DNC rules. "A call to a telephone number on the Do Not Call Registry is in violation of the regulations when it is made to solicit the purchase of goods or services. 47 C.F.R. § 64.1200(f)(12). The TCPA exempts a call from the definition of a 'telephone solicitation' if 'the caller has an established business relationship' with the recipient of the call. 47 U.S.C. § 227(a)(4)." *Johansen v. Nat'l Gas & Elec. LLC*, No. 2:17-CV-587, 2018 WL 3933472, at *3 (S.D. Ohio Aug. 16, 2018). Prior express

6

consent, on the other hand, is relevant to a separate section of the TCPA regulating calls using a prerecorded voice and/or an ATDS. The TCPA makes it unlawful for any person "to make any call [other than a call made for emergency purposes or made with the prior express consent of the called party] using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Thus, to state a claim for a violation of the TCPA, "a plaintiff must allege: (1) that the defendant called the plaintiff's cellular telephone; (2) using an ATDS; (3) without the plaintiff's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

SunPath is simply comparing apples and oranges, and this "supplemental authority" should be ignored. It is simply not relevant to the questions at hand in this case.

Dated: January 25, 2023

Respectfully submitted,

SUNPATH, LTD.

By Counsel

/s/ *Joseph P. Bowser*
Joseph P. Bowser (VSB No. 88399)
Carl Taylor Smith (VSB No. 97376)
ROTH JACKSON
1519 Summit Ave., Ste. 102
Richmond, VA 23230
804-441-8701
804-441-8438 (fax)
tsmith@rothjackson.com
jbowser@rothjackson.com

Mitchell N. Roth (VSB No. 35863)
ROTH JACKSON
8200 Greensboro Drive, Suite 820
McLean, VA 22314
(703) 485-3535

7

(703) 485-3525 (fax)
mroth@rothjackson.com

*Counsel for SunPath, Ltd.*

RUTH SMITH,

By: /s/ Francis J. Driscoll, Jr.
       One of Plaintiff's Attorneys

Francis J. Driscoll, Jr.
(frank@driscolllawoffice.com)
4669 South Blvd., Suite 107
Virginia Beach, VA 23452
Telephone: 757-321-0054
Facsimile: 757-321-4020

Patrick H. Peluso (admitted *pro hac vice*)
ppeluso@woodrowpeluso.com
Taylor T. Smith (admitted *pro hac vice*)
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff Ruth Smith*

## CERTIFICATE OF SERVICE

I hereby certify that I caused this Joint Notice of Supplemental Authority to be served upon counsel of record in this case via the U.S. District Court CM/ECF System on January 25, 2023.

/s/ *Joseph P. Bowser*
Joseph P. Bowser